UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

PAMELA B. STUART                          )
Vero Beach, Florida                       )
                                          )
v.                                        )       Case No.       CV-
                                          )
                                          )       Case No:  18-14244-CIV-MARTINEZ/MAYNARD
CATHERINE S. RYAN                         )
Summit, New Jersey                        )
                                          )
        Serve: C. Douglas Vitunac, Esq.   )
               Collins, Brown, et al.     )
               756 Beachland Blvd.        )
               Vero Beach, FL 32963       )
               772-231-4343               )
               dvitunacpleadings@verolaw.com )
                                          )
                                          )       FILED BY ___CGA___
                                          )               Deputy Clerk
and                                       )
                                          )       *Jun 26, 2018*
DEBORAH A. STUART                         )
Kent, Washington                          )       STEVEN M. LARIMORE
                                          )       CLERK U.S. DISTRICT CT.
        Serve: C. Douglas Vitunac, Esq.   )       S.D. OF FLA. Fort Pierce
                                          )
and                                       )
                                          )
Tennis Townhouses Condominium             )
Association, Inc.                         )
Vero Beach, FL                            )
                                          )
        Serve: Jeanette Genovese          )
               Registered agent           )
               One Turtle Beach Road      )
               Vero Beach, FL 32963       )
                                          )
JEFFREY R. SMITH,                         )
Clerk of the Circuit Court for            )
Indian River County, Florida             )
                                          )
        Serve: Jeffrey R. Smith           )

State of Florida                                          )
    c/o Attorney General Pam Bondi            )
                                    )
    Serve:  Bruce Colton, Esq.                )
           State Attorney                    )
           19th Judicial Circuit             )
           411 South 2nd Street              )
           Ft. Pierce, FL 34950              )
                                   )
                                   )

### VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, FOR A DECLARATORY JUDGMENT, TO QUIET TITLE AND FOR PARTITION AND SALE OF REAL AND PERSONAL PROPERTY

**I.**    **Parties to this Complaint**

    A.    Plaintiff

Pamela B. Stuart
111 John's Island Drive #7
Vero Beach, Florida 32963
772-231-3398
(202) 999-2374 (cell)
pamstuart@aol.com

    B.    Defendants

Dr. Catherine S. Ryan
69 Portland Road
Summit, N.J.  07901
908-230-4630 (cell)
csryan21@gmail.com

Deborah A. Stuart
11352 S.E. 211th Lane
Unit 46
Kent, Washington 98031
206-850-5834

2

ckayaker@comcast.net

The Tennis Townhouses Condominium Association, Inc.
One Turtle Beach Road
Vero Beach, FL 32963
772-231-1666
c/o Jeanette Genovese,
registered agent

Jeffrey R. Smith,
Clerk of the Circuit Court
for Indian River County, Florida
2000 16th Avenue
Vero Beach, Florida 32960
clerk@clerk.indian-river.org

State of Florida
c/o Attorney General Pam Bondi
State of Florida
The Capitol PL-01
Tallahassee, Florida 32399-1050
850-245-1050
oag.civil.eserve@myfloridalegal.com

> Serve: Bruce Colton, Esq.
>        State Attorney
>        19th Judicial Circuit
>        411 South 2nd Street
>        Ft. Pierce, FL 34950

## II. Basis for Jurisdiction

This action is brought pursuant to 42 U.S.C. § 1983, an Act of Congress that authorizes a

suit in equity to address the deprivation under color of state law of any rights, privileges, or

immunities secured by the Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201,

which authorizes this court to declare the rights and other legal relations of any interested party

with the resulting declaration having the force and effect of a final judgment or decree.  This

cause of action presents a federal question pursuant to 28 U.S.C. § 1331.  Pursuant to 28 U.S.C. §

3

1367, this court has supplemental jurisdiction over the state law claims asserted by plaintiff for partition and sale of the real property that was her father's homestead property and the personal property owned by her father and mother and other equitable relief because those claims are so related to the federal claims asserted by plaintiff that they form part of the same case or controversy. With respect to those state law claims, this court also has subject matter jurisdiction based upon the diversity of citizenship of the pertinent parties pursuant to 28 U.S.C. § 1332. Pamela Stuart is domiciled and is a citizen of Vero Beach, Florida[1]; Dr. Catherine S. Ryan is domiciled and a citizen of the State of New Jersey, and Deborah A. Stuart is domiciled and a citizen of the State of Washington.

Plaintiff's one-third interest in her father's homestead located at 101 South Catalina Court, Vero Beach, Florida 32963, is valued at over $75,000, exclusive of interests and costs. That homestead property had an appraised market value as of November 30, 2015 of $550,000 and had an assessed value for tax purposes in 2017 of $503,096 and the personal property located inside it was valued at over $25,000 in 2012. Plaintiff's interest in her homestead at 111 John's Island Drive #7, Vero Beach, Florida 32963 is valued at over $75,000, exclusive of interest and costs. It was valued at $468,350 for tax purposes in 2017. Plaintiff's one-third interest in the personal property of her parents is valued at approximately $10,000 more or less as the personal property was appraised in 2012 for $26,970.

## III.   Venue

---

[1] The Fourth District Court of Appeals of Florida found erroneously and contrary to established Florida law that plaintiff was not domiciled in Florida but in the District of Columbia. *Stuart v. Ryan,* docket no. 4D16-3921 (Fla. 4th DCA 2017). Even if plaintiff were domiciled in the District of Columbia, this court would have jurisdiction under 28 U.S.C. § 1332.

Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391, as a substantial part of the events and omissions that gave rise to the claim occurred within this judicial district.   In addition, the real properties and personal property that is the subject of the action are located within this judicial district in Vero Beach, Florida.

**IV.     Statement of Claim**

**FIRST CAUSE OF ACTION**

**UNCONSTITUTIONAL TAKING OF PLAINTIFF'S HOMESTEAD, HER INTEREST IN HER FATHER'S HOMESTEAD ACQUIRED BY DESCENT, AND HER INTEREST IN HER PARENTS' PERSONAL PROPERTY ACQUIRED BY INHERITANCE WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AMENDMENT**

**Introduction**

1.     Plaintiff brings this verified complaint for a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction because the Indian River County Circuit Court, an agent of the State of Florida, in case no. 31-2017CA-000523,  has ordered that her homestead at 111 John's Island Drive #7, Vero Beach, Florida 32963 be sold at a foreclosure auction on June 27, 2018, to  satisfy a debt to the Tennis Townhouses Condominium Association, Inc. ("Tennis Townhouses") with a certificate of title issuing ten days thereafter.

2.     The legal description of the property is:

Apartment 7, The Tennis Townhouses, a condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 482, page 764 of the Public Records of Indian River County, Florida, said property lying and being in Indian River County, Florida.

3.     The debt along with unearned attorneys' fees and costs, was determined in a collection action that proceeded in the Circuit Court of Indian River County that was never authorized as required by the applicable Declaration of Condominium and by-laws of the corporation which require that the Board of Directors of the condominium authorize collection of unpaid fees and assessments and (2) make a finding that such an action is in the best interests of the corporation.  Since such a finding was not made by the Board of Directors, the action proceeded contrary to established Florida property law as set forth in § 718.104(7), Florida Statutes.  The court order that directs the sale of plaintiff's homestead based upon a proceeding that was *ultra vires* as not properly authorized as required by law should be declared null and void by this court as an unconstitutional judicial taking under the Takings Clause of the Fifth Amendment to the U.S. Constitution and Article X, Sections 4 and 6 of the Florida Constitution.

4.     The remaining proceeds of sale after satisfaction of the debt to the Tennis Townhouses have been ordered forfeited to Dr. Ryan and Deborah Stuart, sisters of the plaintiff, to satisfy a debt to Catherine S. Ryan and Deborah A. Stuart determined by the same state court judge in an earlier action (case no. 31-2013CA-001523) contrary to the established property law of the State of Florida.  The Circuit Court for Indian River County, Florida ordered the forfeiture of plaintiff's homestead as well as her inherited interest in her father's homestead contrary to the Florida Rules of Civil Procedure, the established law of domicile and homestead and protection against forced sale under the laws and Constitution of the State of Florida, without subject matter jurisdiction and contrary to the established property law of the State of Florida.  Plaintiff has resided in the State of Florida in her homestead property since January 2000 and had no intention of abandoning her home.  The order of the Circuit Court that she was not a permanent resident of

6

Florida and not domiciled in the State despite competent substantial evidence to the contrary was affirmed by the Fourth District Court of Appeals of the State of Florida in a factually and legally erroneous decision that was contrary to the established property law of the State of Florida in *Stuart v. Ryan,* case no. 4D16-3921 (Fla. 4th DCA December 14, 2017). The Fourth District Court of Appeals found that plaintiff was not a permanent resident of and domiciled in Florida because she is the mortgagor on a reverse mortgage on a residence in Washington, D.C. and claimed an interest not only in her personal homestead residence in Florida but in a one-third interest she inherited in her father's homestead. The established property law of Florida up until then was that homestead protection under Article X, Section 4 of the Florida Constitution could not be waived in an unrelated contract. The Supreme Court of Florida declined certiorari review in case no. SC18-328. These actions by the state courts as agents of the State of Florida contrary to the established property law of the State of Florida that subject plaintiff's homestead to sale by the clerk of the court and issuance of a certificate of title to the property to someone other than plaintiff constitute a judicial taking in violation of the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fifth Amendment to the US Constitution as applied to the States by the Fourteenth Amendment as well as Article X, Sections 4 and 6 of the Constitution of the State of Florida. The orders of the Florida state courts described above also violate the Constitutional right to travel, that is, to move from one state to another.

3.      If plaintiff's homestead is sold at a foreclosure auction presently scheduled for June 27, 2018, by Jeffrey R. Smith, Clerk of the Circuit Court of Indian River County, Florida, pursuant to the unconstitutional state court order and the issuance of a certificate of title ten days

7

thereafter based upon the sale, plaintiff will suffer irreparable harm.[2]  Because real estate parcels are unique, the there is no adequate remedy at law for the loss of Plaintiff's homestead property. Even if this court were to find, as is likely, that the state courts of Florida illegally took plaintiff's homestead contrary to her established property rights under Florida law and the Fifth and Fourteenth Amendments to the US Constitution and Article X, Sections 4 and 6 of the Florida Constitution and thus is owed just compensation by the State, the State of Florida has limited its liability under the Florida Tort Claims Act, § 768.28 Florida statutes, to a maximum of $300,000 unless a special act to cover the excess is enacted by the Florida legislature.  Thus, there is no adequate remedy at law for Plaintiff should the scheduled sale of her homestead on June 27, 2018 and subsequent issuance of a certificate of title occur.

**STATEMENT OF FACTS**

**The Stuart Family**

4.      J. Raymond Stuart and Marion C. Stuart, husband and wife, were the parents of Pamela B. Stuart, Catherine S. Ryan and Deborah A. Stuart.  They were long-time residents of Garden City, New York where they raised their three daughters.

5.      In 1987, Mr. and Mrs. Stuart purchased 101 South Catalina Court, Vero Beach, Florida 32963 which was Mr. Stuart's homestead when he died on January 18, 1998.  The legal description of that property is:

> Lot 30, SEAFOREST COURT, according to the plat thereof recorded in Plat Book 11, page 97, public records of Indian River County, Florida.

6.      In 1990, Mr. and Mrs. Stuart established their estate plans and executed matching

---

[2]  Plaintiff would have filed this request earlier but lacked the necessary funds for the filing fee.

revocable trusts and pour-over wills.  Pamela B. Stuart was named co-trustee of their trusts and executor of their wills by both parents.  The J. Raymond Stuart Revocable Trust became irrevocable upon his death.  The J. Raymond Stuart Irrevocable Trust and the Marital Trust and Credit Shelter Trust created pursuant to the trust document are collectively referred to herein as the "Trust."

       7.      Plaintiff Pamela B. Stuart is a former Assistant United States Attorney for the District of Columbia.  She is currently a member in good standing of the New York and Virginia State bars.   Her Florida bar membership was suspended for a year in 2017 in an action instigated by Edward Ryan, husband of defendant Catherine S. Ryan.  Her suspension in Florida caused her suspension in the District of Columbia, Maryland and Virginia as well as associated federal courts and the loss of all earnings from her solo law practice.  Her suspension had nothing to do with any misconduct associated with  her law practice, The suspension was based upon a complaint filed by Edward Ryan, formerly a co-trustee of the J. Raymond Stuart trusts.  The suspension resulted from plaintiff's failure to provide annual accountings required by the trust and excessive borrowing against her inheritance and right to receive trustee fees and expense reimbursements from the trust as permitted by the Trust and applicable Florida law.  Prior to her suspension, Pamela Stuart maintained law offices in Vero Beach, Florida and Washington, DC and served as "of counsel" to a small law firm in New York.

       8.      Defendant Catherine Ryan is a physician who retired from medical practice in 2000.  She resides with her husband, Edward Ryan, a retired corporate attorney, in Summit, New Jersey.  Defendant Deborah A. Stuart was educated at the graduate level as an environmental planner.  She works as a sales associate at Home Depot.

9

**Factual Background**

9.      After Mr. and Mrs. Stuart completed estate planning, they transferred title to their two residences to the J. Raymond Stuart Revocable Trust.  The Trust was the record owner of J. Raymond Stuart's homestead residence at 101 South Catalina Court in Vero Beach, Florida at the time he died.  Mrs. Stuart did not waive any of her rights in connection with the transfer of title.

10.      Soon after purchasing their Vero Beach residence in 1987, Mr. and Mrs. Stuart filed a declaration of domicile with the Circuit Court for Indian River County, Florida which was recorded as provided by law.  They resided in Vero Beach during the winter months and Garden City in the summer months from 1987 until Mr. Stuart died on January 18, 1998.  Their Garden City home was sold by Pamela Stuart in 2002.

11.      Pamela Stuart visited her parents in Vero Beach frequently beginning in 1987 just after they moved into their new home.  She decided that Vero Beach would be a good place for her to live and work on a permanent basis.  She studied for and passed the Florida bar examination and joined the Florida Bar in 1994.  In the fall of 1998, she began her ten years of service as a member of the Executive Council of the Real Property, Probate and Trust Law Section of the Florida Bar.  She purchased 111 John's Island Drive #7, Vero Beach, Florida 32963, the residence that she considers her permanent residence and homestead in January 2000. Upon finding that she was legally qualified to do so, Pamela Stuart registered to vote in Indian River County in September 2004.   She established a law office in Vero Beach in 2006 and maintained it until her suspension was ordered by the Florida Supreme Court.  She filed a Declaration of Domicile and a Declaration of Homestead with the Circuit Court for Indian River County, Florida as provided by law.

12.     Under Florida law, when Mr. Stuart died, ownership of his homestead descended to his three daughters in equal shares with a life estate in his surviving spouse by operation of law.

### J. Raymond Stuart Trust administration and disposition of real property

### Early period of administration – 1998 to 2001

13.     Soon after her father's death, Pamela B. Stuart appointed an independent trustee, Lewis L. Smith, Jr., who served until February 2000 when he resigned due to his macular degeneration.   After two friends of her father refused Ms. Stuart's request to succeed Mr. Smith as co-trustee, with the advice of outside counsel to the trust, Ms. Stuart appointed Edward Ryan, husband of Catherine Ryan, as co-trustee of both the J. Raymond Stuart Irrevocable Trust and the Marion C. Stuart Revocable Trust despite the admonition of Article Twenty-First of the Trust that a spouse of a beneficiary of the trust was ineligible to serve in that capacity.[3]  Beginning in July 2000, monthly statements of the J. Raymond Stuart trust's brokerage accounts (as well as that of Marion Stuart's trust) were sent to the Ryan home in Summit, New Jersey.

14.     From 1998 through 2001, Pamela Stuart did most of the work to administer her father's trust, traveled back and forth between Washington DC, Garden City, and Vero Beach to supervise, prepared annual accountings for her mother, and supervised preparation and filing of required tax returns with the assistance of a certified public accountant.

12.     Beginning in April 1998, Pamela Stuart made withdrawals from the trust brokerage account to reimburse herself and her mother, Marion Stuart, and Mr. Smith for

---

[3] The Trust document and the current Florida trust code permit one trustee to serve, but the Trust document was ambiguous in that it required an independent trustee following the death of Mr. Stuart.  See,  Articles twenty-first and thirty-first of the Trust.

expenses that they paid for out of their personal accounts that were reasonable expenses of the trust as shown by receipts as authorized by Florida law. Each of those withdrawals was made by check and was reflected on the monthly brokerage account statement of the trust. The expense reimbursements were identifiable on the monthly brokerage account statements because they typically were not a round or even number. From 1998 to 2001, Ms. Stuart withdrew approximately $20,000 for reimbursement of trust administration expenses she reasonably incurred. Ms. Stuart retained all original receipts and copies of checks and invoices for such trust expenses.

13.     Beginning in October 1998, upon advice of outside counsel to the trust and in consultation with Mr. Smith, Pamela Stuart began to take withdrawals from the trust in accordance with Florida law for payment of trustee fees authorized by the Trust. During the four years from 1998 to 2001, Ms. Stuart withdrew $175,000 for trustee fees in reasonable reliance upon the Florida statutes, the Trust document, and the attorney's advice. Mr. Smith declined to take a fee. Mr. Ryan took a $5000 fee.

**Pamela Stuart's purchase of her Florida homestead.**

14.     In December 1999, Marion Stuart was involuntarily hospitalized under the Baker Act, § 394.451 ff., Florida Statutes, when she suffered a psychotic episode during the holidays. Pamela Stuart realized that she was going to have to spend more time taking care of her mother and her affairs than previously.

15.     On January 27, 2000, Pamela Stuart purchased a furnished townhouse about two miles from her mother's residence at 111 John's Island Drive #7, Vero Beach, Florida 32963, along with the club membership required by the gated community where it was located. Pamela

12

Stuart expended personal funds from a stock account after liquidating $100,000 in stock holdings to purchase the property. She made a $10,000 down payment and wire transferred cash of $58,485 for closing. She took out a mortgage from Northern Trust Bank of Florida, N.A. through Beachland Bank for $180,000 and paid the equity and initial capital contribution for the club membership of $45,890.24. No funds from the Trust assets were used to purchase Pamela Stuart's homestead.

### The commercial townhouse investment and fraud

16.      In July 2001, a limited liability company formed by Pamela Stuart purchased a commercial townhouse for use as a law office and rental property in Washington, D.C. that she named "the J. Raymond Stuart Building" to honor her father who served during World War II as head of the steel division of the War Production Board. As part of the purchase price for the commercial townhouse, a second mortgage for $150,000 was placed by the lender, Eagle Bank, on Pamela Stuart's home in Vero Beach.

17.      The seller of the property, a lawyer named David Lamb, misrepresented the availability of rear access from the property to a public street. As a result, The Stuart Building, LLC, a District of Columbia limited liability corporation that owned the building, was not able to secure an occupancy permit or renovation permits for the property. As a consequence, the Stuart Building could neither be rented or sold on the open market.

18.      Pamela Stuart's earnings from her solo law practice were insufficient to cover the carrying costs of the building which varied monthly from $11000 to $20000. Prior to purchase, she had anticipated the carrying costs would be covered by rental income. After review of the Trust document which authorized the Trust to join with co-owners and others in dealing with real

estate in any way in Article Eighteenth, section 6, and consultations with family members,
including the defendants Catherine Ryan and Deborah Stuart, Marion Stuart and Edward Ryan,
Pamela Stuart began making withdrawals from the trust as an advance against her rights to
distributions from the trust and to trustee fees and trustee expense reimbursements to assist her in
paying the carrying costs of the building.   She also liquidated her savings and pension accounts.
From 2001 to December 2009 when the Stuart Building, LLC sold the townhouse, Pamela Stuart
withdrew over $1 million from her parents' trusts.

19.      Pamela Stuart treated the withdrawals she made from the Trust after the Stuart
Building LLC bought the Stuart Building as loans even though she used portions of the
withdrawn funds to pay trustee expenses.  She did so because of article Nineteenth of the Trust
which prohibited trust monies from being includable in the estate of the trustees or in the gross
income of a trustee for federal tax purposes.  Article Eighteenth, section 2 of the Trust permitted
the trustee to make loans with adequate interest and adequate security and Article Twenty-Third
of the Trust also gave the trustee the authority to borrow.   Applicable Florida law also permitted
trustees to make loans.

20.      In July 2009, Pamela Stuart prepared a promissory note memorializing her
agreement with the Trust to repay the loan amounts withdrawn since July 2001 and at any other
time in a promissory note with interest to be assessed at 3% per annum or the long term
applicable federal rate pursuant to 26 USC § 1274(d) whichever was lower.  She used an online
form to do so which had a provision that trust funds would not be used to enforce the agreement.
At that time Pamela Stuart did not anticipate that enforcement would be needed or that litigation
would be instituted by her sisters.

14

**Litigation**

21.　　In July 2004, Ms. Stuart and the Stuart Building LLC sued David Lamb for fraud and misrepresentation in the District of Columbia Superior Court. In a companion case filed in May 2007, the Stuart Building, LLC sought a declaratory judgment that the alley adjacent to the Stuart Building was a public alley.　The Stuart Building LLC and Ms. Stuart were in litigation through December 2014 when the litigation against David Lamb was finally concluded.

**Refinancing of Pamela Stuart's Vero Beach homestead**

22.　　In anticipation of the forthcoming trial of the case against David Lamb, in 2006 Pamela Stuart refinanced her home in Vero Beach in order to raise funds to pay Bregman, Berbert, Schwartz & Gilday, the law firm representing the Stuart Building, LLC.　At the time of the refinancing, the new lender, Wilmington Trust,  paid off the first mortgage of $130,570.83, the second mortgage of $150,000 that had been used for part of the purchase price of The J. Raymond Stuart Building, and various outstanding loans associated with the Stuart Building, LLC of $66,206.65.　These amounts plus the cash out were added into the new mortgage on plaintiff's Vero Beach home.　On April 5, 2006, from proceeds of the refinancing of Ms. Stuart's home, the Stuart Building LLC paid its law firm, Bregman, Berbert, Schwartz & Gilday $102,138.41.

**Sale of the J. Raymond Stuart Building and partial repayment of loans from trust**

23.　　When the Stuart Building LLC's asset was sold in December 2009, as planned, part of the proceeds of the sale was used as planned to pay off the outstanding mortgage on Ms. Stuart's Vero Beach residence in repayment of the liability and costs assumed by Ms. Stuart for

purposes of support of the business of the LLC.[4]  As a proxy for the first mortgage on the Vero

Beach home that had been paid off in the 2006 refinancing, the Stuart Building LLC did not pay

off an outstanding second mortgage against Ms. Stuart's Washington, DC residence of

approximately $180,000 that had been taken out in connection with the purchase of The J.

Raymond Stuart Building.  Thus, the funds to acquire the Vero Beach homestead of Ms. Stuart

came entirely from her personal funds.  No funds of the Trust were used to purchase the

homestead.

24.     After the sale of The Stuart Building, LLC assets, Pamela Stuart repaid $705,000

in loans from her parents' trusts.  Because Ms. Stuart and her mother had terminated Edward

Ryan as co-trustee in July 2009 but Mr. Ryan refused to resign from the J. Raymond Stuart

trust's brokerage accounts, Ms. Stuart and her mother established new accounts for the Trust at

Charles Schwab.

**2006 to 2014 medical issues, trust management problems,  and the death of Marion
Stuart**

25.     Marion Stuart suffered from a host of chronic illnesses including chronic

obstructive pulmonary disease, essential tremor, and bipolar disorder.  Beginning in 2006, she

required nursing aide assistance and soon she had nursing aides assisting her around the clock at

a cost of approximately $130,000 annually.  By 2009, Marion Stuart's revocable trust funds were

exhausted and the Trust supported her as required by the terms of the trust.

26.     Edward Ryan, the co-trustee, had been largely a passive trustee since his

---

[4] Pamela Stuart had advised family members of this plan several months in advance by
email and no one objected.

appointment in 2000 until he retired in 2006. After Ryan's retirement, he and Pamela Stuart

disagreed over the investment of the trust assets and her continued need to take loans from the

trust. By 2009, both Pamela Stuart and Marion Stuart determined that they could not work with

him any more and he was notified in July 2009 that he was terminated as co-trustee. Mr. Ryan

refused to resign and refused to be removed from the J. Raymond Stuart trust brokerage accounts

held at Smith Barney until he was ordered to do so by the trial court in *Ryan v. Stuart*.

27.     When the Stuart Building was sold in December 2009, $200,000 of the repayment

of trust loans went directly to Marion Stuart and $505,000 went to the new accounts at Charles

Schwab rather than to Smith Barney. Pamela Stuart asked Charles Schwab's account executive

to arrange for copies of statements to be provided to Catherine Ryan and Deborah Stuart as well

as Marion Stuart, but Charles Schwab did not fulfill that request which was submitted in

handwritten form.

28.     In 2010, Pamela Stuart began to address long-overlooked medical issues. From

October 2010 to September 2014, she underwent a series of ten surgical procedures, including

two total hip replacements and one total shoulder replacement.   Meanwhile, Marion Stuart's

health was in decline and Pamela Stuart spent most of the time she was not in the hospital or

recovering from surgeries in 2010 and 2011 in Vero Beach taking care of her mother's affairs,

trust administration duties, and supervising the nursing operation. Her law practice income

declined substantially.

29.     Pursuant to the terms of the Trust and Florida law, Pamela Stuart resumed

borrowing from the trust – this time for her own support as well as to pay for trust administration

expenses.

17

30.     Marion Stuart went into the hospital for the last time in January and early February 2012. Pamela Stuart remained with her during her hospitalization and arranged for hospice care which began on February 13, 2012. Catherine Ryan came for three days during her mother's hospitalization. She never saw her mother alive again. Deborah Stuart did not visit her mother during the last three years of her life. Marion Stuart died at home on April 29, 2012 in the presence of Pamela Stuart and her nurse, Vinetta Nelson.

**Unconstitutional Takings pursuant to *Ryan v. Stuart*, case no. 31-2013CA-001523, Circuit Court for Indian River County, Florida**

31.     After undergoing throat surgery for sleep apnea on May 31, 2012, Pamela Stuart prepared a plan of trust administration setting forth the steps she planned to accomplish and provided it to her sisters in July 2012. It explained her plans to reimburse the trust for amounts she had borrowed against her inheritance and her right to receive trustee fees and expense reimbursements. At that time, Pamela Stuart was unaware that Edward and Catherine Ryan did not believe that a family member should receive fees for serving as trustee or reimbursement for expenses incurred due to service as a trustee despite the Florida statutes that authorize such payments and provide for a lien against a trust to secure expense reimbursements.

32.     In November 2013, an action was filed on behalf of Catherine S. Ryan and Deborah A. Stuart as plaintiffs against Pamela Stuart, individually and as trustee, in the Circuit Court for Indian River County, Florida, docket no. 31-2013CA-001523, alleging breach of trust, conversion, and requesting removal of the trustee, injunctive relief, and a constructive trust.

("*Ryan v. Stuart*").[5]

33.    No items of special damages were alleged in the complaint as required by Florida Rule of Civil Procedure 1.120(g).   The failure to list Pamela Stuart's interest in her father's homestead or her residences, or her interest in the personal property of her parents which was governed by their wills as items of special damages under established Florida property law meant that title to the plaintiff's interest in those properties could not be transferred pursuant to the *Ryan v. Stuart* lawsuit to satisfy any debt of Pamela Stuart.

34.    Pamela Stuart denied the allegations of the complaint and raised affirmative defenses that included the statute of limitations and the equitable principle of laches in light of the fact that the plaintiffs had been well-advised of the basis of their claims since 2000 or at the latest, 2007.

35.    In an effort to defend her administration of the trust, Pamela Stuart retained the law firm of Shutts & Bowen to represent her as trustee but the firm withdrew in June 2014 after Pamela Stuart paid the firm $25,000 and could not pay additional fees and expenses billed which totaled over $41,000.   The law firm withdrew in June 2014 and Pamela Stuart litigated the rest of the case *pro se.*

36.    In March 2014, the trial court entered an agreed order which acknowledged the resignation of Pamela Stuart as trustee, ordered the removal of Edward Ryan from all accounts, required Pamela Stuart to turn over all trust property within ten days and cooperate with the successor trustee to enable her to fulfill her duties, and to refrain from encumbering her Vero

---

[5] The complaint painted a false picture that Pamela Stuart, from the outset of trust administration, had the intent to steal from the trust, appointed Edward Ryan as co-trustee as a part of this nefarious scheme, and stole millions of dollars from the trust.

Beach residence and her DC residence even though the DC residence was beyond the jurisdiction of the court. The court ordered that no discovery was to take place until 15 days after the full accounting was completed and provided to beneficiaries.   No deadline was set for Pamela Stuart to submit her expenses.

37.      At the request of counsel for Dr. Ryan and Deborah Stuart, counsel for Pamela Stuart agreed to the appointment of Gina Rall, a CPA, to serve as successor trustee.   Pamela Stuart reasonably expected that Ms. Rall would administer the trust impartially with respect to the three living beneficiaries as a trustee pursuant to Florida law, § 736.803 (duty of impartiality) but Ms. Rall's actions and recommendations instead favored solely Dr. Ryan and Deborah Stuart, clients of the law firm that had retained her previously.   Subsequent to 2015, Ms. Rall never submitted an accounting to Pamela Stuart and, contrary to the established property law in the State of Florida, executed a "trustee deed" to J. Raymond Stuart's homestead to Catherine Ryan and Deborah Stuart when, in truth and in fact, the J. Raymond Stuart homestead was owned by Pamela Stuart, Catherine Ryan and Deborah Stuart in equal shares as joint tenants.   In doing so, Gina Rall committed a breach of trust which caused Pamela Stuart damages.

38.      Pamela Stuart turned over more than 5,000 pages of trust records via her counsel on March 14, 2014 and advised that she would be working on compiling the records of trustee expenses that she paid from her personal accounts.   While she had maintained the original receipts and records of the expenses contemporaneously with the expenditures, she had not prepared an annual accounting including them since 2002 when she became overwhelmed with her duties as trustee, the care of her mother, the sale of the Garden City residence which she oversaw and negotiated, the clients of her solo law practice, and her work for The Stuart

20

Building, LLC.   She reasoned that her sisters were well aware of the affairs of the trust, the records of which were maintained in her mother's residence, and talked with her frequently by telephone and email.  She knew that Catherine and Edward Ryan received monthly statements of the trust's brokerage account which listed all income and expenses except those paid personally by Pamela Stuart.  Deborah Stuart began to receive the monthly brokerage statements in March 2007 and accountings prepared by Edward Ryan from March 2007 through 2009.

39.    Pamela Stuart was still working on the expense accountings when, in September 2015, counsel for Catherine Ryan and Deborah Stuart filed a motion to approve the successor trustee's accounting.  The motion attached a 2015 update to an accounting of the trust through 2014 but failed to attach the initial accounting which covered the time from the death of J. Raymond Stuart through part of 2014.  Pamela Stuart opposed the motion on the grounds that a full accounting required the inclusion of the trustee expenses that she was still working on compiling and that the accountings that had been completed contained many errors.

40.    In a 36 minute non-evidentiary hearing held on November 23, 2015, that featured hyperbole on the part of counsel for Dr. Ryan and Deborah Stuart who claimed falsely that trust funds had been used to acquire Pamela Stuart's Vero Beach homestead, the trial court (Cox, J.) approved the accounting without reading it, made disparaging comments about Pamela Stuart and ordered a hearing if the parties could not agree on a final distribution of the trust assets.  The court ordered that jurisdiction would be retained for the next judge in the civil assignment over a proposed plan of distribution and to hold an evidentiary hearing on Pamela Stuart's claims, interest and set-offs or credits to the loans she took from the trust as well as to rule on the laches issue Ms. Stuart raised at the November 2015 hearing.

21

41.    In a written order dated January 3, 2016,  the trial court found Pamela Stuart's reasons for not completing the accounting of her expenses or providing documentation (including caring for a friend dying of cancer for seven months) "preposterous" and criticized what the court characterized as "deceitful conduct." Without the benefit of any evidence, and based only on *allegations* in the complaint, the trial court prejudged Pamela Stuart's credibility, attacked her honor, prejudged the issue of attorneys fees and costs, and without any legal basis prohibited  the transfer or sale of any of Pamela Stuart's property and imposed an equitable lien on both her residences.  These acts by the Circuit Court, an agent of the State of Florida, were against the established law of Florida and, to the extent that they restricted the full exercise of Pamela Stuart's rights as property owner of her homestead (the Circuit Court lacked jurisdiction over Pamela Stuart's residence in Washington, D.C.) constituted a judicial taking in violation of the Takings Clause of the Fifth Amendment to the US Constitution as well as the Due Process Clause of the Fifth Amendment to the US Constitution as applied to the States under the Fourteenth Amendment.

42.    Judge Cox transmitted her defamatory January 3, 2016 order to the Florida Bar which then resurrected the complaint filed by Edward Ryan in 2014.  Edward Ryan had filed a complaint with the Florida Bar in 2014 that had been dismissed by Bar Counsel on the grounds that "that's what civil litigation is for."  Once Judge Cox's order was forwarded, Pamela Stuart agreed to a one year suspension of her Florida Bar license.  As a direct consequence of the suspension of her Florida law license and those in DC, Maryland and Virginia,[6] Ms. Stuart lost

---

[6] New York's Appellate Division refused to suspend her based on the fact that the alleged misconduct did not involve her law practice, that she had a distinguished career that featured contributions to the bar and to the community.

22

her ability to earn any income.  As a consequence, she was unable to pay her condominium association fees and assessments, and real estate taxes when due which led to the imposition of lien against her homestead by the Tennis Townhouse Condominium Association, Inc. and the foreclosure of its lien as more fully set forth below.

43.     Pamela Stuart filed a motion to reconsider the judge's order but the judge refused to do so in an order dated February 9, 2016.  Pursuant to the March 2014 order, Ms. Stuart attempted to get discovery but was refused by counsel for the plaintiffs.  A motion to compel discovery was denied by the court (by then, Kanarek, J.).  So, Pamela Stuart never got any discovery in the *Ryan v. Stuart* case contrary to the Florida Rules of Civil Procedure and in violation of the Due Process Clause of the Fifth Amendment to the US Constitution as applied to the States through the Fourteenth Amendment.

44.  Circuit Judge Paul Kanarek assumed responsibility for the *Ryan v. Stuart* case in January 2016.  Pamela Stuart filed requests to add third party defendants, namely Edward Ryan and the J. Raymond Stuart trust, and for partition and sale of her father's homestead.  Judge Kanarek denied the request for partition on the grounds that the Trust had not been named as a party in the case and then, when Pamela Stuart filed a motion to amend and add the Trust as a party, Judge Kanarek denied that motion.   Under prevailing Florida law, J. Raymond Stuart's homestead was not part of the assets of the trust and ownership of it was divided equally among the three daughters at the time of Mr. Stuart's death.  Without benefit of subject matter jurisdiction and without applying the standards set by the US Supreme Court and the Florida Supreme Court for a finding of "reprehensibility" or unjust enrichment such as would justify an equitable lien,  Judge Kanarek found in his Order on Final Distribution dated October 21, 2016

that it was "entirely appropriate to impose an equitable lien against Pamela Stuart's interest in the 101 South Catalina Court homestead residence" so that her interest in the value of her father's homestead could be use to reduce her obligation owed under what the judge characterized as an "unsecured note."

45.     Judge Kanarek also found in a non-evidentiary hearing on February 1, 2016 that Judge Cox's ruling approving the accounting was the "law of the case" and refused to revisit it despite evidence provided of errors and omissions totaling over $500,000.   Judge Kanarek's application of the "law of the case" doctrine was contrary to prevailing Florida law which allows a finding to be designated the "law of the case" only after an appellate ruling. His reliance on Judge Cox's approval of the accounting without benefit of an evidentiary hearing or competent substantial evidence denied Pamela Stuart the Due Process of law contrary to the Fifth Amendment to the US Constitution as applied to the States by the Fourteenth Amendment and the Declaration of Rights under the Florida Constitution. Because this finding by Judge Kanarek formed a substantial part of the basis for the Final Order on Distribution, it constituted a judicial taking in violation of the Takings Clause of the Fifth Amendment to the US Constitution and Article X, Section 6 of the Florida Constitution.

46.     Judge Kanarek ordered a hearing be held on March 11, 2016 in a notice dated February 22, 2016 and that hearing was continued on April 13, 2016.   The notice of hearing did not list Pamela Stuart's domicile, homestead, her father's homestead, or her parents' personal property as subjects to be addressed at the hearing.   At those hearings, Pamela Stuart provided evidence concerning her activities in administering the trust and her request for an award of trustee fees of $1.4 million over the sixteen years that she served as trustee (with a credit for the

24

$175,000 already paid from 1998 to 2001) but Judge Kanarek denied her request and awarded no fees.   In doing so, the trial court failed to assess the factors required under applicable Florida statutes or case law in violation of Pamela Stuart's expectancy right to such fees and in violation of the established property law of the State of Florida.   The failure to award trustee fees without properly assessing the basis for them under established Florida property law constituted an unconstitutional judicial taking.

47.   While the right to trustee fees arguably could be lost if a trustee is responsible for a breach of trust, the same is not true of reimbursable trustee expenses which are to be a lien and a priority reimbursement under § 736.0709, Florida statutes.   Nevertheless, Judge Kanarek denied reimbursement for all such expenses which were individually detailed in summary form by year and for which original receipts had been provided to plaintiffs' counsel with electronic copies to the successor trustee.   Notably, the successor trustee would not credit any of the expenses paid by Ms. Stuart over the sixteen years she served as trustee, because, said Ms. Rall, she could not tie each expense as having been paid from a particular withdrawal from the trust account.   She testified that she never looked at the electronic copies of the individual original receipts provided to her by Pamela Stuart who had provided the originals to counsel for Dr. Ryan and Deborah Stuart on January 22, 2016 as required by Judge Cox.   Original receipts for expenses are sufficient evidence for IRS purposes.   Pamela Stuart had a reasonable expectation that her properly incurred expenses for travel and trust administration expenses were going to be credited against her outstanding loans, but the court denied that request contrary to established Florida property law which provided that such expenses were to be reimbursed with interest and constituted a lien against the trust.   Therefore, the failure to award Pamela Stuart credit for her

25

expenditures for trust administration was an unconstitutional judicial taking in violation of the

Takings Clause of the Fifth Amendment to the U.S. Constitution as applied to the States pursuant

to the Fourteenth Amendment and Article X, section 6 of the Florida Constitution.

48.     Without holding a full evidentiary hearing on the issue of Pamela Stuart's

domicile and the homestead status of her Vero Beach residence and without offering her a full

opportunity to testify concerning her activities in and ties to Vero Beach (the judge sustained an

objection to her testimony about her personal and professional activities in Florida on the

grounds of "relevance" and found that her testimony concerning the days she spent in Vero

Beach on trust administration duties constituted the total of her residency in the State, Judge

Kanarek found as a fact that Pamela Stuart was not domiciled in Florida, that she had illegally

registered to vote in 2004, and that her Vero Beach residence was not her homestead contrary to

established Florida property law.  He invented testimony that did not occur at the hearings to the

effect that Pamela Stuart testified that she intended to reside permanently in Florida at some time

in the future when she NEVER SAID THAT.  She also never indicated any intention to abandon

her established intent to permanently reside in her Vero Beach residence.   Transcripts of

hearings on March 11, 2016 and April 13, 2016 do not show any testimony that could be the

basis for the judge's finding. He found that because she had a reverse mortgage on her residence

in Washington, DC that, under federal law requires her to be in residence at least 183 days per

year, that she was domiciled in Washington, D.C. contrary to the established law of domicile in

the State of Florida and under the US Constitution that prohibit durational residency

requirements for the establishment of domicile and permanent residency.  It was also contrary to

the established property law of Florida that prohibits waiver of the Article X, section 4 Florida

Constitutional right to homestead protection against forced sale in an unrelated contract. Judge

Kanarek found contrary to applicable precedent of the US Supreme Court and the Florida

Supreme Court that Pamela Stuart had engaged in "reprehensible" conduct in order to order an

equitable lien placed on her Vero Beach residence in favor of Catherine Ryan and Deborah

Stuart. Judge Kanarek also reached outside the record of the case to determine that Pamela

Stuart used her DC office address as her address of record for various state bars and referred to

such extra-record evidence in his Order on Final Distribution.    In making such findings and

orders in violation of established procedural and property law in the State of Florida, Judge

Kanarek was acting as an agent of the State of Florida and the order of forfeiture of Pamela

Stuart's interest in her Vero Beach residence constituted an unconstitutional judicial taking in

violation of the Takings Clause of the Fifth Amendment to the US Constitution, the

Constitutional right to travel (to move from state to state) guaranteed by the Privileges and

Immunities Clause of the Fourteenth Amendment, and Article X, sections 4 and 6 of the Florida

Constitution.

      49.    At the evidentiary hearing on March 11, 2016, Judge Kanarek relied on evidence

provided by the successor trustee that was not competent substantial evidence required by

established Florida procedural and property law because the successor trustee was never qualified

as an expert under § 90.702, Florida statutes, never testified that the accounting she provided was

anything other than a business record of her firm, and testified falsely concerning the opinions

she freely offered that were accepted by the court. The consequent order on Final Distributon

which imposed a judgment against Pamela Stuart in a monetary amount based in large part upon

the testimony and opinions of the successor trustee, constituted an unconstitutional judicial

taking in violation of the Takings Clause and Due Process Clause of the Fifth Amendment to the US Constitution as applied to the States by the Fourteenth Amendment.

50.     Despite the fact that Judge Kanarek ruled that the Circuit Court did not have subject matter jurisdiction over J. Raymond Stuart's homestead in Ryan v. Stuart, because it descended at his death by operation of law equally to his three daughters with a life estate in his surviving spouse, Judge Kanarek nevertheless ordered Pamela Stuart's interest in her father's homestead forfeited to her sisters despite the fact that she acquired by descent and operation of law not affected by any misconduct or breach of trust. This order was contrary to the established property law of the State of Florida and constituted an unconstitutional judicial taking under the Takings Clause of the Fifth Amendment to the US Constitution and the Due Process Clause of the Fifth Amendment as applied to the States under the Fourteenth Amendment.

51.     Upon appeal of Judge Kanarek's Order on Final Distribution to the Fourth District Court of Appeals of the State of Florida, the state court of appeals misstated the finding of the lower court in its opinion but nevertheless affirmed the judgment on the basis that Pamela Stuart was claiming an interest in two homesteads and that her "principal" residence (as opposed to her permanent residence based on intent) was in Washington, D.C. This opinion by the Fourth District Court of Appeals was contrary to the established property law of the State of Florida and constituted a stark departure and new interpretation of the law unsupported by precedent. Nevertheless, the Supreme Court of Florida denied to exercise its certiorari jurisdiction. *See,* opinion of the Fourth District Court of Appeals dated November 29, 2017 in *Stuart v. Ryan,* 4D16-3921, and order of the Supreme Court of Florida in docket no. SC18-328 dated April 9, 2018. These decisions of the state courts of Florida which were contrary to established Florida

28

property law and confirm the order of the Circuit Court ordering forfeiture of Pamela Stuart's homestead, interest in her father's homestead, and property constitute judicial takings in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution, the Due Process Clause of the Fifth Amendment as applied to the States by the Fourteenth Amendment, the Constitutional right to travel (to move from state to state), and Article X, sections 4 and 6 of the Florida Constitution.  By virtue of its inherent equitable powers to remedy Constitutional violations, and pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), this Court is possessed of the authority and power to declare the unlawful seizure and confiscation and sale of plaintiff's Florida homestead to be unlawful violations of the Fifth Amendment to the U.S. Constitution and to compel the defendants to return plaintiff's homestead to plaintiff. Alternatively, this Court is possessed of the power to require and compel the Circuit Court of Indian River County, acting as the agent of the State of Florida, to afford plaintiff the process that is due in connection with the forfeiture of her homestead.

WHEREFORE Plaintiff requests that this Court to issue a temporary restraining order, a preliminary and permanent injunction and a declaratory judgment against enforcement of the unconstitutional orders of the Florida state courts as agents of the State of Florida,  declare that the orders of the Florida state courts in violation of the US Constitution are unconstitutional and consequently null and void and of no force and effect and to order Pamela Stuart's full ownership rights and title in her Vero Beach residence restored, prohibit the Clerk of the Circuit Court of Indian River County from issuing a certificate of title to anyone other than Pamela Stuart, and order that Pamela Stuart's interest in her father's homestead residence be restored, and that the court order such other relief and damages as is fair and just.

## SECOND CAUSE OF ACTION

## DUE PROCESS OF LAW, UNLAWFUL TAKING – FIFTH AMENDMENT

**Tennis Townhouses Condominium Association, Inc.  v. Pamela Stuart, cross-plaintiffs Catherine Ryan and Deborah Stuart, and the John's Island Property Owners Association, 31-2017CA-000523, Circuit Court for Indian River County, Florida. (the "collection action")**

52,     A proceeding was filed in the Circuit Court for Indian River County on or about March 15, 2017 in case no. 31-2017CA-000523 to foreclose a lien for condo association fees and assessments against Pamela Stuart.  Pamela Stuart was unable to pay the fees and assessments when due as a result of the suspension of her law licenses in every jurisdiction where she practiced other than New York.  The initiation of the collection action was *ultra vires* as it had not been approved as required by the association's Board of Directors as specifically required by the applicable Declaration of Condominium and by-laws of the Tennis Townhouses Condominium Association, Inc.  ("Tennis Townhouses").  Under applicable Florida property law, the requirements of the Declaration of Condominium and by-laws are mandatory as covenants running with the land.

53.     Pamela Stuart's Vero Beach residence was one of the units of The Tennis Townhouses Condominium Association, Inc. which had been established by a Declaration of Condominium which was filed of record on January 8, 1975 among the land records of Indian River County, Florida along with its Articles of Incorporation and By-Laws at Book 482, pages 764 -841.  The Declaration of Condominium provided at p. 471 that the affairs of the association were to be managed by the Tennis Townhouses Condominium Association, Inc. according to the

Declaration of Condominium, Articles of Incorporation and By-laws.  At pp. 491-92 the
Declaration of Condominium provided that in the event of default in the duties of a unit owner
shall be grounds for relief including an action for damages, injunctive relief, foreclosure of lien
or any combination thereof.  At page 771, the Association is given the power to enforce the
Declaration of Condominium and to levy and collect assessments "as the Board of Directors may
deem to be in the best interests of the condominium."  At pp. 817, the Articles of Incorporation
provided that the corporation would have the power to levy and collect assessments.  At page
821, the Articles of Incorporation provided that the officers of the corporation were to manage
the affairs of the corporation subject to the directions of the Board of Directors.  At page 835-36,
the By-laws provided that all powers of the association shall be exercised by the Board of
Directors, including the power to enforce by legal means the provisions of the Articles of
Incorporation, By-laws and Declaration of Condominium.  At page 838, the By-laws provide
that the Secretary shall keep the minutes of all proceedings of the Directors and the members
(unit owners) and the Treasurer shall keep the books of the association in accordance with good
accounting practices.

54,    On March 15, 2017, Tennis Townhouses Condominium Association, Inc. by its
counsel, Block & Scarpa, filed a complaint for foreclosure of a lien for unpaid fees and
assessments and for damages including attorneys fees.   It simultaneously filed a notice of lis
pendens.  Paragraph 13 of that complaint falsely and fraudulently stated: "Plaintiff has
performed all conditions precedent to bringing this cause of action or such conditions precedent
have been waived or excused."  As of March 15, 2017, the Declaration of Condominium of the
Tennis Townhouses Condominium Association, Inc., which had been filed among the official

land records of this court at Book 482, Page 764 ff. was in full force and effect and it required

that the Board of Directors of the Tennis Townhouses authorize any collection action against a

unit owner and make a finding that it was in the best interests of the corporation. *See,* Book 482,

Page 771. As of March 15, 2017, as plaintiff and its counsel well knew, no such authorization

by the Board of Directors of the Tennis Townhouses had taken place. Accordingly, Block &

Scarpa was not properly authorized to file the case or incur attorneys' fees, expenses, and costs.

     55.     On May 17, 2017, a default was entered against Pamela Stuart who filed a motion

on May 22, 2017 to vacate the default and permit the filing of an answer. Pamela Stuart was not

formally a party to the case until the court vacated the default on April 25, 2018. By that time,

the Court had set a hearing on dispositive motions for May 22, 2018 which effectively precluded

any discovery for Pamela Stuart contrary to the Florida Rules of Civil Procedure and denied

Pamela Stuart the due process of law to which she is guaranteed by the United States

Constitution and the Florida Constitution.

     56.     On June 22, 2017, Block & Scarpa filed a motion to transfer the case to Circuit

Court and represented the amount in controversy in the matter exceeded $15,000. On July 11,

2017, Ryan Scarpa, Esq. filed a form "Value of Real Property or Mortgage Foreclosure Claim"

was filed and $20,101.91 was the amount stated as the total estimated value of claim. As of that

date, the amount of attorneys fees improperly charged by Tennis Townhouses to Pamela Stuart's

account was $5,943.76. No authorization by the Tennis Townhouses Board of Directors to file

the collection action had been taken so, in truth and in fact, the representation of Mr. Scarpa as to

the value of the claim was false and fraudulent. The county court ordered the case transferred to

the Circuit Court on June 22, 2017. The case was assigned to Judge Kanarek, the only judge on

the civil calendar, on July 12, 2017, but the court took no action with respect to the case until February 13, 2017 when it denied a motion to dismiss the cross claim filed by Dr. Ryan and Deborah Stuart.  That same day, Pamela Stuart filed a motion to disqualify Judge Kanarek which was promptly denied as legally insufficient (presumably because it lacked the required oath). Pamela Stuart filed an amended motion to disqualify Judge Kanarek based upon his findings in *Ryan v. Stuart* that she engaged in "reprehensible" conduct contrary to the prevailing law in Florida and various errors of law and fact in the earlier case that was properly attested to.  He denied that motion as well.  Pamela Stuart filed a petition for a writ of prohibition in the Fourth District Court of Appeals on April 12, 2018.   The Fourth District Court of Appeals denied the petition without opinion on May 14, 2018 and denied Ms. Stuart's motion for a stay of the proceedings in the trial court in the same order in docket no. 4D18-1142.

58.     In September 2017, Mr. Scarpa consented to the filing of a consent motion to vacate the default that had been entered in May 2017.   Mr. Scarpa did not advise Pamela Stuart at that time that the complaint had never been authorized by the Board of Directors of the Tennis Townhouses.   Pamela Stuart filed a joint agreed order admitting to vacate the default, file Pamela Stuart's answer and to admit her as a party to the case.  Judge Kanarek took no action on it until a hearing on April 22, 2018 and his subsequent order filed April 25, 2018.

59.     On January 30, 2018, Mr. Scarpa filed a motion for summary judgment and for attorneys fees and costs on behalf of the Tennis Townhouses along with an affidavit of attorneys fees and costs in which he represented falsely that there was no issue of material fact and implied that all requirements for the lawsuit in the Declaration of Condominium had been met.  In truth and in fact, as of the time that Mr. Scarpa filed the motion for summary judgment, the Board of

33

Directors of the Tennis Townhouses had not authorized the lawsuit or made the required finding as the Declaration of Condominium requires. Along with his motion, Mr. Scarpa filed an affidavit regarding attorneys fees that claimed that he and his law firm had earned $9,735 to date in fees on this case when, in truth and in fact, the lawsuit had never been duly authorized and thus none of the time spent or fees claimed constituted "reasonable" fees.

60.     Pamela Stuart (who was not yet officially a party to the action) opposed the motion for summary judgment and raised the issue of the failure of the Board of Directors to authorize the lawsuit in her opposition filed on February 9, 2018. On the day before she filed her opposition, Pamela Stuart obtained from the offices of Community Condominium Services, Inc., the management company that manages the business of the Tennis Townhouses, true and correct copies of the minutes of the Board of Directors of the Tennis Townhouses from January 1, 2016 to the present and none of the minutes reflected approval by the Board of Directors to file this lawsuit or to engage Block & Scarpa to do so.   When Pamela Stuart requested a copy of the retainer agreement with Block & Scarpa, she was told that none existed.

61.     At the next regularly scheduled meeting of the Board of Directors of the Tennis Townhouses on March 19, 2018, and President Katherine Strickland presided.   At that meeting, the Board of Directors voted to authorize collection of Pamela Stuart's unpaid dues and assessments but failed to make the required finding that it was in the best interests of the corporation to do so.   As of the date of that meeting, $10,916.26 in attorneys' fees had been improperly charged to Pamela Stuart's account that had never been posed to the condominium association's account.   Scarpa claimed $1,346.26 in costs should be reimbursed in his affidavit filed January 30, 2018 – all of which were incurred without authorization by the Board of

34

Directors of the Tennis Townhouses.

62.     On April 21, 2018, Pamela Stuart appeared at the offices of the Tennis

Townhouses Condominium Association, Inc. within the offices of the Community Condominium

Services Inc. offices (the management company) and requested a copy of the minutes of the

Board of Directors meeting of March 19, 2018 that she had previously requested by email.

Contrary to Florida Statutes, her reasonable request was refused.   After the April 22, 2018

hearing, she was provided with what she was told was a draft copy of the minutes.   None of the

minutes reflect a decision by the Board of Directors to authorize a collection action against

Pamela Stuart or a finding by the board of directors that it is in the best interests of the

corporation to do so.  The failure of the conditions precedent to legal action by the corporation

render this action unauthorized and the Circuit Court's foreclosure order null and void.

63.     On April 19, 2018, Mr. Scarpa filed the affidavit of Katherine Strickland who

represented falsely that "The Board of Directors fulfilled their duty to enforce the terms and

conditions of the governing documents of the Association by engaging the law offices of Block

& Scarpa to initiate a collection action against Pamela Stuart in accordance with all requirements

set forth in the Association's governing documents." This declaration misrepresented the state of

affairs which was that the action was not authorized until over a year after it was filed in court

and the Board of Directors never made the required finding that a collection action was in the

best interests of the corporation.   On information and belief, Mr. Scarpa prepared the affidavit

for Ms. Strickland.   The trial court was required to hold a hearing on Pamela Stuart's motion to

strike Ms. Strickland's affidavit pursuant to Florida law but did not do so.

64.     Pamela Stuart attempted to obtain affidavits from Jeanette Genovese, the

registered agent of the Tennis Townhouses and the General Manager of Community Condominium Services, Inc., the managing agent for the Tennis Townhouses and Nicole Russo, the recording secretary, by email on April 19, 2018 so as to file them with the court. She received no response. On information and belief, Ryan Scarpa, Esq. advised Ms. Genovese and Ms. Russo not to respond. Accordingly, Pamela Stuart filed a notice of intent to serve subpoenas and subpoenas were served on Ms. Genovese and Ms. Russo to appear with the necessary documents at the hearing on May 22, 2018. The witnesses appeared at the hearing, refused a direct request from Pamela Stuart to provide her with the documents, and were precluded from testifying by the Judge Kanarek. Pamela Stuart came prepared to question Ms. Genovese concerning the certified audit report for the Tennis Townhouses Condominium Association, Inc. for 2017 which showed an expenditure of only $568 for "professional fees" rather than the thousands of dollars that Block & Scarpa claimed to have charged the Tennis Townhouses So, the trial court should have stricken the claim for attorneys fees propounded in the name of the Tennis Townhouses Condominium Association, Inc. but failed to do so.

65.     Because the trial court ordered dispositive motions heard less than a month after Pamela Stuart became a party to the case, Pamela Stuart was precluded from exercising the rights secured by the Florida Rules of Civil Procedure to establish by deposition and/or affidavit that the Board of Directors of the Tennis Townhouses Condominium Association, Inc. had not complied with the conditions precedent for filing a collection action against her. The failure to permit discovery in the case and the trial court's subsequent order of foreclosure on the lien which came more than one year after the notice of lis pendens was filed constituted an unconstitutional judicial taking contrary to settled Florida property law in violation of the

36

Takings Clause of the Fifth Amendment to the U.S. Constitution as applied to the States pursuant to the Fourteenth Amendment and of Article X, Section 6 of the Florida Constitution.

### Order of Sale and application of cross plaintiffs' lien

66.     The Circuit Court's order of foreclosure dated May 23, 2018 provides that Dr. Ryan and Deborah Stuart shall have a lien on Pamela Stuart's homestead property up to and including the amount of the court's order, to wit, $2,231,982.36.  As described above, Pamela Stuart has contested the amount and constitutionality of that lien.  In a motion for rehearing, Pamela Stuart requested that she at least be credited with the payment of the market value of her homestead as of June 27, 2018 against the lien ordered by the trial court but the Circuit Court denied her motion on June 11, 2018.   Because the foreclosure sale is not a bona fide sale on the open market and the court's order has the effect of inhibiting any potential buyer other than Dr. Ryan and Deborah Stuart from bidding, the Circuit Court should have ordered that Pamela Stuart be credited against the court ordered amount of the cross plaintiffs' judgment.  The failure to do so is an unconstitutional judicial taking contrary to established Florida property law in violation of the Takings Clause and the Due Process Clause of the Fifth Amendment to the U.S. Constitution as applied to the States pursuant to the Fourteenth Amendment and in violation of Article X, section 6 of the Florida Constitution. By virtue of its inherent equitable powers to remedy Constitutional violations, and pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), this Court is possessed of the authority and power to declare the unlawful seizure and confiscation and sale of plaintiff's Florida homestead to be unlawful violations of the Fifth Amendment to the U.S. Constitution and to compel the defendants to return plaintiff's homestead to plaintiff.  Alternatively, this Court is possessed of the power to require and compel the Circuit

Court of Indian River County, acting as the agent of the State of Florida, to afford plaintiff the process that is due in connection with the forfeiture of her homestead.

WHEREFORE, Plaintiff requests that the Circuit Court's order directing the sale of Plaintiff's Florida residence and the issuance of a certificate of title to the buyer be vacated as an unconstitutional judicial taking contrary to the prevailing and settled law of Florida which requires that the Declaration of Condominium and by-laws be adhered to as a covenant running with the land.

## THIRD CAUSE OF ACTION

### Complaint to Quiet Title, for Partition and Sale of Real Property and Personal Property

### Pursuant to Chapter 64, Florida Statutes and 28 U.S.C. § 2201

This part of the action is solely against Dr. Catherine Ryan and Deborah A. Stuart and is instituted pursuant to Chapter 64, Florida Statutes, and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

67.     The real property "real property" that is the subject of this third cause of action is located in Indian River County, Florida, within the Southern District of Florida and is more particularly described as follows:

> Lot 30, SeaForest Court, According to the Plat thereof recorded in Plat Book 11, Page 97, Public Records of Indian River County, Florida, subject to easements, restrictions, reservations and rights of way of record and taxes after 1986, together with all and singular the tenements, hereditaments, and appurtenances belonging to or in any way appertaining to that real property.

> The real property address is 101 South Catalina Court, SeaForest, Vero Beach, FL 32963.

68.     The personal property contained therein or in any other place within the United States which formerly belonged to J. Raymond Stuart and Marion Stuart or one or both is also

the subject of this action for partition and sale.

69.     The real property was purchased by J. Raymond Stuart and Marion C. Stuart, his wife, as tenants by the entireties on November 9, 1987 from Figgie Properties.  On January 12, 1992, J. Raymond Stuart and Marion C. Stuart conveyed the real property to J. Raymond Stuart. Mrs. Stuart did not waive any of her rights in connection with that conveyance.  On January 14, 1992, J. Raymond Stuart conveyed the real property to J. Raymond Stuart and Pamela B. Stuart, as trustees of the J. Raymond Stuart Revocable Trust, with full power under § 689.071, Florida Statutes, to protect, conserve, and to sell, to lease, to encumber and otherwise manage and dispose of the real property.

70.     On December 29, 1987, Mr. and Mrs. Stuart executed a Declaration of Domicile that recited that they became residents of Florida on November 6, 1987.

71.     When Mr. Stuart died on January 19, 1998, he was domiciled in Indian River County and 101 South Catalina Court, Vero Beach, FL 32963 was his homestead as that term is defined in Article X, section 4 of the Florida Constitution.  He was survived by his spouse and his three daughters.

72.     As of the date of Mr. Stuart's death, his homestead descended by operation of law under § 732.401(1), Florida Statutes, to his three daughters as joint tenants with a life estate in his surviving spouse.

75.     Marion Stuart continued to reside in the property, with a homestead exemption granted by Indian River County for tax purposes, until her death on April 29, 2012.

76.     None of the parties currently reside permanently at the real property.

77.     The real property sought to be partitioned is indivisible.

78.     Following the Order on Final Distribution entered by the Circuit Court for Indian River County, Florida, on October 21, 2016,  in *Ryan v. Stuart*, successor trustee Gina Rall, as successor trustee, executed a certificate of trust and trustee's deed which purported to deed "all of the trust's interest in and to" the real property to Catherine S. Ryan and Deborah A. Stuart in a certificate of trust prepared by a lawyer at the law firm of Catherine Ryan and Deborah Stuart's counsel.  That deed which recited that it had been done without conducting a title search, should be declared by this court to be void and of no force and effect as the real property was not within the subject matter jurisdiction of the court in *Ryan v. Stuart* and any conveyance of Pamela Stuart's one-third interest in the property was contrary to established Florida property law and an unconstitutional judicial taking contrary to the Takings Clause of the Fifth Amendment to the U.S. Constitution as applied to the States by the Fourteenth Amendment and in violation of Article X, Section 6 of the Florida Constitution.

79.     The personal property belonging to J. Raymond Stuart and Marion C. Stuart contained at the real property was not within the subject matter jurisdiction of the court in *Ryan v. Stuart* and was subject to conveyance by the will of Marion C. Stuart which gave all of her personal property to her three daughters in equal shares.

WHEREFORE, the Plaintiff respectfully requests the Court to:

a.      Grant a Declaratory Judgment to Quiet Title to the Real Property in the names of Pamela B. Stuart, Catherine S. Ryan, and Deborah A. Stuart

b.      Order the private sale of the real property and distribute the proceeds thereof among Plaintiff and Defendants Catherine Ryan and Deborah Stuart in equal shares as their interests appear and

40

c.      Order the private sale of the personal property contained in the real property and

distribute the proceeds thereof among Plaintiff and Defendants Ryan and Stuart in

equal shares.

d.      Order such further relief as is just and equitable.

<u>JURY DEMAND</u>

Plaintiff hereby demands trial by jury of all issues so triable.

<u>VERIFICATION:</u>

Pursuant to 28 U.S.C. § 1746, under penalties of perjury, I declare that I have read the

foregoing Verified Complaint for Temporary Restraining Order, Preliminary and Permanent

Injunction, for a Declaratory Judgment and to Quiet Title and for Partition and Sale of Real and

Personal Property and declare under the laws of the United States of America that the facts stated

in the complaint are true and correct to the best of my knowledge and belief.

PAMELA B. STUART
Plaintiff *pro se*
111 John's Island Drive #7
Vero Beach, FL 32963
772-231-3398
202-999-2374 (cell)
pamstuart@aol.com