IUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No. 18-14244-CIV-MARTINEZ/MAYNARD

PAMELA B. STUART,

    Plaintiff,

v.

CATHERINE S. RYAN, et.al.,

    Defendants.
_____/

**DEFENDANT, STATE OF FLORIDA'S MOTION TO DISMISS WITH PREJUDICE VERIFIED COMPLAINT FOR TEMPORARY RETRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION, FOR A DECLARATORY JUDGMENT, TO QUIET TITLE AND FOR PARTITION AND SALE OF REAL AND PERSONAL PROPERTY [DE#1]**

Defendant STATE OF FLORIDA pursuant to Fed. R. Civ. P. 12(b)(6) and Rule 12(b)(1)., hereby moves to dismiss the complaint filed by Plaintiff, PAMELA B. STUART (hereinafter referred to as "Ms. Stuart") and as grounds in support would state as follows:

## Introduction

Ms. Stuart has filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging a deprivation of a right under color of state law against the State of Florida for acts committed by a Circuit Court Judge(s) in Indian River County, Florida, who were assigned to cases where Ms. Stuart was a litigant. A review of the complaint filed by Ms. Stuart reveals that she was a party to two circuit court cases in Indian Rivet County. In the first case, Circuit Court Judge Kanarek ordered that: (1) property from a Trust owned by Ms. Stuart's father, located at 101 South Catalina Court, Vero Beach, Florida 32963, be seized by Ms. Stuart's sisters, who were also heirs to her father's estate and (2) that Ms. Stuart be required to return certain monies she withdrew from Trust

funds as a Co-trustee. In the second case assigned to Judge Kanarek, the Condominium Association, where Ms. Stuart lived, foreclosed on a claim of lien filed against Ms. Stuart for her failure to pay her monthly maintenance fees on her homestead property described as 111 John's Island Drive #7, Vero Beach, Florida 32963.

As to the 42 U.S.C. § 1983 violations, Ms. Stuart alleges that the Florida State Circuit Court Judge(s) failed to follow the established Florida property law and ordered the foreclosure of a lien on Ms. Stuart's homestead property, ultimately resulting in a certificate of title being issued to a buyer. Ms. Stuart alleges that the order(s) entered by the Circuit Court effected an unconstitutional judicial taking by a judge who is an agent of the State of Florida.

Ms. Stuart also requests in her complaint relief under the Declaratory Judgement Act; the same will not be addressed here as she states on page 38, Third Cause of Action of the Complaint, [DE#1] that this part of the action is solely against the other defendants in this cause and not directed to the State of Florida.

Ms. Stuart's complaint must be dismissed for two reasons. First, her attack on her state court cases in this Court gives rise to multiple jurisdictional bars, namely a lack of justiciable controversy, lack of standing, the Eleventh Amendment and the Rooker-Feldman doctrine, as well as the Younger Abstention doctrine. Secondly, even if the Court finds that it does have jurisdiction, Ms. Stuart wholly fails to state a cause of action against the State of Florida. More importantly, Ms. Stuart makes no effort to state a cause of action under 42 U.S.C. § 1983 against the State of Florida.

Defendant, State of Florida request that this Court dismiss the Complaint with prejudice based on (1) No Justiciable controversy, (2) Standing, (3) Eleventh Amendment Immunity, (4) Rooker-Feldman Doctrine, (5) the Younger Abstention Doctrine, (6) Failure to State a Cause of Action, (7) Judicial Immunity, and (8) finally argues that the Dismissal Should be With Prejudice.

**Background and Alleged Facts**

J. Raymond Stuart and Marion C. Stuart, husband and wife had three daughters, Pamela Stuart (Plaintiff herein, referred to as "Ms. Stuart"), Catherine Ryan and Deborah Stuart. Raymond and Marion established their estate plans (hereinafter referred to as the "Trust") and Ms. Stuart was named co-trustee of their trusts as well as executor of their wills. Due to circumstances which are irrelevant here, Ms. Stuart and her brother in law, Edward Ryan became co-trustees of the Trust. From 1998 to 2001, Ms. Stuart withdrew monies from the Trust as payment for trustee fees. After 2001, Ms. Stuart began making withdrawals as advances against her rights to the distributions from the Trust as well as for trustee fees and expenses. Additionally, Ms. Stuart took out other monies for which she prepared a promissory note memorializing her agreement to pay the Trust back. Ms. Stuart was not aware that there would be litigation instituted by her sisters who disagreed with the trust fund disbursements she received. Mr. Edward Ryan, Catherine's husband, who according to Ms. Stuart was initially a passive trustee, after his retirement in 2006 became active and disagreed over (1) the investments Ms. Stuart had made on behalf of the Trust and (2) the loan she took from the Trust funds. In November 2013, an action was filed in the Circuit Court of Indian River County by Ms. Stuart's sisters against her for breach of trust, conversion and requesting her removal at trustee of the Trust. The result of the aforementioned litigation was that among other things, the Court imposed equitable liens on Ms. Stuart's property. In Ms. Stuart's other litigation case, according to her, the Indian River County Circuit Court, an agent of the State of Florida ordered that her homestead property located at 111 John's Island Drive be sold at a foreclosure auction to satisfy a debt to the Tennis Townhouses Condominium Association, Inc. The Circuit Court Judge also ordered that once the debt to the Tennis Townhouses Condominium, Inc. was satisfied the remaining proceeds would be forfeited to Ms. Stuart's sisters to satisfy the debt owed to them as beneficiaries of the Trust. Ms. Stuart claims that the Circuit Court of Indian

River County ordered the forfeiture of her homestead property contrary to the law and therefore constitute judicial takings in violation of the Fifth Amendment and the Due Process Clause of the United States Constitution as applied to the States by the Fourteenth Amendment. Ms. Stuart appealed the decision of the Court to the Fourth District Court of Appeals of the State of Florida and the appellate court ruled unfavorably towards Ms. Stuart who then appealed the decision to the Supreme Court.

**MEMORANDUM OF LAW IN SUPPORT OF THE
STATE OF FLORIDA'S MOTION TO DISMISS**

**LEGAL STANDARD**

**A. Fed. R. Civ. P. 12(b)(1)**

Federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011), aff'd, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) (internal quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

**B. Fed. R. Civ. P. 12(b)(6)**

The function of a motion to dismiss for failure to state a cause of action under Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of the pleading. Fowler v. S. Bell Tel. & Tel. Co., 343 F.2d 150, 153 (5th Cir. 1965) (finding a motion to dismiss for failure to state a claim upon which relief can be granted generally serves the same function as the common law demurrer).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may consider only the complaint, the written instruments attached to it as exhibits, documents incorporated into

the complaint by reference, and matters of which a court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). The court must "view the allegations of the complaint in the light most favorable to the plaintiffs], consider the allegations of the complaint as true, and accept all inferences therefrom." Tello v. Dean Witter Reynolds, Inc., 410 F.3d 127, 1288, n.12 (11th Cir. 2005) (internal quotations omitted). However, a court has no corresponding duty to accept as true any legal conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.").

Indeed, even where a Plaintiff has made allegations concerning each element, to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level. ..." Twombly, 550 U.S. at 545.  As a result, the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 557–559)).  Blanket assertions, labels, and conclusions pled in a complaint are insufficient to satisfy this standard. See Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**ARGUMENTS**

**1.   The Complaint fails to allege an appropriate justiciable controversy.**

Ms. Stuart has stated no claim against the State of Florida.  The State of Florida has three separate branches. (Florida Constitution Article III, Section 3.)  It has many departments, agencies and subdivisions in its executive branch; it has two chambers in its legislative branch; and its four

levels of courts with 20 judicial circuits, five districts of appeal courts and one supreme court in its judicial branch.

Identification of the State of Florida as a defendant is insufficient to establish a controversy. Generally, a party defendant is proper if it is the executive agency or agency head charged with enforcing a particular statute or program, or the individual who committed the alleged wrongdoing. See Diamond v. Charles, 476 U.S. 54, 64, 106 S. Ct. 1697, 1704, 90 L. Ed. 2d 48 (1986); Am. Civil Liberties Union v. The Fla. Bar, 999 F.2d 1486, 1490 (11th Cir. 1993).  It is proper to dismiss a party defendant if specific relief is not requested against that defendant.  Ashourian v. Ashourian, 483 So. 2d 486 (Fla. 1st DCA 1986).

The Complaint fails to name as defendants any adversaries, and being none, there is no actual controversy. "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of cases and controversies." DiMaio v. Democratic Nat. Comm., 520 F.3d 1299, 1301–02 (11th Cir. 2008) (citation and quotation marks omitted). Critical to the case-or-controversy requirement of Article III is an inquiry into standing.  Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005). The party invoking federal jurisdiction bears the burden of proving the essential elements of standing. Lujan, 504 U.S. at 561, 112 S.Ct. 2130; Elend v. Basham, 471 F.3d 1199, 1205–06 (11th Cir. 2006). Given the procedural posture in this case, the Court looks to the sufficiency of the allegations in the complaint and any attached documents to the motion central to Plaintiff's claims to determine standing. Church v. City of Huntsville, 30 F.3d 1332, 1336 (11th Cir. 1994); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). It is not enough that "the [plaintiff]'s complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing

requirements." Elend, 471 F.3d at 1206 (quoting Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1229 (11th Cir. 2000) (citations omitted)). Rather, a plaintiff must satisfy three constitutional prerequisites of standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

DiMaio, 520 F.3d at 1301–02 (citing Lujan, 504 U.S. at 560–61); see also Dermer v. Miami-Dade Cty., 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressability.").  The Eleventh Circuit said:

> To have standing a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.

Kelly v. Harris, 331 F.3d 817, 819–20 (11th Cir. 2003)

By suing the "State of Florida," Ms. Stuart effectively attempts to bring all of these independent branches and constituent parts before this Court.  Ms. Stuart is asking this this Court to determine that the "State of Florida" has deprived her of her constitutional rights.  Ms. Stuart's homestead property was foreclosed for her failure to pay condominium assessments, the State of Florida did not cause her to lose her homestead property. Mr. Stuart may have or may have not committed acts that caused her to be removed as co-trustee of the Trust, however, the State of Florida did not contribute to her removal as co -trustee of the Trust. Ms. Stuart has alleged, and cannot allege, no constitutional wrongdoing by "the State of Florida"; she has stated no claim against the State of Florida.  Its dismissal should follow.

**2. Standing**

Ms. Stuart's claims against the State of Florida must be dismissed for lack of standing. To satisfy the requirements for standing under Article III of the Constitution, Ms. Stuart must show: (1) injury-in-fact; (2) a causal connection between the asserted injury and the defendant's activities; and (3) that the injury would be redressed by a favorable decision. <u>Summit Med. Assocs., P.C. v. Pryor</u>, 180 F.3d 1326, 1336 (11th Cir. 1999). "An injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." <u>Shotz v. Cates</u>, 256 F.3d 1077, 1082 (11th Cir. 2001). The injury-in-fact prong is at issue in this case because Ms. Stuart fails to allege that she will suffer, or is likely to suffer, a concrete and particularized injury of the kind described in her complaint in the future. To the contrary, her complaint is focused on a past injury, her removal as trustee of the Trust, the sale of Trust property and the foreclosure of her condominium, homestead property by the Condominium Association under a Claim of Lien.

Ms. Stuart must assert "a reasonable expectation that the injury [she has] suffered will continue to be repeated in the future." <u>Malowney v. Fed. Collection Deposit Grp.</u>, 193 F.3d 1342, 1347 (11th Cir. 1999). She has not alleged any facts that show that she will be subject to injury in the future as a result of the State of Florida's actions. See <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 107–108, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (noting that the plaintiff lacked standing to seek an injunction because it was speculative that he would be arrested again and that he would be subjected to a chokehold again).

The court in <u>De Luna v. Hidalgo Cty., Tex.</u>, 853 F. Supp. 2d 623, 637–38 (S.D. Tex. 2012), was faced with a complaint that attempted to retroactively challenge the practices and decisions of judges. In <u>De Luna, Id.</u> at issue were the judges' decisions to jail defendants who could not pay their court imposed fines without determining whether they were indigent. For relief, the plaintiffs

sought a declaration that the judges' decisions were unconstitutional. The court found that the De Luna plaintiffs lacked standing, stating the issue as follows:

> To demonstrate their standing to obtain an order declaring as unconstitutional and enjoining Defendants' challenged practices, Plaintiffs must show that they face a "real and immediate" threat that while indigent, they will again be charged with a Class C, fine-only offense and then arrested and incarcerated solely because they are unable to pay the fine, and without being afforded the affirmative indigency screening they allege is constitutionally required.

De Luna, 853 F. Supp. 2d at 637. Ultimately, the court concluded that the plaintiffs could not satisfy this burden and dismissed the complaint. Ms. Stuart is in the same position as the De Luna plaintiffs: unable to demonstrate a real and immediate threat of future harm.

### 3.  Eleventh Amendment Immunity

The Eleventh Amendment[1] precludes certain suits by citizens against their own States in federal court. Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). This prohibition applies in equal force regardless of whether the plaintiff seeks monetary, injunctive or declaratory relief.  Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989). Generally, Eleventh Amendment immunity applies unless Congress validly abrogates that immunity or the state consents to be sued.[2]  Miller v. King, 384 F.3d 1248, 1268 (11th Cir. 2004), opinion vacated and superseded, 449 F.3d 1149 (11th Cir. 2006).

---

[1] The Eleventh Amendment provides that: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI

[2] Neither exception applies here.  It is well established that Congress did not intend to abrogate a state's Eleventh Amendment immunity in 42 U.S.C.A. § 1983 damage suits. Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1502 (11th Cir. 1995). In addition, Florida has not waived its sovereign immunity or consented to be sued in suits brought pursuant to 42 U.S.C.A. § 1983. Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1513 (11th Cir. 1986).

In this case, Ms. Stuart is suing the State of Florida for actions taken by the Indian River County Circuit Court Judge(s).  A suit against the state is barred by sovereign immunity." Lewis v. Clarke, 137 S. Ct. 1285, 1290–91, 197 L. Ed. 2d 631 (2017) (quoting Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

Lawsuits against State officials sued in their official capacity are generally barred under the Eleventh Amendment, with one notable exception. In Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), the Supreme Court held that a private litigant can sue a state officer for prospective injunctive relief to end "a continuing violation of federal law."  Ex parte Young, 209 U.S. 123. A state official who enforces "'an unconstitutional legislative enactment . . . comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" Virginia Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011) (quoting Ex parte Young, 209 U.S. at 159–60).

Here, Ms. Stuart's claims fall outside of Ex parte Young because the relief she requests is retrospective in nature.  More specifically, the focus of her complaint are Court orders, that were entered by Indian River County Court Judges. These orders granted the foreclosure of her homestead property as well as the placement of a lien by the beneficiaries of the Trust on said property. Ms. Stuart is seeking to have the certificate of title issued to the buyer through a sale vacated because the Court Orders relating to a foreclosure action (filed by a condominium association who placed a lien on the unit for the failure of the homeowner to pay his/her monthly maintenance fees) is a violation of her constitutional rights.  (D.E. 1, pg. 36, paragraph 65). The remedy Ms. Stuart requests in this case ". . . does nothing to ensure compliance in the future with a substantive federal-question determination", but rather looks to the past for, essentially,

compensatory relief. Milliken v. Bradley, 433 U.S. 267, 289, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977) (quoting Edelman v. Jordan, 415 U.S. 651, 664, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)).

There is no ongoing violation of federal law and Ms. Stuart has failed to show the same. Ms. Stuart's claim for injunctive relief is "retroactive" in nature and does not fall within the *Ex Parte* Young exception. Id. *Ex Parte* Young does not insulate a party from the Eleventh Amendment. It is clear that this matter could or would be addressed on state appeal.

### 4. This action is barred by the Rooker-Feldman Doctrine

Ms. Stuart's case involves what the Supreme Court has described as the "paradigmatic situation" for the Rooker-Feldman doctrine: an attempt by Ms. Stuart to undo a state court judgment so it is in her favor. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). For that reason, her direct challenge to a state court judgment presents "an easy case for the application of the Rooker-Feldman doctrine." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1331–33 (11th Cir. 2001) (describing a direct attack on a state court judgment where the primary relief was an injunction preventing enforcement of a state court judgment and returning custody to an aggrieved parent). As a result, pursuant to Rooker-Feldman, the Court is without jurisdiction to consider his lawsuit.

The Rooker-Feldman doctrine derives from Rooker v. Fid. Tr. Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). It is jurisdictional and prevents district courts from reviewing state court judgments, which is the exclusive province of the Supreme Court. Nicholson v. Shafe, 558 F.3d 1266, 1270 (11th Cir. 2009). In Exxon Mobil Corp., 544 U.S. at 292, the Supreme Court stated that "[t]he Rooker-Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  More specifically, ". . . the Rooker-Feldman doctrine operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed "'only to the extent that the state court wrongly decided the issues.'" Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1262–64 (11th Cir. 2012) (citing Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009)).

In this suit, Ms. Stuart directly and unequivocally challenges Circuit Court Judge Kanarek's rulings. Ms. Stuart challenges Indian River County Court Judge(s)' rulings and therefore sues the State of Florida in Federal Court.  She argues that the orders entered amounted to judicial takings and therefore violated her constitutional rights requiring her to file this complaint under § 1983. These allegations satisfy the test described by the Alvarez court – Ms. Stuart explicitly asks the court to "nullify" the state court judgment(s).

To borrow the Alvarez court's reasoning, Ms. Stuart's claim meets all of the criteria for the application of the doctrine: "Undeniably", it is part of a "'case brought by [a] state-court loser'"; "unambiguously", it "'complains of injuries caused by [the] state court judgment,'" namely improper and erroneous application of Florida law on homestead, the state court judgment was "'rendered before the district court proceedings commenced'"; and, "finally", Ms. Stuart's claim "'invit[es] district court review and rejection'" of the rulings of the Circuit Court Judges. Alvarez, 679 F.3d at 1264 (quoting judgment. Exxon Mobil Corp., 544 U.S. at 284).  For these reasons, this Court should apply the Rooker-Feldman doctrine to Ms. Stuart's complaint and dismiss it for lack of subject matter jurisdiction.

### 5. Younger Abstention Doctrine

Should Ms. Stuart have any possibility of appealing any decisions of the State Court then the Younger Abstention Doctrine would apply. The State of Florida would further request this Court to abstain from deciding Ms. Stuart's § 1983 action pursuant to the doctrine created in Younger v. Harris, 401 U.S. 37 (1971). "Federal courts abstain from hearing cases that would interfere with state proceedings where those proceedings are ongoing, they implicate important state interests, and there is an adequate opportunity to raise constitutional challenges in those proceedings." Daniels v. Geraldi, 578 F. App'x 811 (11th Cir. 2014) (citing to *31* Foster Children v. B*ush,* 329, F.3d 1255, 1274 (11th Cir. 2003)). "Younger abstention is applicable to noncriminal judicial proceedings that vindicate important state interests or are necessary for the state's judicial system to function." Watson v. Fla. Judicial Qualifications Comm'n, 618 F. App'x 487, 489 (11th Cir. 2015). There are three prongs which, when met, would permit abstention. The "state judicial proceedings must be ongoing, the proceedings must implicate important state interests, and the federal plaintiff must have an adequate opportunity to raise constitutional challenges in the state proceedings". Watson, 618 F. App'x at 490 (quoting 31 Foster Children, 329 F.3d 1274).

### 6. Ms. Stuart's Complaint Must be Dismissed for failure to State a Cause of Action.

The State of Florida is named as a defendant. Ms. Stuart is seeking relief under 42 U.S.C. § 1983. The State is not a "person" within the meaning of § 1983. To establish a claim under § 1983, a plaintiff must show that he or she "was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (emphasis added). "A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable." Edwards v. Wallace Cmty. Coll.,

49 F.3d 1517, 1524 (11th Cir. 1995). As the State is not a person within the meaning of § 1983, Plaintiff fails to state a claim upon which relief may be granted under that statute.

To properly claim a § 1983 action, a plaintiff needs to allege that he or she was deprived of a federal right and the depravation was by a state actor. Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980). Also, the plaintiff must provide proof of an "affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). This connection can be shown "by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." Id.

In the instant case, Ms. Stuart has sought relief for violation of civil rights and injunctive relief. None of the allegations in the Complaint can pass a speculative level of allegations of misconduct by the State of Florida and/or its agents. Ms. Stuart makes conclusory driven claims that the State of Florida has allegedly violated her civil rights. Assuming, the State of Florida, through its agents the Circuit Court Judges of Indian River County committed some act that violated her rights, said act would have occurred within the scope of their duties and hence the Circuit Court Judge(s) would be entitled to Judicial Immunity to be addressed subsequently in this motion.  A review of the Complaint shows that Ms. Stuart merely states that the orders entered by the Court constituted judicial takings of property and therefore violated her constitutional rights. When viewing the complaint, there is no allegation of a specific civil right deprivation and that State of Florida was the direct cause of the same. Instead of pleading sufficient facts to substantiate a cause of action under § 1983, Ms. Stuart simply mentions, in conclusory fashion, that the Court's Orders amounted to a Judicial Taking. So not only does Ms. Stuart in the present case fail to state a cause of action, she further fails to even establish a federal question to be addressed by this Court.

### 7. Judicial Immunity

"Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the 'clear absence of all jurisdiction.'" Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994).

Immunity is only waived when a judge engages in "nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity" or when a judge's actions, although "judicial in nature, [were] taken in the complete absence of all jurisdiction..." Mireles v. Waco, 502 U.S. 9, 11–12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); See also Forrester v. White, 484 U.S. 219, 227–229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

When analyzing judicial capacity, the court looks to whether "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005) See Scott v. Hayes, 719 F.2d 1562, 1565 (11th Cir. 1983).

By the nature of the relief sought, there is no doubt that Judge Kanarek was acting in his judicial capacity. All of the actions complained of were results of orders or ruling made during the course of Ms. Stuart's litigation cases. This cause of action must be dismissed as the Judge(s), who are agents of the State of Florida are cloaked with the protection of judicial immunity and cannot be sued for actions taken within their judicial capacity.

### 8. Dismissal Should be with Prejudice.

Courts generally allow a party to amend a complaint once as a matter of course, but "a district court need not allow a plaintiff to amend a complaint if the amendment would not serve to cure the defective pleading." Wittbold v. Miami-Dade Cty., No. 11-21922-CIV, 2013 WL 3280039, at *6

(S.D. Fla. June 27, 2013). A court may dismiss a complaint without notice when the complaint is "patently frivolous or if amendment would be futile". Harris v. Buckhorn, 545 F. App'x 862, 863 (11th Cir. 2013); (quoting Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011)). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

This action is based wholly on dissatisfaction with the state court rulings, and is patently frivolous. Ms. Stuart cannot re-state her allegations which would circumvent all the various forms of immunity as stated above and the existence and purpose of the state appellate process. As Ms. Stuart cannot cure those defects, amendment would be futile and the action should be dismissed with prejudice.

**WHEREFORE**, the Defendant the State of Florida, requests this Court Dismiss *with prejudice,* Ms. Stuart's, Complaint on the basis lack of justiciable controversy, lack of standing, Eleventh Amendment immunity, Judicial Immunity, Rooker-Feldman Doctrine, the Younger Abstention, and failure to state a cause of action.

    Respectfully submitted,

    PAMELA JO BONDI
    ATTORNEY GENERAL

    /s/ Maria Guitian Barker
    Maria Guitian Barker
    Assistant Attorney General
    Fla. Bar No: 813966
    OFFICE OF THE ATTORNEY GENERAL
    110 S.E. 6th Street, 10th Floor
    Ft. Lauderdale, Florida 33301
    Telephone:   954-712-4600
    Facsimile:   954-527-3702
    Maria.GuitianBarker@mMyfloridalegal.com
    Attorney for Defendant, the State of Florida

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this date on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices or Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are authorized to receive electronically Notices of Electronic Filing.

/s/ Maria Guitian Barker
Maria Guitian Barker
Assistant Attorney General

## SERVICE LIST

Pamela Stuart
111 John's Island Drive #7
Vero Beach, Florida 32963