UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

PAMELA B. STUART )
Vero Beach, Florida )
)
v. ) Case No. 2:18-cv-14244-JEM
)
CATHERINE S. RYAN )
)
DEBORAH A. STUART )
)
THE TENNIS TOWNHOUSES )
ASSOCIATION, INC. )
)
JEFFREY R. SMITH, )
)
THE STATE OF FLORIDA, )
)
Defendants. )
)
_____ )

FILED BY CGA
Aug 20, 2018
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Fort Pierce

PLAINTIFF'S OPPOSITION TO DEFENDANT JEFFREY R. SMITH'S
MOTION TO DISMISS

Plaintiff *pro se* Pamela B. Stuart hereby opposes Jeffrey R. Smith's motion to dismiss and relies upon the following points and authorities in support of her opposition.

With all due respect, plaintiff's complaint is not a "shotgun pleading" which was described by Judge Tjoflat in dissent in *T.D.S. Inc. v. Shelby Mutual Insurance Co.*, 760 F.2d 1520, 1543 n 14 (11th Cir. 1985) as

> Shotgun" pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's

case, especially before the jury, can be masked.

The Eleventh Circuit more recently said about the topic of "shotgun pleadings," that, "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir., 2015).

Plaintiff sympathizes with Mr. Smith, who was named in his official capacity and because it was he who was charged with the responsibility of issuing a certificate of title to Plaintiff's homestead based upon the unconstitutional orders of the judges of the court for which he is the clerk. Plaintiff accepts that deciphering the facts and claims in this case is not as easy for a party who is not directly involved in the underlying circumstances. The complaint plainly stated: If plaintiffs homestead is sold at a foreclosure auction presently scheduled for June 27, 2018, by Jeffrey R. Smith, Clerk of the Circuit Court of Indian River County, Florida, pursuant to the unconstitutional state court order and the issuance of a certificate of title ten days thereafter based upon the sale, plaintiff will suffer irreparable harm. Thus, Mr. Smith's claim that the complaint failed to state a claim for relief is clearly false.

Since the time that the complaint in this case was filed, Defendant Smith went ahead and issued the certificate of title, an action which plaintiff sought to enjoin at the time of the initial complaint filing. He then became partially responsible for the irreparable harm that plaintiff suffered when her permanent residence was sold at auction on June 27, 2018 and she was evicted from her home on July 25, 2018. Defendant Smith is an agent of the State of Florida and participated in the unconstitutional taking of Plaintiff's property contrary to the established

property law of the State of Florida and was placed on notice of that fact by the complaint in this matter. Rather than awaiting the resolution of this case, Defendant Smith went ahead and issued the unconstitutionally obtained certificate of title and damaged Plaintiff.

Mr. Smith claims that the *Rooker-Feldman* doctrine deprives this court of subject matter jurisdiction in this case. The *Rooker-Feldman* doctrine is extremely limited and applies only in circumstances similar to those in the two cases from which it takes its name. In the third Supreme Court case to apply the doctrine, *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U. S. 280 (2005), the Court said, "If a federal plaintiff presents an independent claim, even one that denies a state court's legal conclusion in a case to which the plaintiff was a party, there is jurisdiction, and state law determines whether the defendant prevails under preclusion principles. Id., at 291-293. Plaintiff has presented an independent claim of a judicial taking that was not presented to the trial court in the foreclosure matter because the judicial taking related to the foreclosure had not yet occurred. The *Rooker-Feldman* doctrine applies to claims that were actually raised in the state court and those "inextricably intertwined" with that state judgment. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir.2009). Where a party did not have a "reasonable opportunity to raise his [or her] federal claim in state proceedings[,]" however, the doctrine does not apply. *Id.* (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir.1996)). In that situation, the federal claim is not considered to be inextricably intertwined with the state-court judgment. *See Powell*, 80 F.3d at 467 (citing *Wood v. Orange Cnty.*, 715 F.2d 1543, 1547 (11th Cir.1983)). One of the cases Mr. Smith cites in support of his position is a recent 11th Circuit decision that is labeled "DO NOT PUBLISH," *Bedasee v. Fremont Investment & Loan Co*, docket no. 17-11556 (11th Cir. July 9, 2018). In that case a couple brought an action against

3

their mortgage company which foreclosed on their mortgage in state court. The Bedasees' claim was not analogous to plaintiff's complaint against the actions of the state courts in this case in which Plaintiff Pamela Stuart has alleged a violation of 42 U.S.C. § 1983 and an unconstitutional judicial taking based, in part, upon the procedural irregularities and lack of due process afforded Pamela Stuart by the state courts. Indeed, the 11th Circuit said in Bedasee, "Furthermore, nothing in the record indicates that Plaintiffs lacked an opportunity to present the present claims during the state court foreclosure proceedings. *See id.* (stating that Rooker-Feldman "does not apply . . . where a party did not have a reasonable opportunity to raise his federal claim in state proceedings"). *Harris v. Suntrust Mortgage, Inc.*, 12-cv-378 (M.D.N.C. is equally unavailing as the court held it was precluded from considering a mortgage foreclosure that was fully litigated in the state court. *Johnson v. Orr,* 551 F.3d 564 (7th Cir. 2008), also cited by Mr. Smith, was brought by a party aggrieved at the failure of the state of Illinois to issue him a tax deed and failed to litigate fully his state tax case in the state courts.

    In the instant case, the Circuit Court for Indian River County contravened Plaintiff's established property rights under Florida law by permitting the foreclosure lawsuit to proceed even though it had not been properly authorized by the plaintiff condominium association in that case as required by Florida law, § 718.104. In a prior case, the state trial court determined contrary to US Supreme Court and Florida Supreme Court precedents and Florida statutes governing domicile for voting purposes that Plaintiff, who owned and resided in 111 John's Island Drive #7 in Vero Beach for over eighteen years, declared it her domicile under oath, and never evidenced any intent to abandon that residence, was not a permanent resident of the State of Florida. This decision effectively usurped her established right to vote in Florida and also

4

rendered her homestead ineligible for protection against forced sale pursuant to Article X, § 4 of the Florida Constitution because the homestead protection is afforded only to Florida domiciliaries who are permanent residents of the state.

Unlike the state court action at issue in the *Bedasee* case, the Circuit Court for Indian River County never held or afforded Pamela Stuart a hearing devoted to the subject of her domicile and the homestead status of her residence in Indian River County. After a non-evidentiary hearing held on November 23, 2015 for 36 minutes that was noticed as a hearing on Plaintiff's Motion to Approve Accounting, the Circuit Court ordered without any evidentiary or legal basis that an equitable lien be placed upon all of Pamela Stuart's properties including her residence at 111 John's Island Drive #7 in Vero Beach and her home in Washington, D.C. which was not even within the jurisdiction of the court which is limited to Indian River County until a final distribution was ordered. The judge who took over the calendar from the judge who issued the January 3, 2016 order noticed a scheduling hearing for February 22, 2016. Following that hearing, the judge filed an Order Scheduling Hearing for March 11, 2016 which stated that "This matter came on to be heard at the court's docket call on February 22, 2016 in reference to an order issued by Judge Cynthia Cox on January 3, 2016, Order Granting Plaintiff's Motion to Approve Accounting, Reserving Jurisdiction for Distribution and Requiring Evidentiary Hearing. Nowhere did the Court indicate that the subject of the hearing which was supposed to be Pamela Stuart's claims for trustee fees and trustee expense reimbursements would include her right to vote in the state, her domiciliary status, or the homestead status of her residence. So, Pamela Stuart, in support of her claim for trustee fees submitted an elaborate timeline showing tasks performed as trustee by date, calendars showing her time spent in Vero Beach on trust

administration, and hundreds of pages of summaries of trustee expenses paid for by Pamela Stuart over 14 years while serving as trustee. Since Pamela Stuart was denied any discovery in the case, she had not been able to depose her opposing parties, the successor trustee who prepared the grossly inaccurate accounting or her brother in law, her former co-trustee, who testified in support of Catherine Ryan and Deborah Stuart, and introduced evidence of a reverse mortgage on Pamela Stuart's Washington DC residence which had nothing to do with her right to trustee fees and expense reimbursements. The trial judge sustained an objection to Pamela Stuart's testimony concerning her activities in Florida on the grounds of relevance. Thus, Pamela Stuart was quite surprised to learn that the trial court in its Final Order on Distribution found that she had not been qualified to vote in Florida when she registered in 2004 (contrary to the finding of the Superintendent of Elections) and that she was not a permanent resident of the state and that the court found on erroneous testimony by the successor trustee and by failing to credit trustee fees earned or sixteen years of expenses that her "loans" (with interest added at 6% over sixteen years) had ballooned to an amount over $3 million (one-third of which was credited to her.

In support of its decision that Pamela Stuart was not domiciled in Florida, the Circuit Court found as a fact that Pamela Stuart's Washington DC residence was her principal place of residence. "Principal residence" is a term used in the regulations promulgated pursuant to the Federal Housing Act for a residence in which a mortgagee on a federally guaranteed home equity conversion mortgage resides generally for at least half a year annually. *See* 24 C.F.R. § 206.3. "Principal residence" for federal mortgage guarantee purposes bears no relation to "permanent residence" in Florida required for domicile. The U.S. Supreme Court has repeatedly held that

6

durational residency requirements for domicile for voting purposes are an unconstitutional infringement on the right to migrate from state to state which it considers a fundamental right. In *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), the Supreme Court struck down a Texas Constitutional provision that barred active duty military members who moved to the state from voting in Texas elections as a violation of equal protection. The Court noted that the state could determine the bona fides of an individual claiming to have actually made his home in the State long enough to vote. *Id.*, 380 U.S. at 95. The right to vote is a fundamental political right, preservative of all rights. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). In *Kramer v. Union Free School District No. 15*, 395 U.S. 621 (1969), the Court invalidated a New York law limiting the electorate in school district elections to those owning property in the district and those with children enrolled in the local schools. Kramer is noteworthy for the test it articulates for measuring voting classifications against the requirements of the Equal Protection Clause: "(I)f a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest." *Id.* at 627. In *Evans v. Cornman*, 398 U.S. 419 (1970), the Court upheld an injunction barring Maryland officials from denying residents at the National Institutes of Health, a federal enclave, the right to vote in the state. In *.Dunn v. Blumstein*, 405 U.S. 330, 338 (1972) the Court struck down Tennessee's requirement that in order to vote one must have been a resident of the state for one year and of the county where one was registering for three months. The Court emphasized "that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Id.* at 336. It also made it clear that state laws which had the effect of

7

"totally denying . . . the opportunity to vote" must be justified by "a substantial and compelling reason." *Id.* at 335. Absent a compelling state interest, said the Court in *Dunn v. Blumstein,* state durational residency requirements for domicile and voter registration unconstitutionally impinge on the Constitutionally guaranteed right to travel . . . . it is clear that the freedom to travel includes the 'freedom to enter and abide in any State in the Union.' *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), *Shapiro v. Thompson,* 394 U.S. 618 (1969). Pamela Stuart, prior to the actions of Edward Ryan who initiated a bar complaint against her, was licensed to practice law in five different jurisdictions and she had a right under federal and Florida Constitutional law to travel from time to time between her residence in Florida and her residence in D.C. in support of her economic activity to support her clients and her profession. *Carrington, Kramer, Evans* and *Dunn* read together, establish these basic propositions: (1) any state law or action which tends to affect the right to vote by way of making classifications must be scrutinized for conformity with the Equal Protection Clause; (2) state laws which have the effect of denying certain classes the right to vote must have a compelling justification; (3) Appropriately defined and uniformly applied bona fide residence requirements are permissible; and (4) otherwise eligible persons who reside in a community and are subject to its laws must be permitted to vote there even though their interests may differ from the majority of the community's residents.

The Florida Supreme Court's precedents governing domicile generally echo those of the U.S. Supreme Court. No durational residency requirement may be imposed for purposes of domicile in the state. With regard to the constitutionality of homestead residency requirements, the Florida Supreme Court, in *Sparkman v. State*, 58 So.2d 431 (Fla.1952), struck down a

8

one-year durational residency requirement. Similarly, in *Ostendorf v. Turner,* 426 So.2d 539 (Fla. 1982), the Florida Supreme Court struck down a Florida statute that imposed a durational residency requirement for a homestead tax exemption as unconstitutional under the equal protection clause of the Florida Constitution. In *Bloomfield v. City of St. Petersburg Beach,* 82 So.2d 364 (Fla. 1955), the Florida Supreme Court said, " 'legal residence' or 'domicile' means a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. " It further held that "if a man actually becomes a bona fide resident of this state and intends to remain permanently a citizen of the state, mere absence with the specific clear-cut bona fide intention of returning will not destroy the residence actually theretofore established." *Id.,* 82 So.2d at 369. Based upon evidence that the litigants had a home in Palm Beach County, that it was homesteaded, that their bank accounts were in Florida, they had Florida driver's licenses, and were registered to vote in Florida, the Florida Supreme Court in *Jenkins v. Jenkins,* 948 So.2d 1250 (Fla. 2005) found they were Florida residents. In the instant case, at the time of the hearing, Pamela Stuart had owned and resided in a home in Indian River County since 2000, had obtained a homestead tax exemption for it, had bank accounts with Northern Trust in Vero Beach, had a Florida driver's license and registered to vote in Florida in 2004. It was objectively unreasonable for the state trial court to ignore Florida precedents and declare that she was not domiciled in Florida. Florida courts have consistently recognized that an individual's intent is a subjective factor and "the best proof of one's domicile is where [the person] says it is." *Ogden v. Ogden,* 159 Fla. 604, 609, 33 So.2d 870, 873 (1947). The Fourth District Court of Appeals which has jurisdiction over Indian River County stated that "[i]n analyzing proof of intent, a person's declaration is especially significant and entitled to great

weight." *Walker v. Harris*, 398 So.2d 955, 958 (Fla. 4th DCA 1981). A person may have several temporary local residences but can have only one legal residence. *Id.* A legal residence or "domicile" is the place where a person has fixed an abode with the present intention of making it his or her permanent home. *Minick v. Minick*, 111 Fla. 469, 149 So. 483 (1933); *Latta v. Latta*, 654 So.2d 1043 (Fla. 1st DCA 1995); Once established, a domicile continues until it is superseded by a new one. A domicile is presumed to continue, and the burden of proof ordinarily rests on the party asserting the abandonment of one domicile to demonstrate the acquisition of another. *Texas v. Florida*, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939); *McDougald v. Jenson*, 786 F.2d 1465 (11th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986). A person may have several temporary local residences but can have only one legal residence. *Snyder v. McLeod*, 971 So.2d 166, 169 (Fla. 5th DCA 2007) A legal residence or "domicile" is the place where a person has fixed an abode with the present intention of making it his or her permanent home. *Id.* Once established, a domicile continues until it is superseded by a new one. *Id.* A domicile is presumed to continue, and the burden of proof ordinarily rests on the party asserting the abandonment of one domicile to demonstrate the acquisition of another. *Id.* A change of residence is accomplished and becomes effective when there is a good-faith intention to establish it, coupled with an actual physical move to the new residence, as evidenced by positive overt acts. *Id.*, 971 So.2d at 169-70.

The trial court found that Pamela Stuart used her Washington DC address on federal tax returns – a fact that was true up until at least 2005 – but cited it as indicating that her domicile was in the District of Columbia. The state trial court also reached outside the record of the case to find as a fact that Pamela Stuart used her Washington address as her address of record with the

Florida Bar as well as other bars she belonged to. Not only was this matter not the subject of any testimony or evidence in the case but it had nothing to do with her permanent residence in the State of Florida. In *Florida State Board of Dentistry v. Mick,* 361 So.2d 414 (Fla. 1978), the Supreme Court of Florida struck down a Florida statute that imposed different licensure renewal requirements on dentists not domiciled or residents of the State. It was equally inappropriate to surmise that Pamela Stuart's listing of her address of record for bar purposes in five different jurisdictions had anything to do with her domicile.

The other evidence the state court relied upon to determine that Plaintiff's domicile was not in Florida was equally spurious – that she used a DC driver's license for identification purposes when she filed her Declaration of Domicile with the court prior to obtaining her Florida driver's license which she had at the time of the court's hearing. The court also found that the execution of the Declaration of Domicile was not merely an affirmation of domicile status as permitted by § 222.17[1] but rather an attempt to circumvent a previous order of the court not to

---

[1] Florida Statute 222.17 provides: Manifesting and evidencing domicile in Florida.—
(1) Any person who shall have established a domicile in this state may manifest and evidence the same by filing in the office of the clerk of the circuit court for the county in which the said person shall reside, a sworn statement showing that he or she resides in and maintains a place of abode in that county which he or she recognizes and intends to maintain as his or her permanent home.
(2) Any person who shall have established a domicile in the State of Florida, but who shall maintain another place or places of abode in some other state or states, may manifest and evidence his or her domicile in this state by filing in the office of the clerk of the circuit court for the county in which he or she resides, a sworn statement that his or her place of abode in Florida constitutes his or her predominant and principal home, and that he or she intends to continue it permanently as such.
(3) Such sworn statement shall contain, in addition to the foregoing, a declaration that the person making the same is, at the time of making such statement, a bona fide resident of the state, and shall set forth therein his or her place of residence within the state, the city, county and state wherein he or she formerly resided, and the place or places, if any, where he or she maintains another or other place or places of abode.

encumber her residence or make it unavailable to creditors. Since the Declaration of Domicile recited that the domiciliary status of Pamela Stuart had been in place since at least 2004, the filing of the Declaration under oath merely confirmed the status that had been in existence.

The state trial court finally relied on the fact that Pamela Stuart executed an Adjustable Rate Home Equity Conversion Deed of Trust (reverse mortgage) on her home in Washington DC which recited that it was a principal residence (as that term is defined in federal regulations governing that type of mortgage). This finding was directly contrary to established Florida property law in a Florida Supreme Court case of *Chames v. Mayo,* 972 So.2d 850 (Fla. 2007) which held that homestead protection cannot be waived in an unsecured contract unrelated to the homestead itself. In that case, a lawyer put a waiver of homestead protection into his retainer agreement with the client homeowner and then tried to foreclose a lien for fees. The Florida Supreme Court reaffirmed its prior holdings in *Carter's Adm'rs v. Carter*, 20 Fla. 558 (1884);. *Sherbill v. Miller Mfg. Co.*, 89 So.2d 28, 31 (Fla.1956) that Florida's homestead protection against forced sale contained in Article X, § 4 of the Florida Constitution may not be waived except as specified in the Florida Constitution which includes an exemption for mortgages on the homestead property itself. The Florida Supreme Court in *Chames v. Mayo* emphasized that "The public policy furthered by a homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law." *Chames v. Mayo,* 972 So.2d at 853-854. Plaintiff is facing such circumstances now due to the destruction of her law practice. The Florida Supreme Court in *Chames v. Mayo* noted that an individual cannot waive a Constitutional protection that is intended to benefit not

only the individual but the public except in the manner specifically stated in the Florida Constitution.

The State of Florida presents guidance on how to establish or declare domicile status in Florida and Plaintiff complied with those statutes. They are:

222.01 Designation of homestead by owner before levy.—

(1) Whenever any natural person residing in this state desires to avail himself or herself of the benefit of the provisions of the constitution and laws exempting property as a homestead from forced sale under any process of law, he or she may make a statement, in writing, containing a description of the real property, mobile home, or modular home claimed to be exempt and declaring that the real property, mobile home, or modular home is the homestead of the party in whose behalf such claim is being made. Such statement shall be signed by the person making it and shall be recorded in the circuit court.

222.17 Manifesting and evidencing domicile in Florida.—

(1) Any person who shall have established a domicile in this state may manifest and evidence the same by filing in the office of the clerk of the circuit court for the county in which the said person shall reside, a sworn statement showing that he or she resides in and maintains a place of abode in that county which he or she recognizes and intends to maintain as his or her permanent home.

(2) Any person who shall have established a domicile in the State of Florida, but who shall maintain another place or places of abode in some other state or states, may manifest and evidence his or her domicile in this state by filing in the office of the clerk of the circuit court for the county in which he or she resides, a sworn statement that his or her place of abode in Florida

13

constitutes his or her predominant and principal home, and that he or she intends to continue it permanently as such.

(3) Such sworn statement shall contain, in addition to the foregoing, a declaration that the person making the same is, at the time of making such statement, a bona fide resident of the state, and shall set forth therein his or her place of residence within the state, the city, county and state wherein he or she formerly resided, and the place or places, if any, where he or she maintains another or other place or places of abode.

196.015 Permanent residency; factual determination by property appraiser.—Intention to establish a permanent residence in this state is a factual determination to be made, in the first instance, by the property appraiser. Although any one factor is not conclusive of the establishment or nonestablishment of permanent residence, the following are relevant factors that may be considered by the property appraiser in making his or her determination as to the intent of a person claiming a homestead exemption to establish a permanent residence in this state:

(1) A formal declaration of domicile by the applicant recorded in the public records of the county in which the exemption is being sought.

(2) Evidence of the location where the applicant's dependent children are registered for school.

(3) The place of employment of the applicant.

(4) The previous permanent residency by the applicant in a state other than Florida or in another country and the date non-Florida residency was terminated.

(5) Proof of voter registration in this state with the voter information card address of the applicant, or other official correspondence from the supervisor of elections providing

proof of voter registration, matching the address of the physical location where the exemption is being sought.

(6) A valid Florida driver license issued under s. 322.18 or a valid Florida identification card issued under s. 322.051 and evidence of relinquishment of driver licenses from any other states.

(7) Issuance of a Florida license tag on any motor vehicle owned by the applicant.

(8) The address as listed on federal income tax returns filed by the applicant.

(9) The location where the applicant's bank statements and checking accounts are registered.

(10) Proof of payment for utilities at the property for which permanent residency is being claimed.

Thus, the state trial court's finding otherwise was contrary to the clearly expressed property law of Florida.

In a recent 11th Circuit decision, the court defined what "clearly established law" is in the federal context: "Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *Smith v. Secretary, Florida Department of Corrections,* docket no. 16-16612 (11th Cir. August 8, 2018), citing *Ward v. Hall,* 592 F.3d 1144, 1155 (11th Cir. 2010). A decision is "contrary to" clearly established federal law if the state court either (1) applied a rule that contradicts the governing law set forth by the Supreme Court case law or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Smith v. Secretary, citing Ward v. Hall..*

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner. *Brown v. Payton*, 544 U.S. 133, 141 (2005). The "unreasonable application" inquiry requires that the state court decision be more than incorrect or erroneous - it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

In making the decision that Pamela Stuart was not a permanent resident domiciled in the State of Florida, the state trial court not only did not correctly apply federal or state law but it made an objectively unreasonable and tortured application of the facts of the case to arrive at a conclusion that supported the court's objective of seizing Plaintiff's property for the benefit of Catherine Ryan and Deborah Stuart regardless of what the established law governing the situation was.

Defendant Smith's claim that he is entitled to judicial immunity is meritorious in that the actions complained of with respect to him constitute duties integral to the judicial process. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir., 1986). He was named as a party primarily because of the request for injunctive relief that is now largely moot.

Defendant Smith's claims that the complaint should be dismissed as a "shotgun" pleading in violation of Federal Rules of Civil Procedure 8 and 10 and because it contains a story of family squabbles and "impertinent and scandalous" material is not meritorious. While not a short statement, it plainly sets forth the facts and the general nature of the claims presented. Fed. R. Civ. P. 8 provides:

(a) Claim for Relief. A pleading that states a claim for relief must contain:

16

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

The complaint filed in this case meets the requirements set forth in Rules 8 and 10 which requires numbered paragraphs and captions.

Plaintiff incorporates by reference the arguments made on the *Rooker-Feldman* doctrine and the abstention suggestion in her opposition to the motion to dismiss of the Tennis Townhouses Condominium Association.

Plaintiff verifies that the factual statements made in this motion are true and correct under penalties of perjury pursuant to 28 U.S.C. § 1746.

WHEREFORE, Plaintiff suggests that the motion of Jeffrey R. Smith be denied in part and granted in part.

Dated August 11, 2018                    Respectfully submitted,

/s/ Pamela B. Stuart
_____
Plaintiff *pro se*
P.M.B. #8202
6001 Highway A1A
Indian River Shores, FL 32963-1014
(202) 999-2374 (cell)
(202) 244-0723 (landline)
pamstuart@aol.com

CERTIFICATE OF SERVICE

17


I HEREBY CERTIFY that I have sent the original of the foregoing Opposition to the Motion to Dismiss of Jeffrey R. Smith to the Clerk of the Court for filing via Federal Express and that I am serving a copy on counsel via electronic mail at their email addresses provided on their motions since I am not yet permitted to use the court's CM/ECF system this 11th day of August, 2018.

/s/ Pamela B. Stuart

*Pamela B. Stuart*

PAMELA B. STUART

copies to:

Jason L. Odom, Esq.
Gould, Cooksey Fennell, PA
979 Beachland Blvd.
Vero Beach, FL 32963
jodom@gouldcooksey.com

    Counsel for Defendant Jeffrey R. Smith, Clerk of the Circuit Court for Indian River County, Florida

Sean A. Mickley, Esq.
Gould, Cooksey Fennell, PA
979 Beachland Blvd.
Vero Beach, FL 32963
smickley@gouldcooksey.com

    Counsel for defendant, The Tennis Townhouses Condominium Association, Inc.

C. Douglas Vitunac, Esq.
Collins, Brown, Barkett, Garavaglia and Lawn, Chrtd.
756 Beachland Blvd.
Vero Beach, FL 32963
dvitunacpleadings@verolaw.com

    Counsel for Defendants Catherine Ryan and Deborah Stuart

Maria Guitian Barker, Esq.
Assistant Attorney General

18

State of Florida
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, FL 33301
maria.guitianbarker@mMyFloridalegal.com

    Counsel for the State of Florida



Pro Se
's name
Washington NW
Washington DC 20016



USHRS INSPECTED
BY:

Room #1016
Clerk's Office
US District Court
101 South US Highway 1
Ft Pierce, FL 34950

U.S. POSTAGE PAID
WASHINGTON, DC
20016
AUG 13 18
AMOUNT
$3.31
R2305K138338-28