UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

FILED BY __CGA__

Aug 20, 2018

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Fort Pierce

PAMELA B. STUART )
Vero Beach, Florida )
 )
v. ) Case No. 2:18-cv-14244-JEM
 )
CATHERINE S. RYAN )
 )
DEBORAH A. STUART )
 )
THE TENNIS TOWNHOUSES )
ASSOCIATION, INC. )
 )
JEFFREY R. SMITH, )
 )
THE STATE OF FLORIDA, )
 )
Defendants. )
 )
_____ )

PLAINTIFF'S OPPOSITION TO DEFENDANTS RYAN AND STUART
MOTION TO DISMISS

Plaintiff Pamela B. Stuart respectfully opposes the Ryan/Stuart Motion to Dismiss and relies on the following points and authorities in support of her opposition.

At the outset, counsel for Ryan/Stuart brings up the fact that Plaintiff's license to practice law in the State of Florida was suspended – at the behest of Edward Ryan, husband of Catherine Ryan – and was reciprocally suspended in this court as a result. The suspension involved no aspect of plaintiff's law practice but was an agreed disposition in which Plaintiff agreed that she had failed to render periodic accountings of the trust as required by the terms of the trust and Florida law because she prioritized the care of her elderly mother and the clients of her solo law

practice during a time when she was almost continually in litigation. She seeks no favors from this Court although, as a technical matter, she is not and cannot hold herself out as a licensed attorney in the State of Florida at the present time so she is a classic *pro se* plaintiff entitled to liberal construction of her pleadings (to the extent that such liberal construction is needed). The New York court refused to suspend Plaintiff on the facts of the case since it involved a bitter family dispute and no professional misconduct involving a client. Plaintiff was reinstated to active practice in the Commonwealth of Virginia in June 2018.

Ryan/Stuart's counsel's factual summary is not entirely correct. He neglects to note that under a ruling issued in this court in a similar case, *Figel v. Wells Fargo, N.A.*, Case no. 10-CV-60737-COHN/SELTZER (S.D. Fla. 2011) the court held that a family member beneficiary had no claims against a trustee under § 736.1012 when that family member received periodic account statements for the trust over a period of many years which was true in this case (the Ryans received account statements beginning in 2000, Deborah Stuart began receiving them in 2007) which disclosed the investment strategy and detailed the status of the trust. In this case, every withdrawal made by Ms. Stuart for trustee fees, reimbursement of expenses or loans was shown on a monthly statement issued by Smith Barney, the brokerage firm that held the intangible assets of the trust.

Mr. Vitunac claims that the trial court relying upon testimony and detailed accountings prepared by the Successor Trustee found that Pamela Stuart's "loans" withdrawn from the trust while serving as trustee totaled about $1.7 million. He failed to mention that the court not only refused to credit Pamela Stuart with any trustee fees for her sixteen years of service as trustee but the trial court also failed to credit her with $325,507.99 in trustee expenses she paid personally

2

as REQUIRED by Florida Statute § 736.0709 which states:

> 736.0709 Reimbursement of expenses.—
>
> (1) A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for reasonable expenses that were properly incurred in the administration of the trust.
>
> (2) An advance by the trustee of money for the protection of the trust gives rise to a lien against trust property to secure reimbursement with reasonable interest.

Indeed, the successor trustee testified that she never looked at the over 500 electronic transmissions of original receipts for trustee expenses from Pamela Stuart and would not credit them even though they were listed on summaries admitted in evidence pursuant to § 90.956 Florida Statutes, in date order because she could not tie them to a particular withdrawal made by Ms. Stuart. Mr. Vitunac also failed to mention that the successor trustee and the trial court failed to make $456,401.45 in adjustments to the accounting for which Pamela Stuart had supplied documentation which were required beyond the $90,000 that the successor trustee acknowledged in her testimony. Mr. Vitunac states that Pamela Stuart's claim for trustee fees was denied but does not mention that the court denied the trustee fees despite a 127 page single spaced detailed accounting of the time that Pamela Stuart put into trust administration – all of which took away from her ability to earn a living as a solo practitioner lawyer and which substantially impacted her personal life.

Mr. Vitunac states that "To provide Defendants with some modicum of recourse, the trial court imposed equitable liens against Stuart's interest in two Vero Beach properties – one was her homestead and domicile (and Plaintiff incorporates her discussion of domicile and homestead

3

in her opposition to the Smith Motion to Dismiss by reference) and the second was her one-third interest in her late parents' home which she acquired by operation of law when her father died. Indeed, the entire legal basis for the equitable lien was the state trial court's opinion that it was "entirely appropriate." The established property law in Florida is that a property that is a homestead cannot be the subject of a lien except as provided in Article X, § 4 of the Florida Constitution or if there was fraud or egregious conduct involved in the acquisition or improvement of the property such that it would be unjust enrichment to permit the owner to retain the property. *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So.2d 267 (Fla., 1993). As noted by Plaintiff in the discussion of domicile and homestead in her opposition to the Smith Motion to Dismiss, the state trial court never held a hearing on those issues as required by Florida and federal law (the 5th Amendment forbids deprivation of property without due process). Had she had the opportunity to fully discuss the issue, she could have shown that she initially purchased her John's Island Drive property with her own funds and a mortgage. A second mortgage was added by Eagle Bank of Maryland in 2001 to the John's Island property to guarantee a loan it was making to an LLC for purchase of a commercial townhouse in Washington, DC. In 2006, Plaintiff refinanced both loans on her Florida residence to raise funds for the LLC's legal fees. When the LLC's property was sold in 2009, the LLC paid off the refinanced mortgage. The Ryans and Deborah Stuart and plaintiff's mother were notified of the plan to pay off the refinanced mortgage in advance of the payment and did not complain at that time. So, there was no misconduct or trust funds that went into the acquisition of Plaintiff's Florida residence. Regardless of whether it was her homestead or not, there was no evidentiary basis for an equitable lien on that property. *Havoco of America, Ltd. v. Hill*, 790 So.2d 1018

(Fla. 2001) stands for the proposition that equitable liens may be placed against property where the funds obtained through fraud or egregious conduct can be directly traced to the investment, purchase or improvement of homestead. That was not the case here but Plaintiff was never given a hearing on the topic in violation of her 5th and 14th Amendment Constitutional Right against a Taking of her property by the state without due process of law.

Similarly, Pamela Stuart acquired her interest in her father's homestead residence at 101 South Catalina Court in a manner not tainted by misconduct – she inherited it. The property had been jointly purchased by her parents in 1987 but Marion Stuart deeded her interest in it to her husband who had declared it his domicile when he bought it in 1987 even though he still retained his long-time residence in Garden City, NY. Mr. Stuart conveyed his interest in his home at 101 South Catalina Court to his trust and Pamela Stuart treated it as an asset of the trust until she discovered when she attended a seminar put on by the Florida Bar in November 2015 that the property had passed upon Mr. Stuart's death by operation of law to his three daughters as joint tenants. She filed two motions to have the trial court quiet title and partition the property but the trial court refused to take jurisdiction of it at that time and eventually agreed that the property had passed by operation of law to the three daughters at Mr. Stuart's death. (Final Order on Distribution at pp. 20-21). *See*, § 732.401(1), Florida Statutes, *Aronson v. Aronson*, 81 So.3d 515 (Fla. 3d DCA 2012), *Engelke v. Estate of Engelke*, 921 So.2d 693, 697 (Fla. 4th DCA 2006)(homestead status attaches at death, is unaffected by the property being in a trust, and the protection from creditors inures to all heirs). No misconduct was associated with Ms. Stuart's acquisition of this property interest in her father's homestead, but the trial court put an equitable lien on it contrary to established Florida property law and US Constitutional law.

The Florida Constitution provides that "no judgment, decree or execution shall be a lien" on "a homestead." Fla. Const. art. X, § 4(a)(1). The Florida Supreme Court "has long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home." *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1020 (Fla. 2001). The homestead exemption should not, however, "be so applied as to make it an instrument of fraud or imposition upon creditors." *Id.* "[W]here equity demands it," the Florida Supreme Court "has not hesitated to permit equitable liens to be imposed on homesteads." *Palm Beach Sav. & Loan Ass'n v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993). To obtain an equitable lien on a Florida homestead, a plaintiff must show by a preponderance of the evidence (1) that the defendant engaged in fraudulent or egregious conduct and (2) that the funds from that conduct can be directly traced to the purchase of, investment in, or improvement of the homestead. *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003). Because there was no misconduct on Ms. Stuart's part associated with her acquisition of an interest in her father's homestead, no equitable lien was appropriate. The fact that the homestead in question was not her homestead makes no difference. *See Engelke v. Estate of Engelke.* 921 So.2d 693, 697 (Fla. 4th DCA 2006). The decision of the Fourth District Court of Appeals in *Stuart v. Ryan,* 232 So.3d 418 (Fla. 4th DCA 2017) was in violation of the established property law of Florida and also misstated the facts of the case. It affirmed the trial court even though it found incorrectly that the trial court ruled that 111 John's Island Drive #7 was Plaintiff's homestead. Contrary to Judge Middlebrooks decision in the TRO motion in this case, the intermediate court of appeals did effectively change the law when it found that Plaintiff was not a permanent resident of Florida and domiciled in the state because she had a federally guaranteed "reversible" (sic) mortgage on a residence in Washington,

D.C. It ignored the Florida precedent in *Chames v. Mayo*, 972 So.2d 850 (Fla. 2007)(permanent resident cannot waive Constitutional homestead protection in an unrelated contract) and the public policy of the State of Florida which strongly supports the homestead exemption from forced sale. To find that Plaintiff was not a permanent residence of the state after 18 years of residency, the Fourth District Court of Appeals ignored the precedents of the US Supreme Court and Florida Supreme Court cited by Plaintiff in her opposition to Jeffrey R. Smith's Motion to Dismiss which are incorporated here by reference that no durational residency requirement may be established for domiciliary status which is acquired by possession of a home coupled with intent to reside in the state permanently. Plaintiff also incorporates her factual statements in the opposition to Smith's motion to dismiss with respect to the Tennis Townhouses case by reference.

Because of the uncertainty on how to present the judicial takings issue pursuant to *Stop the Beach Renourishment v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010), Plaintiff has filed a petition for a writ of certiorari in the U.S. Supreme Court and is seeking review of the final orders in the Tennis Townhouses v. Stuart case brought *ultra vires* against her by her condominium association. She is also asking for review of the trial court's denial of a motion for relief from judgment on the grounds that the court lacked subject matter jurisdiction over her homestead property, her interest in her parents' property and her parents' personal property because the Ryan/Stuart complaint in the trial court failed to specify those properties as special damages pursuant to Florida Rule of Civil Procedure 1.120(g).

Plaintiff agrees with the Ryan/Stuart motion's recitation of the standard of review.

## Argument

Defendants Ryan and Stuart claim that Plaintiff's complaint should be dismissed under the *Rooker-Feldman* doctrine derived from the Supreme Court's decision in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) and *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In response, Plaintiff incorporates by reference her argument on this topic presented in her opposition to the Motions to Dismiss filed by defendant the Tennis Townhouses Condominium Association, Inc. and defendant Jeffrey Smith. Plaintiff is not seeking a federal appeal of her state court cases but rather has set out an independent claim under the Federal Constitution as encouraged by *Stop the Beach Renourishment v. Florida Department of Environmental Protection,* 560 U.S. 702 (2010). Because of the lack of guidance from the Supreme Court as to how and where to present such a claim and the demonstrated inefficacy of proceeding before the Circuit Court of Indian River County and the state appeals courts, Plaintiff seeks the aid of a federal court in recognizing her takings claims, equal protection claims, and violations of her rights to migrate from one jurisdiction to another. These claims are based upon the actions of the state courts but are not "inextricably intertwined" because they were not raised until after the state courts had rendered final judgments. Count Three of the complaint seeks under the rubric of diversity of jurisdiction a partition of a property that even the state trial court agreed was not properly before that court because it was not an asset of the J. Raymond Stuart trust and belonged to Mr. Stuart's three daughters. The state court decision conveying Plaintiff's interest to defendants Ryan and Stuart because it was "appropriate" in the personal opinion of the judge was without subject matter jurisdiction and any legal basis and thus contrary to established Florida property law. The

same is true of the decision to convey Plaintiff's homestead to defendants when Plaintiff never received a complaint specifying it as special damages, never got discovery in the underlying case with respect to domicile, never was given a hearing on domicile or her homestead status. Then the judge in the judicial foreclosure action granted an irregular bid credit to defendants which they used to acquire Plaintiff's homestead worth $560,000 for $71,100 after they had used their "unclean hands" to eliminate Plaintiff's means of earning an income so that she could not pay her condominium fees. If this does not state an independent claim for a judicial taking under the Constitution, then Plaintiff is hard pressed to imagine a more compelling case. This is not simply a collateral attack on a wrongful foreclosure action.

*Res Judicata* is not applicable here as the parties in this case, with the exception of Stuart and Ryan/Stuart were not parties to the state court actions. The Tennis Townhouses Condominium Association, Inc. was a party in one of the two cited cases. The State of Florida was not involved. Plaintiff could not assert the judicial takings claims prior to the state court actually taking the property. The claims asserted here are not the same claims as were litigated in the Trust and Foreclosure actions. The foreclosure sale was in violation of established Florida property law because the sale price was grossly inadequate in comparison with the market value of the property and the bid credit afforded Ryan/Stuart an unfair opportunity to bid without competition from other interested buyers. *Arlt v. Buchanan,* 190 So.2d 575, 577 (Fla. 1966).

Ryan/Stuart claim that Plaintiff has no standing to seek partition because Catherine Ryan is now the sole owner of her parents' homestead. The only reason she is the sole owner is that she enlisted the aid of the Successor Trustee who had no title to the property to grant her and Deborah Stuart a deed and then she inveigled Deborah Stuart to give her a quit claim deed. The

deed of the successor trustee is void. Pamela Stuart's interest stems from § 732.401(1) Florida statutes and is extant today.

If the court considers the abstention doctrine, Plaintiff requests that the court stay the proceedings in this case pending the review of the US Supreme Court and the Florida courts so that the case may proceed, if necessary, after those cases conclude. Plaintiff incorporates by reference her argument on abstention contained in her opposition to the Motion to Dismiss filed by the Tennis Townhouses Condominium Association, Inc.

Essentially, Plaintiff seeks a forum in which to present serious Constitutional claims that her rights have been summarily dealt with by trial judges who imposed liens on her personal residences without jurisdiction and then turned them over to Ryan and Stuart because the judge thought it was "appropriate." Attacks on the rule of law are becoming more strident but this series of actions by trial courts acting as agents of the State of Florida threaten the fundamentals of our jurisprudence. James Madison wrote in Federalist no. 10 that "The right to property is rooted in the right we have to the free use of our own mind and talents, which it is government's job to protect." The fact that Ryan/Stuart and Edward Ryan could utilize the Florida Bar to destroy Plaintiff's distinguished career and ability to earn a living and then take the properties she acquired by her own funds and from her deceased parents is sobering and disquieting in the extreme.

Plaintiff hereby certifies under penalties of perjury pursuant to 28 U.S.C. § 1746 that the factual statements made in this motion are true and correct to the best of her knowledge and belief.

WHEREFORE, for the foregoing reasons, Plaintiff submits that the motion to dismiss by

Catherine Ryan and Deborah Stuart should be DENIED.

Dated August 11, 2018

Respectfully submitted,

/s/ Pamela B. Stuart

Plaintiff *pro se*
P.M.B. #8202
6001 Highway A1A
Indian River Shores, FL 32963-1014
(202) 999-2374 (cell)
(202) 244-0723 (landline)
pamstuart@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have sent the original of the foregoing Opposition to the Motion to Dismiss of Catherine Ryan and Deborah Stuart to the Clerk of the Court for filing via Federal Express and that I am serving a copy on counsel via electronic mail at their email addresses provided on their motions since I am not yet permitted to use the court's CM/ECF system this 11th day of August, 2018.

/s/ Pamela B. Stuart

PAMELA B. STUART

copies to:

C. Douglas Vitunac, Esq.
Collins, Brown, Barkett, Garavaglia and Lawn, Chrtd.
756 Beachland Blvd.
Vero Beach, FL 32963
dvitunacpleadings@verolaw.com

11

Counsel for Defendants Catherine Ryan and Deborah Stuart

Jason L. Odom, Esq.
Gould, Cooksey Fennell, PA
979 Beachland Blvd.
Vero Beach, FL 32963
jodom@gouldcooksey.com

Counsel for Defendant Jeffrey R. Smith, Clerk of the Circuit Court for Indian River County, Florida

Sean A. Mickley, Esq.
Gould, Cooksey Fennell, PA
979 Beachland Blvd.
Vero Beach, FL 32963
smickley@gouldcooksey.com

Counsel for defendant, The Tennis Townhouses Condominium Association, Inc.

Maria Guitian Barker, Esq.
Assistant Attorney General
State of Florida
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, FL 33301
maria.guitianbarker@mMyFloridalegal.com

Counsel for the State of Florida



Room #1016
Clerk's Office
US District Court
101 South US Highway 1
Ft Pierce, FL 34950

