UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

FILED BY ___CGA___
Deputy Clerk

**Aug 20, 2018**

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. Fort Pierce

| | |
|---|---|
| PAMELA B. STUART ) | |
| Vero Beach, Florida ) | |
| ) | |
| v. ) | Case No.   2:18-cv-14244-JEM |
| ) | |
| CATHERINE S. RYAN ) | |
| ) | |
| DEBORAH A. STUART ) | |
| ) | |
| THE TENNIS TOWNHOUSES ) | |
| ASSOCIATION, INC. ) | |
| ) | |
| JEFFREY R. SMITH, ) | |
| ) | |
| THE STATE OF FLORIDA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

PLAINTIFF'S OPPOSITION TO DEFENDANT TENNIS TOWNHOUSES
CONDOMINIUM ASSOCIATION, INC. AMENDED MOTION TO DISMISS

Pamela B. Stuart respectfully opposes Defendant The Tennis Townhouses Condominium

Association, Inc.'s (the "Tennis Townhouses") Amended Motion to Dismiss her Verified

Complaint.    In support of her opposition, plaintiff relies on the following points and

authorities.

**I.      Introduction**

Plaintiff understands that current counsel for the Tennis Townhouses was not counsel for

the Tennis Townhouses in the underlying case and thus is not responsible for the unprofessional

behavior of prior counsel.    Plaintiff is a former Assistant United States Attorney for the District

of Columbia (1979 to 1985) and trial attorney for the US Department of Justice in the Office of

International Affairs of the Criminal Division (1985-87) and has been in the practice of law for

over forty five years until she was suspended by the Florida Supreme Court at the behest of

Edward Ryan, husband of Defendant Catherine Ryan.  Defendants Catherine Ryan and Deborah

Stuart, on information and belief, in concert with Dr. Ryan's husband, Edward, schemed to

deprive Plaintiff of her livelihood as an attorney by filing a complaint with the Florida Bar and

then schemed to take her home when she was unable to pay the required condominium fees and

assessments due to the loss of her income.  They filed a complaint in the Circuit Court for Indian

River County attacking plaintiff's administration of her father's trust which failed to allege

special damages as required by the Florida Rules of Civil Procedure including plaintiff's

homestead residence and her one-third interest in her father's homestead and her parents'

personal property that was governed by their wills. The state court ignored Pamela Stuart's

defenses, afforded her no discovery, no hearing on her domicile or homestead, and misled her

when she had the opportunity to present evidence.  It then entered judgment eliminating her

ownership of her homestead property flatly contrary to established Florida property law as well

as  her one-third interest in properties not mentioned in the complaint or owned by her father's

trust and, for good measure, ruled that she had committed a felony by registering to vote in

Florida in 2004.  She got no justice in the Fourth District Court of Appeals, *see Stuart v. Ryan,*

232 So.3d 418 (Fla. 4th DCA 2017) or in the Florida Supreme Court which denied certiorari.  The

Tennis Townhouses followed with a suit to foreclose a lien that had not been authorized as

required by established Florida law and was prosecuted to judgment with the aid of the same

judge who ignored established Florida law and the rules of civil procedure and evidence.

2

Plaintiff has never seen the kind of court proceedings that she has witnessed in the underlying cases.  For the first time in her entire career she was prompted to file a motion to disqualify the trial court from the case involving the Tennis Townhouses which was denied and a petition for a writ of prohibition to the state's Fourth District Court of Appeals was denied without opinion.  With that as a backdrop, she relies upon the following points and authorities in opposition to the Tennis Townhouses' motion to dismiss.

**Factual Background**

1.      The Tennis Townhouses Condominium Association, Inc. was formed on December 12, 1974 when it prepared articles of incorporation and adopted a Declaration of Condominium of the Tennis Townhouses Condominium Association, Inc.  Those documents, with subsequent amendments, were filed among the records of the Circuit Court for Indian River County, Florida and appear at Book 482, Page 764 *et seq.* (instrument no. 147767).

2.      At the first meeting of the Tennis Townhouses Condominium Association, Inc.'s Board of Directors on December 31, 1974, the By-laws of the corporation were adopted.  They were filed among the records of the Circuit Court for Indian River County, Florida and appear at Page 482, Page 829 *et seq.*  The By-laws provide in paragraph 4(j)  that all powers and duties of the association, including those available to it under common law and statutes, shall be exercised by the Board of Directors.  They include the power to make, levy and collect assessments.

3. The By-Laws of the Association provide, in pertinent part, in paragraph 4 which sets forth the by-laws governing the Board of Directors of the Association at subparagraph (j) at Book 482, page 835 - 836  that:

All of the powers and duties of the ASSOCIATION shall be exercised by the

Board of Directors, including those existing under the common law and statutes, the Articles of Incorporation of the Association, these By-Laws and the Declaration of Condominium.  Such powers and duties shall be exercised in accordance with said Articles of Incorporation, these By-laws and the Declaration of Condominium, and shall include, without limiting the generality of the foregoing, the following:

(i)     To make, levy and collect assessments against members and members' APARTMENTS to defray the costs of the condominium, and to use the proceeds of said assessments in the exercise of the powers and duties granted unto the ASSOCIATION.

**********

(viii)  To enforce by legal means the provisions of the Articles of Incorporation and By-laws of the ASSOCIATION, the Declaration of Condominium and the regulations hereafter promulgated governing use of the property in the CONDOMINIUM.

The Declaration of Condominium provides in paragraph 4 at Book 482 page 771:

To efficiently and effectively provide for the administration of the CONDOMINIUM by the owners of APARTMENTS, a non-profit corporation, known and designated as the ASSOCIATION, has been organized, and said corporation shall administer the operation and management of the CONDOMINIUM and undertake and perform all acts and duties incident thereto in accordance with the terms, provisions and conditions of this Declaration of Condominium, and in accordance with the terms of the Articles of Incorporation of the ASSOCIATION, and the By-laws of said corporation. . . .In the administration of the operation and management of the CONDOMINIUM, said ASSOCIATION shall have and is hereby granted the authority and power to enforce the provisions of this Declaration of Condominium, levy and collect assessments in the manner hereinafter provided, and to adopt, promulgate and enforce such rules and regulations governing the use of the APARTMENTS, COMMON PROPERTY and LIMITED COMMON PROPERTY, as the Board of Directors of the Association may deem to be in the best interests of the CONDOMINIUM.

In other words, the enforcement of the provisions of the Declaration of Condominium requires affirmative action by the Board of Directors:  (1) voting to initiate legal action to collect assessments and (2) making a finding that such an action is deemed to be in the

best interests of the condominium.

    4.     The Articles of Incorporation of The Tennis Townhouses Condominium

Association, Inc. grant certain powers to the Association (referred to therein as "the corporation")

in subdivision III.  Among the powers granted in subdivision III is

> III(d)   To contract for the management of the CONDOMINIUM and to delegate to a manager or managing corporation under such contract all of the powers and duties of the Association except those which may be required by the Declaration of Condominium to have approval of the Board of Directors or membership of the corporation.

Thus, the governing documents of the Association allow it to delegate management of the

condominium, but prohibit the management of acting on behalf of the Association with respect to

matters required to have the approval of the Board of Directors such as actions with respect to the

enforcement of the Declaration of Condominium.

    5.     On January 27, 2000, Pamela Stuart purchased the real property located at 111

John's Island Drive #7, Vero Beach, Indian River County, Florida 32963 which is part of the

Tennis Townhouses condominium so that she became a member of the association.  She

purchased the home after her elderly mother, a widow who lived at 101 South Catalina Court in

Vero Beach, suffered a psychiatric breakdown during the holidays in December 1999 and had to

be involuntarily hospitalized under the Baker Act, § 394.451 *et seq.,* Florida Statutes.  Plaintiff

concluded she would have to spend more time in Vero Beach taking care of her mother's affairs

and administering her father's trust.

    In order to purchase her property in Vero Beach along with furniture for the house and an

associated club membership, Pamela Stuart took money from an investment account she had

opened when she started her own law practice in 1992.  No funds from the J. Raymond Stuart

Trust were used to purchase or improve the property.

6. Plaintiff intended to occupy her house at 111 John's Island Drive #7 as her permanent residence (as her parents had used their Florida home) but continued to travel back and forth between Washington DC and Vero Beach.  She was a member of the bar in New York, the District of Columbia, Maryland, Virginia and Florida.  As of that time, most of her clients were in the Washington, D.C. area.    As part of her plan to spend more time in Florida and live in Vero Beach, Pamela Stuart sat for the Florida Bar examination and joined the Florida Bar in 1994.  After her father passed away in 1998, Ms. Stuart accepted an appointment to the Executive Council of the Real Property, Probate and Trust Law Section of the Florida Bar at the suggestion of Michael Stafford, Esq.  She also joined the local art museum, contributed to the theater, and served on the philanthropy committee of the John's Island Community Service League.    In September 2004, after reviewing the statutes and case law of Florida governing domicile, Pamela Stuart concluded that she met the legal requirements and registered to vote in Indian River County.   Kay Clem, the Superintendent of Elections, approved her registration and later became a personal friend after Pamela Stuart volunteered  in the 2004, 2006, 2008, 2010, 2012 and 2014 elections as a voter protection attorney.   She established a law office in Vero Beach in 2006.  She filed a Declaration of Domicile and a Notice of Homestead with the local court as prescribed by Florida law and was awarded a homestead tax exemption.

7.     After her father died in 1998, Pamela Stuart appointed a friend of her father, Lewis L. Smith, Jr., as co-trustee.  Together they administered the trust with the assistance of Michael Stafford, Esq.  At the time that she took over administration of her father's trust in January 1998, Pamela Stuart had never before been a trustee of trust or administered an estate

and relied upon Michael Stafford for advice on how to proceed.  Mr. Smith resigned as co-trustee in February 2000 for health reasons.  At that time Pamela Stuart did not know many people in Vero Beach outside of her parents' circle of friends and two of them declined her request to serve as co-trustee of her father's trust.  With the advice of Mr. Stafford, she appointed her brother in law, Edward Ryan, as co-trustee even though the language of the trust prohibited appointment of the spouse of a beneficiary.  "No one will complain," said Mr. Stafford.

        8.     In 2001, Pamela Stuart was induced to invest in a commercial townhouse in Washington, D.C. that she intended to use as an office and to rent out to other lawyers.  Pamela Stuart agreed to a $150,000 mortgage being placed against her Florida home by the Eagle Bank of Maryland to secure the purchase of the building.  The seller lied about rear access to the property and, as a result, the Stuart Building LLC (the "LLC") that owned the building named after her father was unable to get necessary permits to renovate and occupy the building.  In order to pay the carrying costs, Pamela Stuart, after consultation with her mother and Edward Ryan and other family members, began borrowing from her father's trust against her right to inherit and to trustee fees and expense reimbursements.  She also withdrew funds from the trust to pay trust expenses and expenses she incurred as trustee.  All of these withdrawals appeared on monthly brokerage statements issued by Smith Barney.

        9.     In 2004, the Stuart Building LLC sued the seller and, in 2006, Pamela Stuart refinanced her home in Vero Beach in order to raise funds to pay the LLC's lawyers.  When the Stuart Building was finally sold in 2009, the LLC paid off the refinanced mortgage on Pamela Stuart's Florida homestead at closing.  Pamela Stuart had informed family members including Mr. Ryan of this plan months in advance of the closing and no one complained.  So, no funds of

7

the J. Raymond Stuart trust were used to purchase Pamela Stuart's homestead in Vero Beach.

 10. After Marion Stuart died in April 2012, defendants Catherine Stuart Ryan and

Deborah Stuart filed a complaint in the Circuit Court of Indian River County on November 8,

2013 against Pamela Stuart individually and as trustee of the J. Raymond Stuart Trust. The

complaint put at issue only the assets belonging to the J. Raymond Stuart Irrevocable Trust, the J.

Raymond Stuart Irrevocable Marital Trust and the J. Raymond Stuart Irrevocable Credit Shelter

Trust. The complaint sought removal of the trustee (Count I), damages for conversion including

a constructive trust (Count II), alleged a breach of trust (Count III), and demanded a temporary

and permanent injunction (Count IV). The complaint did not mention Pamela Stuart's home in

Florida, her one-third interest in her father's homestead and her parents' personal property or

allege any special damages as required by Rule 1.120(g) of the Florida Rules of Civil Procedure

which is **established Florida law.**[1] The trial court did not hold a hearing devoted to Pamela

Stuart's claim of homestead or domicile, but instead held a hearing on her right to trustee fees

and expenses. The trial court (Kanarek,. J.) in its Final Order on Distribution not only denied

Pamela Stuart any trustee fees or expense reimbursements contrary to **established Florida**

**property law,** it awarded Dr. Ryan and Deborah Stuart an equitable lien on Pamela Stuart's

---

 [1] Special damages, like fraud, must be pled with particularity. The Florida Supreme
Court has said that "Special damages are considered to be the natural but not the necessary result
of an alleged wrong or breach . . . .they are such damages as do not follow by implication of law
merely upon proof of the breach." *Augustine v. Southern Bell Telephone & Telegraph Co.,* 91
So.2d 320, 323 (Fla. 1956); *Precision Care Auto Tune, Inc. v. Radcliffe,* 804 So.2d 1287, 1292
(Fla. 4th DCA 2002). General damages are those which the law presumes actually and
necessarily result from the alleged breach or wrong. *Augustine v. Southern Bell,* 91 So.2d at 323.
Special damages that are not pled may not be recovered. *Hooters of America Inc. v. Carolina
Wings,* Inc. , 655 So.2d 1231 (Fla. 1st DCA 1995), citing *Sanford v. Rubin,* 237 So.2d 134, 137
(Fla. 1970)(fundamental error goes to the foundation of the case or merits of the cause of action).

Florida homestead, on her one-third interest in her father's homestead and her parents' personal property anyway because, said the court, it was "appropriate." This ruling was contrary to the **established property law of Florida** and the entire proceeding denied Pamela Stuart due process of law. The trial court even found that Pamela Stuart was not domiciled in Florida or properly registered to vote ( issues not raised by the complaint). The case, *Ryan v. Stuart,* was assigned docket no. 31-2013CA-001523. On appeal to the Fourth District Court of Appeals, the appellate court misstated the facts of the case and found that Pamela Stuart was not domiciled in Florida because she had a federally guaranteed reverse mortgage on an unrelated property. *Stuart v. Ryan,* 232 So.3d 418 (Fla. 4th DCA 2017). The Supreme Court of Florida denied certiorari.

11. Defendants Catherine Stuart Ryan and Deborah Stuart, acting by and through their agent, Edward Ryan, filed a complaint with the Florida Bar alleging that Pamela Stuart, an attorney licensed in Florida, had failed to provide accountings to beneficiaries as required by Florida law from 1998 to 2013. In fact, Pamela Stuart had provided accountings as required by Florida law to her mother from 1998 to 2002. The law changed in 2003 and required accountings be provided to qualified beneficiaries such as Defendants Ryan and Stuart but by that time, Pamela Stuart had been overwhelmed with her duties to her increasingly infirm elderly mother, to her clients as a solo practitioner, to her father's trust which in 2002 sold and emptied a residence that had been occupied by her parents since 1950, and to the LLC which held title to a commercial townhouse in Washington, D.C. Mr. Ryan acknowledged in his complaint that the beneficiaries "received statements from Smith Barney" but complained that the statements did not show Pamela Stuart's "loans, interest rate(s), security, accruing interest charges on such loans,

9

and other important information, such as properly incurred Trustee fees and expenses, if any."[2]

Mr. Ryan did not mention in his complaint that he had been appointed and served as co-trustee of

the trust from 2000 to 2014.   In response, the Florida Bar, through an assistant Bar Counsel,

replied, "I must conclude that your complaint constitutes a civil dispute which is best resolved

through the civil system. The Supreme Court of Florida has ruled that the disciplinary process

and proceedings are not to be used as a substitute for civil proceedings and remedies" and

dismissed the complaint.

12.   On January 3, 2016, Judge Cynthia Cox, after *a 36 minute non-evidentiary hearing*,

entered an order approving an accounting of the J. Raymond Stuart trust by a successor trustee

that was objected to by Pamela Stuart as grossly inaccurate.   The plaintiffs had not filed the

accounting with their motion and the judge had not reviewed it.   Nevertheless, the judge

approved it and made derogatory remarks about Pamela Stuart's credibility and conduct (she had

not yet finished her efforts to account for sixteen years of trustee expenses in part because she

was caring for a dying friend) and forwarded her order to the Florida Bar.   Without any

---

[2] In similar circumstances, this court held in *Figel v. Wells Fargo, N.A.*, No.
10-CV-60737-COHN/SELTZER, 2011 U.S. Dist. LEXIS 25291 (S.D. Fl. March 9, 2011) that
beneficiaries who received periodic statements of trust accounts had consented to the conduct
complained of.  Judge Cohn cited § 736.1012 of the Florida Probate Code which provides that a
trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct
constituting breach... or ratified the transaction constituting the breach, unless: (1) The consent,
release, or ratification of the beneficiary was induced by improper conduct of the trustee; or (2) at
the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's
rights or of the material facts relating to the breach.  Terry Figel admitted that he received, yet
ignored for thirteen years, the quarterly account statements that set forth the trustee, Wells
Fargo's, investment strategy and detailed the state of the Figel Trust.  The district court held that
Terry Figel could not then state that he was "unaware" of Wells Fargo's investment decisions or
that he never "consented" to Wells Fargo's conduct.

evidentiary basis, the judge made a finding that the only assets of the J. Raymond Stuart Trust left to distribute were loans to Pamela Stuart and the parents' residence (which was nominally titled in the name of the trust but pursuant to **established property law in Florida**, § 732.401(1), was owned by Pamela Stuart, Catherine Ryan and Deborah Stuart as joint tenants who inherited it upon Mr. Stuart's death) and the parents' personal property which was not before the court because it was governed by the parents' wills.  The judge's order required a subsequent hearing to determine Pamela Stuart's entitlement to trustee fees and credits for expense reimbursements and ordered a lien be placed on Pamela Stuart's homestead (which was not before the court and had not been the subject of any hearing) and her residence in Washington DC over which the court had no jurisdiction.

13.     Judge Cox forwarded her January 3, 2016 order to the Florida Bar which had the effect of reviving Edward Ryan's complaint.  Pamela Stuart readily admitted to her failure to prepare accountings for the trust due to being overwhelmed with duties of trust administration, care of her elderly mother, litigation involving her failed real estate investment, and care of the clients of her solo practice.  She accepted a one-year suspension of her license to practice law which became effective in February 2017.  The effect of the suspension, which was applied reciprocally by DC, Maryland and Virginia (but not New York) was to destroy her law practice and her ability to earn a living.  As a result, Pamela Stuart was unable to pay her condominium fees and assessments to the Tennis Townhouses.

14. On March 15, 2017, prior counsel for the Tennis Townhouses Condominium Association, Inc. ("Tennis Townhouses"), filed a lien foreclosure action in the County Court for Indian River County against Pamela Stuart (and Catherine Ryan and Deborah Stuart based on a

notice of lis pendens)  for unpaid assessments and dues.  The complaint alleged falsely that all conditions precedent to the filing of the complaint had been performed.  Prior to March 15, 2017, the Board of Directors of the Tennis Townhouses, had not voted to approve such a collection action and had not made a finding that it was in the best interests of the Tennis Townhouses to do so.  To this day (August 7, 2018), the Board of Directors has not fulfilled the conditions precedent imposed by the **established law of Florida** to authorize such an action.  Accordingly, the action was *ultra vires.*

15.    Pursuant to the **established property law of Florida** and under the documents that govern the operation of the Tennis Townhouses, actions of the Board of Directors must be reflected in minutes maintained among the official records of the Association for seven years. § 718.111 (12)(a)(6) Florida Statutes provides that the association must maintain "a book or books that contain the minutes of all meetings of the association, the board of administration, and the unit owners, which minutes must be maintained for at least seven years."  The Association's By-Laws provide in paragraph 5( c) that:

> The Secretary shall keep the minutes of all proceedings of the Directors and the members.  He shall attend to the giving and serving of all notices to the members and Directors, and such other notices required by law.  He shall have custody of the seal of the ASSOCIATION and affix the same to instruments requiring a seal when duly signed.  He shall keep the records of the ASSOCIATION, except those of the Treasurer, and shall perform all other duties incident to the office of secretary of an association and as may be required by the Directors or President.

None of the minutes obtained by Pamela Stuart while she was an owner and member of the Tennis Townhouses reflected a decision by the Board of Directors to enforce any failure by Pamela Stuart to pay assessments or to authorize the filing this lawsuit which seeks to foreclose

on a lien filed.[3]  None of the minutes of the Board of Directors or the notices of their meetings

reflect even a discussion of this matter taken without an action by the Board until the meeting of

March 19, 2018.   Notably the claim of lien filed in state court was signed by David Loughlin, an

employee of the management company, not by a member of the Board of Directors.

Under the **established property law of Florida**, conditions precedent required by a

Declaration of Condominium to filing an action for collection must be complied with.

§ 718.104(6) and (7), Florida statutes, provide:

> (6) A person who joins in, or consents to the execution of, a declaration subjects

his or her interest in the condominium property to the provisions of the declaration.

> (7) All provisions of the declaration are enforceable equitable servitudes, run with

the land, and are effective until the condominium is terminated.

Thus, the **established property law of Florida** is that Declarations of Condominium are akin to

covenants running with the land and compliance with their provisions is mandatory.

16.   On May 17, 2017, upon motion of the Tennis Townhouses, the Circuit Court of

Indian River County entered a default against Pamela Stuart.  Ms. Stuart promptly filed a motion

for relief from the default with a proposed answer and an explanation of the good cause for her

failure to respond within 20 days of service.  The Tennis Townhouses motion to dismiss in this

case states falsely that the default was vacated on May 25, 2017.   The motion to vacate the

default was not granted until **April 25, 2018.**  Meanwhile, the litigation went on without Ms.

---

[3]  The Board of Directors did vote to authorize a collection action at its meeting on March 19, 2018 which Pamela Stuart attended, but the Board failed to make the required finding that such a lawsuit was in the best interests of the association.  The minutes of that meeting do not reflect either the vote taken or a finding about a lawsuit being in the best interests of the association.

Stuart being made a party to the proceeding.

17.     On June 22, 2017, upon a false representation in a  motion that the amount in controversy exceeded $15,000, the case was transferred from the County Court to the Circuit Court. Approximately $6000 in legal fees was included in the amount at a time when neither the action nor the retention of counsel to litigate it had been approved as required by the Board of Directors of the Tennis Townhouses.   The case was assigned to Judge Paul B. Kanarek, the same judge who presided over the case of *Ryan v. Stuart*, on July 12, 2017.   Judge Kanarek took no action in the case, including on a joint motion to vacate the default filed in September 2017, for over six months.   The case of *Tennis Townhouses v. Stuart, et al.* was assigned docket no. 31-2017CA-000523.

18.     On January 30, 2018, the Tennis Townhouses filed a motion for summary judgment in *Tennis Townhouses v. Stuart*.   Pamela Stuart filed an opposition to the motion on February 9, 2018 citing the failure of the Board of Directors of the Tennis Townhouses to authorize the action.   She neglected to verify the opposition pursuant to 28 USC § 1746 by mistake.   Attached to the opposition were the minutes of the Tennis Townhouses' Board of Directors from January 1, 2016 to that date as authenticated by its recording secretary.   No vote to authorize the lawsuit or finding that it was in the best interest of the association appeared and the minutes of meetings of the Board of Directors still do not show such findings.

19.     On February 13, 2018, after no activity by the judge in the case since the assignment on July 12, 2018, the judge issued an order denying a motion to dismiss the cross-claim filed by Defendants Ryan and Stuart that was based upon the judgment entered in *Stuart v. Ryan,* 31-2013CA-001523 which was then on appeal.   Pamela Stuart immediately filed a motion

14

to disqualify Judge Kanarek which was denied. She subsequently filed an amended and properly

verified motion to disqualify Judge Kanarek based upon his demonstrable bias as exhibited in ten

separate incidents in the litigation of *Stuart v. Ryan* that was also denied despite the fact that

Judge Kanarek found, contrary to established US and Florida Supreme Court precedents, that

Pamela Stuart engaged in breaches of trust the Court deemed to be "reprehensible" conduct. The

court also made factual findings that were demonstrably in error and ordered that equitable liens

be placed on Defendant's interest in her father's homestead at 101 South Catalina Court, Vero

Beach, Florida which she acquired before any of the alleged breaches of trust occurred and on

Defendant's own homestead at 111 John's Island Drive #7, Vero Beach, Florida despite a lack of

evidence that the property was purchased with or improved by funds belonging to the trust.

Judge Kanarek gratuitously made rulings on other issues not raised in the complaint such as

distributing personal property that was not owned by the trust[4] and accused Pamela Stuart of

committing a felony, that is, of having wrongfully registered to vote in Florida in 2004A Petition

for a Writ of Prohibition to the Fourth District Court of Appeals of the State of Florida was

denied without opinion.

    20.    On April 19, 2018, the Tennis Townhouses, by counsel, filed a false and

---

[4]    Pamela Stuart acquired her one-third interest in her father's homestead by operation of law (descent) in 1998 based upon **established Florida property law**. § 732.401(1). Nothing "unjust" was involved – her father died. As a basis for forfeiture of Pamela Stuart's interests in both properties, the Court found Pamela Stuart acquired her own homestead by expending her personal funds to do so. As a basis for forfeiture of Pamela Stuart's interests in both properties, the Court found Pamela Stuart's conduct as trustee to be "reprehensible" contrary to the established law of the Florida Supreme Court as to the required factual findings for "reprehensibility." *Schoeff v. R. J. Reynolds Tobacco Co.,* 232 So.3d 294 (Fla. 2017), citing *State Farm Mutual Auto Insurance Co. v. Campbell,* 538 U.S. 408, 419 (2003)(reprehensible conduct must involve both physical and economic harm) and despite the lack of any precedent supporting a finding of "reprehensibility" for a breach of fiduciary obligations to account.

fraudulent affidavit of Katherine Strickland, president of the Tennis Townhouses, who averred falsely that the Tennis Townhouses had fulfilled its duties under the Declaration of Condominium and to Pamela Stuart.  Ms. Strickland knew because she presided at a meeting of the Board of Directors attended also by Pamela Stuart on March 19, 2018, that she sought approval for the collection action on that date but did not seek a finding that it was in the best interests of the corporation to do so.  Minutes of that meeting do not reflect a vote to authorize the collection action or a finding that it was in the best interests of the corporation to do so.

Florida Rule of Civil Procedure 1.150 required the court to hold a hearing on the motion, but the court refused to do when the motion was brought to the court's attention on May 22, 2018.  The affidavit, in conjunction with the failure of the Tennis Townhouses manager, Jeanette Genovese and its recording secretary, Nicole Russo, to produce minutes to Pamela Stuart upon request will show that the Tennis Townhouses along with its previous counsel deliberately set in motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the opposing party's presentation of a claim or defense.  Pamela Stuart's properly filed motion for sanctions against Mr. Scarpa was denied without opinion.

21.   On May 22, 2018, pursuant to the court's own notice setting a civil non-jury trial, Judge Kanarek held a hearing.   The plaintiffs did not order a court reporter.  Despite the fact that Pamela Stuart had subpoenaed two witnesses who appeared prepared to testify on the issue of the failure of the Tennis Townhouse Board of Directors to authorize the lawsuit properly and the minutes of Board of Directors' meetings, Judge Kanarek announced that this hearing was for purposes of ruling on the dispositive motions filed by the Tennis Townhouses and co-plaintiffs

16

only and refused to conduct a hearing on the motion to strike Katherine Strickland's affidavit and to permit Pamela Stuart to put on any evidence including the subpoenaed witnesses' testimony. The docket in the case reflected that Pamela Stuart had properly noticed the witnesses and the clerk's office had issued subpoenas for them that were served.  The only witness that the court permitted to testify was a witness who attested to the reasonableness of the attorneys' fees charged who regarded the fees as reasonable even though the case had not been properly authorized by the condominium association.

22.  At the conclusion of the May 22, 2018 "hearing," Judge Kanarek announced that he would grant the judgment of foreclosure and authorized a bid credit of over $2 million based upon the flawed judgment in *Stuart v. Ryan* that would permit Catherine Ryan and Deborah Stuart to bid at the online judicial foreclosure auction up to that amount which was approximately four times the value of the property.  Since the bid credit discouraged other qualified buyers, Catherine Ryan and Deborah Stuart successfully bid $71,100 for Pamela Stuart's homestead on June 27, 2018 when it had a market value of $560,000 according to an appraisal.  So, not only had the judge awarded Catherine Ryan and Deborah Stuart an inflated judgment in *Ryan v. Stuart* based upon the erroneous findings in the earlier proceeding as detailed above, but beyond that, they gained ownership of Pamela Stuart's permanent residence for which the trial court lacked subject matter jurisdiction but thought it "entirely appropriate" that they be awarded the home.  Pamela Stuart lost her entire investment in her homestead that she had owned for over eighteen years apart from the earlier judgment,[5] as well as her right to

---

[5] Catherine Ryan and Deborah Stuart took no action to collect on the earlier judgment but seemed quite content to strip Pamela Stuart of her permanent residence and all of her $560,000 equity in the property with the aid of the circuit court.

vote in Indian River County and her faith in the court system.

23.    Subsequent to the hearing Catherine Ryan and Deborah Stuart paid the Tennis Townhouses the amount due under the final judgment of foreclosure issued on May 30, 2018. They bid $71,100 for the property at the auction on June 27, 2018.  Pamela Stuart filed an Objection to the issuance of the Certificate of Title based upon the gross inadequacy of the sale price (a property appraiser testified that the property had a market value of $560,000 on the date of sale and the opposing parties stipulated to that finding) and the irregularities of the sale (the bid credit issued for about four times the value of the property) as well as the Florida Constitution's guarantee against forced sale of a permanent residence.  Peter Amfield, a local property appraiser with over 40 years of experience testified that the bid price was grossly inadequate, that the true market value of Pamela Stuart's homestead on June 27, 2018 was $560,000, that the sale proceedings were irregular due to the inflated bid credit that discouraged potential buyers, and that the resulting award of the house to Catherine Ryan and Deborah Stuart gave them a $560,000 property that was over and above the previous judgment (essentially granting them two judgments for litigating one case).  Judge Kanarek denied the objection to the sale without making any findings and ordered the issuance of a certificate of title and a writ of possession to Catherine Ryan and Deborah Stuart.  Pamela Stuart was forced to vacate her permanent residence on July 25, 2018 and donated as much of its furnishings as she could to the John's Island Community Service League for its charitable work since she had no time to sell them.  Judge Kanarek orders were in defiance of **established Florida property law**, the Florida Constitution's protection against forced sale under Article X, § 4, and the Takings Clause of the Fifth Amendment to the US Constitution.  His orders rendered without due process destroyed

Pamela Stuart's permanent residence guaranteed by **established Florida Property Law,** eliminated her right to vote and her right to migrate under the US Constitution, and denied her the equal protection of the laws. As the late Justice Arthur Goldberg would say, "we wuz robbed."

### MEMORANDUM OF LAW

The Tennis Townhouses claims that count 2 of the Complaint must be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, res judicata, and the abstention doctrine. While it has offered some cases that suggest that plaintiff is merely seeking to relitigate a case she lost in the state courts, that is not the situation. The complaint filed in this matter is asserting a federal claim that she suffered a judicial taking of her property in violation of 42 U.S.C. § 1983, the US and Florida Constitutions, and a denial of due process and equal protection guaranteed by the Fourteenth Amendment. The Tennis Townhouses' motion would close the courthouse door to a plaintiff with viable claims of a denial of federal Constitutional rights by rogue state courts. Access to the courts is a right grounded in several constitutional amendments, including the First, Fifth and Fourteenth Amendments. *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003). To assert an access-to-the-courts claim, the plaintiff must possess a non-frivolous, arguable underlying cause of action, the presentation of which was prevented by the defendant. *See Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006). In this case, the plaintiff has described the underlying cause of action specifically enough in the complaint to show it is more than hope. *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1271 (11th Cir. 2010). She deserves her constitutionally guaranteed access to the courts to effect a remedy.

Pamela Stuart has a viable, colorable claim under *Stop the Beach Renourishment v.*

*Florida Department of Environmental Protection,* 560 U.S. 702 (2010) and the 14th Amendment

due process clause that the taking of her property by a Florida state court, specifically her Florida

residence which she acquired with her own funds, her one-third interest in her father's homestead

that she acquired by operation of law when her father died and her one-third interest in her

parents' personal property which she acquired by virtue of their wills, constituted a judicial

taking in violation of the Fifth Amendment Takings Clause and/or a deprivation of private

property without due process of law in violation of the 14th Amendment.  Either theory provides

essentially identical forms of relief – the invalidation of the orders of the state court on

Constitutional grounds or compensation by the state of Florida.  Compensation by the State of

Florida is not a viable remedy under **established Florida property law.**  § 768.28, Florida

Statutes provides only for $200,000 in compensation for a state taking with the prospect of

petitioning the legislature to cover the balance of a loss due to a tort by a state government

official.  The statute is more akin to a tort claims act or eminent domain than an unconstitutional

taking of property by state court judges.  Like the property owner in *Kelo v. City of New London,*

545 U.S. 469 (2005), Pamela Stuart's property was taken by a court in *Ryan v. Stuart,* civil action

no. 31-2013CA-001523 – to be given to other private citizens (her sisters) and that was

accomplished by the court in *Tennis Townhouses v. Stuart,* 31-2017CA-000523.  In *Ryan v.*

*Stuart*, the judge articulated his reason for imposing equitable liens against property Pamela

Stuart innocently acquired  – he deemed it "entirely appropriate" – but the judge's personal

opinion was unsupported by evidence showing that funds from the J. Raymond Stuart trust were

used to purchase or improve Pamela Stuart's residence or a valid legal basis for his personal

view.  The case brought by the Tennis Townhouses presented a vehicle for the taking and the

20

Tennis Townhouses cooperated by filing a claim that was *ultra vires* because it had not been approved by its Board of Directors or found to be in the best interests of the condominium association as required by **established Florida property law**.

Plaintiff, like other similarly situated victims of a judicial taking, lacks definitive guidance from the U.S. Supreme Court as to how to proceed to vindicate her claims. She has filed a petition for a writ of certiorari with the U.S. Supreme Court but is mindful of the fact that the high court takes less than 1% of the cases sent to it for review. She has filed a notice of appeal with the Fourth District Court of Appeals in the Tennis Townhouses case but is mindful that the same court reviewed *Stuart v. Ryan,* 232 So.3d 418 (Fla. 4th DCA 2017). and misstated the facts and the established property law of Florida in denying protection of her domicile based upon a mortgage she procured on an unrelated property contrary to the **established Florida property law** stated in *Chames v. Mayo*, 972 So.2d 850 (Fla. 2007)(permanent resident cannot waive Constitutional homestead protection in an unrelated contract) and the public policy of the State of Florida which strongly supports the homestead exemption from forced sale. That same court ignored her lack of due process claims and her petition for a writ of certiorari by the Florida Supreme Court was denied on April 9, 2018. Because the claim is that a state court decision took her property and that same state court is the only judge on the civil calendar, returning to state court for a remedy is not a viable option.

In a concurring opinion in *Hughes v. Washington*, 389 U.S. 290 (1967), Justice Potter Stewart opined that when the Washington State Supreme Court effected an unforeseeable change in the state's property law, it achieved the same result as eminent domain by transforming private property without paying for the privilege of doing so. In effect, that is what the state court of

appeals did in *Stuart v. Ryan,* 232 So.2d 418.  The Due Process Clause of the Fourteenth

Amendment, Justice Stewart said, forbids such confiscation by the State through its courts.  289

U.S. at 297-98.   Justice Stewart's opinion lay the groundwork for the plurality opinion authored

by Justice Scalia in *Stop the Beach Renourishment v. Florida Department of Environmental*

*Protection,* 560 U.S. 702 (2010) which stated, "though the classic taking is a transfer of property

to the State or to another private party by eminent domain, the Takings Clause applies to other

state actions that achieve the same thing."  560 U.S. at 713.  Takings by the judicial branch are

not to be accorded special treatment.  560 U.S. at 714.  If a legislature or a court declares that

what was once an established right of private property no longer exists, it has taken that property,

no less than if the State had physically appropriated it or destroyed its value by regulation.  "[A]

State, by ipse dixit, may not transform private property into public property without

compensation."  *Id.,* 560 U.S. at 715.

    *Stop the Beach* established the proposition that the US Constitution provides some

protection against judicial usurpation of established property rights under either the Takings

Clause of the Fifth Amendment or the Due Process Clause of the Fourteenth Amendment.[6]

Writing for a four-Justice plurality, Justice Scalia concluded that "the existence of a taking does

not depend upon the branch of government that effects it."   *Id.,* 560 U.S. at 715.  To succeed in a

judicial takings claim, wrote the plurality, the plaintiff must prove that the judicial act deprived

---

    [6]  Compare 560 U.S. at 715 (plurality opinion) ("In sum, the Takings Clause bars
the State from taking private property without paying for it, no matter which branch is the
instrument of the taking."), with *id.* at 737 (Kennedy, J., concurring in part and concurring
in the judgment) ("The Court would be on strong footing in ruling that a judicial decision
that eliminates or substantially changes established property rights, which are a legitimate
expectation of the owner, is 'arbitrary or irrational' under the Due Process Clause.").

the plaintiff of an established property right. *Id.,* 560 U.S. at 726.   Justice Kennedy, joined by

Justice Sotomayor, argued that the Due Process Clause applies: "If a judicial decision, as

opposed to an act of the executive or the legislature, eliminates an established property right, the

judgment could be set aside as a deprivation of property without due process of law." *Id.,* 560

U.S. at 735.  Justice Breyer, joined by Justice Ginsburg, would have stopped short of announcing

whether either the Takings Clause or the Due Process Clause could afford relief to property

owners aggrieved by courts, since under any test, the Florida Supreme Court decision at issue did

not eliminate property rights. *Id.,* 560 U.S. at 743-44.   Because neither Justice Scalia's plurality

opinion or Justice Kennedy's concurrence commanded a majority, it is best to analyze *Stop the

Beach* using the approach of *Marks v. United States,* 430 U.S. 188, 193 (1977): "When a

fragmented Court decides a case and no single rationale explaining the result enjoys the assent of

five Justices, 'the holding of the Court may be viewed as that position taken by those Members

who concurred in the judgments on the narrowest grounds . . . .'"[7] While the rule of *Marks* need

not be applied in every case, it is the ordinary tool lower courts employ to navigate fractured

holdings of the Supreme Court. *See, e.g., United States v. Hughes*, 849 F.3d 1008, 1012 (11th

Cir., 2017); *Ezell v. Wynn*, 802 F.3d 1217, 1223 (11th Cir., 2015).   Both Justice Scalia (for the

plurality) and Justice Kennedy (concurring) agreed that the federal Constitution provides

protection against judicial decisions that eliminate established property rights.  The Scalia and

Kennedy opinions used similar terms to describe the judicial conduct they thought the

Constitution prohibited.  Even if the court were to consider the Scalia and Kennedy views in *Stop*

---

[7]  430 U.S. 188, 193 (1977) (plurality opinion) (quoting *Gregg v. Georgia*, 428 U.S.
153, 169 n.15 (1976).

*the Beach* to be *dicta,* the Eleventh Circuit has said, "dicta from the Supreme Court is not

something to be lightly cast aside." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir., 2006),

quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n. 4 (11th Cir.1997); *United States v.*

*Becton*, 632 F.2d 1294, 1296 n. 3 (5th Cir.1980) ("We are not bound by dicta, even of our own

court . . . . Dicta of the Supreme *Court are, of course, another matter.")*

    It is the established law in Florida that the state cannot take private property for public or

private use without just compensation.   Article X, § 6, Florida Constitution.   The state has

waived sovereign immunity for purposes of such claims. § 768.28, Florida Statutes.   It is the

established law in Florida that a court may not impose an equitable lien on a property absent

some showing that the property in question was acquired with or improved with ill-gotten funds

or that the owner was unjustly enriched in the acquisition or improvement of the property.   The

Florida Constitution provides that "no judgment, decree or execution shall be a lien" on "a

homestead." Fla. Const. art. X, § 4(a)(1). The Florida Supreme Court "has long emphasized that

the homestead exemption is to be liberally construed in the interest of protecting the family

home." *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1020 (Fla. 2001). The homestead

exemption should not, however, "be so applied as to make it an instrument of fraud or imposition

upon creditors." Id. "[W]here equity demands it," the Florida Supreme Court "has not hesitated to

permit equitable liens to be imposed on homesteads." *Palm Beach Sav. & Loan Ass'n v. Fishbein*,

619 So. 2d 267, 270 (Fla. 1993). To obtain an equitable lien on a Florida homestead, a plaintiff

must show by a preponderance of the evidence (1) that the defendant engaged in fraudulent or

egregious conduct and (2) that the funds from that conduct can be directly traced to the purchase

of, investment in, or improvement of the homestead. *In re Fin. Federated Title & Trust, Inc.*, 347

F.3d 880, 888 (11th Cir. 2003). In the underlying cases, the state courts of Florida deprived plaintiff of her established property rights in certain properties in the absence of evidence that she acquired the properties as a result of any unjust conduct or malfeasance. While she readily admitted her failures to render periodic accountings and borrowing from the trust which was permitted by the terms of the trust and Florida law, there was no evidence that any of the money she withdrew from the trust was applied to the acquisition of her Florida home or her inheritance of an interest in her father's homestead or her parents' personal property which they acquired themselves.

Plaintiff must be allowed to litigate her claims in federal court under an exception to the *Rooker-Feldman doctrine*. *Rooker-Feldman* only applies in circumstances where a plaintiff presents in federal court precisely the same claim that was rejected in state court. "'If a federal plaintiff present[s] [an] independent claim,' it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." Judicial takings claims such as this one constitute one of the narrow classes of takings claims that can proceed in federal court because of the exception under *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985) for claims that it would have been futile to bring in state court.

*Williamson County* imposed two ripeness requirements for plaintiffs bringing takings claims to federal court: (1) the plaintiff must have received a final decision with respect to the application of state law to the property from the agency implementing the regulation or law. In this case, the state court issued a final judgment of foreclosure and an order of sale which it refused to set aside. (2) the second prong requires the plaintiff to have sought compensation

through the procedures the state has provided for doing so.  Plaintiff has not yet filed such a

claim and, even though she plans to do so, would be unlikely to achieve redress because real

estate is unique and money damages up to the level provided by § 768.28, Florida Statutes,

would be wholly inadequate.  Fortunately, the Supreme Court has recognized that these

"ripeness" requirements are "prudential only," *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S.

725, 733-34 (1997), where "the impact of the regulations upon the petitioners is sufficiently

direct and immediate as to render the issue appropriate for judicial review at this stage'." The

Supreme Court has carved out what has been characterized as a limited exception in cases where

further attempts to obtain approval of an application for use of the property would be futile and

all economic use of the property has been eliminated by the state. *Palazzolo v. Rhode Island,* 533

U.S. 606, 618-22.  As explained in *Palazzolo*,

> [w]hile a landowner must give a land-use authority an opportunity to exercise its
> discretion, once it becomes clear that the agency lacks the discretion to permit any
> development, or the permissible uses of the property are known to a reasonable degree of
> certainty, a takings claim is likely to have ripened.

533 U.S. at 620.  In this case, the state trial court essentially wrested ownership of plaintiff's

permanent residence from her and vested title in her sisters because the judge thought it

"appropriate" without regard for **established Florida property law** which requires proof that the

owner acquired the property with ill-gotten monies and that its continued ownership would be

unjust enrichment because the owner has procured the ownership of it through fraud or egregious

conduct.  The state court never even held a hearing on the issue of whether the property was

Pamela Stuart's permanent residence and entitled to protection against forced sale under Article

X, § 4 of the Florida Constitution.  The only hearing afforded her held on March 11, 2016 and

April 13, 2016 was supposed to be on the topic of her right to trustee fees and expense reimbursements. The court denied those claims despite evidence consisting of a 130 page timeline of tasks she undertook as trustee and summaries based upon original receipts of trustee expenses (notably, the successor trustee selected by Catherine Ryan and Deborah Stuart's attorney never even looked at the receipts).

In this case, the Tennis Townhouses got its claim satisfied without the usual niceties of having a lawsuit authorized by its Board of Directors along with a finding that a collection action was in the best interests of the corporation. Those requirements are in place and mandatory under **established Florida property law** in order to protect the corporation and the owners of the condominium residences under its control. § 718.104(7), Florida Statutes. The state court that was the obvious place to challenge the failure to adhere to the required Declaration of Condominium procedures essentially ignored them. It made no findings and merely brushed aside the allegations that the Declaration of Condominium's requirements had been ignored and the witnesses produced to establish them. The claim of the Tennis Townhouses in its case was a foundational requirement for jurisdiction in the state court and for the application of the inequitable lien imposed by the court in the prior case of *Ryan v. Stuart*. If the claim of the Tennis Townhouses had been dismissed as it should have been either because of the failure of the corporation to follow its own procedures or for filing a false affidavit, the cross claim of Catherine Ryan and Deborah Stuart would have been subject to dismissal as well. Instead, the state court ignored due process requirements, provided no opportunity for discovery for Pamela Stuart since she did not formally become a party in the case until less than a month before the

27

court held a hearing on a final judgment of foreclosure,[8] and effected an unconstitutional judicial taking of her property without due process.   Plaintiff thus is not seeking an appeal in this court of the state court action but rather a judgment that the state court action itself was invalid, conducted without subject matter jurisdiction, and that the state court judgment based on it was an unconstitutional taking of plaintiff's homestead and permanent residence.

The Tennis Townhouses claim that the complaint must be dismissed under the *Rooker-Feldman* doctrine[9] and cite *Freeman v. H&G Properties, LLC,* Case No. 4:14cv119-RH/CAS (N.D. Fla. 2014) in support of their argument. The *Freeman* case involved *pro se* plaintiffs whose house had been foreclosed upon by their mortgage company. No unconstitutional judicial taking or 42 U.S.C. § 1983 claim was alleged in that case as it is in this one. The *Freeman* case was purely an attempt by the Freemans to void a foreclosure judgment in favor of their mortgage company. The Tennis Townhouses also cite *Aboyade-Cole Bey v. BankAtlantic*,  No. 6:09-cv-1572-Orl-31GJK, 2010 WL 3069102 (M.D. Fla. Aug. 2, 2010) (finding the court had no jurisdiction to hear plaintiff's case under *Rooker-Feldman* because the case was, "at its core, " an attempt to revisit a state-court foreclosure judgment). In contrast, plaintiff in this case is seeking federal court involvement because the core of her case is the allegation that the state court ignored established Florida law both with respect to property law and procedural matters to wrest ownership of her permanent residence and domicile from her along with her interest in her

---

[8]  Had she been afforded her right to discovery under the Florida Rules of Civil Procedure, Pamela Stuart could have served a request for admission or an interrogatory that would have established the failure of the Board of Directors to authorize the lawsuit.

[9]  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 44 S.Ct. 149 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983).

parents' property that she acquired by operation of law and descent and under the terms of their wills and that she has a well-founded basis for concluding that she has no viable remedy in the US Supreme Court or the Florida state courts even though she is proceeding in those venues as required.

As noted above, the *Rooker-Feldman* doctrine only applies in circumstances where a plaintiff presents in federal court precisely the same claim that was rejected in state court. "'If a federal plaintiff present[s] [an] independent claim,' it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." *Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011) (alteration in original) (quoting *Exxon Mobil*, 544 U.S. at 282) (internal quotation marks omitted) (citing *In re Smith*, 349 F. App'x 12, 18 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part)).   In this case, Pamela Stuart has filed an independent claim of a judicial taking that alleges that state officials (judges) violated her federally protected rights. *See, Van Poyck v. McCollum*, 646 F.3d 865 (11th Cir. 2011).   Had the Tennis Townhouses not filed an *ultra vires* claim, the Tennis Townhouses might have been able to say that Pamela Stuart had no grounds to challenge its foreclosure claim and that a federal cause of action was inextricably intertwined with the foreclosure claim.   This is not the case because of the actions of the Tennis Townhouses which subverted Pamela Stuart's defense and the trial court judge who ignored the actions.   This is not just an effort to avoid a foreclosure that otherwise was merited.

The Tennis Townhouses' citation to *Distant v. Bayview Loan Servicing, LLC*, 2010 WL 1249129 (S.D. Fla. 2010) is equally unavailing.   In that case, the court said, "Although plead as conspiracy claims ..., Plaintiff is clearly asking this Court to invalidate the state court action by

ruling that the state court foreclosure judgment is somehow void. Under the *Rooker-Feldman* doctrine, [defendant] is correct that this Court lacks subject matter jurisdiction, as Plaintiff seeks a de facto appeal of a previously litigated state court matter." The three cases relied upon all feature a foreclosure action in which judgment on the merits was obtained and probably was correct. That is not the case here. The Tennis Townhouses is correct in that the State Court considered[10]the issues and proceeded forward with rendering judgment in favor of the Association. Rather, the trial court saw the judgment it wanted to issue and issued it without regard for affording Pamela Stuart due process (or, really, ANY process at all).

The Tennis Townhouses studiously avoid mentioning the fact that this is not a straight foreclosure case but rather a federal claim under 42 U.S.C. § 1983 alleging a judicial taking in violation of the federal and Florida Constitutions. Under *Williamson County.* a takings claim is ripe for adjudication in federal court, even absent state litigation, when the procedure a state provides for seeking compensation is "unavailable or inadequate." 473 U.S. at 197. In the case of Florida, the state law that provides for compensation for unconstitutional takings, § 768.28, Florida Statutes, is inadequate on its face in this situation. It provides for a maximum amount of compensation of $200,000 for a tort committed by the state with the opportunity for a private petition to the state legislature to cover any inadequacy. In some states like Florida, a takings claim should be able to proceed in federal court, even absent state litigation, because an inverse condemnation action only would be permitted against entities with eminent domain power—a category which generally does not include state judges or courts. So, a judicial takings plaintiff

---

[10]   "Considered" is probably too strong a word in this context – perhaps "was presented with" is closer to the truth.

would be excused from *Williamson County*'s state-litigation requirement and the *Rooker-Feldman* claim preclusion, since further state litigation would be literally impossible or a fool's errand. *See Clajon Production Corp. v. Patera,* 70 F.3d 1566, 1575 (10th Cir. 1995).

Federal courts have used the futility exception to reach the merits of takings claims in which the state judicial system played a central role in the governmental action giving rise to the takings claim in the first place. A memorable example is the Ninth Circuit's en banc decision in the aptly titled case of *Washington Legal Foundation v. Legal Foundation of Washington,* 271 F.3d 835 (9th Cir. 2001) (en banc), *aff'd sub nom. Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003). The plaintiffs in that case challenged the Washington Supreme Court's IOLTA program as an unconstitutional taking of the interest on lawyers' trust accounts. Because any state inverse condemnation suit would ultimately be reviewed by the very same state court system responsible for the alleged taking, such a proceeding would be futile—it would fall into the class of "unavailable or inadequate" state procedures that, under *Williamson County,* plaintiffs are not required to pursue before bringing their takings claims in federal court. By the same token, in this case, the state court system would be called upon to review the unconstitutional actions of the same court that it refused to correct when that court acted unconstitutionally in ruling on Pamela Stuart's claims in the previous case while ignoring established Florida property law. If a judicial takings claim, or a due process claim arising from a state court decision, is to be cognizable at all—and *Stop the Beach Renourishment* dictates that it must be—the proper place for that claim to be heard is in federal court.

The Tennis Townhouses claim that *res judicata* bars plaintiff's claims must fail for the same reason its *Rooker-Feldman* argument is unavailing. Plaintiff has presented new and

different claims that are distinctly federal in nature, named the Clerk of the Court and the State of Florida that were not parties to the earlier action, and is not attempting to relitigate a case against the same parties.  The abstention argument under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and *Beepot v. J. P. Morgan Chase National Corp. Serv., Inc.*, Case No. 3:10-cv-423-J-34TEM (M.D. Fla.  September 30, 2011 is somewhat different.  In viewing the six factors set forth in *Colorado River* for when a federal court should abstain from considering a case while parallel proceedings advance, plaintiff has the following comments:

       1.     Whether one of the courts has assumed jurisdiction over the property

            The Circuit Court assumed jurisdiction over property when it lacked subject matter jurisdiction pursuant to Rule 1.120(g) of the Florida Rules of Civil Procedure. Pamela Stuart's homestead, her one-third interest in her father's homestead that was owned jointly by Ms. Stuart and her sisters, and her parents' personal property were not properly before the court.

       2.     The inconvenience of the federal forum

            This factor is not applicable in this case.  The only party who finds it inconvenient to litigate before the Southern District of Florida is the plaintiff who has been ousted from her Vero Beach home and prevented from using electronic mail service (so far -- her motion to use it is pending).

       3.     The potential for piecemeal litigation

If this court were to determine that a judicial taking had occurred and reverse the orders that unconstitutionally appropriated plaintiff's property, that would end the matter.  On simply a percentage basis, it is unlikely that the Supreme Court of the United States will grant the

certiorari petition and plaintiff is aware that the Supreme Court tends to hear a small number of cases litigated by a handful of members of the Supreme Court bar. It is highly unusual for that Court to accept a *pro se* case other than ones from prisoners such as *Gideon v. Wainwright*.

    4.    the order in which the fora obtained jurisdiction

Plaintiff filed this case shortly after the Circuit Court ordered the sale of her permanent residence and sought a temporary restraining order to prevent the sale. The District Court which graciously considered the motion on the same day it was filed was not in possession of the full factual record on which to make a determination and simply denied the motion. Plaintiff filed a petition for writ of certiorari in the US Supreme Court within the 90 days permitted by that court's rules on July 9, 2018. Responses from defendants are not due until August 17, 2017. Action on the petition will not come prior to the first Monday in October. Plaintiff filed a notice of appeal with the Fourth District Court of Appeals in the *Tennis Townhouses v. Stuart* case which was docketed on June 25, 2018 and a third amended notice of appeal on July 28, 2018. The initial brief by appellant has not yet been filed. Plaintiff has been asked by that court to provide a statement regarding jurisdiction indicating that the state court of appeals has some doubt about its jurisdiction due to multiple notices of appeal being filed.

    5.    Whether state or federal law will be applied.

The law to be applied with respect to the takings and due process claims is federal. The claim that the state courts usurped plaintiff's property in violation of established Florida property law will require examination of Florida law to determine whether it was established and whether the actions by the state courts complained of were contrary to established Florida law.

    6.    The adequacy of the state court to protect the parties' rights.

Ordinarily, a state court system would be presumptively competent to handle property claims and indeed are the usual places where such claims are litigated. Prior to the underlying cases plaintiff had not had occasion to litigate in the Circuit Court of Indian River County. She had heard from friends that they had not received a respectful or adequate hearing in their own cases (one friend was jailed by Judge Kanarek in a divorce case, for example). In forty five years of law practice, this was the first and only case in which plaintiff has filed a motion to disqualify a trial court. The motion which plaintiff believes was well-founded in light of the trial judge's opinion finding her conduct in connection with her father's trust "reprehensible"(contrary to legal precedents for what must be in evidence to establish reprehensibility) rather than merely mistaken, erroneous or negligent, was denied twice and the court of appeals denied her petition for a writ of prohibition without opinion. The same court of appeals upheld the judgment in the first case that was rife with procedural and legal errors in an opinion that misstated the facts and came up with entirely new law (that Florida's Constitutional homestead protection may be waived by entering into a federally guaranteed mortgage on an unrelated property in another jurisdiction). Accordingly, plaintiff does not have confidence in the state courts to protect her federally guaranteed rights and hopes that this court is alarmed by what happened to her.

So, on the merits, plaintiff submits that the abstention argument should fail in this case. In the event that the court is of a different view and wishes to see how the other cases proceed, plaintiff urges the court to retain jurisdiction but stay proceedings until an appropriate time determined by the court.

Plaintiff pro se certifies that the facts stated in the foregoing opposition to the Tennis Townhouses motion to dismiss are true and correct under penalties of perjury pursuant to 28

U.S.C. § 1746.

WHEREFORE, for the foregoing reasons, Plaintiff *pro se* respectfully requests that the

Tennis Townhouses' motion to dismiss be denied.

Respectfully submitted,

PAMELA B. STUART
Plaintiff *pro se*
P.M.B. #8202
6001 Highway A1A
Indian River Shores, FL 32963-1014
(202) 999-2374 (cell)
pamstuart@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have sent the original of the foregoing motion to the Clerk of

the Court for filing via Federal Express and that I am serving a copy on counsel via electronic

mail at their email addresses provided on their motions since I am not yet permitted to use the

court's CM/ECF system this 7th day of August, 2018.

PAMELA B. STUART

copies to:
Sean A. Mickley, Esq.
Gould, Cooksey Fennell, PA
979 Beachland Blvd.
Vero Beach, FL 32963
smickley@gouldcooksey.com

Counsel for defendant, The Tennis Townhouses Condominium Association, Inc.

35

C. Douglas Vitunac, Esq.
Collins, Brown, Barkett, Garavaglia and Lawn, Chrtd.
756 Beachland Blvd.
Vero Beach, FL 32963
dvitunacpleadings@verolaw.com

      Counsel for Defendants Catherine Ryan and Deborah Stuart

Jason L. Odom, Esq.
Gould, Cooksey Fennell, PA
979 Beachland Blvd.
Vero Beach, FL 32963
jodom@gouldcooksey.com

      Counsel for Defendant Jeffrey R. Smith, Clerk of the Circuit Court for Indian River
County, Florida

Maria Guitian Barker, Esq.
Assistant Attorney General
State of Florida
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, FL 33301
maria.guitianbarker@mMyFloridalegal.com

      Counsel for the State of Florida



1715 Pmma St NW
Washington DC 20016



USPS INSPECTED
BY:

Room #1016
Clerk's Office
US District Court
101 South US Highway
Ft Pierce, FL 34950

U.S. POSTAGE PAID
WASHINGTON, DC
20016
AUG 18
AMOUNT
$3.31
R2305K138338-28
1000
34950