

| Form **706** (Rev. July 1998) Department of the Treasury Internal Revenue Service | **United Stat_ Estate (and Generation-Skipping _sfer) Tax Return** Estate of a citizen or resident of the United States (see separate instructions). To be filed for decedents dying after December 31, 1997, and before January 1, 1999. For Paperwork Reduction Act Notice, see page 1 of the separate instructions. | OMB No. 1545-0015 |

**Part 1 — Decedent and Executor**

| 1a Decedent's first name and middle initial (and maiden name, if any) | 1b Decedent's last name | 2 Decedent's social security no. |
|---|---|---|
| J. Raymond | Stuart | ███████ 0540 |

| 3a Legal residence (domicile) at time of death (county, state, and ZIP code, or foreign country) | 3b Year domicile established | 4 Date of birth | 5 Date of death |
|---|---|---|---|
| Indian River, Florida | 1987 | ███ /09 | January 18, 1998 |

| 6a Name of executor (see page 2 of the instructions) | 6b Executor's address (number and street including apartment or suite no. or rural route; city, town, or post office; state; and ZIP code) |
|---|---|
| Pamela B. Stuart | |
| 6c Executor's social security number (see page 2 of the instructions) ███████ 7708 | 5115 Yuma Street, NW Washington, DC  20016-4336 |

| 7a Name and location of court where will was probated or estate administered | 7b Case number |
|---|---|
| N/A | |

8 If decedent died testate, check here ▶ [X] and attach a certified copy of the will.   9 If Form 4768 is attached, check here ▶ [X]

10 If Schedule R-1 is attached, check here ▶ ☐

**Part 2 — Tax Computation**

| | | | | |
|---|---|---|---|---|
| 1 | Total gross estate less exclusion (from Part 5, Recapitulation, page 3, item 12) . . . . . . . . | 1 | 2,776,033 | 00 |
| 2 | Total allowable deductions (from Part 5, Recapitulation, page 3, item 23) . . . . . . . . | 2 | 2,151,033 | 00 |
| 3 | Taxable estate (subtract line 2 from line 1) . . . . . . . . . . . . . . | 3 | 625,000 | 00 |
| 4 | Adjusted taxable gifts (total taxable gifts (within the meaning of section 2503) made by the decedent after December 31, 1976, other than gifts that are includible in decedent's gross estate (section 2001(b))) | 4 | --- | |
| 5 | Add lines 3 and 4 . . . . . . . . . . . . . . . . . . . | 5 | 625,000 | 00 |
| 6 | Tentative tax on the amount on line 5 from Table A on page 10 of the instructions | 6 | 202,050 | 00 |
| 7a | If line 5 exceeds $10,000,000, enter the lesser of line 5 or $17,184,000. If line 5 is $10,000,000 or less, skip lines 7a and 7b and enter -0- on line 7c. | 7a | | |
| b | Subtract $10,000,000 from line 7a | 7b | | |
| c | Enter 5% (.05) of line 7b | 7c | | |
| 8 | Total tentative tax (add lines 6 and 7c) | 8 | | |
| 9 | Total gift tax payable with respect to gifts made by the decedent after December 31, 1976. Include gift taxes by the decedent's spouse for such spouse's share of split gifts (section 2513) only if the decedent was the donor of these gifts and they are includible in the decedent's gross estate (see instructions) | 9 | | |
| 10 | Gross estate tax (subtract line 9 from line 8) . . . . . . . . . . . . . | 10 | 202,050 | 00 |
| 11 | Maximum unified credit against estate tax . . . . . . . . | 11 | 202,050 | 00 |
| 12 | Adjustment to unified credit. (This adjustment may not exceed $6,000. See page 7 of the instructions.) | 12 | | |
| 13 | Allowable unified credit (subtract line 12 from line 11) . . . . . . . . | 13 | 202,050 | 00 |
| 14 | Subtract line 13 from line 10 (but do not enter less than zero) . . . . . . | 14 | 0 | 00 |
| 15 | Credit for state death taxes. Do not enter more than line 14. Figure the credit by using the amount on line 3 less $60,000. See Table B in the instructions and attach credit evidence (see instructions) | 15 | 0 | 00 |
| 16 | Subtract line 15 from line 14 . . . . . . . . . . . . . . | 16 | 0 | 00 |
| 17 | Credit for Federal gift taxes on pre-1977 gifts (section 2012) (attach computation) | 17 | | |
| 18 | Credit for foreign death taxes (from Schedule(s) P). (Attach Form(s) 706-CE.) | 18 | | |
| 19 | Credit for tax on prior transfers (from Schedule Q) . . . . . . . . | 19 | | |
| 20 | Total (add lines 17, 18, and 19) . . . . . . . . . . . . . | 20 | | |
| 21 | Net estate tax (subtract line 20 from line 16) . . . . . . . . . . | 21 | | |
| 22 | Generation-skipping transfer taxes (from Schedule R, Part 2, line 10) . . . . | 22 | | |
| 23 | Total transfer taxes (add lines 21 and 22) . . . . . . . . . . . | 23 | 0 | 00 |
| 24 | Prior payments. Explain in an attached statement . . . . . . | 24 | | |
| 25 | United States Treasury bonds redeemed in payment of estate tax . . . . | 25 | | |
| 26 | Total (add lines 24 and 25) . . . . . . . . . . . . . . | 26 | 0 | 00 |
| 27 | Balance due (or overpayment) (subtract line 26 from line 23) . . . . . . | 27 | | |

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer other than the executor is based on all information of which preparer has any knowledge.

| _Pamela B. Stuart_ (Signature(s) of executor(s)) | | 4/16/99 Date |
|---|---|---|
| _Michael O. Sproul_ (Signature of preparer other than executor) | 55 Hilton Avenue Garden City, NY  11530 Address (and ZIP code) | 4/16/99 Date |

Cat. No. 20548R

Form 706 (Rev. 7-98)

**Estate of:**   J. Raymond Stuart

## SCHEDULE J—Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims

Note: *Do not list on this schedule expenses of administering property not subject to claims. For those expenses, see the instructions for Schedule L.*

If executors' commissions, attorney fees, etc., are claimed and allowed as a deduction for estate tax purposes, they are not allowable as a deduction in computing the taxable income of the estate for Federal income tax purposes. They are allowable as an income tax deduction on Form 1041 if a waiver is filed to waive the deduction on Form 706 (see the Form 1041 instructions).

| Item number | Description | Expense amount | Total amount |
|---|---|---|---|
| 1 | **A. Funeral expenses:**   Indian River Cremations<br>   Memorial Service - Vero Beach Community Church<br>   Funeral Reception Expense<br>   Cemetery Expenses and Lot | 745.00<br>700.00<br>1,160.00<br>1,454.00 | |
| | Total funeral expenses . . . . . . . . . . . . | | 4,059.00 |
| | **B. Administration expenses:** | | |
| 1 | Executors' commissions—amount estimated/agreed upon/paid. (Strike out the words that do not apply.) | | 70,000.00 |
| 2 | Attorney fees—amount estimated/agreed upon/paid (Strike out the words that do not apply.) . . . | | 79,000.00 |
| 3 | Accountant fees—amount estimated/agreed upon/paid (Strike out the words that do not apply.) . . | | 5,000.00 |
| 4 | Miscellaneous expenses: | Expense amount | |
| | Appraisal Fees | 850.00 | |
| | DMV Fees | 147.00 | |
| | Obituary Notice | 318.00 | |
| | Total miscellaneous expenses from continuation schedules (or additional sheets) attached to this schedule . . . . . . . . . . | | |
| | Total miscellaneous expenses . . . . . . . . . . . . | | 1,315.00 |
| | **TOTAL.** (Also enter on Part 5, Recapitulation, page 3, at item 13.) . . . . . . . . . . | | 159,374.00 |

(If more space is needed, attach the continuation schedule from the end of this package or additional sheets of the same size.)
(See the instructions on the reverse side.)

**Schedule J— Page 23**



PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523     DCA CASE NO. 4D16-3921





**First American Title Insurance Company**
**National Commercial Services**
1801 K Street NW, Suite 200K • Washington, DC 20006

**Final Settlement Statement**

| | |
|---|---|
| Property: 1750 N Street, NW, Washington, DC | File No: NCS-370495A-DC72 |
| Lot: 70 | Officer: Josh E. Slanjes |
| | New Loan No: |
| | Settlement Date: 12/14/2009 |
| | Disbursement Date: |
| | Print Date: 12/14/2009, 4:13 PM |

Buyer:  American Society For Microbiology
Address: 1752 N Street, NW, Washington, DC 20036
Seller:  The Stuart Building, L.L.C.
Address:

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 2,500,000.00 | | Total Consideration | | 2,500,000.00 |
| | | | | |
| | | **Adjustments:** | | |
| | 100,000.00 | Earnest Money Deposit | | |
| | 50.29 | Interest Earned on IBA ████ | | |
| | | | | |
| | | **Prorations:** | | |
| | 4,055.52 | First Half 2010 Taxes 10/01/09 to 12/14/09 @$9952.47/semi | 4,055.52 | |
| | | | | |
| | | **Commission:** | | |
| 75,000.00 | | Commission Paid at Settlement to CrossPartners | | |
| 75,000.00 | | Commission Paid at Settlement to Lincoln Property Company | | |
| | | | | |
| | | **Title/Escrow Charges to:** | | |
| 350.00 | | Title Search/Exam/Update/Copies - First American Title Insurance Company National Commercial Services | | |
| 1,000.00 | | Closing/Escrow Fee - First American Title Insurance Company National Commercial Services | | |
| 8,625.00 | | Owner Title Policy and Endorsements - First American Title Insurance Company National Commercial Services | | |
| 72,500.00 | | Deed - Transfer and Recordation Tax - First American Title Insurance Company National Commercial Services | | |
| 250.00 | | Estimated Recording Fees - First American Title Insurance Company National Commercial Services | | |
| | | | | |
| | | **Disbursements Paid:** | | |
| | | Bill to DC Water and Sewer Authority | 37.34 | |
| | | Payoff - Primary Loan to EagleBank | 543,820.49 | |
| | | Payoff - Reserve HELOC to EagleBank | 13,629.23 | |
| | | Payoff to Marion C. Stuart Revocable Trust | 200,000.00 | |
| | | Payoff to Wilshire | 485,387.90 | |
| | | Legal Fees to Bregman, Berbert, Schwartz & Gilday LLC | 45,000.00 | |
| | | Payoff to American Express | 5,770.95 | |
| | | Payoff to PLA Card Services | 18,442.24 | |
| | | Payoff to United Bank | 5,322.27 | |
| | | Payoff to United Bank | 9,985.00 | |
| | | Payoff to William L. Ace | 174,490.00 | |
| | | Payoff to Don Hawkins and Cynthia Elliott | 10,000.00 | |
| | | | | |
| | 2,628,639.19 | Cash (X From) ( To) Borrower | | |
| | | Cash (X To) ( From) Seller | 985,131.06 | |
| | | | | |
| 2,732,725.00 | 2,732,725.00 | Totals | 2,500,000.00 | 2,500,000.00 |

Initials: _____   *PBS for the Stuart Building LLC*

Page 1 of 2





**HomeSaver**

**A Hardest Hit Fund Initiative**

District of Columbia Housing Finance Agency

## RESTORE ASSISTANCE
## NOTICE OF APPLICANT INELIGIBILITY

01/09/2019

Applicant Name: Pamela Stuart

Property Address: 5115 Yuma Street. NW

Washington, DC  20016

Dear Applicant:

This letter is to notify you that you are INELIGIBLE for Restore Assistance through the District of Columbia Housing Finance Agency's HomeSaver Program due to one or more of the following reasons:

- ☐ Delinquent property related expense amount is less than $2,500.00
- ☐ Delinquent property related expense amount is greater than $60,000.00
- ☑ Property is not your primary residence
- ☐ Head of household or other person(s) applying for assistance is/was not named on the Deed
- ☐ Unable to determine qualifying hardship
- ☐ Income is greater than $140,640.00
- ☐ Monthly property expense payment is unsustainable (greater than 38% of your gross income)
- ☐ Unsatisfactory payment history prior to Hardship
- ☐ Other _____



Trinity Court Studio
1066
12 1 44





# Pamela B. Stuart

ATTORNEY AND COUNSELLOR AT LAW

The J. Raymond Stuart Building

1750 N Street, N.W.

Washington, D.C. 20036

Telephone: (202) 835-2200

TELECOPIER
202-835-2202
E-MAIL: pamstuart@aol.com
http://www.pamstuartlaw.com

MEMBER DC, FL, MD, NY, AND VA BARS



*4620-0625*

# Schwab One® Trust Account Application

*charles* SCHWAB

- Use this application to open a Schwab One Trust account and/or to open a Schwab Bank High Yield Investor Checking® Trust ("High Yield Investor Checking Trust") account with Charles Schwab Bank. Testamentary Trust accounts are not eligible for High Yield Investor Checking Trust.
- Do not use this application to add or remove Trustees from an existing Schwab One Trust account or High Yield Investor Checking Trust account. Contact us for the appropriate form.
- Minimum $1,000 deposit required to open a Schwab One Trust account. The deposit minimum is waived if you open a High Yield Investor Checking Trust account, if you establish a monthly transfer of at least $100 through either Direct Deposit or Schwab MoneyLink® or if you open a Schwab Bank Invest First™ Visa Signature® credit card account. If reregistering from an existing Schwab account, the deposit minimum does not apply.

www.schwab.com
1-800-435-4000 (inside the U.S.)
+1-415-667-8400 (outside the U.S.)
+1-888-686-6916 (multilingual services)
Page 1 of 4

## 1. Establish Your Schwab One Trust Account

**Check one:**

[X] Open a new Schwab One Trust account. (Complete Sections 1–9.)

[ ] Reregister your existing Schwab or Schwab One account to a Schwab One Trust account and keep the same account number if all the current account holders are also the Trustees. (Write the account number below and complete Sections 1–5 and 8–9.)

Note: If you wish to keep the same account number and all the current account holders are not also the Trustees, you must enclose a letter signed by all current account holders authorizing this request.

| Schwab or Schwab One Account Number | | | | | | — | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

**Important Note for POA and Options Trading**

If your existing account has a Power of Attorney (POA) which you wish to retain on your Trust account, all Trustees of the Trust must complete and sign a new Power of Attorney. If your account has been approved for options trading and you would like to trade options in your Trust account, or if there are options in your existing Schwab or Schwab One account, all Trustees must complete and sign a new Schwab Option, Margin and Short Capabilities Application.

## 2. Trust Information (Required)

We respect your privacy. Charles Schwab & Co., Inc. ("Schwab") will use the information you provide to open and service your accounts, communicate with you and provide information about products and services. Read about Schwab's privacy policy at www.schwab.com/privacy.

**Indicate the Type of Trust:**

[ ] Revocable Living Trust where the Trustor(s), Trustee(s) and Current Beneficiary(ies) are all the same individuals*

[ ] Other Revocable Living Trust*   [ ] Irrevocable Living Trust*   [ ] Testamentary Trust*   [X] Other*  _IRREV. CREDIT SHELTER_

*Please read the notarization of Trustee signature(s) is required in Section 9, page 4.

| Trust Name (Decedent's name if a Testamentary Trust) _THE J. RAYMOND STRALT CREDIT SHELTER TRUST_ | Date of Trust _7-2-90_ |
|---|---|
| Trust Tax ID Number (If Revocable Living Trust, use Grantor's Social Security number) _58-6396293_ | By Whom, If Anyone, Is It Revocable and Amendable? |
| Name of Trustee/Co-Trustee _PAMELA B STRALT_ | Name of Trustee/Co-Trustee |
| Name of Trustee/Co-Trustee | Name of Trustee/Co-Trustee |
| Trustor/Grantor/Settlor Name | Trustor/Grantor/Settlor Name |

| Has the Original Trust Agreement Been Amended or Restated? [ ] Yes [ ] No | Date(s) of Amendment(s) or Restatement(s) | Trust is Governed by the Laws of the State of (enter state): |
|---|---|---|
| Trust Mailing Address _101 S CATALINA CT, VERO BEACH, FL 32963_ | | City, State, Zip Code |

Is the Trust a 10% Shareholder of a Publicly Traded Company?   [X] No   [ ] Yes   (If "yes," enter company name _____ and trading symbol _____ )

| Trust Annual Income: | [ ] Under $15,000 | [ ] $15,000–$24,999 | [ ] $25,000–$49,999 | [X] $50,000–$99,999 | [ ] $100,000 or More | |
|---|---|---|---|---|---|---|
| Trust Liquid Net Worth: | [ ] Under $25,000 | [ ] $25,000–$49,999 | [ ] $50,000–$99,999 | [ ] $100,000–$249,999 | [ ] $250,000 or More | Specify: _640,000_ |
| Overall Investment Objective of Trust Account: | [ ] Capital Preservation | [X] Income | [X] Growth | [ ] Speculation | | |

All statements and account-related correspondence will be mailed to the Trust mailing address listed above. If you would like duplicate statements mailed to other parties, please attach a letter with mailing instructions.

---

**Brokerage Products: Not FDIC-Insured • No Bank Guarantee • May Lose Value**

| FOR CHARLES SCHWAB USE ONLY: | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Branch Office and Account Number | | | | | — | | | | — | |

IW
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.   FTA 06957 (0309-8370)   APP10600-33 (04/09)
COM31873-05

0 0 0 0 0 0

## 3. Trustee Information

All Trustees who are to conduct business in the account must provide this information. If there are more than two Trustees who are to conduct business in the account, photocopy the Account Application, complete Sections 3, 8 and 9 for each additional Trustee and attach the photocopies to the original Account Application. As required by federal law, Schwab will use the information provided to verify your identity.

### Trustee

**Name (First)** PAMELA (Middle) J (Last) STAHLT

**Home/Legal Street Address (no P.O. boxes)** 11 JOHNS ISLAND DR #7

**City, State, Zip Code** VERO BEACH, FL 32963

**Previous Home Street Address, City, State, Zip Code (if at current address for less than five years)**

**Mailing Address, City, State, Zip Code (if different from above; P.O. boxes may be used)** 515 YUMA ST NW WASH, D.C. 20016

**Home Telephone Number** (772) 231-3370   **Business Telephone Number** (   )   **Cellular Telephone Number** (202) 255-1680

**Email Address\* (Required to access the account through the web.)** PAMSTAHLT@AOL.COM

**Social Security/Tax ID Number** 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   **Date of Birth (mm/dd/yyyy)** 3-13-44   **Mother's Maiden Name**

**ID Number** 501-3694   ☐ Driver's License ☐ State ☐ Military

**Place of Issuance** WASH, D.C.   **Expiration Date** 3-13-93

**Are you known by any other name? Specify:**

**Country(ies) of Citizenship (Must list all.)** ☑ USA ☐ Other:   **Country of Legal Residence** ☑ USA ☐ Other:

#### Securities industry regulations require that we collect the following information:

**Check only one:**
☐ Employed ☑ Self-employed ☐ Retired ☐ Student ☐ Homemaker ☐ Not employed

**Employer** ATTY   **Occupation/Position**

**Business Street Address**   **City, State, Zip Code**

**Are you affiliated with or employed by a stock exchange or member firm of an exchange or FINRA, or a municipal securities broker-dealer?**
☑ No ☐ Yes (If "yes," you must attach a letter from your employer approving the establishment of your account when submitting this application.)

**Are you a director, 10% shareholder or policy-making officer of a publicly held company?**
☑ No ☐ Yes (If "yes," enter company name _____ and trading symbol _____.)

**Marital Status** ☑ Single ☐ Married ☐ Divorced ☐ Widowed   **Number of Dependents**

**Investment Experience** ☐ None ☐ Limited ☑ Good ☐ Extensive

### Co-Trustee

**Name (First)** (Middle) (Last)

**Home/Legal Street Address (no P.O. boxes)**

**City, State, Zip Code**   **Years at Address**

**Previous Home Street Address, City, State, Zip Code (if at current address for less than five years)**

**Mailing Address, City, State, Zip Code (if different from above; P.O. boxes may be used)**

**Home Telephone Number**   **Business Telephone Number**   **Cellular Telephone Number**

**Email Address\* (Required to access the account through the web.)**

**Social Security/Tax ID Number**   **Date of Birth (mm/dd/yyyy)**   **Mother's Maiden Name**

**ID Number** ☐ Driver's License ☐ State ☐ Military

**Place of Issuance**   **Expiration Date**

**Are you known by any other name? Specify:**

**Country(ies) of Citizenship (Must list all.)** ☐ USA ☐ Other:   **Country of Legal Residence** ☐ USA ☐ Other:

#### Securities industry regulations require that we collect the following information:

**Check only one:**
☐ Employed ☐ Self-employed ☐ Retired ☐ Student ☐ Homemaker ☐ Not employed

**Employer**   **Occupation/Position**

**Business Street Address**   **City, State, Zip Code**

**Are you affiliated with or employed by a stock exchange or member firm of an exchange or FINRA, or a municipal securities broker-dealer?**
☐ No ☐ Yes (If "yes," you must attach a letter from your employer approving the establishment of your account when submitting this application.)

**Are you a director, 10% shareholder or policy-making officer of a publicly held company?**
☐ No ☐ Yes (If "yes," enter company name _____ and trading symbol _____.)

**Marital Status** ☐ Single ☐ Married ☐ Divorced ☐ Widowed   **Number of Dependents**

**Investment Experience** ☐ None ☐ Limited ☐ Good ☐ Extensive

\*By providing your email address, you consent to receiving email from Schwab. Information about opting out of certain email communications is provided at www.schwab.com/privacy.

## 4. Brokerage Features

### Margin

A margin account allows you to borrow against your eligible securities. You can use a margin loan to purchase additional securities, to sell securities short, to obtain short-term financing or as a source of overdraft protection. To better understand the benefits and risks of margin, please refer to the Schwab Margin Overview and Risk Disclosure Statement and the Schwab One® Account Agreement. To learn more about margin, we encourage you to use the educational materials available at www.schwab.com/margin_education. Your Trust Agreement must specifically authorize the Trustee(s) to establish a margin account. Check below if you do not wish to have the margin feature or if your Trust Agreement does not authorize margin borrowing.

Margin is automatically included, unless you check this box. ☐ Do NOT add margin.

IW
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.   FTA 06957 (0309-8370)   APP10800-33 (04/09)
COM31873-05

## 4. Brokerage Features (Continued)

**Cash Features**

The Schwab One® Interest feature is automatically included on your account. This feature pays interest on the uninvested cash in your account. Rates are set by Schwab and are generally based on your Household Balances.

Clients with $500,000 or more in Household Balances may request a sweep money market fund as an alternative by speaking to their Schwab representative. The yields of sweep money market funds are generally higher than interest rates offered by either Schwab or Schwab Bank.

Schwab's Cash Features are further described in Schwab's "Cash Features Disclosure Statement for Individual Investors," which you will receive at account opening. Please contact Schwab for current information on interest rates and money market yields.

**Enrollment for Electronic Trade Confirmations ("eConfirms")**

If you have provided your email address, you will soon receive an email that will tell you how to receive paperless trade confirmations and the associated prospectuses and disclosures by email. Until we receive a response to our email, you will receive paper trade confirmations and disclosures through the U.S. mail. You may enroll in our electronic delivery services or return to delivery through the U.S. mail at any time by indicating your preferences online.

☐ No, at this time I do not want eConfirms.

## 5. Cash Management

Please select one of the following options for your everyday cash management needs. Both solutions offer great value, including unlimited checkwriting, unlimited ATM fee rebates, no monthly fees, free standard checks, free bill pay and a Visa® Platinum Check Card. Please note that Visa Check Cards are not available on Testamentary Trust accounts.

A. ☐ **Schwab Bank High Yield Investor Checking®** Trust Account.*† Complete the attached Schwab Bank High Yield Investor Checking Trust Account Application. A separate, full-featured, interest-bearing checking account will be linked to your Schwab One Trust account.

*You must be a U.S. resident or a resident alien currently residing in the U.S. to open a High Yield Investor Checking Trust account. Testamentary Trust accounts are not eligible for High Yield Investor Checking Trust.

†Charles Schwab Bank is an FDIC-insured depository institution affiliated with Schwab. Funds deposited in a High Yield Investor Checking Trust account are insured by the Federal Deposit Insurance Corporation up to $100,000 when aggregated with all other deposits held by you in the same capacity at Schwab Bank.

B. ☐ **Schwab One Trust Checks and Visa Platinum Check Cards.** (Complete ONLY if you have NOT checked the box for High Yield Investor Checking Trust account.) Note: Upon receipt of your Schwab One Trust starter checks, you may contact a Schwab representative to order additional customized checks at no cost.

Select one of the following options to access the cash in your Schwab One Trust account:

☑ Checks only
☐ Checks and Visa Check Card
☐ Checks and two Visa Check Cards (second Visa Check Card available only for issuance in additional account holder name)

## 6. Fund Your Schwab One Trust Account

☐ Check or money order made payable to the name of the Trust enclosed for $_____.
☐ Transfer Your Account form enclosed.
☐ Electronic transfer via Schwab MoneyLink® (Schwab MoneyLink Electronic Funds Transfer Enrollment Form enclosed).

## 7. Certification of Trust

By signing this application, each Trustee signing (the "Trustees") certifies that the representations and warranties in the attached Certification of Trust are true and complete.

## 8. Authorization to Open Account

By signing this application, you acknowledge that you have received and read a copy of the attached Application Agreement, which contains a predispute arbitration provision. You acknowledge that your signature signifies and constitutes your agreement that this account and your relationship with Schwab will be governed by the Application Agreement and all incorporated agreements and disclosures, including the *Schwab One® Account Agreement* and the *Charles Schwab Pricing Guide*, each as amended from time to time (the "Agreement and Disclosures"). You understand there are fees associated with establishing, maintaining, engaging in transactions and transferring assets out of this account. Unless you have declined the margin feature, you acknowledge that securities securing loans

from Schwab may be lent to Schwab and lent by Schwab to others. You also acknowledge that if you trade "on margin," you are borrowing money from Schwab and that you understand the requirements and risks associated with margin borrowing as summarized in the Margin Borrowing at Schwab: Overview and Disclosure Statement included with this application.

You also acknowledge that the securities products purchased or sold in a transaction with Schwab (i) are not insured by the Federal Deposit Insurance Corporation ("FDIC"); (ii) are not deposits or other obligations of Charles Schwab and are not guaranteed by Schwab Bank; and (iii) are subject to investment risks, including possible loss of the principal invested.

For purposes of this Account Application and the attached Application Agreement, the terms "you," "your" and "Account Holder" refer to each person who signs this Account Application and apply with respect to both a person's individual capacity as well as any applicable representative or fiduciary capacity when such a person is acting on behalf of a legal owner of assets in the account. When the legal owner of assets in the account is not a natural person, the terms "you," "your" and "Account Holder" also refer to such legal owner. The terms "we," "us," "our" and "Schwab" refer to Charles Schwab & Co., Inc. The term "Schwab Bank" refers to Charles Schwab Bank.

IW
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.   FTA 06957 (0309-8370)   APP10600-33 (04/09)
COM31873-05



0 0 0 0 0

**8. Authorization to Open Account** (Continued)

You certify under penalty of perjury that (1) the number shown on this Application is your correct taxpayer number; (2) you are not subject to back-up withholding because (a) you are exempt from back-up withholding, or (b) you have not been notified by the Internal Revenue Service (IRS) that you are subject to back-up withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified you that you are no longer subject to back-up withholding; and (3) you are a U.S. person (including a U.S. resident alien). (You understand that if you have been notified by the IRS that you are subject to back-up withholding as a result of dividend or interest underreporting and you have not received a notice from the IRS advising you that back-up withholding is terminated, you must strike or cross out the information contained in item 2 above.) The IRS does not require your consent to any provision of this document other than the certification required to avoid back-up withholding.

NOTE THAT SECTION 16 ON PAGE 3 OF THE ATTACHED SCHWAB ONE® TRUST ACCOUNT APPLICATION AGREEMENT CONTAINS A PREDISPUTE ARBITRATION AGREEMENT.

ALL TRUSTEES MUST SIGN AND DATE BELOW IN BLUE OR BLACK INK ONLY. Your signature below will also serve as a signature card.

## Signature(s) and Date(s) Required

X _Pamela B. Stuart_          _PAMELA B STUART_          _4-7-10_
Trustee Signature                    Print Name                              Date
                          _as trustee_

X _____    _____    _____
Co-Trustee Signature                 Print Name                              Date

**9. Notarization of Trustee Signature(s)** Signatures of Trustee(s) where the Trustor(s), Trustee(s) and Current Beneficiary(ies) are the same individual(s) do not need to be notarized. If it is necessary to notarize more than two Trustee signatures, please use and attach photocopies of this page.

State of ___FLORIDA___, County of ___INDIAN RIVER___

Subscribed and sworn to (or affirmed) before me on this _7th_ day of _APR_, 20 _10_,

by _PAMELA B STUART_, proved to me on the basis of satisfactory evidence to be
(Name of Person Appearing Before Notary)

the person(s) who appeared before me.*

WITNESS my hand and official seal.

Notary Public _Elyse M Cute_          Expiration Date _11-5-12_
(Signature of Notarizing Officer)                              (mm/dd/yyyy)

*Notaries outside of California may attach the appropriate notarizing declaration in lieu of the above.

(NOTARY SEAL)

ELYSE M. CUTE
Notary Public - State of Florida
My Comm. Expires Nov 5, 2012
Commission # DD 805204
Bonded Through National Notary Assn.

State of _____, County of _____

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20 ____,

by _____, proved to me on the basis of satisfactory evidence to be
(Name of Person Appearing Before Notary)

the person(s) who appeared before me.*

WITNESS my hand and official seal.

Notary Public _____          Expiration Date _____
(Signature of Notarizing Officer)                              (mm/dd/yyyy)

*Notaries outside of California may attach the appropriate notarizing declaration in lieu of the above.

(NOTARY SEAL)

| FOR CHARLES SCHWAB USE ONLY: | | | | | | |
|---|---|---|---|---|---|---|
| Branch Office and Account Number | — | | — | | DDA Number | |
| Customer ID Number | | | Source Code | | | |
| Approved by | | | Print Name of Approver | | | Date |

IW
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.   FTA 06957 (0309-8370)   APP10800-33 (04/09)
COM31873-05

*1719-6308* (handwritten)

# Schwab One® Trust Account Application

*charles* SCHWAB

www.schwab.com
1-800-435-4000 (inside the U.S.)
+1-415-667-8400 (outside the U.S.)
+1-888-686-6916 (multilingual services)
Page 1 of 4

- Use this application to open a Schwab One Trust account and/or to open a Schwab Bank High Yield Investor Checking® Trust ("High Yield Investor Checking Trust") account with Charles Schwab Bank. Testamentary Trust accounts are not eligible for High Yield Investor Checking Trust.
- Do not use this application to add or remove Trustees from an existing Schwab One Trust account or High Yield Investor Checking Trust account. Contact us for the appropriate form.
- Minimum $1,000 deposit required to open a Schwab One Trust account. The deposit minimum is waived if you open a High Yield Investor Checking Trust account, if you establish a monthly transfer of at least $100 through either Direct Deposit or Schwab MoneyLink®, or if you open a Schwab Bank Invest First™ Visa Signature® credit card account. If reregistering from an existing Schwab account, the deposit minimum does not apply.

## 1. Establish Your Schwab One Trust Account

**Check one:**

[X] Open a new Schwab One Trust account. (Complete Sections 1–9.)

[ ] Reregister your existing Schwab or Schwab One account to a Schwab One Trust account and keep the same account number if all the current account holders are also the Trustees. (Write the account number below and complete Sections 1–5 and 8–9.)

Note: If you wish to keep the same account number and all the current account holders are not also the Trustees, you must enclose a letter signed by all current account holders authorizing this request.

| Schwab or Schwab One Account Number | | | | | — | | | |
|---|---|---|---|---|---|---|---|---|

**Important Note for POA and Options Trading**

If your existing account has a Power of Attorney (POA) which you wish to retain on your Trust account, all Trustees of the Trust must complete and sign a new Power of Attorney. If your account has been approved for options trading and you would like to trade options in your Trust account, or if there are options in your existing Schwab or Schwab One account, all Trustees must complete and sign a new Schwab Option, Margin and Short Capabilities Application.

## 2. Trust Information (Required)

We respect your privacy. Charles Schwab & Co., Inc. ("Schwab") will use the information you provide to open and service your accounts, communicate with you and provide information about products and services. Read about Schwab's privacy policy at www.schwab.com/privacy.

**Indicate the Type of Trust:**

[ ] Revocable Living Trust where the Trustor(s), Trustee(s) and Current Beneficiary(ies) are all the same individual(s)

[ ] Other Revocable Living Trust*   [ ] Irrevocable Living Trust*   [X] Testamentary Trust*   [ ] Other* ___ w/w J RAYMOND SHALT

*Please indicate that notarization of Trustee signature(s) is required in Section 9, page 4.

| Trust Name (Decedent's name if a Testamentary Trust) J. RAYMOND SHALT SURV MARITAL TR | Date of Trust 1-2-90 |
|---|---|
| Trust Tax ID Number (if Revocable Living Trust, use Grantor's Social Security number) 50-6376274 | By Whom, if Anyone, is it Revocable and Amendable? |
| Name of Trustee/Co-Trustee PAMELA D SHALT | Name of Trustee/Co-Trustee |
| Name of Trustee/Co-Trustee | Name of Trustee/Co-Trustee |
| Trustor/Grantor/Settlor Name | Trustor/Grantor/Settlor Name |

| Has the Original Trust Agreement Been Amended or Restated? [ ] Yes [ ] No | Date(s) of Amendment(s) or Restatement(s) | Trust is Governed by the Laws of the State of (enter state): FL |
|---|---|---|
| Trust Mailing Address | | City, State, Zip Code |

**Is the Trust a 10% Shareholder of a Publicly Traded Company?**

[X] No  [ ] Yes   (If "yes," enter company name ___ and trading symbol ___ )

| Trust Annual Income: | [ ] Under $15,000 | [ ] $15,000–$24,999 | [ ] $25,000–$49,999 | [ ] $50,000–$199,999 | [ ] $100,000 or More |
|---|---|---|---|---|---|
| Trust Liquid Net Worth: | [ ] Under $25,000 | [ ] $25,000–$49,999 | [ ] $50,000–$199,999 | [ ] $100,000–$249,999 | [ ] $250,000 or More   Specify: |
| Overall Investment Objective of Trust Account: | [ ] Capital Preservation | [ ] Income | [ ] Growth | [ ] Speculation | |

All statements and account-related correspondence will be mailed to the Trust mailing address listed above. If you would like duplicate statements mailed to other parties, please attach a letter with mailing instructions.

Brokerage Products: Not FDIC-Insured • No Bank Guarantee • May Lose Value

| FOR CHARLES SCHWAB USE ONLY: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Branch Office and Account Number | | — | | | | — | | |

0 0 0 0 0 0

IV
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.   FTA 06957 (0309-8370)   APP10600-33 (04/09)
COM31873-05

## 3. Trustee Information

All Trustees who are to conduct business in the account must provide this information. If there are more than two Trustees who are to conduct business in the account, photocopy the Account Application, complete Sections 3, 8 and 9 for each additional Trustee and attach the photocopies to the original Account Application. As required by federal law, Schwab will use the information provided to verify their identity.

| Trustee | Co-Trustee |
|---|---|
| Name (First) PAMELA (Middle) B (Last) STRART | Name (First) (Middle) (Last) |
| Home/Legal Street Address (no P.O. boxes) 111 JOHNS ISL DR H 7 | Home/Legal Street Address (no P.O. boxes) |
| City, State, Zip Code VERO BEACH FL 32963   Years at Address | City, State, Zip Code   Years at Address |
| Previous Home Street Address, City, State, Zip Code (if current address for less than five years) | Previous Home Street Address, City, State, Zip Code (if current address for less than five years) |
| Mailing Address, City, State, Zip Code (if different from above; P.O. boxes may be used) | Mailing Address, City, State, Zip Code (if different from above; P.O. boxes may be used) |
| Home Telephone Number (772)231-3370   Business Telephone Number ( )   Cellular Telephone Number (6)233-7606 | Home Telephone Number ( )   Business Telephone Number ( )   Cellular Telephone Number ( ) |
| Email Address* (Required to access the account through the web.) PAMSTRART @ AOL.COM | Email Address* (Required to access the account through the web.) |
| Social Security/Tax ID Number 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   Date of Birth (mm/dd/yyyy) 5-13-49   Mother's Maiden Name | Social Security/Tax ID Number   Date of Birth (mm/dd/yyyy)   Mother's Maiden Name |
| ID Number 230156 94   ☑Driver's License ☐State ☐Military | ID Number   ☐Driver's License ☐State ☐Military |
| Place of Issuance WASH, DC   Expiration Date 5-13-13 | Place of Issuance   Expiration Date |
| Are you known by any other name? Specify: | Are you known by any other name? Specify: |
| Country(ies) of Citizenship (Must list all.) ☑USA ☐Other: _____   Country of Legal Residence ☑USA ☐Other: _____ | Country(ies) of Citizenship (Must list all.) ☐USA ☐Other: _____   Country of Legal Residence ☐USA ☐Other: _____ |

**Securities industry regulations require that we collect the following information:**

| Trustee | Co-Trustee |
|---|---|
| Check only one: ☐Employed ☑Self-employed ☐Retired ☐Student ☐Homemaker ☐Not employed | Check only one: ☐Employed ☐Self-employed ☐Retired ☐Student ☐Homemaker ☐Not employed |
| Employer ATTY   Occupation/Position | Employer   Occupation/Position |
| Business Street Address   City, State, Zip Code | Business Street Address   City, State, Zip Code |
| Are you affiliated with or employed by a stock exchange or member firm of an exchange or FINRA, or a municipal securities broker-dealer? ☑No ☐Yes (if "yes," you must attach a letter from your employer approving the establishment of your account when submitting this application.) | Are you affiliated with or employed by a stock exchange or member firm of an exchange or FINRA, or a municipal securities broker-dealer? ☐No ☐Yes (if "yes," you must attach a letter from your employer approving the establishment of your account when submitting this application.) |
| Are you a director, 10% shareholder or policy-making officer of a publicly held company? ☑No ☐Yes (if "yes," enter company name _____ and trading symbol _____) | Are you a director, 10% shareholder or policy-making officer of a publicly held company? ☐No ☐Yes (if "yes," enter company name _____ and trading symbol _____) |
| Marital Status ☑Single ☐Married ☐Divorced ☐Widowed   Number of Dependents | Marital Status ☐Single ☐Married ☐Divorced ☐Widowed   Number of Dependents |
| Investment Experience ☐None ☐Limited ☑Good ☐Extensive | Investment Experience ☐None ☐Limited ☐Good ☐Extensive |

*By providing your email address, you consent to receiving email from Schwab. Information about opting out of certain email communications is provided at www.schwab.com/privacy.

## 4. Brokerage Features

### Margin

A margin account allows you to borrow against your eligible securities. You can use a margin loan to purchase additional securities, to sell securities short, to obtain short-term financing or as a source of overdraft protection. To better understand the benefits and risks of margin, please refer to the Schwab Margin Overview and Risk Disclosure Statement and the Schwab One® Account Agreement. To learn more about margin, we encourage you to use the educational materials available at www.schwab.com/margin_education. Your Trust Agreement must specifically authorize the Trustee(s) to establish a margin account. Check below if you do not wish to have the margin feature or if your Trust Agreement does not authorize margin borrowing.

Margin is automatically included, unless you check this box. ☐ Do NOT add margin.

IW
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.   FTA 06957 (0309-8370)   APP10600-33 (04/09)
COM31873-05

**4. Brokerage Features** (Continued)

**Cash Features**

The Schwab One® Interest feature is automatically included on your account. This feature pays interest on the uninvested cash in your account. Rates are set by Schwab and are generally based on your Household Balances.

Clients with $500,000 or more in Household Balances may request a sweep money market fund as an alternative by speaking to their Schwab representative. The yields of sweep money market funds are generally higher than interest rates offered by either Schwab or Schwab Bank.

Schwab's Cash Features are further described in Schwab's "Cash Features Disclosure Statement for Individual Investors," which you will receive at account opening. Please contact Schwab for current information on interest rates and money market yields.

**Enrollment for Electronic Trade Confirmations ("eConfirms")**

If you have provided your email address, you will soon receive an email that will tell you how to receive paperless trade confirmations and the associated prospectuses and disclosures by email. Until we receive a response to our email, you will receive paper trade confirmations and disclosures through the U.S. mail. You may enroll in our electronic delivery services or return to delivery through the U.S. mail at any time by indicating your preferences online.

☐ No, at this time I do not want eConfirms.

**5. Cash Management**

Please select one of the following options for your everyday cash management needs. Both solutions offer great value, including unlimited checkwriting, unlimited ATM fee rebates, no monthly fees, free standard checks, free bill pay and a Visa® Platinum Check Card. Please note that Visa Check Cards are not available on Testamentary Trust accounts.

A. ☐ Schwab Bank High Yield Investor Checking® Trust Account.*† Complete the attached Schwab Bank High Yield Investor Checking Trust Account Application. A separate, full-featured, interest-bearing checking account will be linked to your Schwab One Trust account.

*You must be a U.S. resident or a resident alien currently residing in the U.S. to open a High Yield Investor Checking Trust account. Testamentary Trust accounts are not eligible for High Yield Investor Checking Trust.

†Charles Schwab Bank is an FDIC-insured depository institution affiliated with Schwab. Funds deposited in a High Yield Investor Checking Trust account are insured by the Federal Deposit Insurance Corporation up to $100,000 when aggregated with all other deposits held by you in the same capacity at Schwab Bank.

B. ☐ Schwab One Trust Checks and Visa Platinum Check Cards. (Complete ONLY if you have NOT checked the box for High Yield Investor Checking Trust account.) Note: Upon receipt of your Schwab One Trust starter checks, you may contact a Schwab representative to order additional customized checks at no cost.

Select one of the following options to access the cash in your Schwab One Trust account:

☒ Checks only

☐ Checks and Visa Check Card

☐ Checks and two Visa Check Cards (second Visa Check Card available only for issuance in additional account holder name)

**6. Fund Your Schwab One Trust Account**

☐ Check or money order made payable to the name of the Trust enclosed for $_____.

☐ Transfer Your Account form enclosed.

☐ Electronic transfer via Schwab MoneyLink® (Schwab MoneyLink Electronic Funds Transfer Enrollment Form enclosed).

**7. Certification of Trust**

By signing this application, each Trustee signing (the "Trustees") certifies that the representations and warranties in the attached Certification of Trust are true and complete.

**8. Authorization to Open Account**

By signing this application, you acknowledge that you have received and read a copy of the attached Application Agreement, which contains a predispute arbitration provision. You acknowledge that your signature signifies and constitutes your agreement that this account and your relationship with Schwab will be governed by the Application Agreement and all incorporated agreements and disclosures, including the *Schwab One® Account Agreement* and the *Charles Schwab Pricing Guide*, each as amended from time to time (the "Agreement and Disclosures"). You understand there are fees associated with establishing, maintaining, engaging in transactions and transferring assets out of this account. Unless you have declined the margin feature, you acknowledge that securities securing loans from Schwab may be lent to Schwab and lent by Schwab to others. You also acknowledge that if you trade "on margin," you are borrowing money from Schwab and that you understand the requirements and risks associated with margin borrowing as summarized in the Margin Borrowing at Schwab: Overview and Disclosure Statement included with this application.

You also acknowledge that the securities products purchased or sold in a transaction with Schwab (i) are not insured by the Federal Deposit Insurance Corporation ("FDIC"); (ii) are not deposits or other obligations of Charles Schwab and are not guaranteed by Schwab Bank; and (iii) are subject to investment risks, including possible loss of the principal invested.

For purposes of this Account Application and the attached Application Agreement, the terms "you," "your" and "Account Holder" refer to each person who signs this Account Application and apply with respect to both a person's individual capacity as well as any applicable representative or fiduciary capacity when such a person is acting on behalf of a legal owner of assets in the account. When the legal owner of assets in the account is not a natural person, the terms "you," "your" and "Account Holder" also refer to such legal owner. The terms "we," "us," "our" and "Schwab" refer to Charles Schwab & Co., Inc. The term "Schwab Bank" refers to Charles Schwab Bank.

IW
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC. FTA 06957 (0309-8370) APP10800-33 (04/09)
COM31873-05

0 0 0 0 0 0

Page 4 of 4

## 8. Authorization to Open Account (Continued)

You certify under penalty of perjury that (1) the number shown on this Application is your correct taxpayer number; (2) you are not subject to back-up withholding because (a) you are exempt from back-up withholding, or (b) you have not been notified by the Internal Revenue Service (IRS) that you are subject to back-up withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified you that you are no longer subject to back-up withholding; and (3) you are a U.S. person (including a U.S. resident alien). (You understand that if you have been notified by the IRS that you are subject to back-up withholding as a result of dividend or interest underreporting and you have not received a notice from the IRS advising you that back-up withholding is terminated, you must strike or cross out the information contained in Item 2 above.) The IRS does not require your consent to any provision of this document other than the certification required to avoid back-up withholding.

NOTE THAT SECTION 16 ON PAGE 3 OF THE ATTACHED SCHWAB ONE® TRUST ACCOUNT APPLICATION AGREEMENT CONTAINS A PREDISPUTE ARBITRATION AGREEMENT.

ALL TRUSTEES MUST SIGN AND DATE BELOW IN BLUE OR BLACK INK ONLY. Your signature below will also serve as a signature card.

### Signature(s) and Date(s) Required

X _Pamela B. Stuart_     Print Name _PAMELA B STUART_     Date _4-9-10_
Trustee Signature

X _____     Print Name _____     Date _____
Co-Trustee Signature

### 9. Notarization of Trustee Signature(s) 
Signatures of Trustee(s) where the Trustor(s), Trustee(s) and Current Beneficiary(ies) are the same individual(s) do not need to be notarized. If it is necessary to notarize more than two Trustee signatures, please use and attach photocopies of this page.

State of _FLORIDA_ , County of _INDIAN RIVER_

Subscribed and sworn to (or affirmed) before me on this _9th_ day of _APR_ , 20 _10_ ,

by _PAMELA B STUART_ , proved to me on the basis of satisfactory evidence to be
(Name of Person Appearing Before Notary)

the person(s) who appeared before me.*

WITNESS my hand and official seal.

Notary Public _____     Expiration Date _11-5-12_
(Signature of Notarizing Officer)     (mm/dd/yyyy)

*Notaries outside of California may attach the appropriate notarizing declaration in lieu of the above.

(NOTARY SEAL)

ELYSE M. CUTE
Notary Public - State of Florida
My Comm. Expires Nov 5, 2012
Commission # DD 805204
Bonded Through National Notary Assn.

State of _____ , County of _____

Subscribed and sworn to (or affirmed) before me on this ____ day of _____ , 20 ____ ,

by _____ , proved to me on the basis of satisfactory evidence to be
(Name of Person Appearing Before Notary)

the person(s) who appeared before me.*

WITNESS my hand and official seal.

Notary Public _____     Expiration Date _____
(Signature of Notarizing Officer)     (mm/dd/yyyy)

*Notaries outside of California may attach the appropriate notarizing declaration in lieu of the above.

(NOTARY SEAL)

FOR CHARLES SCHWAB USE ONLY:
Branch Office and Account Number ___ ___     DDA Number ___
Customer ID Number ___     Source Code ___
Approved by ___     Print Name of Approver ___     Date ___

IW
©2009 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.   FTA 06957 (0309-8370)   APP10600-33 (04/09)
COM31873-05

*charles* SCHWAB

**Account Statement**
Retain for Your Records

**Statement Period: August 1, 2010 to August 31, 2010**

**Schwab One® Trust Account**
**Account Number: 4620-0625**

*Cut paper clutter.*
*Switch to eStatements at schwab.com/paperless.*
*Questions? Call 1-800-435-4000*

Account Opened in: 2010
Page 1

31/08-CN8D2106-010586-SML-200160000001 359744   *2
PAMELA B STUART TTEE
U/W J RAYMOND STUART
5115 YUMA ST NW
WASHINGTON DC         20016



010586

### Account Value Summary

| | |
|---|---|
| Cash & Sweep Money Market Funds | $ 500,002.38 |
| Margin Loan Balance | $ 0.00 |
| Investments | $ 0.00 |
| **Total Account Value** | **$ 500,002.38** |

### Total Funds Available:  Cash + Margin

| | |
|---|---|
| Available to Withdraw | $ 500,002.38 |
| Securities Buying Power | $ 1,000,004.00 |

### Change in Value Summary

| | |
|---|---|
| Starting Account Value | $ 0.00 |
| Transactions & Income This Period | $ 500,002.38 |
| Income Reinvested This Period | $ 0.00 |
| Change in Value of Investments This Period | $ 0.00 |
| **Ending Account Value** | **$ 500,002.38** |
| Change in Account Value Since  4/13/10 | $ 500,002.38 |

### Rate Summary

| | |
|---|---|
| Value Adv Money Fd SWVXX | 0.01% |
| Sch Investor Money Fund | 0.01% |
| Margin Loan Rates vary by balance | 6.00% to 8.50% |

### Investment Detail

| Description | Symbol | Quantity Long/Short | Price | Market Value |
|---|---|---|---|---|
| **Cash and Money Market Funds (Sweep)** | | | | |
| CASH | | | | $ 500,002.38 |
| | **Total Account Value** | | | **$ 500,002.38** |

### Transaction Detail

| Settle Date | Trade Date | Transaction | Description | Quantity | Price | Total |
|---|---|---|---|---|---|---|
| **Cash Activity** | | | | | | |
| 08/13 | 08/13 | Funds Received | FUNDS RECEIVED | | | $ 500,000.00 |
| 08/30 | 08/30 | Credit Interest | SCHWAB1 INT 07/29-08/29 | | | 2.38 |

*07/29 through 08/29: $2.38 based on .010% average Schwab One interest rate paid on 17 days in which your account had an average daily balance of $500,001.05.*



© 2010 Charles Schwab & Co.,Inc.  All rights reserved.  Member SIPC.  CS12440-01 (0001-0386) STP10479R1-04 (02/10)

CN8D2106-010586 359744

SIPC

*charles* **SCHWAB**

Account Statement
Retain for Your Records

**Schwab One® Trust Account**
**Account Number: 4620-0625**

Statement Period: August 1, 2010 to August 31, 2010
Page 2

### Income Summary

| Description | This Period | Year to Date |
|---|---|---|
| **Federally Taxable** | | |
| Schwab One Interest | $ 2.38 | $ 2.38 |
| **Total Income** | **$ 2.38** | **$ 2.38** |

### Footnotes For Your Account

For information on how Schwab pays its representatives, go to http://about.schwab.com/about/overview.compensation.html

© 2010 Charles Schwab & Co.,Inc.  All rights reserved.  Member SIPC.  CS12440-01 (0001-0386) STP10479R1-04 (02/10)

CN8D2106-010586 359745

**SIPC**

*charles* SCHWAB

**Account Statement**
Retain for Your Records

**Statement Period: August 1, 2010 to August 31, 2010**

**Schwab One® Trust Account**
**Account Number: 1719-6308**

*Cut paper clutter.*
*Switch to eStatements at schwab.com/paperless.*
*Questions? Call 1-800-435-4000*

Account Opened in: 2010
Page 1

31/08-CN8D2106-010725-SML-200164336005 360196
PAMELA B STUART TTEE
U/W J RAYMOND STUART
5115 YUMA ST NW
WASHINGTON DC      20016-4336

010725

### Account Value Summary

| | |
|---|---|
| Cash & Sweep Money Market Funds | $ 5,000.00 |
| Margin Loan Balance | $ 0.00 |
| Investments | $ 0.00 |
| **Total Account Value** | **$ 5,000.00** |

### Total Funds Available: Cash + Margin

| | |
|---|---|
| Available to Withdraw | $ 5,000.00 |
| Securities Buying Power | $ 10,000.00 |

### Change in Value Summary

| | |
|---|---|
| Starting Account Value | $ 0.00 |
| Transactions & Income This Period | $ 5,000.00 |
| Income Reinvested This Period | $ 0.00 |
| Change in Value of Investments This Period | $ 0.00 |
| **Ending Account Value** | **$ 5,000.00** |
| Change in Account Value Since  6/16/10 | $ 5,000.00 |

### Rate Summary

| | |
|---|---|
| Value Adv Money Fd SWVXX | 0.01% |
| Sch Investor Money Fund | 0.01% |
| Margin Loan Rates vary by balance | 6.00% to 8.50% |

### Investment Detail

| Description | Symbol | Quantity Long/Short | Price | Market Value |
|---|---|---|---|---|
| **Cash and Money Market Funds (Sweep)** | | | | |
| CASH | | | | $ 5,000.00 |
| | | **Total Account Value** | | **$ 5,000.00** |

### Transaction Detail

| Settle Date | Trade Date | Transaction | Description | Quantity | Price | Total |
|---|---|---|---|---|---|---|
| **Cash Activity** | | | | | | |
| 08/13 | 08/13 | Funds Received | FUNDS RECEIVED | | | $ 5,000.00 |

### Footnotes For Your Account

For information on how Schwab pays its representatives, go to http://about.schwab.com/about/overview.compensation.html

*00010725010101H*

©2010 Charles Schwab & Co., Inc. All rights reserved.  Member SIPC.   CS12440-02 (0001-0386)   STP10479R2-04 (02/10)
CN8D2106-010725 360196

SIPC



*Pamela B. Stuart*

ATTORNEY AND COUNSELLOR AT LAW

PELICAN PLAZA
4731 NORTH HIGHWAY A1A
SECOND FLOOR
VERO BEACH, FLORIDA 32963
TELEPHONE: 772-492-1223
FAX: 772-492-1224

*Suite 700*
*1750 K Street, N.W.*
*Washington, D.C. 20006-2319*
*Telephone: 202-835-2200*

SIMON & PARTNERS, LLP
31ST FLOOR
551 FIFTH AVENUE
NEW YORK, NEW YORK 10176
TELEPHONE: 212-332-8900
FAX: 212-332-8909
WWW.SIMONLAWYERS.COM

*Fax:* 202-835-2202
*E-Mail:* pamstuart@aol.com
www.pamstuartlaw.com

MEMBER DC, FL, MD, NY, AND VA BARS
Ms. Pamela B. Stuart
Dr. Catherine S. Ryan
Ms. Deborah A. Stuart

## PLAN OF TRUST ADMINISTRATION
### The J. Raymond Stuart and Marion C. Stuart Trusts

This is an outline of all matters that are planned to be accomplished relating to the trusts of Ray and Marion Stuart, as well as their estates.  Because the obligations of the trustee are many and include paying creditor claims and taxes as well as fees and expenses of trust administration which, in this case, continued fourteen and a half years, this process is likely to take many months.   This report is being submitted to the beneficiaries of the trusts who have previously been provided with copies of the Trust Documents.

**General Outline of the Duties of the Trustee:**

Among the duties of a trustee during trust administration are:

Locating and protecting trust assets.
Collecting life insurance policies, annuities, and retirement accounts of which the Revocable Living Trust has been named as the primary beneficiary.

Coordinating with the Personal Representative of the estate if a probate administration is necessary.

Obtaining the date of death values for all trust assets, including appraisals of real estate and business interests.

Determining who is owed money to and then paying off these debts.

Assessing  income and estate tax liabilities.

Preparing and filing all required income and estate tax returns.

Paying the ongoing expenses of administering the trust assets  until the trust can be terminated and remaining assets distributed to  beneficiaries.

Raising the cash necessary to pay off debts, the ongoing expenses of administering the trust and estate and income taxes.

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 2

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

Investing and managing trust assets until they can be distributed to your beneficiaries.

And, finally, distributing what's left over of the trust to the beneficiaries.

**Actions to Reclaim Trust Assets:**

Ed Ryan was appointed in error to succeed Lewis L. Smith, Jr. as a co-trustee of the trusts. He has recently blocked the efforts of the trustee to obtain funds to pay trust expenses, including funeral expenses, for Marion Stuart. Ed is not authorized by the Trust Documents to take any action with respect to trust assets held at Morgan Stanley Smith Barney and efforts are being made to have him removed from the brokerage account. If he does not resign by close of business in writing on July 27, 2012, an attorney hired by the trust will be authorized to proceed to have him removed by a court with jurisdiction over the assets.

Under Florida law, because the appointment of Ed Ryan as co-trustee was not authorized by the specific terms of the J. Raymond Stuart Irrevocable Trust and Last Will and Testament or the Marion C. Stuart Revocable (now Irrevocable) Trust and Last Will and Testament ("Trust Documents"), he was disqualified from the date of his appointment. His appointment as trustee was never legally authorized and, in any event, it was revoked as of July 22, 2009 as to both trusts in writing by Marion Stuart and Pam. Ed has not been authorized to conduct any acts purporting to be trustee subsequent to that date. His actions in blocking requested transmissions of trust funds for payment of trust expenses is expressly contrary to the Trust Documents and is contrary to the applicable law.

By law the trust documents set forth the manner in which the trust is to be administered. The following articles of the Trust Documents taken from Ray's trust are clear with respect to Ray's desire that Ed never be involved in the administration of the trust. Marion's trust has identical provisions.

Article Ninth: The interest of each beneficiary in the income or principal of a trust under this instrument shall be free from the control or interference of any creditor of a beneficiary or of any spouse of a married beneficiary and shall not be subject to attachment or susceptible of anticipation or alienation.

Article Twenty-First: A person is qualified to serve as an additional trustee if said person is not eligible to receive any such benefits under the trust (other than the

2459

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523     DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 3

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

compensation of a trustee) and said person's spouse, issue, dependents, and ancestors are not eligible to receive such benefits.

Florida law declares

§ 736.0704. Vacancy in trusteeship; appointment of successor

(1) A vacancy in a trusteeship occurs if:

(a) A person designated as trustee declines the trusteeship;

(b) A person designated as trustee cannot be identified or does not exist;

(c) A trustee resigns;

(d) A trustee is disqualified or removed;

(e) A trustee dies; or

(f) A trustee is adjudicated to be incapacitated.

(2) If one or more cotrustees remain in office, a vacancy in a trusteeship need not be filled. A vacancy in a trusteeship must be filled if the trust has no remaining trustee.

Pam regrets the error in appointing Ed to serve as trustee. At the time of his appointment she had no reason to anticipate the difficulties he would present to the administration of the trust assets.

He was properly removed as trustee pursuant to Florida law for declaring a vacancy when a trustee is disqualified as set forth above. Both Pam and Marion notified Ed that he was no longer authorized to serve as trustee. However, Ed refused to submit a written resignation to Smith Barney as requested and, against the law and the request of the authorized trustee, he has remained per Smith Barney's decision, on the account.

An action against Morgan Stanley Smith Barney will be necessary if he does not voluntarily resign. Trust assets will be needlessly wasted because he has failed to act responsibly

2460

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 4

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

in this matter. As of today's date, many funeral expenses await payment and the trustee cannot act to pay these bills or to return to pay ongoing bills. The trust will hold Ed personally responsible for the payment of expenses incurred due to his irresponsible actions. He is being advised that if he does not submitted his written letter of resignation to Morgan Stanley Smith Barney by the close of business on July 27, 2012, the trusts will proceed to an appropriate court to reclaim its assets. Unfortunately, the expenses of this unnecessary litigation will be borne by the trusts.

**Outstanding Loans**

Pursuant to the authority vested in her by the Trust Documents, Pam, as co-trustee to Ray and Marion and as successor trustee and executor, was authorized to make loans to herself with adequate security. Article Fifteenth, paragraph 2 provides that the trustees are authorized: "To make loans to the settlor's executors or administrators on such terms as the trustees deem advisable." This specific power is in addition to the authorization of the trustees in Article Eighteenth, paragraph 2 to make loans with adequate security.

Pam entered into a loan agreement with the trust that memorializes the agreement with the Trusts regarding loans taken during the period of trust administration which is ongoing and the interest to be paid when the loans are repaid. Per a loan agreement between Pam and the trusts, she is obligated to repay the outstanding loans with interest at the statutory IRS rate contained in 26 USC 1274(d) with adjustments for fees, expenses, and her share of the estate. So, it makes no sense for there to be a dollar figure agreed upon at this stage because of ongoing adjustments and expenses.

Following the sale of the J. Raymond Stuart Building In 2009 and 2010, Pam made substantial loan repayments from the proceeds of the sale of the J. Raymond Stuart Building to the Marion C. Stuart Revocable Trust and the J. Raymond Stuart credit shelter trust and marital trust. Payment of $200,000 to the Marion C. Stuart Revocable Trust was made on or about December 15, 2009. Payment of $500,000 to the J. Raymond Stuart Credit Shelter Trust and $5000 to the J. Raymond Stuart Marital Trust was made on August 13, 2010 when deposits were made into trust accounts at Charles Schwab. Marion Stuart established her own account with Charles Schwab and received statements from all three accounts. The funds in the J. Raymond Stuart trust accounts at Charles Schwab were used to support Marion during the last years. As necessary, Pam disbursed funds from those accounts to replenish the checking account maintained by Marion's trust and made payments to Pam for trust expenses and/or loans. Those funds were largely depleted as of the end of January 2012.

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523        DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 5

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

When the J. Raymond Stuart trust funds in the Schwab accounts were substantially depleted Pam borrowed $60,000 in January from William Ace (a friend) in order to make sure Marion's nurses and other expenses were paid . This loan must be repaid with interest and is secured by a promissory note.

**Bank and Brokerage records of trust activities:**

All account statements for the Smith Barney (now Morgan Stanley Smith Barney) and the Charles Schwab as well as Marion's trust's checking account are maintained in the drawers of the high chest in Ray's den at 101 South Catalina Court and have been available to all beneficiaries at all times.   They were specifically pointed out to Deborah, for example, during her recent visit.   They have been sent to Ed Ryan throughout the period that he has been on the Smith Barney (now Morgan Stanley Smith Barney) account for Catherine's benefit as well as to Marion and Pam. During her lifetime, Marion was the only beneficiary who had the right to demand written reports of trust assets pursuant to the Trust Documents and she received them monthly from the various brokerage accounts.

**Withdrawals and depletion of Trust Assets:**

Marion withdrew funds from the trusts for her health, maintenance and support beginning in 1998. In the beginning, her withdrawals averaged $10,000 per month plus incidental expenses paid directly from the trust. However, after she began to require the assistance of home health aides, her expenses increased to approximately $20,000 per month.  For example, in 2010, her expenses for nurses was approximately $150,000.  In 2011 (the full year after Pam assumed responsibility for the management and compensation of the nurses on October 2, 2010, it was approximately $138,000.  Vinetta Nelson reported that she had worked every day for Marion for six years.   So, the expenses for Marion's health, maintenance and support over 14 ½ years totaled roughly $1,080,000 (1998 to 2006) and $1,300,000 (2007 to 2012).  Pam does not intend to account for Marion's spending during those years as it was her personal business but Cathy and Deborah need to be aware that the trust assets were depleted by roughly those amounts for the health, maintenance and support of Marion which was the primary objective of the trusts in the first place.

Because Ed, while he was acting as trustee, insisted and required the sale of trust assets to fund withdrawals rather than being drawn against margin as authorized by the trust, unnecessary interest charges were in the Smith Barney trust accounts and the assets in the marital trust were completely depleted. These interest charges were incurred with no offsetting increase in value of

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 6

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

the assets of the trust.  Ed's actions were in contravention of Pam's instructions as trustee.  All
efforts made by Pam, including lengthy sessions of instruction with an accountant, were to no
avail.

The value of the S&P 500 on February 2, 1998, approximately two weeks following the
date of death of J. Raymond Stuart was 1001.27.  The value of the Standard & Poors 500 index
as of July 20, 2012 was 1362.66.  As recently as July 2, 2010, the value of the S&P 500 was
1022.58.  So, had the trusts' portfolio of assets been preserved and performed at the rate of the
S&P 500 index (an index widely used as an index indicative of the broader market), it would
have increased in value by about a third from the time of Ray's death to the time of Marion's
death. That amount, as Pam predicted, would have more than offset the interest charges.  So, the
interest charges should not be charged to Pam entirely because, had she been directing the trust
assets without interference and had Ed not been involved in trust administration as dictated by
the Trust Documents, the interest charges would have been offset by increased value of the
assets.  The accountant (and an outside attorney if litigation is undertaken) will be consulted
regarding the appropriate source of payment for the interest charges incurred under the
circumstances.

The $60,000 in taxes paid to the US Government after the Garden City home sale was
made by Pam in good faith in order to pay, with the tax return submitted that year, the anticipated
tax to be paid which was an extraordinary item.  Article Twenty Eighth of he Trust Documents
provides that a trustee shall be responsible only for acts or omissions in bad faith.  Accordingly,
this $60,000 payment, having been made in good faith and on the advice of counsel, will not be
charged against Pam's share of the estate.

Ed may wish to return the $5000 he was paid for his services to the trust which were paid
in error.

Some distributions were made over the years to Cathy and to Deborah, and Pam.  Some
may be regarded as gifts while others may be advances against the trust distribution.  Those will
be evaluated during the accounting period.

**Plans for Deborah's share of the trust assets following administration:**

Deborah's share of the trust, at the time of distribution, will be placed in an irrevocable
trust set up by Pam pursuant to the terms established under the Trust Documents.  The plan is to
find an institution near where she lives willing to administer Deborah's trust that will pay her the

2463

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 7

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

income from the trust investments and manage the account for her benefit. However, because
the fund is expected to be less than $1 million, it may be that another institution in a different
area will have to be engaged for this service. Because of the terms of the trust, Deborah cannot
have any role in its administration. It is understood that the institution will charge a
management fee for this service which is expected to be in the range of $3000 to $10,000
annually. Pam does not wish to be involved in any way in the trust for Deborah other than to set
it up and arrange for its administration as dictated by the Trust Documents.

As part of Deborah's share of the estate, her mortgage to the trust will be cancelled and an
appropriate document indicating it was satisfied will be recorded in the land records of the
county where she lives. An offset to her share of the estate will be made for the mortgage
payments she failed to make plus interest that will be calculated by the accountant. Deborah
was permitted to defer payments of the mortgage amounts as they came due by Pam acting as
trustee.

**Sale of the property at 101 South Catalina Court:**

Since neither Pam, Cathy or Deborah have expressed interest in retaining Marion's
residence as part of their share of the trust assets, it must be sold and the proceeds, less expenses,
will be added to the trust assets. It's appraised value as of the date of Marion's death was
$483,000.

Cathy and Ed are not authorized under the Trust Documents to manage the sale of trust
assets and so they could not act as the seller of the property. That duty and responsibility is
vested in Pam as trustee. Were they to attempt a sale, there would be title problems because
neither one of them is legally entitled to act on behalf of the trust that owns the property.

Pam has proceeded in full consultation with Cathy and Deborah in connection with the
proposed sale. They have been provided with a copy of the appraisal of the home that Pam
arranged to be performed a week after Marion's death. Pam has consulted with several local
realtors concerning the best plan for selling the house. She also has taken into consideration
Cathy's statements that she and her family would like to to occupy the house for an extended
period of time next winter and offered to pay the property taxes on the house as "rent." Because
of Pam's obligation to maximize the value of the trust assets and Deborah's desires in particular,
she will follow the suggestions of the realtors and determine a "fair market rent" for the house for
the period of time that Cathy and her family wish to occupy the home. The fair market rent is
likely to be in excess of the real estate taxes assessed on the property.

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523        DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 8

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

**Appraisal of Personal Property owned by the Trusts:**

  The personal property (non-real estate) assets of the trust are undergoing appraisal by Diane Marvin Appraisal Services, Inc. of Stuart, Fl. Stuart Whitehurst is the principal appraiser. The appraisal of the property located at 101 South Catalina Court, Vero Beach has been completed and has an aggregate value of $26,970.

  In conjunction with the appraisal of trust assets, Pam is having certain items of her personal property which may have substantial value appraised and authenticated for possible sale to contribute to the repayment of the remaining amount of the trusts loans made to her for purposes of the maintenance of the J. Raymond Stuart building. She has been advised that to accomplish this will take the authentication of an expert for each particular artist and time (approximately twelve to eighteen months). The on-site appraisal work was done on July 25, 2012. Appraisal of trust property held at Deborah's residence in Kent, Washington will take place on August 18, 2012. Appraisal of trust property held at Cathy's residence will take place at a mutually convenient time to be arranged.

**Trustee and personal representative fees and expenses:**

  Pam has paid much of the trust expenses attributable to the trust administration for fourteen years (principally travel and meals, taxes and insurance for Marion's house) out of her personal accounts and credit cards. Because Pam devoted substantial amounts of her time to litigating to recover the funds expended as a result of fraud for which loans from the trust were required, the accounts for the years since she purchased the J. Raymond Stuart building are not complete. The receipts and statements must be compiled for accountings to be completed which requires a review of all credit card and bank statements and "receipts" for the years of administration. The trust expenses paid by Pam vary but are approximately $20,000 tp $30,000 annually. These amounts (with interest) should be deducted from the "loans" made to Pam out of the trust accounts. Trustee fees and expenses are a priority repayment obligation of the trust under Florida law and are to be paid ahead of payments to beneficiaries. A lien against the trust assets exists to secure repayment of these expenses under Florida law.

  Florida law provides that trustees are to be paid "reasonable fees" and that an executor or personal representative is also entitled to fees for services rendered and that payment of such fees is required. When the same person performs both roles, that person is entitled to fees for both activities under the law. Typically, the "presumptively reasonable" fee for a trustee is determined by looking at the schedule of fees contained in the probate code for an attorney for

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 9

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

the personal representative and then adjusting by a factor of .75% and also for the circumstances peculiar to the particular case.   In this case, for example, annual fees would have to be assessed for each year of management of the trust assets from 1998 to 2012.  In the first few years of the trust, those fees were determined and paid upon the advice of another Florida lawyer.

In addition to percentage fees, attorneys are entitled to "extraordinary fees" for extra services performed such as the sale of real estate, the management of a family business (such as overseeing the nurses in this case) and providing legal and tax advice.   Any time devoted by the trustee to providing legal services and dealing with contests such as this one with Ed are to be billed at normal hourly rates.   Pam's normal hourly rate charged to clients of her law practice is $675.

The establishment of fee amounts for each year will depend, in part, on consultations with the accountant once all of the financial data is assembled because the percentage fees are based upon the total value of the trust assets.   That is part of the trust administration process.   Some fees were paid in the early years of the trust administration based, in part, on consultation with another Florida lawyer.  Obviously, any fees and expenses payable will be offset against the outstanding amounts of loans from the trusts made to Pam.

**Florida laws relating to compensation of the executor (personal representative), trustee, and attorneys:**

Here are some relevant portions of Florida statutes.  Statutes in other states are similar but only some states have a published presumptively reasonable fee schedule.

§ 733.617. Compensation of personal representative

(1) A personal representative shall be entitled to a commission payable from the estate assets without court order as compensation for ordinary services. The commission shall be based on the compensable value of the estate, which is the inventory value of the probate estate assets and the income earned by the estate during administration.

(2) A commission computed on the compensable value of the estate is presumed to be reasonable compensation for a personal representative in formal administration as follows:

(a) At the rate of 3 percent for the first $ 1 million.

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 10

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

(b) At the rate of 2.5 percent for all above $ 1 million and not exceeding $ 5 million.

(c) At the rate of 2 percent for all above $ 5 million and not exceeding $ 10 million.

(d) At the rate of 1.5 percent for all above $ 10 million.

(3) In addition to the previously described commission, a personal representative shall be allowed further compensation as is reasonable for any extraordinary services including, but not limited to:

(a) The sale of real or personal property.

(b) The conduct of litigation on behalf of or against the estate.

(c) Involvement in proceedings for the adjustment or payment of any taxes.

(d) The carrying on of the decedent's business.

(e) Dealing with protected homestead.

(f) Any other special services which may be necessary for the personal representative to perform.

(4) If the will provides that a personal representative's compensation shall be based upon specific criteria, other than a general reference to commissions allowed by law or words of similar import, including, but not limited to, rates, amounts, commissions, or reference to the personal representative's regularly published schedule of fees in effect at the decedent's date of death, or words of similar import, then a personal representative shall be entitled to compensation in accordance with that provision. However, except for references in the will to the personal representative's regularly published schedule of fees in effect at the decedent's date of death, or words of similar import, if there is no written contract with the decedent regarding compensation, a personal representative may renounce the provisions contained in the will and be entitled to compensation under this section. A personal representative may also renounce the right to all or any part of the compensation.

(5) If the probate estate's compensable value is $ 100,000 or more, and there are two representatives, each personal representative is entitled to the full commission allowed to a sole personal representative. If there are more than two personal representatives and the probate estate's compensable value is $ 100,000 or more, the compensation to which two would be

2467

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 11



*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

entitled must be apportioned among the personal representatives. The basis for apportionment shall be one full commission allowed to the personal representative who has possession of and primary responsibility for administration of the assets and one full commission among the remaining personal representatives according to the services rendered by each of them respectively. If the probate estate's compensable value is less than $ 100,000 and there is more than one personal representative, then one full commission must be apportioned among the personal representatives according to the services rendered by each of them respectively.

(6) If the personal representative is a member of The Florida Bar and has rendered legal services in connection with the administration of the estate, then in addition to a fee as personal representative, there also shall be allowed a fee for the legal services rendered.

§ 733.6171. Compensation of attorney for the personal representative

(1) Attorneys for personal representatives shall be entitled to reasonable compensation payable from the estate assets without court order.

(2) The attorney, the personal representative, and persons bearing the impact of the compensation may agree to compensation determined in a different manner than provided in this section. Compensation may also be determined in a different manner than provided in this section if the manner is disclosed to the parties bearing the impact of the compensation and if no objection is made as provided for in the Florida Probate Rules.

(3) Compensation for ordinary services of attorneys in formal estate administration is presumed to be reasonable if based on the compensable value of the estate, which is the inventory value of the probate estate assets and the income earned by the estate during the administration as provided in the following schedule:

(a) One thousand five hundred dollars for estates having a value of $ 40,000 or less.

(b) An additional $ 750 for estates having a value of more than $ 40,000 and not exceeding $ 70,000.

(c) An additional $ 750 for estates having a value of more than $ 70,000 and not exceeding $ 100,000.

(d) For estates having a value in excess of $ 100,000, at the rate of 3 percent on the next $ 900,000.

(e) At the rate of 2.5 percent for all above $ 1 million and not exceeding $ 3 million.

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523     DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 12

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

(f) At the rate of 2 percent for all above $ 3 million and not exceeding $ 5 million.

(g) At the rate of 1.5 percent for all above $ 5 million and not exceeding $ 10 million.

(h) At the rate of 1 percent for all above $ 10 million.

(4) In addition to fees for ordinary services, the attorney for the personal representative shall be allowed further reasonable compensation for any extraordinary service. What is an extraordinary service may vary depending on many factors, including the size of the estate. Extraordinary services may include, but are not limited to:

(a) Involvement in a will contest, will construction, a proceeding for determination of beneficiaries, a contested claim, elective share proceeding, apportionment of estate taxes, or any adversarial proceeding or litigation by or against the estate.

(b) Representation of the personal representative in audit or any proceeding for adjustment, determination, or collection of any taxes.

(c) Tax advice on postmortem tax planning, including, but not limited to, disclaimer, renunciation of fiduciary commission, alternate valuation date, allocation of administrative expenses between tax returns, the QTIP or reverse QTIP election, allocation of GST exemption, qualification for Internal Revenue Code ss. 6166 and 303 privileges, deduction of last illness expenses, fiscal year planning, distribution planning, asset basis considerations, handling income or deductions in respect of a decedent, valuation discounts, special use and other valuation, handling employee benefit or retirement proceeds, prompt assessment request, or request for release of personal liability for payment of tax.

(d) Review of estate tax return and preparation or review of other tax returns required to be filed by the personal representative.

(e) Preparation of the estate's federal estate tax return. If this return is prepared by the attorney, a fee of one-half of 1 percent up to a value of $ 10 million and one-fourth of 1 percent on the value in excess of $ 10 million of the gross estate as finally determined for federal estate tax purposes, is presumed to be reasonable compensation for the attorney for this service. These fees shall include services for routine audit of the return, not beyond the examining agent level, if required.

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 13

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

(f) Purchase, sale, lease, or encumbrance of real property by the personal representative or involvement in zoning, land use, environmental, or other similar matters.

(g) Legal advice regarding carrying on of the decedent's business or conducting other commercial activity by the personal representative.

(h) Legal advice regarding claims for damage to the environment or related procedures.

(i) Legal advice regarding homestead status of real property or proceedings involving that status and services related to protected homestead.

(j) Involvement in fiduciary, employee, or attorney compensation disputes.

(k) Proceedings involving ancillary administration of assets not subject to administration in this state.

§ 736.0708. Compensation of trustee

(1) If the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances.

(2) If the terms of a trust specify the trustee's compensation, the trustee is entitled to be compensated as specified, but the court may allow more or less compensation if:

(a) The duties of the trustee are substantially different from those contemplated when the trust was created; or

(b) The compensation specified by the terms of the trust would be unreasonably low or high.

(3) If the trustee has rendered other services in connection with the administration of the trust, the trustee shall also be allowed reasonable compensation for the other services rendered in addition to reasonable compensation as trustee.

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 14

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

§ 736.0709. Reimbursement of expenses

(1) A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for reasonable expenses that were properly incurred in the administration of the trust.

(2) An advance by the trustee of money for the protection of the trust gives rise to a lien against trust property to secure reimbursement with reasonable interest.

**Plans for loan repayments and other miscellaneous matters:**

Pam has planned for several years to raise funds from the sale of some of her artwork to offset any deficiency owed to the trust. The appraisal and authentication process for the sale of this type of artwork requires a significant amount of time and does not proceed as quickly as desired. She was informed on July 25, 2012 that a good estimate of time for such activities would be 12 to 18 months. Given that prospect, the sale of the art is not a viable source of funds for Pam's living expenses during the remainder of the trust administration period or a quick source of funds to pay off any remaining deficiency owed to the trust. Pam cannot afford these extended periods of inactivity of her law practice prompted by Ed's interference with trust administration.

Pam will provide Cathy and Deborah with the report of the appraiser based upon his review of trust assets.

Pam awaits the guidance of the appraiser on how to proceed and with whom to determine authenticity and a market value of her property (largely art work). Expenses will be associated with this process as most of the authentication bodies charge some sort of a fee. The appraiser cited as an example the foundation that authenticates works by Maurice Utrillo. He submitted a work to the foundation and it charges $500 if it determines that a work is a fake and $2000 if the work is to be certified as the work of Mr. Utrillo. Once Pam's debt to the trust is satisfied, the trusts would not be charged for any such expenses incurred for valuation of art work after the debt is paid.

Pam is not willing to authorize a recorded lien against her DC home as it might cause the current mortgages to be regarded as unsafe and unsound by the banks holding her current mortgages and would adversely affect her credit rating which has already been negatively

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523     DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 15

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

impacted by the fact that many of the trust expenses are charged on her personal credit cards
(since Marion's accounts were cancelled after her death) and cannot be timely paid due to Ed's
blockage of the transmission of funds needed to pay these accounts.

**Accounting and Taxes**

Pam met for several hours with Charles Gould, an accountant in Vero Beach who
prepared some of Marion's past tax returns in January 2012. He has been involved in filing
necessary documents with the State of Florida and the US Government for unemployment taxes
and social security and medicare taxes incurred that were Marion's responsibility to pay on
behalf of the nurses. The social security and medicare taxes were calculated by Pam for the tax
years 2010 and 2011 but have not yet been paid. The nurses' accounting has not yet been done
for 2012. This is a very time consuming and painstaking job since the four nurses were each paid
weekly and often were paid varying amounts due to changes in hours worked (which effectively
precluded using the computer software Pam investigated at the time to do the job). Pam spent
virtually all of her time in Florida from January 15 to 22 working on these accounts so that W-2
forms could be filed on time but they were not completed by the time she left. She worked on
them again from January 31 to February 6th. Mr. Gould will file Marion's tax returns (at least
two years of which are past due) and the trust tax returns once the accounting necessary is
completed. His fees will be paid by the trusts.

The accountant has advised that preparation of tax returns for the trusts should result in
zero tax liability as the expenses of the trusts would equal or exceed any income. Incidentally,
Ed was told that years ago by Pam and the accountant who undertook to teach him about trust
accounting when he failed to listen to what Pam told him. Extension requests have been filed
for each trust for each year since Ray died but that no returns have been filed since 2002 or 2003.
His advice was to prepare and file returns for the last three years, at least initially. indicates that
she has engaged an accountant to prepare tax returns for the trusts for past years and that is to
proceed immediately. The accountant's fees for that work would be a trust expense, shared by all
three beneficiaries. Any tax due, interest, late fees or penalties would also be paid by the trust,
with no special allocation.

**Litigation plan**

If Ed fails to submit his written resignation to Morgan Stanley Smith Barney in a form
acceptable to that firm by the close of business on July 27, 2012, this matter will be turned over
to an attorney licensed in both New York (the location of the assets) and Florida (the domicile of

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

Plan of Trust Administration
J. Raymond Stuart and Marion C. Stuart Trusts
July 26, 2012
Page 16

*Pamela B. Stuart*
ATTORNEY AND COUNSELLOR AT LAW

the trusts) for appropriate and immediate action on behalf of the trusts to reclaim the trust assets.

Respectfully submitted,

Pamela B. Stuart, as trustee

cc:    Mr. Edward Ryan
       Mr. E. Thomas Branch, Jr., Esq.



# Closing Instructions



| | | | |
|---|---|---|---|
| Closing Department Contact: | Alicia Knight<br>443-898-1253<br>aknight@maverickfunding.com | Date:<br>Loan Number:<br>FHA Case #:<br>LoanProgram: | 7/26/2013<br>1071965<br>081-1069561-952<br>2.25 LIBOR ARM STANDARD |

Borrower Vesting:    Pamela Stuart, single woman

Property Address:    5115 YUMA ST NW
WASHINGTON, DC, D OF COLUMBIA, 20016-4336

Escrow Agent:    Micasa Title Group, LLC

6 Reservoir Circle, STE 203    410.753.3400
Baltimore, MD    tammy@micasatg.com

Escrow Agent Loan #:    MC-DC3084

| | | | |
|---|---|---|---|
| Signing Date: | 7/26/2013 | HUD-1 Loan Amount: | $320,173.57 |
| Expected Funding Date: | 7/31/2013 | - Fees excluded from Wire (EFW): | $15,411.17 |
| Title Coverage Amount: | $625,500.00 | + Lender Paid Fee: | $0.00 |
| Cash to Borrower: | $100,000.00 | Wire Amount to Settlement: | $304,762.40 |

**The date on which the borrower(s) sign is very important. If the signing date cannot be met, contact Alicia Knight**

| HUD | Fees | Payable to | RFW | Financed | POC | LPOC |
|---|---|---|---|---|---|---|
| 801 | Origination Fee | Maverick Funding Corp. | Y | $2,500.00 | | |
| 805 | Credit report | Maverick Funding Corp. for the Benefit of Kroll Factual Data | Y | $16.63 | | |
| 807 | Flood certification | Maverick Funding Corp.FBO Kroll Factual Data | Y | $9.54 | | |
| 808 | Document preparation | Reverse Vision | Y | $125.00 | | |
| 818 | Title Review | Comprehensive Title | Y | $250.00 | | |
| 902 | Mortgage Insurance Premium | Maverick Funding Corp. | Y | $12,510.00 | | |
| 903 | Homeowner's insurance | State Farm | | $2,093.43 | | |
| 1102 | Settlement or closing fee | Micasa Title Group | | $450.00 | | |
| 1104 | Lender's title insurance | WestCor Title | | $3,169.20 | | |
| 1110 | Abstract | Global Abstracts | | $250.00 | | |
| 1111 | Title Exam | Micasa Title Group | | $545.00 | | |
| 1112 | Title Binder | Micasa Title Group | | $162.50 | | |
| 1202 | Recording charges mortgage | County Recorder | | $313.00 | | |

**Liens Payoff**

| Lien Holder | Account # | Balance | Financed |
|---|---|---|---|
| Property Tax | | $21,531.38 | $21,531.38 |
| Eagle Bank | 8100009201 | $133,239.55 | $133,239.55 |
| Wells fargo | 7638326 | $43,008.34 | $43,008.34 |



OMB Approval No. 2502-0265

# A. Settlement Statement (HUD-1)



| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| 1. [X] FHA  2. [ ] RHS  3. [ ] Conv. Unins. | | 6. File Number:<br>MC-DC3084 | 7. Loan Number:<br>1071965 | 8. Mortgage Insurance Case Number:<br>081-1069561-952 | |
| 4. [ ] VA  5. [ ] Conv. Ins. | | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower:<br>Pamela Stuart<br>5115 Yuma Street NW<br>Washington, DC 20016 | E. Name & Address of Seller:<br>Mortgage Coverage: $938,250.00 | F. Name & Address of Lender:<br>Maverick Funding Corp.<br>9 Entin Road, Suite 200<br>Parsippany, NJ 07054 |
|---|---|---|

| G. Property Location:<br>5115 YUMA STREET NW<br>WASHINGTON, District of Columbia 20016 | H. Settlement Agent:<br>Micasa Title Group, LLC<br>Place of Settlement:<br>5115 YUMA STREET NW<br>WASHINGTON 20016 DC | Settlement Date:<br>7/26/2013<br>Funding Date:<br>7/31/2013 |
|---|---|---|

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $22,394.30 | 403. | |
| 104. Payoff to: Property Tax | $21,531.38 | 404. | |
| 105. Payoff to: Eagle Bank | $133,239.55 | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. Payoff to: Wells fargo | $43,008.34 | 406. City/town taxes    to | |
| 107. County taxes    to | | 407. County taxes    to | |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | $220,173.57 | **420. Gross Amount Due To Seller** | |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s)  $393,439.50 | | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject | | 503. Existing loan(s) taken subject to | |
| 204. Cash Portion of Initial Draw | $100,000.00 | 504. Payoff of first mortgage loan | |
| 205. Financed Closing Costs | $22,394.30 | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes    to | | 510. City/town taxes    to | |
| 211. County taxes    to | | 511. County taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. Payoff to: Property Tax  (paid from Loan) | $21,531.38 | 514. | |
| 215. Payoff to: Eagle Bank  (part paid from Loan) | $133,239.55 | 515. | |
| 216. Payoff to: Wells fargo  (part paid from Loan) | $43,008.34 | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $320,173.57 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | $220,173.57 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $320,173.57 | 602. Less reductions in amount due seller (line 520) | |
| **303. Cash** [ ] From  [X] To Borrower | $100,000.00 | **603. Cash** [ ] To  [ ] From Seller | |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.



**L. Settlement Charges**

| 700, Total Real Estate Broker Fees | | | |
|---|---|---|---|
| Division of Commission (line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703.   Commission paid at settlement | | | |
| 704. | | | |

| 801.   Our origination charge   (Includes HECM origination fee of $2,500.00)  $2,625.00 | (from GFE #1) | | |
|---|---|---|---|
| 802.   Your credit or charge(points) for the specific interest rate chosen   $0.00 | (from GFE #2) | | |
| 803.   Your adjusted origination charges   Maverick Funding Corp. | (from GFE A) | $2,625.00 | |
| 804.   Appraisal fee | (from GFE #3) | | |
| 805.   Credit report   Maverick Funding Corp. for the Benefit of Krol | (from GFE #3) | $16.63 | |
| 806. | (from GFE #3) | | |
| 807.   Flood certification   Maverick Funding Corp.FBO Kroll Factual Dat | (from GFE #3) | $9.54 | |
| 808.   Document preparation   Reverse Vision  $125.00 | | | |
| 809.   MERS registration | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 816. | | | |
| 817. | | | |
| 818.   Title Review   Comprehensive Title | | $250.00 | |

| 901.   Daily interest charges from   to   @$   /day | (from GFE #10) | | |
|---|---|---|---|
| 902.   Mortgage insurance Premium   to   Maverick Funding Corp. | (from GFE #3) | $12,510.00 | |
| 903.   Homeowner's insurance   to   State Farm | (from GFE #11) | $2,093.43 | |
| 904. | | | |
| 905. | | | |
| 906. | | | |

| 1001. Initial deposit for your escrow account | (from GFE #9) | | |
|---|---|---|---|
| 1002. Homeowner's insurance   months @ $   per month  $ | | | |
| 1003. Mortgage insurance   months @ $   per month  $ | | | |
| 1004. Property taxes   months @ $   per month  $ | | | |
| 1005.   months @ $   per month  $ | | | |
| 1006.   months @ $   per month  $ | | | |
| 1007. Aggregate Adjustment   -$ | | | |

| 1101. Title services and lender's title insurance | (from GFE #4) | $4,576.70 | |
|---|---|---|---|
| 1102. Settlement or closing fee   Micasa Title Group  $450.00 | | | |
| 1103. Owner's title insurance | (from GFE #5) | | |
| 1104. Lender's title insurance   WestCor Title  $3,169.20 | | | |
| 1105. Lender's title policy limit   $625,500.00 | | | |
| 1106. Owner's title policy limit | | | |
| 1107. Agent's portion of the total title insurance premium | | | |
| 1108. Underwriter's portion of the total title insurance premium | | | |
| 1109. Document preparation | | | |
| 1110. Abstract   Global Abstracts  $250.00 | | | |
| 1111. Title Exam   Micasa Title Group  $545.00 | | | |
| 1112. Title Binder   Micasa Title Group  $162.50 | | | |
| 1113. Procure P/O & Release   Micasa Title Group | | | |
| 1114. Courier/Wire/Overnight   Micasa Title Group | | | |
| 1115. Record Release   Micasa Title Group | | | |
| 1116. Hand Recording   Micasa Title Group | | | |



| | | | | $313.00 | |
|---|---|---|---|---|---|
| 1201. Government recording charges | | | (from GFE #7) | | |
| 1202. Deed | Mortgage $313.00 | Releases | | | |
| 1203. Transfer taxes | | | (from GFE #8) | | |
| 1204. City/County tax/stamps | Deed | Mortgage | | | |
| 1205. State tax/stamps | Deed | Mortgage | | | |
| 1206. | | | | | |
| 1207. | | | | | |
| 1208. | | | | | |
| 1209. | | | | | |
| 1210. | | | | | |
| 1211. | | | | | |

| | | | | |
|---|---|---|---|---|
| 1301. Required services that you can shop for | | (from GFE #6) | | |
| 1302. | | | | |
| 1303. HECM counseling fee | Housing Counseling Services | | | |
| 1304. Wire Fees | | | | |
| 1305. | | | | |
| 1306. Courier fees | Maverick Funding Corp. FBO FedEx | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1309. Manufactured Home Inspection | | | | |

| | | |
|---|---|---|
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $22,394.30 | |

HUD-1



| Charges That Cannot Increase | HUD-1 Line Number | | |
|---|---|---|---|
| Our origination charge | # 801 | $2,625.00 | $2,625.00 |
| Your credit or charge(points) for the specific interest rate chosen | # 802 | $0.00 | $0.00 |
| Your adjusted origination charges | # 803 | $2,625.00 | $2,625.00 |
| Transfer taxes | #1203 | $0.00 | $0.00 |

| Charges That In Total Cannot Increase More Than 10% | | | |
|---|---|---|---|
| Government recording charges | #1201 | $375.00 | $313.00 |
| Credit report | # 805 | $26.00 | $16.63 |
| Flood certification | # 807 | $11.00 | $9.54 |
| Title Review | # 818 | $250.00 | $250.00 |
| Mortgage Insurance Premium | # 902 | $12,510.00 | $12,510.00 |
| Title services and lender's title insurance | #1101 | $2,909.00 | $4,576.70 |
| Wire Fees | #1304 | $0.00 | $0.00 |
| Courier fees | #1306 | $25.00 | $0.00 |
| Manufactured Home Inspection | #1309 | $0.00 | $0.00 |
| | #1310 | $0.00 | $0.00 |
| | #1311 | $0.00 | $0.00 |
| | Total | $16,106.00 | $17,675.87 |
| | Increase between GFE and HUD-1 Charges | $ 1,569.87 or | 9.75 % |

| Charges That Can Change | | | |
|---|---|---|---|
| Homeowner's insurance | # 903 | $0.00 | $2,093.43 |
| HECM counseling fee | #1303 | $0.00 | $0.00 |

## Loan Terms

| | |
|---|---|
| Your initial loan amount is | $ 393,439.50 |
| Your loan term is | N/A    years |
| Your initial interest rate is | 2.441   % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $   N/A    includes<br>☐ Principal<br>☐ Interest<br>☐ Mortgage Insurance |
| Can your interest rate rise? | ☐ No. ☒ Yes, it can rise to a maximum of  12.441  %. The first change will be on   10/1/2013   and can change again every   month   after  10/1/2013  . Every change date, your interest rate can increase or decrease by  10.000  %. Over the life of the loan, your interest rate is guaranteed to never lower than  2.250  % or higher than  12.441  %. |
| Even if you make payments on time, can your loan balance rise? | ☐ No. ☒ Yes, it can rise to a maximum of $   unknown   . |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☒ No. ☐ Yes, the first increase can be   and the monthly amount owed can rise to to<br>The maximum it can ever rise to is $ |
| Does your loan have a prepayment penalty? | ☒ No. ☐ Yes, your maximum prepayment penalty is |
| Does your loan have a balloon payment? | ☒ No. ☐ Yes, you have a balloon payment of   N/A   due in N/A years on   N/A |
| Total monthly amount owed including escrow account payments | ☒ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br>☐ You have an additional monthly escrow payment of that results in a total initial monthly amount owed of   . This includes $   principal, interest, any mortgage insurance and any items checked below:<br>☐ Property taxes      ☐ Homeowner's insurance<br>☐ Flood insurance      ☐<br>☐      ☐ |

**Note:** If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.



## STAFFORD & TONER LLP

### ATTORNEYS AND COUNSELORS AT LAW
#### 55 HILTON AVENUE
#### GARDEN CITY, NEW YORK 11530

TEL: (516) 741-0600
FAX: (516) 741-0974

GERARD H. TONER (NY)
MICHAEL P. STAFFORD (NY & FL)

FLORIDA OFFICE:
WOOLBRIGHT CORPORATE CENTER
1901 S. CONGRESS AVE., SUITE 360
BOYNTON BEACH, FLORIDA 33426
(561) 272-3114

October 2, 1997

J. Raymond Stuart Trust
c/o Mr. J. Raymond Stuart
101 S. Catalina Ct.
Vero Beach, FL  32963-4459

RE:   **Loan to Deborah**

Dear Mr. Stuart:

Enclosed are the original Note and a copy of the mortgage for the Trust's loan to Deborah.

The original mortgage is being recorded in King County, Washington, and I will send it to you as soon as it is returned to me by the recording officer, probably in a few weeks.

Deborah's first payment of $541.33 is due October 15, and then on the 15th of each month thereafter.

The enclosed documents should be kept with your important papers.

A statement for my time and disbursements on the matter over the past few weeks is enclosed.

Please call if you have any questions.

Very truly yours,

Michael P. Stafford

MPS:HP
Enclosures

*0-11-97 Wrote to Michael P. Stafford & enclosed check No. 1284 dated Oct. 11, 1997 payable in the amount of $722.75.*

Since I am hopeful that all of the original payments by you will be cleared up within 5 or 6 years and that I'll still be around by that time to congratulate you, I'll nevertheless say now "thank you, Tony, for your faithfulness in making prompt payments." I am happy to have been able to help you and perhaps to solve one of your more pressing problems.

Much Love,

Dad

P.S. Also thank you for the extra $100.00 you sent me to balance out your previous obligation to me for money I advanced some time ago to help you with needed repairs to your car. I had thought most of that obligation had been paid off so I destroyed my records on the debt. If, from your records you find that you over-paid the total amt. due, please let me know and I'll gladly reimburse you.

JAB

 

**Browse Our Site:**  Find The Best Mortgage [go]

**Search Mortgage Library:** [            ] [go]



Types Of Mortgage Loans
+ Find The Best Mortgage
+ Credit Grade Guide

Mortgage Lender Directory  +  Mortgage Calculators  +  Mortgage (ARM) Indexes
Ask A Mortgage Related Question  +  Articles And Publications  +  Mortgage Glossary
Historical Mortgage Index Data  +  Historical Mortgage Rate Data  +  Home

Mortgage M
+ Search Mor
  Interest R

# National Monthly Average Mortgage Rates

Historical Data: 1992 1993 1994 1995 1996 1997 1998 1999 2000 2001 2002 2003 2004 2005 2006
2007 2008 2009 2010 2011 2012 2013 2014 2015 2016

| | FHLMC (1) | | | | HSH (2) | | | | FHFB (3) | |
|---|---|---|---|---|---|---|---|---|---|---|
| **1997** | 30 Year FRM | 15 Year FRM | 1 Year ARM | **1997** | 30 Year FRM | 15 Year FRM | 1 Year ARM | **1997** | Contract Rate | |
| January | 7.82 | 7.33 | 5.56 | January | 8.00 | 7.55 | 5.80 | Jan | 7.55 | |
| February | 7.65 | 7.15 | 5.49 | February | 7.84 | 7.40 | 5.73 | Feb | 7.53 | |
| March | 7.90 | 7.40 | 5.64 | March | 8.06 | 7.65 | 5.88 | Mar | 7.61 | |
| April | 8.14 | 7.67 | 5.87 | April | 8.27 | 7.88 | 6.08 | Apr | 7.73 | |
| May | 7.94 | 7.47 | 5.81 | May | 8.11 | 7.73 | 6.06 | May | 7.75 | |
| June | 7.69 | 7.24 | 5.69 | June | 7.88 | 7.52 | 5.93 | Jun | 7.67 | |
| July | 7.50 | 7.04 | 5.57 | July | 7.69 | 7.33 | 5.80 | Jul | 7.52 | |
| August | 7.48 | 7.02 | 5.55 | August | 7.63 | 7.25 | 5.71 | Aug | 7.47 | |
| September | 7.43 | 6.99 | 5.55 | September | 7.59 | 7.22 | 5.71 | Sep | 7.46 | |
| October | 7.29 | 6.85 | 5.51 | October | 7.45 | 7.10 | 5.68 | Oct | 7.37 | |
| November | 7.20 | 6.76 | 5.49 | November | 7.37 | 7.03 | 5.70 | Nov | 7.34 | |
| December | 7.10 | 6.66 | 5.52 | December | 7.30 | 6.98 | 5.76 | Dec | 7.26 | |

**Source:** (1) Freddie Mac, (2) HSH Associates, (3) Federal Housing Finance Board

**(1) Federal Home Loan Mortgage Corporation's (Freddie Mac)** Weekly Primary Mortgage
Market Survey (PMMS), Monthly Average Values. National average rates on
conventional, conforming, 30- and 15-year fixed and 1-Year CMT-indexed adjustable rate
mortgages. Starting from January 2005, 5/1 hybrid ARM rates are available.

Each week Freddie Mac surveys 125 lenders and the mix of lender types
(thrifts, commercial banks and mortgage lending companies) is roughly
proportional to the level of mortgage business that each type commands
nationwide.

**(2) HSH Associates,** Financial Publishers' Mortgage Rate Survey, National Monthly
Averages. The HSH statistics include both conforming and jumbo loans.

National monthly average rates are derived from HSH's database of 2,000
to 3,000 lenders.

**(3) Federal Housing Finance Board's** Monthly Interest Rate Survey, National Average
Contract MortgageRate (the Contract Rate on the composite of all mortgage loans, fixed-

and adjustable-rate, derived from the Federal Housing Finance Board's (FHFB) Monthly Interest Rate Survey (MIRS).

To conduct this survey, the Finance Board asks a sample of mortgage lenders, representing savings associations, mortgage companies, commercial banks, and mutual savings banks, to report the terms and conditions on all single-family, fully amortized, purchase-money, nonfarm loans that they close during the last five business days of the month.

**Historical Data:** 1992 1993 1994 1995 1996 1997 1998 1999 2000 2001 2002 2003 2004 2005 2006 2007 2008 2009 2010 2011 2012 2013 2014 2015 2016

## Interest Rate Forecasting: Economic Indicators | Mortgage Market Survey | Interest Rate Trends

## Treasury Market and Mortgage Rates | Historical Mortgage Rate Data | Mortgage Indexes



### Mortgage professionals are welcome to participate!

**Home** + **About Us** + **Contact Us** + **Disclaimer** + **Privacy Poli**

Mortgage-X is an independent information service and is not affiliated with any lendin

Copyright © 1998-2014 Mortgage-X.com
All Rights Reserved

101 S. Catalina Court
Vero Beach, Fla. 32963
Oct. 15, 1997

Dear Debby—

I wish to acknowledge the first of your monthly mortgage checks due in Garden City, N.Y. by the 15th day of each calendar month, for each month of the next 30 years! Since I can no longer count up to 360, and don't expect to be alive in 2027, I am hopeful that the pre-payment plan I discussed with you earlier will enable the entire obligation to be fully satisfied in 5 or 6 years from now, not 30!

If you have not already received from Mike Stafford, my lawyer in Garden City, a copy of the mortgage agreement and the payment schedule, please record the following on your records so you will be on track each month:



### LOAN AGREEMENT AND PROMISSORY NOTE

This LOAN AGREEMENT is made between the J. Raymond Stuart Irrevocable Marital and J. Raymond Stuart Irrevocable Credit Shelter Trusts under the will of J. Raymond Stuart dated January 2, 1990 (Lender) and Pamela Stuart of Vero Beach, Florida and Washington, DC (Borrower) effective the 11th day of July, 2001.

WHEREAS, the J. Raymond Stuart Irrevocable Trusts wish to assist Pamela Stuart, executor and trustee, and the Stuart Building, LLC in matters involving investment in real estate to be known as the J. Raymond Stuart Building, and other expenses associated with her law practice and ongoing maintenance and support as needed pursuant to Articles Fifteen and Eighteen of the J. Raymond Stuart Revocable Trust dated January 2, 1990 and under the powers vested in Pamela B. Stuart, as executor, under Articles Fourth, Fifth and Seventh of the last will and testament of J. Raymond Stuart dated January 2, 1990, who died on January 18, 1998,

WHEREAS, the Stuart Building, LLC, of which Pamela Stuart is the sole member, is purchasing 1750 N Street, NW, Washington, District of Columbia, for use as an office and for investment purposes, and it is anticipated that from time to time that Pamela Stuart may be in need of funds to support the real estate investment and her law practice and health, education, maintenance and support, beginning on July 11, 2001, and continuing indefinitely thereafter,

In consideration of the Lender loaning the Borrower certain monies ("the Loan") from time to time and the Borrower repaying the Loan to Lender as set forth below, both parties agree to perform and fulfill the promises set forth in this Loan Agreement.

The Lender promises to Loan to Borrower amounts from time to time which the Borrower will withdraw from accounts maintained by the Lender which the Borrower promises to repay the principal amount of the Loan plus simple interest at 3% per annum or the IRS long term applicable federal rate in accordance with 26 U.S.C. § 1274(d) whichever is lower. Should the Lender loan additional funds to Borrower, the loans shall be on the same terms.

Borrower shall repay the loans with interest as set forth above, less expenses of the J. Raymond Stuart trusts advanced by borrower, trustee fees due to be paid to borrower pursuant to her service as trustee during the administration of the estate of J. Raymond Stuart, and expenses of Deborah Stuart, Marion C. Stuart and the Marion C. Stuart Revocable Trust paid by Borrower and, at Borrower's option, less her one-third interest in the trust corpus remaining upon the death of Marion C. Stuart, upon demand of Lender but no later than the date of final termination of the administration of the trusts and estates of J. Raymond Stuart and Marion C. Stuart unless otherwise agreed with Lender.

In the event of the death of Borrower prior to repayment or the inability of Borrower to pay the full amount due upon the final termination of the administration of the estates of J. Raymond Stuart and Marion C. Stuart, Catherine S. Ryan, or if she is no longer living, Christine A. Ryan and the trustee of the irrevocable trust established under the estate plans of J. Raymond

Loan Agreement and
  Promissory Note


Stuart and Marion C. Stuart for Deborah A. Stuart, if in existence at the time of the death of
Borrower, are authorized to collect repayment of the remaining and outstanding loan amount and
interest from Borrower's estate to be divided between them equally.

No funds of the Trusts shall be utilized for collection of loan and interest amounts due
under this Note.

This Note shall be construed in accordance with the laws of the State of Florida. If any
one or more of the provisions of this Note are determined to be unenforceable in whole or in part
for any reason, the remaining provisions shall remain fully operative.


Date: _July 23, 2009_

_Pamela B Stuart_
Pamela B. Stuart, individually


Date: _July 23, 2009_

_The J Raymond Stuart and Irrevocable Marital Credit Shelter Trusts by Pamela B Stuart, as Trustee_
The J. Raymond Stuart Irrevocable Marital Trust
The J. Raymond Stuart Irrevocable Credit
        Shelter Trust
By: Pamela B. Stuart, Trustee
                Lender



Filing # 32746209 E-Filed 10/01/2015 04:35:21 PM

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT,
IN AND FOR INDIAN RIVER
COUNTY, FLORIDA

CATHERINE S. RYAN and DEBORAH
A. STUART, as Beneficiaries of The
J. Raymond Stuart Revocable Trust dated
January 2, 1990, as amended, and the
Marital Deduction Trust and the Non-
Marital Deduction Trust created thereunder,

      Plaintiffs,

v.                                                                    CASE NO. 31-2013-CA-1523-XXXX-XX

PAMELA B. STUART, individually and
as Trustee of The J. Raymond Stuart Revocable
Trust dated January 2, 1990, as amended, and
the Marital Deduction Trust and the Non-
Marital Deduction Trust created thereunder,

      Defendant.
_____/

## **NOTICE OF HEARING**

     PLEASE TAKE NOTICE that the undersigned will call up for Special Set hearing

before the Honorable Cynthia L. Cox, Indian River County Courthouse, Courtroom 6,

2000 16th Avenue, Vero Beach, Florida 32960, on **Monday, November 23, 2015 at 1:30**

**p.m. (30 minutes reserved)**, or as soon thereafter as counsel may be heard, the following:

**PLAINTIFFS' MOTION TO APPROVE ACCOUNTING**

1

01312962.v1

## CERTIFICATE OF SERVICE

I hereby certify on October 1, 2015, I filed the foregoing with the Clerk of the Court using Florida's E-Portal, which will provide electronic notice to Pamela B. Stuart, Esquire (pamstuart@aol.com) and to David M. Presnick, Esquire (david@presnicklaw.com and becky@presnicklaw.com).

_s/ David P. Hathaway_
DAVID P. HATHAWAY
Florida Bar No. 491411
ROBERT J. NABERHAUS III
Florida Bar No. 476684
DEAN, MEAD, EGERTON,
BLOODWORTH, CAPOUANO &
BOZARTH, P.A.
800 N. Magnolia Ave., Suite 1500
Orlando, FL    32803
Telephone:    (407) 841-1200
Fax:            (407) 423-7107
E-Mail:    dhathaway@deanmead.com
E-Mail:    rnaberhaus@deanmead.com
Attorneys for Plaintiffs

c:      Angell Reporting Service, Inc.

2



Filing # 36077382 E-Filed 01/03/2016 06:36:52 PM

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT,
IN AND FOR INDIAN RIVER COUNTY,
FLORIDA

CATHERINE S. RYAN and DEBORAH
A. STUART, as Beneficiaries of The J.
Raymond Stuart Revocable Trust dated
January 2, 1990, as amended, and the
Marital Deduction Trust and the Non-
Marital Deduction Trust created thereunder,

      Plaintiffs,

v.                  CASE NO. 31-2013-CA-001523

PAMELA B. STUART, individually and
as Trustee of The J. Raymond Stuart Revocable
Trust dated January 2, 1990, as amended, and
the Marital Deduction Trust and the Non-
Marital Deduction Trust created thereunder,

      Defendant.

_____/

### ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE ACCOUNTING, RESERVING JURISDICTION FOR DISTRIBUTION AND REQUIRING EVIDENTIARY HEARING

THIS MATTER having come before the Court on November 23, 2015, on Plaintiffs' Motion to Approve Accounting filed September 17, 2015 and with the Defendant's Opposition to Plaintiff's Motion to Approve Accounting, and the Trustee's Motion in Support of Plaintiffs' Motion to Approve Accounting and Opposition of Defendant's Objection Thereto, and the Court after hearing argument of the parties/counsel and being otherwise duly advised in the premises, finds as follows:

      A.     This action, a four count complaint for removal of trustee, conversion, breach of trust and injunctive relief, was filed on November 8, 2013. In 1990, the decedent, J. Raymond Stuart (the parties' father and hereinafter "Father"), created the Trust for the benefit of his wife, Marion Stuart (hereinafter "Mother"). The residuary beneficiaries were his three daughters, Pamela Stuart, Catherine Stuart Ryan and

Deborah A. Stuart.  The Father and Defendant, Pamela Stuart, an attorney in D.C. and Florida, served as trustees of the Trust until he passed away in 1998.    In 1999, Defendant continued to serve as trustee and funded the credit shelter trust with $625,000 and the marital trust with $1,981,352 for the sole benefit of their Mother.    No other distributions were authorized to any other person during her life.    After the independent trustee resigned in 2000, Defendant never appointed another independent trustee as required.

B.    The Mother died on April 29, 2012 and the balance of the assets of the trusts were to be immediately divided equally (1/3) between the three daughters.

C.    From 1998 through 2013, the Defendant, an attorney, admittedly breached her fiduciary duties by failing to provide the required annual accountings. Surprisingly, she also "loaned" herself substantial monies and wrongfully took assets and distributions from the trust of approximately $2,000,000.  Although she sold her commercial building in 2009 for $2,500,000, she failed to repay the monies owed to the Trust as promised.  Instead, she paid off the mortgage on her Florida residence "because the mortgage interest was 8%."

D.    Just prior to the evidentiary hearing scheduled for March 5, 2014 for her immediate removal, the Defendant consented to entry of the Agreed Order resigning as Trustee. The Order required the Defendant to deliver all documents since 1998 to the successor trustee, including properties acquired and produce all information within 5 days.    On August 6, 2014, several months after the agreed order was entered, the Defendant sent a note that she was working on an accounting.   She claims that she is now entitled to reimbursement and expenses from the trust dating back to 1998.  The Successor Trustee was required to complete an accounting.    The Defendant claims

2

that the accountings are not complete and that she needs more time to provide documentation. Yet, for the last 2 years, she has failed to provide any documents to support her claims. It is undisputed that the value of the trust as of January 18, 1998 was $2,755,879.17. The successor trustee has allocated $1,789,171.76 to Pamela Stuart's loan, exclusive of interest.

E.      The Defendant's credibility is questionable at best. She claims that she earned $170,000 year as an attorney and spent the last six years trying to rebuild her law practice after litigating over her commercial building. In the same breath, she claims that she has been unable to work because she was taking care of her elderly parents (paying bills and supervising nursing care) until 2012. She also claims that she has had seven surgeries and unable to do anything because of rehabilitation and narcotics. At the same time, she asserts that she was taking care of a dear friend with cancer from June 2014 until January 2015. Notwithstanding, the court file is replete with extensive and detailed pleadings that she has filed from January 9, 2014 until December 10, 2015. In conclusion, it appears that she has been able to take care of business as usual since November 2013 but unwilling and unable to provide any document in support of her claims and/or otherwise comply with this Court's Order. Since failing to comply for at least fifteen months, these excuses appear to be just another delay tactic to avoid the inevitable, solely at the expense of the remaining beneficiaries.

F.      The Court finds that the Defendant's failure to timely comply with this Court's Order, seek extension of the Order and the many preposterous excuses articulated to the Court, along with the deceitful conduct outlined herein, by an attorney who assumes a unique position of trust, is not only disgraceful but unbecoming of a

member of the Florida Bar.  Plaintiffs argue and make a good point that solely the interest due on the $2 million monies taken by Defendant since 1998 would greatly surpass any trustee fees owed, if any.

G.    In the meantime, the trust has dwindled to nothing and the only trust assets remaining for Plaintiffs' to share are Defendant's "loan payable," the parents' Sea Forest residence and some personal property.  Plaintiffs are entitled to their 1/3 shares of inheritance and an accounting by the successor trustee as provided in the Agreed Order without any further delay.  Since Defendant has had many years to prepare accountings, she is not entitled to nor has she provided any good reason why she should prepare an accounting at this late date and her objections are overruled.  There is simply no reason to continue the trust administration and expense associated therewith since the Court can retain jurisdiction over this matter to 1) distribute the sales proceeds, 2) allocate the Pamela Stuart loan and interest due among the beneficiaries entitled after 3) ordering sale of the Defendant's properties to satisfy same upon 4) evidentiary hearing to give Defendant the opportunity to present her entitlement to a setoff or credits for trustee fees or services rendered.

IT IS THUS ORDERED AND ADJUDGED that Plaintiffs' Motion is GRANTED. The Accounting of Trustee from 6/1/14 through 5/31/15 is hereby approved by the Court pursuant to Fla. Stat. § 736.0201(4)(d).  From the accounting, the Successor Trustee shall prepare a plan of distribution.  If the parties cannot agree to a final plan of distribution within the next 30 days, the Court shall hold an evidentiary hearing to determine the precise sum that should be allocated to each beneficiary, including the loan and interest due thereon payable by Defendant, together with attorney's fees and court costs incurred herein (together with any required corresponding sale or transfer of

Defendant's property to the Trust).  Any expenses, fees or claims of Defendant shall be provided to Plaintiffs on or before January 22, 2016 and the Court shall specifically reserve jurisdiction to award any credits or setoffs, if any, to Defendant that she may be entitled at the evidentiary hearing.   Defendant's failure to provide all documents by January 22, 2016 shall constitute a waiver of same and a violation of this Court's Order. The Trust shall have an equitable lien upon all of Defendant's properties until a final distribution is ordered, which shall include but not be limited to, 5115 Yuma Street NW, Washington, DC 20016 and 111 Johns Island Drive, #7, Vero Beach, FL  32963. Plaintiffs shall obtain an appraisal of the Sea Forest residence and schedule an evidentiary hearing on any disputed issues herein within 45 days.   The Court reserves jurisdiction to enforce this Order and to award such further relief as deemed just and proper.

DONE AND ORDERED in Vero Beach, Indian River County, Florida, on this 3rd day of January, 2016.

*/s/ Cynthia L. Cox*

CYNTHIA L. COX
Circuit Judge

**Copies to:**
**DAVID P. HATHAWAY, ESQ.** Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., P.O. Box 2346, Orlando, Florida 32802-2346 (dhathaway@deanmead.com),
**PAMELA B. STUART,** 4731 North Highway A1A, Second Floor, Vero Beach, Florida 32963 (pamstuart@aol.com), and to David M. Presnick, 96 Willard Street, Suite 106, Cocoa, Florida 32922 (david@presnicklaw.com)

5

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

Filing # 50964071 E-Filed 01/10/2017 10:09:51 AM

1

```
              IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
                 IN AND FOR INDIAN RIVER COUNTY, FLORIDA

                        CASE NO. 31-2013-CA-1523

     CATHERINE S. RYAN and DEBORAH A. STUART,
     as Beneficiaries of The J. Raymond Stuart
     Revocable Trust dated January 2, 1990, as
     amended, and the Marital Deduction Trust and
     the Nonmarital Deduction Trust Created
     thereunder,

                 Plaintiffs,

     vs

     PAMELA B. STUART, individually and as Trustee
     of The J. Raymond Stuart Revocable Trust dated
     January 2, 1990, as amended, and the Marital
     Deduction Trust and the Nonmarital Deduction
     Trust created thereunder,

                 Defendant.

     _____/


                        TRANSCRIPT OF PROCEEDINGS


     DATE TAKEN:       November 23, 2015

     TIME:             1:42 p.m. - 2:18 p.m.

     PLACE TAKEN:      2000 16th Avenue
                       Vero Beach, Florida 32960

     BEFORE:           Honorable Cynthia L. Cox


          This cause came on to be heard at the time and place
     aforesaid, when and where the following proceedings were
     reported by:


                    KAREN J. PERKINS, CSR, FPR
                    ANGELL REPORTING SERVICE, INC.
                    8195 N. Wickham Rd., Suite 200
                       Melbourne, Florida 32940
                         (321) 259-8500
```

PAMEL B. STUART, ET AL VS. CATHERINE E. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

2

A P P E A R A N C E S


For the Plaintiffs:

          DEAN, MEAD, EGERTON, BLOODWORTH,
          CAPOUANO & BOZARTH, P.A.
          BY:  DAVID P. HATHAWAY, ESQ.
          800 N. Magnolia Avenue
          Suite 1500
          Orlando, FL 32803
          407.841.1200
          dhathaway@deanmead.com



For the Defendant:

          LAW OFFICE OF PAMELA B. STUART
          BY:  PAMELA B. STUART, ESQ.
          4731 N. Highway A1A
          Second Floor
          Vero Beach, FL 32963
          772.492.1223
          pamstuart@aol.com



For The Trustee:

          DAVID M. PRESNICK, P.A.
          BY:  DAVID M. PRESNICK, ESQ.
          96 Willard Street
          Suite 106
          Cocoa, FL 32922
          david@presnicklaw.com


ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

3

```
1                      P R O C E E D I N G S

2

3              THE COURT:  The next case is Ryan

4     vs. Stuart.  This is a motion to approve an accounting.

5              MR. HATHAWAY:  Yes.

6              THE COURT:  You may proceed.

7              MR. HATHAWAY:  Your Honor, good afternoon, Dave

8     Hathaway from Dean Mead law firm in Orlando representing

9     the plaintiffs.

10             We are here on a motion to approve an

11    accounting.  This is actually the second accounting that

12    has now come out, and I want to give -- since this is the

13    first time where we've been before you in this matter, I

14    want to give you a little background.

15             We sued November 8th of 2013, a very detailed

16    complaint.  We had demanded -- I think there were four or

17    five causes of action, and there are multiple requests for

18    relief in the complaint.

19             We prepped for an evidentiary hearing that we

20    were going to have in this court.  However, just a couple

21    of days before the hearing was going to be held, there was

22    an agreed order --

23             THE COURT:  I remember that.

24             MR. HATHAWAY:  Okay.  The agreed order was

25    entered March 4th of 2014, and it has a couple of relevant
```

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE G. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

4

1   provisions for today.

2           Paragraph 4 said, "Within ten days from the date

3   of this order, defendant shall deliver to the successor

4   trustee all documents concerning the trust since 1998,

5   including properties acquired, in whole or in part, with

6   assets from the trust."  I'm not sure that's been complied

7   with.

8           Number 6 discusses the successor trustee

9   preparing accountings and says, "If more information is

10   requested," it says right there at the end of page 2,

11   "defendant shall have five days to produce true and

12   correct copies and/or furnish information upon written

13   request by the successor trustee."  I'm not sure that has

14   been complied with by the defendant.

15           And 8 says, "Defendant shall not sell, transfer,

16   jointly title, encumber, or otherwise attempt to make

17   available to creditors two pieces of real property, one in

18   Washington, D.C., and the other one at Indian River

19   Shores, Florida."  My understanding is that the defendant

20   lives and practices law primarily in Washington, D.C.

21           We have, Your Honor, notes here that were

22   attached to my motion as Composite Exhibit B, e-mails and

23   things stating that the defendant, several months after

24   the agreed order -- I'm looking at the first e-mail that

25   was August 6th, 2014, so we're now a few months out from

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE G. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523  DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

5

1    the agreed order, it says, you know, "I'm still working on

2    my part of the accounting," now that she's been removed as

3    a trustee, and she says, "I have expenses and time records

4    stretching back 16 years or so.  Without my input, the

5    accounting is not complete.  I will endeavor to wrap this

6    up by next week, but I cannot promise to do so."

7              This has really been the status from August 20,

8    '14, all the way to the present, defendant has claimed two

9    things:  That she's entitled to expenses and

10   reimbursements from the trust, despite everything that

11   happened, and, No. 2, that she hasn't yet been able to

12   furnish those to the successor trustee.

13             I now want to go to Exhibit C to my motion,

14   or -- I think it was Exhibit C to my motion, which is the

15   most recent accounting, which has a cover letter dated

16   August 5th, 2015, and if you turn to page -- I guess it's

17   page 1, it has assets per inventory or on hand at close of

18   last accounting period, and it basically lists the assets

19   other than cash, the cash, and then the total assets.

20             You'll see one, two, three, four, five down

21   under miscellaneous property, Pamela Stuart loan, paren,

22   no stated interest rate currently determined or accrued on

23   note yet, to be determined, $1.789 million.

24             And you'll also see that the cash on hand was

25   203,000 then, but it's even less now.

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S/RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

6

```
 1              To understand that $1.7 million figure, you
 2     would actually go back to the prior accounting.  There's a
 3     prior accounting with a cover letter dated August --
 4              THE COURT:  Is that attached?  Is it something
 5     that you sent me?
 6              MR. HATHAWAY:  It's not.  It's probably --
 7              THE COURT:  I have the court file here.
 8              MR. HATHAWAY:  It is in the file?  Okay.
 9              THE COURT:  I don't know.  I have --
10              MR. HATHAWAY:  I think we filed it, but that was
11     middle of last year.
12              THE COURT:  I see an agreed order June 27th,
13     '14, and a motion September 17th and 9/24 some exhibits.
14              MR. HATHAWAY:  Okay.
15              THE COURT:  But those are only the 68 pages.
16              MR. HATHAWAY:  Would Your Honor like to see a
17     copy now?  I have one.
18              THE COURT:  Sure.  Why would the first
19     accounting not be filed with the court?
20              MR. HATHAWAY:  I'm not sure.  I thought it was.
21     Probably because there were ongoing issues with regard to
22     defendant's claim that it was not complete.
23              THE COURT:  All right.
24              MR. HATHAWAY:  This is the prior accounting from
25     August 8th.  If you go to the first sticky note there, I'm
```

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S/RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

7

1    going to try to go quickly.

2              Those are where the loans to Pam Stuart began in

3    1998, and if you go to the second sticky note, it's just

4    an example of the amounts.  I bracketed one -- I took one

5    month in 2011, it was November of 2011.  The loan amounts

6    are astronomical, and they're like just weeks apart.

7              So that's what we're talking about.  It's not as

8    if there's a loan to pay something that is -- you know,

9    we're not talking about a loan to pay a dentist bill.

10   Those are amounts of 10,000, 20,000, 15,000, 30,000

11   repeatedly for months and months and months.

12             So that's the prior accounting.  And to the

13   extent I didn't ask for it in my motion, if it's required,

14   I would extend it to both accountings.

15             So we are in a situation here where there was a

16   promissory note that was -- in order to justify these

17   loans, there is a promissory -- it's a loan agreement and

18   promissory note, which is Exhibit A to my notion.

19             THE COURT:  I've seen that.

20             You only have 30 minutes, 15 minutes each, so

21   you better speed it up.

22             MR. HATHAWAY:  Let me just go to the three

23   things we are here today for.  Number 1, we want to

24   approve the accounting.  We have the trustee's support on

25   that.

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE G. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

8

1              Number 2, we want to get a court ruling that due

2    to the circumstances, the defendant is not entitled to any

3    expense reimbursements.  In fact, under the case law, she

4    should be required to reimburse the trust for what's been

5    taken thus far.

6              And let me also note that there is a -- there is

7    a proposed order that was submitted by the defendant,

8    which says in the last line that a -- let me just read it

9    so I have it exactly right here.

10             There's a proposed order denying this motion,

11   and she says in page 2 of her proposed order, "Ordered

12   that plaintiffs are entitled to accounting and damages

13   flowing from defendant's withdrawals from the J. Raymond

14   Stuart Trusts beginning no earlier than four years prior

15   to the date on which the complaint in this matter was

16   filed."

17             Your Honor, there's case law on point that says

18   that a trustee may not use the statute of limitations to

19   reduce the number of damages or otherwise prevent a

20   beneficiary from recovering.

21             This is essentially throwing good money after

22   bad at this point in this case.  If the Court is going to

23   require us to be limited to four years, we would do that

24   for the sake of judicial economy, avoiding a trial.  We

25   believe that's a confession to judgment, at least for four

PAMEL B. STUART, ET AL VS. CATHERINE G. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

9

1    years.

2           And, third, the home in Vero Beach.  The

3    defendant owns a home in Vero Beach.  The home was

4    supposed to be -- there were funds that were loaned to the

5    defendant, supposedly, from the trust.  That money was

6    supposed to go back to the trust, and instead, the

7    defendant used that money to put into and pay off a -- I

8    think a $490,000 mortgage on a home.

9           The Florida statutes authorize the Court to

10   take -- No. 1, in 736.1001, Section 2(c), says, "The Court

11   may compel the trustee to redress a breach of trust by

12   paying money or restoring property or by other means," and

13   (h), "reduce or deny compensation to the trustee."

14          So, Your Honor, to wrap up, three things we're

15   looking for.  Number 1, approve the accounting as soon as

16   possible with no offsets, because -- and another point is

17   that just the interest on these loans would probably

18   eclipse all trustee fees for the past 18 years.  So I

19   don't even think it's an issue.

20          But, No. 1, to approve the accounting; No. 2, to

21   award damages to the plaintiff for the amount in the

22   confession judgment, if not the entire amount due; and,

23   No. 3, to order that the defendant restore property to the

24   trust by quitclaiming the John's Island property back to

25   the trust.

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

10

```
 1            THE COURT:  When was that 490,000 --

 2            MR. HATHAWAY:  That was done in -- my

 3   understanding is around December of '09.

 4            THE COURT:  Was it in the accounting here?

 5            MR. HATHAWAY:  It's not a trust asset.

 6            THE COURT:  No.  But the proceeds.  Oh, here it

 7   is, okay.  On August 13, 2010, 500,000?  Is that it?

 8            MR. HATHAWAY:  I don't think so.  No.  Actually,

 9   I think --

10            THE COURT:  Oh, no.  That's 5,000.  I'm sorry.

11            MR. HATHAWAY:  What I was mentioning was the --

12   there are two properties in Vero, Your Honor.  One is the

13   decedent's property, which you'll probably see there.  The

14   other is a property that was purchased by the defendant.

15            THE COURT:  Right.  And you said that she

16   purchased it or paid it off for 490,000 using trust funds.

17            MR. HATHAWAY:  Correct.  Not trust funds.  Using

18   money that she was going to repay her loans with.

19            THE COURT:  Oh, I see, okay.

20            MR. HATHAWAY:  Because she sold another property

21   in D.C.

22            THE COURT:  So other than the statute, is there

23   some claim for an equitable lien on those properties?

24            MR. HATHAWAY:  Yes.  Well, Your Honor, the

25   agreed order said in the very last paragraph that she was
```

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

11

1    not able to encumber that.  This is the second property.

2                THE COURT:  All right.

3                MR. HATHAWAY:  My understanding is the

4    D.C. house is a $1.7 million home, and that is used as a

5    primary residence.

6                The John's Island townhouse is more like -- I'm

7    going to roughly estimate a $400,000 property here in

8    Vero, and that is what we believe should be deeded to the

9    trust.

10               And I want to just make one quick comment.

11   Debbie Stuart, the second -- I have Cathy Stuart here --

12   Cathy Ryan with me here in the courtroom.  Debbie lives in

13   Washington State and is basically destitute.  If the cash

14   on hand is distributed by the successor trustee, we have a

15   grand total of, I think, $36,000 she will receive.  Debbie

16   doesn't even make $36,000 in a year of work.  She's at the

17   Home Depot or one of those as a check-out or a floor

18   person and makes almost no money.  Her entire inheritance

19   is gone.  I mean, her life is basically shattered by this,

20   you know, and that's just a complete shame.

21               THE COURT:  Is law enforcement involved in this

22   case?

23               MR. HATHAWAY:  I do not believe law enforcement

24   is involved.

25               THE COURT:  All right.  I'm wondering if I have

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

12

1    a duty to -- I'm going to have to research that -- report

2    something like that.

3         All right.  Any response?

4         MS. STUART:  Yes, Your Honor.  Has the Court had

5    an opportunity to read my oppositions to these motions?

6         THE COURT:  Yes, I have.

7         MS. STUART:  I won't belabor the facts, but

8    there is no evidence here of an evil intent, and what

9    Mr. Hathaway describes as loans were taken in good faith,

10   based on express language in the trust that permitted

11   loans, and with the intent of repaying them out of later

12   proceeds.

13        As the Court can see, the experience that I had

14   for 17 years or so was one of being in almost constant

15   litigation, trying to take care of my elderly mother who

16   had quite a number of medical issues that got

17   progressively worse, and also trying to keep up my law

18   practice, which that didn't work, either.

19        The issues before the Court really stem from the

20   Court's order issued in March of 2014, which was

21   essentially negotiated with Mr. Hathaway by my former

22   counsel.

23        I note that the trust accounting makes no

24   provision for repaying the approximately 50 -- or

25   crediting the approximately $50,000 I had to spend to get

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523  DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

13

1  to that point, on attorneys.

2            But I explained to the attorneys, and I have

3  demonstrated to the Court the problem that I faced in

4  trying to do this accounting, and I apologize for that, I

5  apologize to everyone concerned, but my sisters and my

6  brother-in-law were very aware of this situation from the

7  beginning of the time when I purchased the building in

8  Washington, which was supposed to be an investment.

9  Incidentally, the combined building that now includes that

10 building is assessed at $28 million.  So my instincts

11 were good.  I was just defrauded by the people who sold it

12 to me.

13            THE COURT:  Is that the D.C. home that

14 plaintiff's counsel is referring to as 1.7 million?

15            MS. STUART:  No.

16            THE COURT:  So you have another building that's

17 worth 28 million?

18            MS. STUART:  No, I do not.

19            THE COURT:  What are you saying?  I'm not

20 following you.

21            MS. STUART:  I'm saying that the building that

22 resulted in litigation was apparently a good investment

23 for -- I believe for the family as well as myself.  But it

24 didn't turn out that way.

25            THE COURT:  What family?

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

14

1          MS. STUART:  The Stuart family.  If I had made

2     money on this, they would have shared in it.

3          THE COURT:  Is that building titled in the

4     Stuart trust?

5          MS. STUART:  No.

6          THE COURT:  Then how does the family -- how is

7     it invested for the family?  Or why wasn't it put in the

8     trust, if that was the purpose, or purchased in the

9     trust's name?

10          MS. STUART:  I made the determination, Your

11     Honor, that if it worked out, that the family would share.

12     If it didn't work out, I would take the hit.

13          But I didn't expect to take a hit and get sued

14     and not be reimbursed for all the time and expenses that I

15     devoted, which allowed my two sisters to go on with their

16     life while I was taking care of my mother.

17          And I might add I wouldn't do anything

18     differently.  My mother was well taken care of.  She died

19     the way she wanted to, and I'm very happy about that.

20          THE COURT:  Well, I just need to know what it is

21     that you think that you couldn't or you haven't been able

22     to prepare, other than I read your responses that think

23     that you're entitled to compensation for taking care of

24     your mother because you put your law practice on hold.

25          So prior to the time that you took care of your

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

15

```
 1    mother, what was your income that you gave up that you
 2    claim that you were earning from your law practice?
 3                MS. STUART:  My law practice grossed --
 4                THE COURT:  Not gross, ma'am.
 5                MS. STUART:  Net was probably about 170,000 a
 6    year.
 7                THE COURT:  That was for what year?
 8                MS. STUART:  That was for most years.  It varied
 9    considerably, Your Honor, depending on the kind of cases I
10    was taking at the time.
11                THE COURT:  So what year was it that you
12    claimed, or years, that you claim that you took care of
13    your mother and couldn't practice law?
14                MS. STUART:  Well --
15                THE COURT:  What years were those?
16                MS. STUART:  Really, almost a hundred percent,
17    it was 2011 and 2012.
18                THE COURT:  All right.
19                MS. STUART:  But it was partly because I was
20    having six or seven different surgeries also during that
21    time period.
22                THE COURT:  How did you take care of your mother
23    if you were having all those surgeries?
24                MS. STUART:  I came down, I made 11 trips, round
25    trips to Vero Beach in 2011 in addition to having my right
```

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

16

1    hip replaced, my right shoulder replaced.

2              THE COURT:  Okay.  I don't need to know all

3    that.

4              But I think I read that you -- from your

5    mother's trust monies, you hired full-time help, so what

6    were you doing?

7              MS. STUART:  What was I doing?  I was

8    supervising the nurses, I was paying the bills, I was

9    performing -- my mother was in a wheelchair for the --

10             THE COURT:  Right.

11             MS. STUART:  -- last several years of her life.

12   So when I came down, I was in charge of the maintenance of

13   the property.

14             THE COURT:  So let's say that you're entitled to

15   340,000 for those two years.

16             What about all the interest on the loans?  That

17   totals more than that.

18             MS. STUART:  But what I'm asking the Court for

19   is some additional time that would make sense in this

20   situation because --

21             THE COURT:  That's what I'm asking you.  What do

22   you need additional time for?  I just said if they gave

23   you the maximum amount that you could have lost, there's

24   no reason to give you time because the amount of the

25   interest still exceeds, and they're willing to compromise

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

17

1   to the four years and accept that.  We're talking about

2   another large amount of money.  So what is it you need

3   time for, specifically?

4            MS. STUART:  I need to finish the review of the

5   expenses, we need to get an appraisal of the house.

6            THE COURT:  You're not the trustee anymore.

7            MS. STUART:  I know, but I'm looking at the

8   accounting and it's inaccurate, Your Honor.  The Court

9   ordered that an accounting be done.  The loan value is

10  inaccurate.

11            There were payments made to my mother that were

12  attributable to me.  I mentioned the attorney's fees.

13            There also were transfers to my sister Deborah,

14  who I agree isn't -- was entitled to more than she's

15  getting out of this, although she gets her house free and

16  clear, which was always the intent.

17            I also performed legal work on behalf of the

18  trust and also on behalf of my sister.  There are social

19  security withholdings that are not -- have not been

20  currently paid.

21            I treated my mother and father's trusts as a

22  unit, and my mother's trust effectively was -- you know,

23  ran out of money in 2009 because of the ongoing payments

24  to the nurses and so forth.

25            And at the time when this -- when I was doing

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE G. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

18

 1     the accounting for the social security, my brother-in-law

 2     blocked access to the trust funds so I couldn't pay for

 3     those.

 4              THE COURT:  None of that has anything to do with

 5     the accounting, ma'am.  You've had since November 8th,

 6     2013, when this complaint was filed, to do whatever you

 7     needed to do.  So for two years, are you telling me that

 8     you've been incompetent or incapacitated where you

 9     couldn't travel, you couldn't do anything to do what you

10     needed to do to address the issues in this case?

11              MS. STUART:  Well, I --

12              THE COURT:  You mentioned --

13              MS. STUART:  I recounted for the Court --

14              THE COURT:  You mentioned a death --

15              MS. STUART:  Several.

16              THE COURT:  -- two, three weeks ago.  We're

17     talking 24 months.

18              MS. STUART:  I agree, Your Honor, but this is 16

19     years worth of --

20              THE COURT:  Accounting --

21              MS. STUART:  -- things that require me to go

22     through 16 years worth of credit card receipts and try and

23     pinpoint.  There were trips that I made to Florida for Bar

24     purposes that needed to be excluded, for example.  I

25     couldn't include all trips that had nothing to do with the

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

19

```
 1    trust.

 2              So I'm down to the end.  I think what I would

 3    ask the Court to do is to rule on the issue that's

 4    presented by Corya vs. Sanders, which essentially says

 5    that beneficiaries cannot all of a sudden come to court at

 6    this late date in a circumstance where no accountings have

 7    been filed, and they knew why no accountings have been

 8    filed, and I did accountings for the first several years

 9    until I fell into the morass of the building situation.

10              And they had the benefit of the statements of

11    the brokerage account which showed each and every

12    withdrawal that I made, except for after my brother-in-law

13    refused to resign as trustee and I established two new

14    accounts, and they have those also.

15              I would say also in response to Mr. Hathaway, I

16    am domiciled here.  I have voted here since 2004.  The

17    house that I bought here at the time that my mother --

18              THE COURT:  I'm only here on a motion to approve

19    accounting.  I don't know what other motion he's asking me

20    about the home.

21              MS. STUART:  I'm responding to his remarks.

22              THE COURT:  Well, that goes beyond the scope.

23              MS. STUART:  It's his motion, and he didn't even

24    file the accounting he wants the Court to approve.

25              THE COURT:  Okay.  All right.
```

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

20

1          MS. STUART:  I'm not confessing judgment to

2     anything at this point.

3          And I paid off the mortgage on the home here

4     with proceeds from the sale of the building because it was

5     a subprime mortgage with interest at 8.9 percent.

6          THE COURT:  So the building's been sold?

7          MS. STUART:  Yes.

8          THE COURT:  When was it sold?

9          MS. STUART:  It was sold in 2009, and out of the

10    proceeds of that I paid --

11         THE COURT:  So wait a minute.  Hold on.

12         The building was sold in 2009, so what has been

13    going on with your inability to do these accountings and

14    get all this stuff together?  I thought that was one of

15    the issues that interfered with your ability to do your

16    proper --

17         MS. STUART:  I was in litigation on it, ma'am,

18    until 2014.

19         THE COURT:  Okay.  So, but for the last six

20    years, what have you been doing?

21         MS. STUART:  I have been trying to rebuild my

22    law practice.

23         THE COURT:  Okay.

24         MS. STUART:  And I was doing -- after the

25    building was sold, I made an attempt to deal with medical

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

21

```
1    issues that had been ignored for ten years.

2              THE COURT:  You mentioned that, during '11 and

3    '12 when you were taking care of your mother.

4              MS. STUART:  Right.

5              THE COURT:  Then from '13, '14, '15?

6              MS. STUART:  I had other surgeries, as well.

7              THE COURT:  When was your last surgery?

8              MS. STUART:  September of 2014.

9              THE COURT:  Okay.  And so since September of --

10   so you were incapacitated from 2011 through 2014,

11   basically?

12             MS. STUART:  I wouldn't say incapacitated, but

13   I --

14             THE COURT:  Were you able to work?

15             MS. STUART:  When I wasn't under rehab or

16   narcotics after surgeries and so forth.

17             THE COURT:  All right.  So this was filed,

18   though, in -- what did I say?  2013.  All right.

19             I still don't understand why, if this was a

20   pressing issue since 2013, in between your surgeries if

21   you're able to work that you haven't been able to provide

22   documents.  Especially being an attorney and know that you

23   have fiduciary duties.

24             And, quite honestly, I think that under Canon 3

25   I'm required to report this to the Florida Bar, as well as
```

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

22

1    law enforcement.  For an attorney to have these excuses

2    and to take money from a trust and make no accountings, I

3    mean, there's no evidence here today, but I believe that

4    there are some issues, some ethical issues that I'm a

5    mandatory reporter.

6            So I'm not sure if you were placed under oath,

7    but I'm putting everyone on notice that I will report, as

8    I'm required to report, under Canon 3.

9            So, once again, there's nothing that you've said

10   that will convince me that you haven't over the last two

11   years -- at least two years -- that you haven't been able

12   to go through your records and do what you could have

13   done, at least -- well, let's just give you benefit of the

14   doubt, since September of 2014, which is 15 months, that

15   you couldn't have gone through your records and done what

16   you needed to do to comply with this Court's mandate of

17   providing an accounting upon the removal of yourself as

18   trustee.

19           MS. STUART:  Your Honor --

20           THE COURT:  And/or that if I gave you more time,

21   that you'll be able to do it, because you haven't been

22   able to do it in 15 months.

23           MS. STUART:  Your Honor, from June of 2014 until

24   January of 2015, I was taking care of a dear friend who

25   passed away from cancer.

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

23

```
 1              THE COURT:  Ma'am, if that's more important to
 2    you than your Bar license and your duties to this Court,
 3    I'm sorry, but everyone has their priorities.  If you had
 4    time to do that, certainly you knew that this case was
 5    pending and that you had things you needed to do.
 6              MS. STUART:  And I did that as best I can.
 7              THE COURT:  And not work and support yourself.
 8              MS. STUART:  I was trying.
 9              THE COURT:  Okay.
10              MS. STUART:  I have to borrow money to pay my
11    expenses at the present time.
12              THE COURT:  Looks like you've had to do that
13    since about 1998.
14              MS. STUART:  No, Your Honor.  Actually, the
15    first several years there were fees that were taken from
16    the trust.
17              THE COURT:  '99, I'm sorry, '99.
18              All right, I need to hear from the successor
19    trustee.
20              MS. STUART:  Thank you, Your Honor.
21              MR. PRESNICK:  Your Honor, David Presnick,
22    attorney for successor trustee.
23              THE COURT:  Do you want to address some of the
24    issues that the defendant raised about appraisals and --
25              MR. PRESNICK:  Yes, Your Honor.
```

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

24

```
 1          As far as the appraisal is concerned, we have
 2     come up with a plan of distribution, but I wanted to wait
 3     to get the appraisal done, or ask the trustee to wait
 4     until we get close to a distribution time.  There's no
 5     reason to do an appraisal now if it's going to be another
 6     year.  I didn't know how long it was going to be before we
 7     would be in a position to distribute assets.
 8          Like with any trust administration, even with
 9     stock in a publicly held company, until you push the
10     button to sell it, you don't know what the value is.
11          THE COURT:  Is there any impediment to amending
12     the accounting if you obtain additional information as to
13     value of real estate and/or additional interest
14     calculations or additional fees?  I don't recall there
15     being anything.
16          MR. PRESNICK:  Your Honor, actually, it should
17     be a fairly easy item to take care of because all three
18     beneficiaries are going to have to get part of what the
19     trustee is calling the Stuart loan, the 1.79 million.
20          If Miss Stuart is able to show that part of that
21     shouldn't be a loan, that it should be some type of an
22     expense --
23          THE COURT:  It would be her share anyway.
24          MR. PRESNICK:  It would go to evaluation, and
25     all three of them we could reallocate just that one asset
```

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523  DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

25

1    because it's such a large amount of the trust.

2            THE COURT:  She's saying that other than that

3    one asset, that the real estate, which if I approve the

4    accounting, the real estate's not going to be sold right

5    away; right?  Or would it be sold at market value rather

6    than the amount stated in the accounting?

7            MR. PRESNICK:  What we would do, Your Honor, is

8    get an appraisal done because we need it at the point of

9    distribution, not at the point of the accounting.  So we

10   have already started the appraisal process with the hope

11   and expectation that we can close out this trust

12   administration, get the assets distributed to the

13   beneficiaries.

14           There's no reason this family needs to continue

15   a trust administration.  Trustee fees, my fees, I think

16   are unnecessary at this point because the only asset

17   that's going to be reallocated is the amount of the loan

18   amount.

19           THE COURT:  But the Court will retain

20   jurisdiction over that?

21           MR. PRESNICK:  Yes, Your Honor.

22           THE COURT:  Then I don't understand what your

23   complaint is.

24           MS. STUART:  Your Honor, that loan amount is --

25           THE COURT:  The Court will retain --

PAMEL B. STUART, ET AL VS. CATHERINE J. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

26

1          MS. STUART:  -- something of a fiction.

2          THE COURT:  But the Court will retain

3     jurisdiction to determine that.

4          MS. STUART:  Very well, Your Honor.

5          THE COURT:  All of this needs to move forward.

6     You're just wasting money, wasting trustee fees and monies

7     if there's no assets.  The Court would retain jurisdiction

8     over that.

9          MS. STUART:  Your Honor, respectfully, I need

10    some supervision of this process because I certainly would

11    not be able to have a reasonable discussion about this

12    with my brother-in-law.

13         THE COURT:  I'm sure Judge Kanarek will have a

14    full evidentiary hearing on it if I reserve jurisdiction

15    to determine that asset and any set-offs.  I think that's

16    probably the most efficient way to handle it, is to

17    approve the accounting and retain jurisdiction over the

18    loan issue for set-offs or credits and let Judge Kanarek

19    have a full evidentiary trial, and you'll have all the

20    time you need and you can prioritize whatever it is you

21    think, and then the trustee, I guess, the defendants -- or

22    the plaintiff, not the trustee, but the plaintiff would

23    then present testimony as to the interest and the loans,

24    and then the defendant could present testimony as to

25    set-offs, credits, trustee fees, whatever you claim that

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

27

1    you haven't been able to do in the last three years.  And

2    then the judge could determine pro rata what each

3    plaintiff and defendant would be entitled to of that

4    asset.  Right?

5            MR. PRESNICK:  Your Honor, my plan for the

6    trustee was to do a plan of distribution.

7            THE COURT:  That's next?

8            MR. PRESNICK:  Excuse me, Your Honor.

9            THE COURT:  That's next after the accounting

10   approval?

11           MR. PRESNICK:  Yes.

12           THE COURT:  But the plan of distribution

13   couldn't be approved or acted upon, I guess, if you will,

14   until the Court makes the determination about that loan.

15           MR. PRESNICK:  That is correct, Your Honor.

16           THE COURT:  If I retain jurisdiction on it.

17           MR. PRESNICK:  We were going to do a plan of

18   distribution after we had the appraisal done on the real

19   estate, and then give the Court our plan as trustee to the

20   distribution of assets, and then give it to the parties.

21   If they all consent, we're done.  If they don't, then the

22   evidentiary hearing will be necessary.

23           THE COURT:  Right, because they could agree on

24   that loan issue.  All right.

25           All right.  Well, I'll prepare an order then,

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

28

1    and I think that if I retain jurisdiction, that addresses

2    the concerns of the defendant, as well as moves forward,

3    makes the litigation more efficient.

4         I'll approve the accounting with retention of

5    jurisdiction over a proposed plan of distribution and

6    subject to any claims, additional claims of interest

7    and/or set-offs or credits to that loan account.

8         That should do it; right?

9         MR. PRESNICK:  Yes.  Your Honor, just one point.

10   The reason the initial accounting wasn't done is we were

11   trying to give the defendant as much time to try to put it

12   together, but it got to the point where we had to bring it

13   to the Court's attention.

14        THE COURT:  All right.  I'll prepare an order

15   and E-File it probably this weekend.

16        MS. STUART:  Will the Court address the issues

17   about the latches issue?

18        THE COURT:  No.  No.  That would be at the

19   evidentiary hearing when I retain jurisdiction to address

20   the loan and the credits.  Right?  That would be an

21   affirmative defense.  That would be that loan issue.

22        (Hearing was concluded at 2:18 p.m.)

23

24

25

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

PAMEL B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523   DCA CASE NO. 4D16-3921

CERTIFIED REPRINT OF ORIGINAL

29

1                    CERTIFICATE OF REPORTER

2

3          I, KAREN J. PERKINS, Florida Professional

4    Reporter and California Certified Shorthand Reporter, do

5    hereby certify that I was authorized to and did report the

6    foregoing proceedings, and that the transcript, pages 1

7    through 28, is a true record of my stenographic notes.

8

9          Dated this 17th day of January, 2016.

10

11

12

13

14    _____
                KAREN J. PERKINS
15          Florida Professional Reporter
         California Certified Shorthand Reporter

16

17

18

19

20

21

22

23

24

25

ANGELL REPORTING SERVICE, INC.
(321) 259-8500

3955



Filing # 38091296 E-Filed 02/22/2016 01:03:57 PM

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY, FLORIDA

CATHERINE S. RYAN and        CASE NO.: 31-2013-CA-001523
DEBORAH A. STUART,
     Plaintiffs,

vs.

PAMELA B. STUART,
     Defendant.
_____/

## ORDER SCHEDULING HEARING

**THIS MATTER** came on to be heard at the court's docket call on February 22, 2016, in reference to an order issued by Judge Cynthia Cox on January 3, 2016, Order Granting Plaintiff's Motion to Approve Accounting, Reserving Jurisdiction for Distribution and Requiring Evidentiary Hearing, it is therefore;

**ORDERED AND ADJUDGED** that this matter is hereby scheduled for an evidentiary hearing before the undersigned on **March 11, 2016, starting at 9:00am** in Courtroom 5 of the Indian River County Courthouse.

DONE AND ORDERED in chambers, Vero Beach, Indian River County, Florida, this 22nd day of February 2016.

_____
**PAUL B. KANAREK**
**Circuit Judge**

cc:     David P. Hathaway, Esq., dhathaway@deanmead.com
        David Presnick, Esq., david@presnicklaw.com; becky@presnicklaw.com
        Pamela B. Stuart, Esq., pamstuart@aol.com

## NOTICE TO PERSONS WITH DISABILITIES

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Corrie Johnson, Court Administration, 250 N.W. Country Club Drive, Suite 271, Port St. Lucie, Florida, 34986, (772) 807-4370, within two working days of your receipt of this notice; if you are hearing or voice impaired, call 1-800-955-8771.

Filing # 39236790 E-Filed 03/21/2016 09:50:52 AM

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
IN AND FOR INDIAN RIVER COUNTY, FLORIDA

CATHERINE S. RYAN and          CASE NO.:  31-2013-CA-001523
DEBORAH A. STUART,
    Plaintiffs,

vs.

PAMELA B. STUART,
    Defendant.
_____/

## ORDER SCHEDULING HEARING

**THIS MATTER** came on to be heard at the court's docket call on March 21, 2016, in order to finish the hearing started on March 11, 2016, it is therefore;

**ORDERED AND ADJUDGED** that this matter is hereby scheduled for an evidentiary hearing before the undersigned on **April 13, 2016, starting at 9:00am** in Courtroom 5 of the Indian River County Courthouse.

DONE AND ORDERED in chambers, Vero Beach, Indian River County, Florida, this 21st day of March 2016.

_____
**PAUL B. KANAREK**
**Circuit Judge**

cc:    David P. Hathaway, Esq., dhathaway@deanmead.com
      David Presnick, Esq., david@presnicklaw.com; becky@presnicklaw.com
      Pamela B. Stuart, Esq., pamstuart@aol.com

## NOTICE TO PERSONS WITH DISABILITIES

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Corrie Johnson, Court Administration, 250 N.W. Country Club Drive, Suite 271, Port St. Lucie, Florida, 34986, (772) 807-4370, within two working days of your receipt of this notice; if you are hearing or voice impaired, call 1-800-955-8771.



Dear Pamela,

You have asked me to do a discrete amount of research into billing rates for law firm attorneys of your skill and experience. Based on my research, I conclude that a fee level of $650 to $675 per hour is reasonable and justified for you.

I will explain my data points shortly.

I do have several notes and caveats.

(1) This assessment is based on my experience in the industry at *Legal Times* and elsewhere, and on publicly available documents. I did not conduct any personal interviews.

(2) I am merely suggesting that $650 to $675 per hour are sensible, reasonable and justified rates – not that they are necessarily the most desirable rates for you. Perhaps lower or higher rates are preferable, but those considerations are outside the scope of this specific assignment.

(3) The data that I have used is taken from high-end, high-value legal work: high-stakes litigation, major bankruptcies, corporate mergers and acquisitions, etc. – the sort of thing that big firms typically do. It may not apply well to work that you do (trusts and estates, for example, or divorce) that is not part of the bread and butter of the big firms.

(4) I believe it to be the case that your skill and experience is equivalent to these top lawyers in the big firms, so this data is applicable to you.

What I have found is that despite the so-called legal recession, highly skilled partners at major urban U.S. firms, including D.C. firms, have kept their billing rates fairly constant or even raised them slightly. According to the consulting firm Altman Weil, for example, in 2010, large law firms raised their rates an average of 3.2 percent over 2009 despite the recession. Accordingly, the rates that were being charged in 2006, 2007, 2008, or 2009 are appropriate guides to the rate that can be charged in 2010.

Although it is not especially easy to find out what the prevailing rates are from online public sources, it is not especially difficult either.

Here are my key data points:

- In April 2010, an article in *Washington Lawyer* on the legal recession assumed that a senior-level partner in a major D.C. firm bills at **$700 per hour,** and a junior-level partner at **$500 per hour.**
- In November 2009, an article in the *Philadelphia Business Journal* noted that most major firms in that city have lawyers who bill at **$700 to $800 per hour.**
- In a May 2010 antitrust fee award case, a U.S. District Judge in the Eastern District of New York noted that Brown & Rudnick attorneys bill up to **$756 per hour** and that Winston & Strawn attorneys bill up to **$765 per hour.**
- In February 2010, an article in the *Boston Business Journal* pointed out that when an attorney left that city's Choate Hall, top partners there were billing **$600 per hour** and when an another attorney left that city's office of DLA Piper, top partners there were billing **$700 per hour.**
- According to news accounts, Phoenix attorneys at Snell & Wilmer representing the State of Arizona and defending that state's immigration law are billing the state **$450 per hour** – but that is not in a high-cost area and it is being billed to a government entity.
- Weil Gotshal billed from **$650 to $950 per hour** in the Lehman Brothers bankruptcy – but that is a bit high because it is a top New York rate in an extremely high-profile case.
- A December 2009 article on bankruptcy rates in Delaware and in the Southern District of New York of the top firms in an *American Lawyer* publication shows that these rates are generally higher than $800 per hour. They vary from Sonnenschein's **$625 per hour** to Simpson Thacher's **$980 per hour.** This chart appears at the end of this report.
- Most importantly, a 2010 survey by the consulting firm Hoffman Alvary of Newton, Mass., entitled, "Transformation in the Legal Market as the Recession Continues," gives a bar and line chart of litigation partner billing rates at large firms. It shows that a significant number of litigation partners bill in each of five bands: **$500 to $550 per hour, $550 to $600 per hour, $600 to $650 per hour, $650 to $700 per hour, and $700 to $750 per hour.** I will hand you a copy of this chart.



PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

3120140071019 RECORDED IN THE RECORDS OF JEFFREY R. SMITH, CLERK OF CIRCUIT COURT INDIAN RIVER CO FL
BK: 2807 PG: 868, 12/5/2014 10:30 AM

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT,
IN AND FOR INDIAN RIVER COUNTY,
FLORIDA

### DECLARATION OF DOMICILE OF PAMELA BRUCE STUART

To the Clerk of the Circuit Court of Indian River County, Florida:

This is my declaration of domicile in the State of Florida that I am filing this day in accordance and in conformity with Section 222.17, Florida Statutes.

I HEREBY DECLARE that I reside in and maintain a place of abode at 111 John's Island Drive #7, Indian River Shores, Indian River County, Florida 32963.  I have resided at that residence since January 30, 2000 and have considered it my domicile since 2004.  I recognize and intend to maintain 111 John's Island Drive #7, Indian River Shores, Florida 32963 as my permanent home, my predominant and principal home and I intend to continue it permanently as such.  I have purchased and maintain a burial plot in the Town of Indian River Shores cemetery to which I am entitled by virtue of my status as a resident of the Town of Indian River Shores, Indian River County, Florida.  I am at the time of making this declaration a bona fide resident of the State of Florida residing at 111 John's Island Drive #7, Indian River Shores, Florida 32963.

The place where I maintain another place of abode is at 5115 Yuma Street, N.W., Washington, D.C.  20016.  While I intend to continue to maintain another place of abode in Washington, D.C., it is not and has not been my domicile since at least September 2004.

*Pamela Bruce Stuart*

PAMELA BRUCE STUART

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523       DCA CASE NO. 4D16-3921

BK: 2807 PG: 869

Declaration of Domicile of
Pamela Bruce Stuart
December 4, 2014
Page 2

STATE OF FLORIDA                    :

                                    :   ss

INDIAN RIVER COUNTY                 :

The foregoing instrument was acknowledged before me this _4_ th day of December,
A.D. 2014, by Pamela Bruce Stuart who is personally known to me or who has produced
_Washington D C Drivers License_as identification and who did take an oath.

Notary Public, State of Florida

_Benc Saltz_

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523        DCA CASE NO. 4D16-3921

Filing # 40356140 E-Filed 04/16/2016 07:44:09 PM

3120160021492
RECORDED IN THE PUBLIC RECORDS OF
JEFFREY R SMITH, CLERK OF COURT
INDIAN RIVER COUNTY FL·
BK: 2926 PG: 2416 Page 1 of 3 4/15/2016 4:21 PM

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT, IN AND
FOR INDIAN RIVER COUNTY, FLORIDA

NOTICE OF HOMESTEAD

To:     The Clerk of the Court and Judges of the 19th Judicial Circuit and anyone else to whom it
may concern:

You are hereby notified that the undersigned claims as homestead exempt from levy and
execution under Section 4, Article X of the State Constitution of Florida the following described
property:

Legal Description:

Apartment 7, the Tennis Townhouses, A Condominium, according to the
Declaration of Condominium thereof, as recorded in Official Records
Book 482, Page 764 of the Public Records of Indian River County, Florida

Parcel ID#:  32-40-07-00009-0000-00007.0

Street address:  111 John's Island Drive, Unit 7, Vero Beach, Florida 32963

The undersigned certifies, under oath subject to the penalties of perjury, that she has applied for
and received the homestead tax exemption as to the above-described property, that 32-40-07-
00009-0000-00007 is the tax identification parcel number of this property, and that the
undersigned has resided on this property continuously and uninterruptedly from January 30, 2000
to the date of this Notice of Homestead.  The undersigned also certifies, under oath, that she
intends to remain a resident of the homestead indefinitely and has no present intention of
moving.  The undersigned notes that in 2007 she purchased a burial plot next to the location
where her father is buried in the Town of Indian River Shores cemetery which requires that in
order to be buried in the town cemetery that the deceased must have been a resident of the Town
of Indian River Shores.

The undersigned further certifies that she is in compliance with the order of the court on
March 4, 2014 that she not sell, transfer, jointly title, encumber or otherwise attempt to make
unavailable to creditors 111 John's Island Drive 7, Indian River Shores, Florida 32963.  This
Notice of Homestead is filed to assert that the protection of Article 10, Section 4 of the State
Constitution of Florida attached to this property which has been the homestead of the
undersigned since at least September 2004 and that the filing of this Notice of Homestead in no

3181

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

NOTICE OF HOMESTEAD
by Pamela Bruce Stuart
Page 2

way an act of non-compliance with the order of the court.  The above-described homestead was acquired by the undersigned in 2000 utilizing her own funds and various mortgages for which she was personally liable.

In 2006, in order to raise funds to pay the legal fees of The Stuart Building, LLC, a District of Columbia Limited Liability Corporation, which was then engaged in litigation against the seller of real property owned by The Stuart Building, LLC, the undersigned refinanced the above-described homestead property and the proceeds of that refinance were used to pay off the then-existing mortgage debt on the homestead (which consisted of the remaining balance of the first 15 year mortgage and a second deed of trust placed by Eagle Bank in conjunction with the purchase of The Stuart Building, LLC's real property).  The original and second mortgages were paid off and replaced it with a 30 year mortgage in the amount of $497,250 at 7.99%.  Funds "cashed out" at the time of the refinance in 2006 were utilized to pay legal fees incurred by The Stuart Building, LLC with the law firm of Bregman, Berbert, Schwartz & Gilday.  Upon the sale of the asset owned by the Stuart Building, LLC in December 2009, The Stuart Building, LLC, in accordance with its obligation to the undersigned, paid off the mortgage against the homestead which then amounted to $485,307.90.  The Stuart Building, L.L.C. also paid $45,000 to Bregman, Berbert, Schwartz & Gilday at the time of the closing.  Instead of fully paying off the mortgage debt assumed by The Stuart Building, L.L.C., the undersigned retained a second deed of trust in the amount of approximately $140,000 as a lien against the undersigned's residence in Washington, D.C. which approximated the original mortgage against the homestead that was paid off in the refinancing of 2006.  Thus, all of the funds used to purchase the homestead consisted of funds belonging to the undersigned or on which the undersigned was personally obligated.  At no time did the undersigned apply funds acquired by fraud or egregious conduct or apply funds for the purchase of the homestead with the intent to hinder or delay or impair the rights of creditors.

The undersigned also certifies, under oath, that the equitable lien filed on July 9, 2014 as document 31 201 40039810 in the Records of the Circuit Court of Indian River County, Florida, Book 2772, Page 368, does not constitute a valid lien on the above-described property other than as an agreed order.  Only the exemptions contained in Article X, section 4 of the Florida Constitution would support a lien against a homestead property.  In *Havoco of America v. Hill*, 790 So.2d 1016 (Fl 2001), the Florida Supreme Court said that a homestead acquired by a debtor with the specific intend to hinder, delay, or defraud creditors is not excepted from the protection of Article X, section r of the Florida Constitution and that the Fraudulent Transfer Act, Fla. Stat. 726.105, has no effect on the constitutionally created homestead exemption.

The undersigned also certifies, under oath, that the Florida statute, 196.061 declaring that rental of a homestead constitutes abandonment of the homestead status until and unless the property is again occupied by the owner is not a basis for denying constitutional protection to

PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523      DCA CASE NO. 4D16-3921

NOTICE OF HOMESTEAD
by Pamela Bruce Stuart
Page 3

this homestead property.   While the undersigned has rented the homestead for short periods of time or donated a brief stay in it as a charitable auction prize occasionally (usually for a week), she always has intended to return to occupy the property on a permanent basis and has done so. On no occasion since its purchase in 2000 has the homestead been rented for more than thirty days at a time.  It has not been rented or made available for rental since August 2015.

Any prior statements of the undersigned indicating that she was not seeking homestead protection for the above-described property, if any, are disavowed, null and void.

YOU ARE FURTHER NOTIFIED PURSUANT TO SECTION 222.01 ET SEQ., FLORIDA STATUTES, THAT WITHIN 45 DAYS AFTER THE MAILING OF THIS NOTICE YOU MUST FILE AN ACTION IN THE CIRCUIT COURT OF INDIAN RIVER COUNTY, FLORIDA, FOR A DECLARATORY JUDGMENT TO DETERMINE THE CONSTITUTIONAL HOMESTEAD STATUS OF THE SUBJECT PROPERTY.  YOUR FAILURE TO SO ACT AND TO RECORD A LIS PENDENS IN THE PUBLIC RECORDS OF INDIAN RIVER COUNTY, FLORIDA, WILL RESULT IN ANY BUYER OR LENDER, OR HIS OR HER SUCCESSOR AND ASSIGNS, UNDER A CONTRACT OF SALE TO TAKE FREE AND CLEAR FROM ANY LIEN ON THE PROPERTY.

Executed this 15th day of April, 2016:

PAMELA BRUCE STUART
OWNER OF HOMESTEAD

111 JOHN'S ISLAND DRIVE, UNIT 7
VERO BEACH, FLORIDA 32963

SWORN TO AND SUBSCRIBED BEFORE ME BY PAMELA BRUCE STUART WHO IS PERSONALLY KNOWN TO ME OR PRODUCED FLORIDA DRIVER'S LICENSE S363-662-49-553-0 AS IDENTIFICATION, THIS ___15___TH DAY OF APRIL, 2016.

BEN C SALTZ
Notary Public - State of Florida
My Comm. Expires Jul 9, 2017
Commission # EE 883947
Bonded Through National Notary Assn.

Notary Public, State of Florida

My Commission expires: __9-9-2017__

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-CV-60737-COHN/SELTZER

TERRY FIGEL, a natural person,
on behalf of himself; and
SPENCER FIGEL, a natural person,
on behalf of himself and all other
unborn heirs of Gloria Figel,

      Plaintiffs,

vs.

WELLS FARGO BANK, N.A.,
a South Dakota chartered bank.

      Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

**THIS CAUSE** is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment [DE 78] ("Motion for Summary Judgment"). The Court has carefully reviewed the Motion for Summary Judgment, Plaintiff Terry Figel's response [DE 97], Plaintiff Spencer Figel's response [DE 99], Defendant's reply [DE 112], the parties' supplemental briefs in response to the Court's Order pursuant to Federal Rule of Civil Procedure 56(f) [DE's 129, 130], the record in the case, and is otherwise advised in the premises.

### I. BACKGROUND

This matter involves a trust settled by Gloria Figel ("the Figel Trust").[1] Gloria Figel set up the Figel Trust to benefit, among others, Plaintiff Terry Figel ("Terry") as an income beneficiary, and Terry's son, Plaintiff Spencer Figel ("Spencer") as a

_____

[1]    As of December 31, 2010, the Figel Trust had an account value of $3,085,134.88. See DE 129-23 at 1.

Dockets.Justia.com

remainderman (collectively, "Plaintiffs").   Defendant Wells Fargo Bank, N.A. ("Wells

Fargo") is the trustee of the Figel Trust.  The Figel Trust provides the trustee with the

following investment authority:

> [The Trustee] shall have full power to retain, sell, lease, mortgage,
> exchange or otherwise dispose of any or all of the trust property and to
> invest and reinvest the same in such loans, stocks, bonds, mortgages,
> securities, real estate and other investments as it may deem proper and
> suitable without being restricted or in any way controlled by statute or rule
> of law of any state dealing with class or type of investments a Trustee
> may or may not make.

DE 79-1 at 5.  The Figel Trust further provided as follows: "the Trustee shall have as

wide a latitude in the selection and making of investments and in the disposition or sale

of same and in managing the trust property as [Gloria Figel] would have, if living . . . ."

Id.  Wells Fargo therefore had broad discretion to make investments in "stocks, bonds,

mortgages, securities, real estate and other investments as it may deem proper and

suitable."  See id.  The Figel Trust also established that

> in the event that any of my children or child of a deceased child of mine
> shall need money for his or her maintenance, education, welfare or
> support in addition to the amounts then being distributed to him or her
> thereunder, then I specifically authorize my Trustee, in its discretion, to
> provide such child with such additional sums out of his or her share only
> of said trust, as said Trustee in its sole discretion may deem reasonable
> for the aforesaid purposes.

Id.

Record evidence demonstrates that Terry made requests to obtain

disbursements of trust corpus so that he could maintain a certain lifestyle despite the

fact that he has never had a job.  Many of the requests concerned providing alimony to

his ex-wife or child support and tuition for Spencer.  Terry also withdrew $365,000 from

the trust as partial payment for a $1.3 million home.  Spencer shared that home with his

father.  Pursuant to the terms of the Figel Trust, Wells Fargo granted those requests.

2

In 2007, however, Terry received a letter from Wells Fargo which informed him that he needed to reduce his budget because, via his ongoing discretionary requests, he was wasting the Figel Trust at a rate of 7% per year. <u>See</u> Concise Statement of Undisputed Fact that Require No Proof at Trial in the parties' Joint Pretrial Stipulation [DE 124]. Furthermore, Terry concedes that Wells Fargo sent him detailed quarterly account statements that set forth the state of the trust, including the types of investments made by the Figel Trust and any cash disbursements made by the trust.

Nonetheless, Plaintiffs allege that Wells Fargo, in its management of the Figel Trust, has been negligent and has breached a fiduciary duty that it owed to Plaintiffs. Essentially, Plaintiffs claim that Wells Fargo could have earned a higher rate of return on the Figel Trust if it had invested the Figel Trust differently. Plaintiffs offer no other grounds for their claims. Importantly, Plaintiffs offer no evidence that Wells Fargo took any action in contravention of the terms of the Figel Trust.

The Florida Probate Code provides that "a violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." Fla. Stat. § 736.1001(1). Therefore, Plaintiffs' claims for breach of fiduciary duty and negligence are actually claims for breach of trust. Although Defendant did not move for summary judgment predicated on Plaintiffs' failure to establish a breach of the Figel Trust, the Court found no evidence in the record that supported a claim for breach of trust. Stated differently, Plaintiffs produced no evidence that Defendant did anything in contravention of the Figel Trust or that Wells Fargo was otherwise negligent or breached a fiduciary duty. Wells Fargo's decision to invest funds in stocks and equities rather than bonds, even if true, does not appear to support a claim for breach of trust. Likewise, Florida law provides that a "trustee who acts in reasonable reliance on the terms of the trust as expressed in the

3

trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance."  Fla. Stat. § 736.1019.

Accordingly, pursuant to Federal Rule of Civil Procedure 56(f), the Court provided the parties an opportunity to submit supplemental briefs on the breach issue. Taking the facts in the light most favorable to Plaintiffs, the record evidence continues to show that (1) Defendant did not invest the corpus of the Figel Trust as well as it could have (with the benefit of hindsight), (2) Terry Figel requested, and received, substantial disbursements of trust corpus so that he could maintain a certain lifestyle without working, and (3) Wells Fargo took no action in contravention of the plain terms of the Figel Trust.

## II. DISCUSSION

### A. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal

4

Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

Furthermore, pursuant to Federal Rule of Civil Procedure 56(f), "[a]fter giving notice and a reasonable time to respond, the court may . . . (2) grant [a motion for summary judgment] on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f).

## B.  Breach

The Florida Probate Code provides that a "trustee shall invest trust property in accordance with chapter 518."  Fla. Stat. § 736.0901.  Section 518.11 provides that a trustee has "a duty to invest and manage assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust."  Fla. Stat. § 518.11(1)(a).  "No specific investment or course of action is, taken alone, prudent or imprudent."  Id. § 518.11(1)(b).  Rather, "investment decisions and actions are to be judged in terms of the fiduciary's reasonable business judgment

5

regarding the anticipated effect on the investment portfolio as a whole under the facts and circumstances prevailing at the time of the decision or action." Id. This is "a test of conduct and not of resulting performance." Id.

No relevant disputed issues of fact exist in this case. Rather, the parties dispute the legal significance of the facts. In their supplemental brief, Plaintiffs submit the following:

> Had Wells Fargo maintained a 70/30 split in asset allocation, with 70 percent in conservative investments, and 30 percent in equities, the Trust would have a market value of between approximately $3-4 million more than the value it currently has, and would have distributed approximately the same amount of money to Terry Figel.

DE 129 at 9.[2] Accepting this fact as true, however, does not evidence a breach of trust. The record is replete with evidence that shows Wells Fargo invested the corpus of the Figel Trust in equities and other securities (i.e., in a manner consistent with the terms set forth in the Figel Trust and pursuant to Wells Fargo's buy list). The record is also replete with evidence that Wells Fargo sent Terry Figel quarterly account statements that revealed the state of the Figel Trust. Indeed, the undisputed facts show that Wells Fargo made the investment decisions that it did in an attempt to provide both income for Terry and growth, both to replace principal distributions and to provide growth to benefit Spencer as the remainderman. Stated differently, Wells Fargo's investment decisions were made largely to account for Terry's constant requests for corpus distribution (which were contemplated and authorized by the Figel Trust instrument). Thus, based on the record before the Court, no reasonable fact-finder could find that Wells Fargo failed to exercise "reasonable business judgment regarding the anticipated

---

[2]    Notably, in both 1999 and 2003, Terry Figel requested and ratified a 70% equities/30% fixed income asset allocation for the Figel Trust.

effect on the investment portfolio as a whole under the facts and circumstances prevailing at the time of the decision or action."

Plaintiffs offer not one case where a trustee was found to have breached a trust or a fiduciary duty, or was otherwise found negligent, because it invested the corpus of the trust in a manner that did not earn as much as it could have.  Furthermore, Plaintiffs offer not one fact that indicates Wells Fargo administered the Figel Trust in a manner contrary to the terms of the trust instrument.  Plaintiffs, therefore, have failed to raise a disputed issue of fact regarding Defendant's alleged breach of the Figel Trust.

### C. Consent

Florida's Probate Code provides that a

> trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting breach . . . or ratified the transaction constituting the breach, unless: (1) The consent, release, or ratification of the beneficiary was induced by improper conduct of the trustee; or (2) At the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach.

Fla. Stat. § 736.1012.  Terry admits that he received, yet ignored for thirteen years, the quarterly account statements that set forth Wells Fargo's investment strategy and detailed the state of the Figel Trust.  See DE 96 at 4.  Terry cannot now state that he was "unaware" of Wells Fargo's investment decisions or that he never "consented" to Wells Fargo's conduct.

Furthermore, Spencer Figel "only objects to distributions from the Figel Trust that were outside of the parameter of the Figel Trust."  DE 124 at 12.  As set forth above, Plaintiffs offer no evidence that Wells Fargo made distributions that were outside of the parameters of the Figel Trust.  Thus, even if a disputed issue of fact existed regarding whether there was a breach of trust, Plaintiffs' consent provides an independent basis

7

on which the Court may grant summary judgment against them.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Wells

Fargo Bank, N.A.'s Motion for Summary Judgment [DE 78] is **GRANTED**.  The Court

will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 9th day of March, 2011.


JAMES I. COHN
United States District Judge


Copies provided to counsel of record.

8



PAMELA B. STUART, ET AL VS. CATHERINE S. RYAN AND DEBORAH A. STUART, ET AL
L.T. CASE NO. 312013CA001523    DCA CASE NO. 4D16-3921

Given to Pamela Stuart in place of
Original (presumed lost) on 4/23/12.
If original Cert. #291 is found, please
return copy to TIRS Treasurers
Office.

NO. 280

# TOWN OF INDIAN RIVER SHORES
## BURIAL RIGHT CERTIFICATE

WHEREAS, the Town of Indian River Shores, a municipal corporation existing under the laws of the State of Florida, is the owner of certain real property dedicated by the Town to use as a cemetery commonly referred to as "John's Island Cemetery," and

WHEREAS, the Town has the authority to grant burial rights to individuals under terms and conditions established by the Town, which may be modified from time to time in the future; and

WHEREAS, any person accepting a Burial Right Certificate from the Town agrees and consents to comply with all present and future requirements of the Town relating to the cemetery.

THEREFORE, burial rights are hereby granted as follows:

Based on the covenants and restrictions as contained herein, this Burial Right Certificate is granted from the Town of Indian River Shores to ____Pamela B. Stuart____ .

The Cemetery lot(s) subject to this Certificate are

____Section 73 Block C Lot 5____ as per Plat recorded in the Public Records of Indian River County, Florida and/or made a part of the Public Records of the Town.

The granting of this Certificate permits the burial, in perpetuity, of human remains in the above-described lot(s).

There are restrictions on the transfer of this Burial Right Certificate, and all transfers shall be made through the office of the Town Treasurer, Town of Indian River Shores, who shall maintain the necessary records to reflect ownership of lots within the John's Island Cemetery.

This Certificate shall not be recorded in the Public Records of Indian River County, Florida.

No transfer shall be effective until request is made to the Town Treasurer to effectuate an ownership change and such change is completed in the Town records.

All rules, resolutions, regulations and Ordinances of the Town of Indian River Shores now in effect or which may be enacted in the future shall apply to the lot or lots in this Certificate.

IN WITNESS WHEREOF, the said Town of Indian River Shores has caused this Burial Right Certificate to be executed in its name and on its behalf by its Mayor and attested by its Town Clerk and its corporate seal to be hereto affixed, this ____4th day of September____ 20 07 .

Signed, sealed and delivered in the presence of:    TOWN OF INDIAN RIVER SHORES, FLORIDA

By: _____
                Mayor

Attest: _____
                Town Clerk

As To Both Parties

3036



3120170024030 RECORDED IN THE RECORDS OF JEFFREY R SMITH, CLERK OF CIRCUIT COURT INDIAN RIVER CO FL
BK: 3020 PG: 1165, 5/2/2017 10:08 AM D DOCTAX PD $0.70

This Instrument Prepared By and Return to:
Alexander L. Van Heyde, Esq.
DEAN, MEAD, EGERTON, BLOODWORTH,
 CAPOUANO & BOZARTH, P.A.
Post Office Box 2346
Orlando, Florida 32802-2346
(407) 841-1200

Parcel Identification No.:     32401800046000000030.0

## TRUSTEE'S DEED

THIS TRUSTEE'S DEED is made the 13th day of February, 2017, by GINA RALL, not individually, but solely as the successor trustee under the provisions of an unrecorded trust agreement known as the J. RAYMOND STUART REVOCABLE TRUST, dated January 2, 1990, as may have been amended from time to time ((hereinafter referred to as the "Trust"), whose post office address is c/o Carr Riggs & Ingram, 215 Baytree Drive, Suite 1, Melbourne, Florida 32940 (hereinafter referred to as the "Grantor"), to CATHERINE S. RYAN, a married woman, whose post office address is 101 South Catalina Court, Vero Beach, Florida 32963, and DEBORAH A. STUART, a single woman, whose post office address is 11352 South East 211th Lane, Apt. #46, Kent, Washington 98031, as tenants in common, each as to an undivided fifty percent (50%) interest in the Trust's right, title and interest in and to the Property (as defined hereinbelow) (hereinafter collectively referred to as the "Grantee").

(Wherever used herein the terms "Grantor" and "Grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of trustees, corporations and partnerships.)

## W I T N E S S E T H:

That Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto Grantee, all of Grantor's right, title and interest in and to that certain real property situate, lying and being in Indian River County, Florida (hereinafter referred to as the "Property"), and being more particularly described as follows:

Lot 30, SEAFOREST COURT, according to the plat thereof recorded in Plat Book 11, Page 97, public records of Indian River County, Florida.

TOGETHER with all of the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the same in fee simple forever.

1

O1625675.v1

This conveyance is subject to taxes accruing subsequent to December 31, 2016, and to easements, restrictions, agreements, conditions, limitations, reservations and matters of record, if any, but this reference to the foregoing shall not operate to reimpose the same.

A Certificate of Trust is being recorded in the Public Records of Indian River County, Florida, contemporaneously with the execution, delivery, and recordation of this instrument in order to evidence the authority of the successor trustee of the Trust, and other matters, all as more particularly set forth therein.

The scrivener of this instrument has not examined title to the Property, has utilized legal descriptions provided by Grantor, and has relied upon the representations of Grantor that Grantor is the holder of title to the Property. Accordingly, the scrivener disclaims any liability or responsibility which may result from the failure of Grantor to hold such title in the manner represented.

THIS DEED WAS PREPARED WITHOUT A REVIEW OR EXAMINATION OF THE TITLE TO THE ABOVE DESCRIBED PROPERTY AND NO OPINIONS OR REPRESENTATIONS ARE BEING MADE EITHER EXPRESSLY OR IMPLIEDLY BY GINA H. RALL OR CARR RIGGS & INGRAM, LLC OR DAVID M. PRESNICK, ESQUIRE, OR DAVID M. PRESNICK, P.A.

<u>NOTE TO RECORDER</u>

THIS TRUSTEE'S DEED IS BEING EXECUTED TO TRANSFER REAL PROPERTY FROM TRUSTEE OF THE TRUST TO A BENEFICIARY OF THE TRUST PURSUANT TO THE TRUSTEE'S POWER OF APPORTIONMENT. ACCORDINGLY, THIS INSTRUMENT IS EXEMPT FROM THE IMPOSITION OF DOCUMENTARY STAMP TAXES PURSUANT TO RULE 12B-4.013(28)(F) OF THE FLORIDA ADMINISTRATIVE CODE.

*[Signature and notary acknowledgement on following page]*

2

O1625675.v1

IN WITNESS WHEREOF, Grantor has executed and delivered this instrument and has intended this instrument to be and become effective as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

Print Name: _Paula J. Craine_

Print Name: _Suzanna M. Beall_

"GRANTOR"

_Gina Rall Trustee_

GINA RALL, as the successor trustee of the
J. RAYMOND STUART REVOCABLE
TRUST, dated January 2, 1990

STATE OF FLORIDA
COUNTY OF BREVARD

The foregoing instrument was acknowledged before me this 13th day of February, 2017, by GINA RALL, as the successor trustee of the J. RAYMOND STUART REVOCABLE TRUST, dated January 2, 1990.  Said person (check one):  [✓] is personally known to me, [  ] produced a driver's license (issued by a state of the United States within the last five (5) years) as identification, or [  ] produced other identification, to wit: _n/a_ .



DEBORAH L. PELHAM
Commission # FF 053505
Expires October 8, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

Print Name: _Deborah L. Pelham_
Notary Public, State of Florida

3

O1625675.v1

3120170023839 RECORDED IN THE RECORDS OF JEFFREY R SMITH, CLERK OF CIRCUIT COURT INDIAN RIVER CO FL
BK: 3020 PG: 1162, 5/2/2017 10:08 AM

This Instrument Prepared By
and to be Returned to:
Alexander L. Van Heyde, Esquire
DEAN, MEAD, EGERTON, BLOODWORTH,
   CAPOUANO & BOZARTH, P.A.
Post Office Box 2346
Orlando, Florida 32802-2346
(407) 841-1200

## CERTIFICATE OF TRUST

BEFORE ME, the undersigned authority, personally appeared GINA RALL (the "Affiant") who certifies as follows:

1.    Affiant is over the age of eighteen (18) years, is a resident of the State of Florida, and is personally familiar with the facts stated herein.

2.    Affiant is the successor trustee of the J. RAYMOND STUART REVOCABLE TRUST, dated January 2, 1990, as the same may have been amended from time to time (the "Trust").

3.    Affiant, in her capacity as the successor trustee of the Trust, executed and delivered that certain Trustee's Deed to Catherine S. Ryan and Deborah A. Stuart, which instrument has been or will be recorded in the Public Records of Indian River County, Florida, conveying all of the Trust's interest in and to that certain parcel of real property more particularly described as follows (the "Property"):

Lot 30, SEAFOREST COURT, according to the plat thereof recorded in Plat Book 11, Page 97, public records of Indian River County, Florida.

4.    The Trust was executed on January 2, 1990, and has at all times since remained active and is in existence.

5.    J. Raymond Stuart, as settlor of the Trust, executed and created the Trust as of January 2, 1990, wherein he appointed himself and Pamela B. Stuart as the co-trustees of the Trust.

6.    J. Raymond Stuart died on January 18, 1998, as evidenced by that certificate of death which has been or will be recorded in the Public Records of Indian River County, Florida, at which point Pamela B. Stuart and Lewis L. Smith became the co-trustees of the Trust.

7.    Lewis L. Smith resigned as a co-trustee of the Trust on April 1, 2000.

O1625708.v1-1/16/17

8.    Subsequent to the resignation of Lewis L. Smith, Pamela B. Stuart failed to appoint an independent co-trustee, which was required pursuant to the terms of the Trust, as referenced in the Order on Final Plan of Distribution described in Paragraph 11 hereinbelow. As such, Pamela B. Stuart effectively served as the sole trustee of the Trust from April 1, 2000 through March 5, 2014.

9.    On or about March 5, 2014, Pamela B. Stuart resigned as the trustee of the Trust. Subsequently, Affiant was appointed as the successor trustee of the Trust, as evidenced by and pursuant to that certain Agreed Order on Plaintiffs' Motion for Immediate Removal of Trustee, for Refund of All Attorneys' Fees and Costs Paid from the Trusts, and for Approval to Record Notice of Lis Pendens filed in Case No. 31-2013-CA-001523 in the Circuit Court of the Nineteenth Judicial Circuit, in and for Indian River County, Florida, a copy of which is recorded in Official Records Book 2985, Page 961, Public Records of Indian River County, Florida.

10.    The Trust provides that the trustee shall have full power and authority to protect, conserve, mortgage, sell, and otherwise manage, dispose of and deal with the Property.

11.    On or about October 21, 2016, all of Pamela B. Stuart's right, title and interest in and to the Property was transferred to the Trust, as evidenced by and pursuant to that certain Order on Final Plan of Distribution filed in Case No. 31-2013-CA-001523 in the Circuit Court of the Nineteenth Judicial Circuit, in and for Indian River County, Florida, a copy of which is recorded in Official Records Book 2985, Page 933, Public Records of Indian River County, Florida, and confirmed by that certain Order on Defendant Pamela Stuart's Motion for Stay Pending Appeal filed in Case No. 31-2013-CA-001523 in the Circuit Court of the Nineteenth Judicial Circuit, in and for Indian River County, Florida, a copy of which is recorded in Official Records Book 2985, Page 964, Public Records of Indian River County, Florida.

12.    The Trust is irrevocable.

13.    The identity and address of the current and only trustee serving is:

> GINA RALL
> c/o Carr Riggs & Ingram
> 215 Baytree Drive, Suite #1
> Melbourne, Florida 32940

14.    Affiant certifies that the Trust is currently in existence and has not been revoked, modified, or amended in any manner that would cause any representations contained in this Certificate of Trust to be incorrect.

15.    This Certificate of Trust is being executed and recorded in order to give notice of the provisions of the Trust evidencing the existence of the Trust and the appointment of the successor trustee, and thereby obviate the need to record the entire Trust.

16.    This Certificate of Trust has been executed pursuant to applicable provisions of Section 736.1017, Florida Statutes.

O1625708.v1-1/16/17

BK: 3020 PG: 1164

17.    Affiant declares that she has examined this Certificate of Trust and to the best of her knowledge and belief it is true, correct and complete.

_____

GINA RALL, Affiant

STATE OF FLORIDA
COUNTY OF BREVARD

Sworn to and subscribed before me this 13th day of February 2017, by GINA RALL.  Said person (check one) ☑ are personally known to me, ☐ produced driver's licenses (issued by a state of the United States within the last five (5) years) as identification, or ☐ produced other identification, to wit: _____ n/a _____. Affiants did take an oath.

> DEBORAH L. PELHAM
> Commission # FF 053505
> Expires October 8, 2017
> Bonded Thru Troy Fain Insurance 800-385-7019

[NOTARY STAMP]

_Deborah L. Pelham_

Print Name: _Deborah L. Pelham_
Notary Public – State of Florida
Commission No.: _FF053505_
My Commission Expires: _10-08-2017_

3

3120180004341 RECORDED IN THE RECORDS OF JEFFREY R. SMITH, CLERK OF CIRCUIT COURT INDIAN RIVER CO FL
BK: 3087 PG: 1171, 1/24/2018 12:13 PM  D DOCTAX PD $1,925.00

This Instrument Prepared By and Return to:
Alexander L. Van Heyde, Esq.
DEAN, MEAD, EGERTON, BLOODWORTH,
  CAPOUANO & BOZARTH, P.A.
Post Office Box 2346
Orlando, Florida 32802-2346
(407) 841-1200

Parcel Identification No.:     32401800046000000030.0

## QUITCLAIM DEED

THIS QUITCLAIM DEED is made the 20th day of January, 2018, by DEBORAH A. STUART, whose post office address is P.O. Box 59382, Renton, Washington 98058, (hereinafter referred to as the "Grantor"), to CATHERINE S. RYAN, whose post office address is 101 South Catalina Court, Vero Beach, Florida 32963 (hereinafter referred to as the "Grantee").

(Wherever used herein the terms "Grantor" and "Grantee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of trustees, corporations and partnerships.)

## W I T N E S S E T H:

That Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto Grantee, all of Grantor's right, title and interest in and to that certain real property situate, lying and being in Indian River County, Florida (hereinafter referred to as the "Property"), and being more particularly described as follows:

Lot 30, SEAFOREST COURT, according to the plat thereof
recorded in Plat Book 11, Page 97, public records of Indian River
County, Florida.

TOGETHER with all of the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the same in fee simple forever.

This conveyance is subject to taxes accruing subsequent to December 31, 2017, and to easements, restrictions, agreements, conditions, limitations, reservations and matters of record, if any, but this reference to the foregoing shall not operate to reimpose the same.

1

1/8/2019                                    Landmark Web Official Records Search

BK: 3087 PG: 1172

 

 

Grantor certifies that on the date of execution, delivery and recordation of this instrument, Grantor does not reside upon any portion of the Property or any property contiguous thereto. The Property is not the constitutional homestead of Grantor.

The scrivener of this instrument has not examined title to the Property, has utilized legal descriptions provided by Grantor, and has relied upon the representations of Grantor that Grantor is the holder of title to the Property. Accordingly, the scrivener disclaims any liability or responsibility which may result from the failure of Grantor to hold such title in the manner represented.

*[Signature and notary acknowledgement on following page]*

2

1/8/2019                                    Landmark Web Official Records Search

BK: 3087 PG: 1173

 

 

         IN WITNESS WHEREOF, Grantor has executed and delivered this instrument
and has intended this instrument to be and become effective as of the day and year first above
written.

Signed, sealed and delivered                    "GRANTOR"
in the presence of:

Print Name: Olivia Jimenez           DEBORAH A. STUART

Print Name: Monica Robison

 

STATE OF Florida
COUNTY OF Indian River

         The foregoing instrument was acknowledged before me this 20 day of January, 2018,
by DEBORAH A. STUART.  Said person (check one):  [   ] is personally known to me,
[ X ] produced a driver's license (issued by a state of the United States within the last five (5)
years) as identification, or [   ] produced other identification, to wit: _____.

BEN C SALTZ
Notary Public – State of Florida
Commission # GG 101734
My Comm. Expires Jul 9, 2021
Bonded through National Notary Assn.

Print Name: Ben C Saltz
Notary Public, State of Florida

3