UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No. 18-14244-Civ-MARTINEZ/Maynard

PAMELA B. STUART,

        Plaintiff,

v.

CATHERINE S. RYAN,
DEBORAH A. STUART,
TENNIS TOWNHOUSES
CONDOMINIUM ASSOCIATION, INC.,
JEFFREY R. SMITH, and
STATE OF FLORIDA,

        Defendants.

## <u>DEFENDANTS CATHERINE S. RYAN AND DEBORAH A. STUART'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO LATE-FILE OBJECTIONS</u>

Defendants CATHERINE S. RYAN and DEBORAH A. STUART file this, their Response in Opposition to Plaintiff's "Motion for Leave to Late-File Plaintiff Pamela Stuart's Rule 72 Objections to the Report and Recommendations of Magistrate" ("Mot."), and state the following:

1.    After this Court <u>doubled</u> Plaintiff's time to file objections to the magistrate judge's report and recommendation ("R&R"), and after this Court <u>twice</u> warned Plaintiff that any untimely objections "will be deemed waived" (such that Plaintiff would be barred from seeking *de novo* review of the R&R by the District Court or attacking its factual findings on appeal), Plaintiff has effectively moved this Court for a <u>second</u> post-hoc extension of her lapsed filing deadline.  True to its word, this Court should deny Plaintiff's motion and refuse to consider Plaintiff's untimely objections.

2.      As Defendants noted in their response to Plaintiff's first untimely motion for extension of time, Plaintiff bears the dual burden of establishing (1) good cause for the requested extension and (2) excusable neglect for her failure to ask for more time before the filing period expired. Fed. R. Civ. P. 6(b)(1)(B). Plaintiff falls short on both scores, as it is plainly obvious that Plaintiff's delay was within her control, that Plaintiff lacks sufficient respect for this Court's rules and orders, and that Plaintiff has been proceeding in bad faith with the malicious objective of causing additional prejudice to Defendants.

3.      After the initial deadline had passed, Plaintiff asked this Court for 12 additional days to file her objections to the R&R. This Court not only granted Plaintiff's request, but it gave Plaintiff two more days (for a total of 14 extra days) to complete the task. However, in doing so, the Court "once again warned [Plaintiff] that she must ensure that the Clerk of Court receives her filings in time to docket them" by January 23, 2019. (Doc. 68.) Not until a few minutes before 9 PM on January 22, 2019 – *i.e.*, after the overnight mail deadline had passed – did Plaintiff endeavor to seek Defendants' consent for a further extension. (**Exh. A.**)[1]

---

[1]   In the face of this Court's cautionary admonition, Plaintiff has defied S.D.Fla.L.R. 7.1(a)(3) for the second time in two weeks. That rule required Plaintiff to "make reasonable effort to confer [with Defendants] . . . in a good faith effort to resolve by agreement the issues" raised by the instant motion. However, Plaintiff did not send her email seeking Defendants' consent to her late filing until well after business hours on the 13th day of her 14-day extension. (**Exh. A.**) This Court condemned similar chicanery in *Royal Bahamian Association, Inc. v. QBE Insurance Corp.*, 744 F. Supp. 2d 1297 (S.D. Fla. 2010). In that case, the movants alerted defendants of impending motions in an after-hours email and then filed the motions shortly thereafter before receiving replies from the opposing parties. The Court held that the movants' efforts to confer were not in good faith because they filed their motion just one business day after asking the defendants for consent. *See Royal Bahamian*, 744 F. Supp. 2d at 1299 n.2 ("Sending an email and demanding an immediate or near-immediate response and then filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation. Instead, it is a one-way missive."). Plaintiff's conduct in this case is considerably worse, given that Plaintiff had been warned against late filing, had been warned against filing without first complying with S.D.Fla.L.R. 7.1(a)(3), and made no effort to comply with the rule until after her own choices had made it impossible for to file her objections on time.

4.      Plaintiff's suggestion that she "worked diligently" to finalize her overdue objections and could have done so but for a motor vehicle accident and her receipt of an adverse decision concerning her entitlement to certain government benefits (Mot. at 1-2) is demonstrably false.[2] The truth is that, in lieu of exercising her best efforts to adhere to the deadline that this Court extended over Defendants' objection and beyond the limits of Plaintiff's request, Plaintiff elected to devote her attention to filing frivolous *pro se* motions in other lawsuits in which she and Defendants are adversaries. Both motions were filed on January 17, 2018, *i.e.*, more than a full week ago, and more than halfway into Plaintiff's extended filing period. (**Exhs. B & C.**) Unlike her objections in this case, neither of those motions was subject to a particular filing deadline – let alone an extended one. Plaintiff also chose to squander the extra time that this Court had afforded to her by preparing and filing an 11-page petition for reinstatement to the D.C. Bar. (**Exh. D.**) Again, that petition was not due at any particular time. Similarly, although she chose to do otherwise, Plaintiff did not need to appeal the denial of her "Home Savers" petition until after her objections were due in this case.

5.      Plaintiff has consistently chosen to ignore this Court's rules, orders, and admonishments at her own peril. Last week, this Court graciously excused Plaintiff's violation of S.D.Fla.L.R. 7.1(a)(3) but cautioned Plaintiff of the consequences that would stem from further noncompliance. Regardless, Plaintiff not only chose to file her objections late, but she also has flouted the page limit for objections to a magistrate judge's proposed findings, recommendation or report. *See* S.D.Fla.M.J.R. 4(b) ("Absent <u>prior permission</u> from the Court, no party shall file any objections or responses to another party's objections exceeding twenty

---

[2]   Notwithstanding her suspension from the practice of law, Plaintiff remains subject to the standards of ethical and professional conduct set forth in the Rules Regulating the Florida Bar, including Rule 4-3.3(a)(1), which prohibits the making of any false statement of fact to a tribunal. *The Florida Bar v. Solomon*, 589 So. 2d 286, 287 (Fla. 1991).

(20) pages in length." (emphasis added)).  At no point during the 28 days between the issuance of the R&R and the mailing of Plaintiff's objections to the Clerk did Plaintiff seek permission to exceed the applicable page limit, let alone to exceed it by more than 100 pages of text and more than 225 pages of exhibits.[3]

6.      Plaintiff's email to the undersigned seeking Defendants' consent to the instant motion showcases Plaintiff's bad faith. At the end of the email, Plaintiff states that she will send her documents to the Court the following day regardless of Defendants' position and then demands a ransom for prompt service of her overdue submission:

> If you consent to my extension, I'll provide you with email service.  If not,
> I'll send via snail mail only.  :-)

(**Exh. A.**)  Litigation is not a game, but Plaintiff has certainly treated it as such, all the while to Defendants' continuing detriment.   And although Plaintiff punctuated the conclusion of her email with a "smiley face," there is nothing amusing about Plaintiff's unpardonable lack of professionalism, relentless attempts at one-upmanship, and repeated disregard for this Court's rules.

7.      Even as a *pro se* litigant, Plaintiff was required to adhere to all procedural requirements. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded pro se litigants, we nevertheless have required them to conform to procedural rules.").  Plaintiff is no more entitled to file over-length, out-of-time objections than any other party would be. *See Allen v. Gen. Motors Corp.*, 186 F. App'x 869, 870 (11th Cir. 2006) ("[P]ro se status does not entitle [plaintiff] to liberal filing deadlines.").  Her contempt for this Court's procedures is not excusable. *Wilson v. Berryhill*, No. 16-CV-81881, 2017 WL 4305014, at *2

---

[3]    It should be noted that Plaintiff not only filed four separate responses to Defendants' motions to dismiss totaling more than 60 pages (Docs. 43-46), she was also given leave to file a 15-page surreply (Docs. 51 & 52).

(S.D. Fla. July 20, 2017) ("[T]he fact that a plaintiff is proceeding pro se does not excuse an untimely filing.").

8.      Given Plaintiff's failure to demonstrate a proper justification for her second consecutive late filing, this Court can and should deny Plaintiff's motion and refuse to consider her untimely objections. *See, e.g., Ellison v. Consol. City of Augusta*, No. CV 116-175, 2017 WL 1028573, at *1 (S.D. Ga. Mar. 16, 2017) ("Because Plaintiff's objections are untimely and she supplies no reason for the delay, the Court need not consider them." (citing *Mathis v. Adams*, 577 F. App'x 966, 967-68 (11th Cir. 2014))).

9.      Notwithstanding the above, if this Court is inclined to excuse Plaintiff's decisions not to file timely objections, not to confer with opposing counsel in good faith, and not to seek prior permission to exceed the applicable page limit by a factor of six, Defendants would request that the Court strike pages 21-125 of her objections and consider only those arguments made in the first 20 pages.   Should the Court decide to entertain some or all of Plaintiff's untimely objections, Defendants will respond promptly.   Defendants respectfully submit that, in light of her repeated violations of the rules, Plaintiff should not be rewarded with an opportunity to revise and resubmit her objections with the benefit of yet more time.   The pendency of this meritless action – which should be dismissed with prejudice, as recommended unequivocally by the magistrate judge – continues to unfairly damage Defendants, as explained in paragraph 7 of Defendants' January 14, 2019 opposition brief (Doc. 66).

WHEREFORE, Defendants request that the Court deny Plaintiff's Motion or, in the alternative, decline to consider any of Plaintiff's untimely arguments made in excess of the page limit prescribed by S.D.Fla.M.J.R. 4(b).

Dated this 25th day of January, 2019.

Respectfully submitted,

*/s/ C. Douglas Vitunac*

C. DOUGLAS VITUNAC, ESQ.
Florida Bar No. 0028598
COLLINS, BROWN, BARKETT,
GARAVAGLIA, and LAWN, CHARTERED.
*Attorneys for Defendants Catherine S. Ryan*
    *& Deborah A. Stuart*
756 Beachland Boulevard
Vero Beach, Florida 32964-3686
(772) 231-4343
dvitunacpleadings@verolaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25<u>th</u> day of <u>January, 2019</u>, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on Plaintiff *pro se* Pamela B. Stuart and all counsel of record via transmission of Notices of Electronic Filing.

*/s/ C. Douglas Vitunac*

C. DOUGLAS VITUNAC, ESQ.
Florida Bar No. 0028598
COLLINS, BROWN, BARKETT,
GARAVAGLIA, and LAWN, CHARTERED.
*Attorneys for Defendants Catherine S. Ryan*
*    & Deborah A. Stuart*
756 Beachland Boulevard
Vero Beach, Florida 32964-3686
(772) 231-4343
dvitunacpleadings@verolaw.com

**Doug Vitunac**

| | |
|---|---|
| **From:** | pamstuart@aol.com |
| **Sent:** | Tuesday, January 22, 2019 8:55 PM |
| **To:** | dvitunacpleadings; sam@kirwinnorris.com; jodom@gouldcooksey.com; maria.guitianbarker@mMyFloridaLegal.com |
| **Subject:** | Need your consent to file repsponse to magistrate's report a day late |

Dear Counsel:

I struggled mightily to meet the deadline.  I had to leave by 8 pm to make it to the last FedEx pickup location on time.  I did not finish compiling the document which is quite lengthy and exhibits for shipment until 8:40 pm.   I need your consent or at least your indication that you will not consent as soon as possible.

For what it's worth, my time has not been too controllable in the last ten days or so.  On January 9th I was the victim of a hit and run auto collision so I had to work with the investigator and try to find out information for him to file a criminal case or at least get the insurance information.  Fortunately, I was not hurt but my car suffered a lot of damage.   I also had a doctor's consultation which prompted a lot of research and had to go to a funeral.  I had a few professional engagements.

Please let me know asap as I will be sending the packages off tomorrow.  If you consent to my extension, I'll provide you with email service.  If not, I'll send via snail mail only.  :-)

Pam Stuart



Filing # 83535005 E-Filed 01/17/2019 04:22:57 PM

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT,
IN AND FOR INDIAN RIVER
COUNTY, FLORIDA

CATHERINE S. RYAN and
DEBORAH A. STUART,

        Plaintiffs,

v.                                 Case No. 31-2013CA-001523
                                      Judge Janet Croom

PAMELA B. STUART,
as trustee, et al.

        Defendants

_____/

### MOTION FOR RELIEF FROM DEFICIENCY JUDGMENT PURSUANT TO FLORIDA RULE OF CIVIL PROCEDURE 1.540

Defendant Pamela B. Stuart respectfully petitions this Court for relief from a deficiency judgment entered on December 27, 2018 in violation of applicable Florida law.   Defendant files this motion pursuant to Florida Rule of Civil Procedure 1.540(b)(3) and (4).   In support of her motion, Defendant relies on the following points and authorities.

The final judgment of deficiency in this case was erroneous for the following reasons:

(1)  It was based on a final judgment of foreclosure in a related case rather than on the evidence adduced in the case below which involved a complaint for removal of trustee, an accounting, conversion, and injunctive relief in a family trust matter.  Conversion was never established but the court found that Defendant had engaged in various breaches of trust due to



EXHIBIT
B

excessive borrowing under the terms of the trust and Florida law which permitted such borrowing.

(2)   The judgment granted a credit for the improper award of title to Defendant's homestead to plaintiffs that was based upon an equitable lien that was entered without evidence in the underlying case that Defendant acquired her homestead by means of "reprehensible" or egregious conduct such that her continued ownership of her personal residence would constitute unjust enrichment. Florida law and the 5th and 14th amendments to the US Constitution forbid the taking of private property by any branch of government, executive, legislative or judicial without due process of law.  In Florida, some showing of wrongdoing associated with the acquisition, improvement or repair of a residence is required before a lien may be imposed upon that property in favor of another private party. *Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018 (Fla. 2001) (holding the equitable lien is still a viable remedy for creditors in cases where funds obtained fraudulently were used directly to purchase a homestead, but the homestead exemption will apply to property purchased using funds legitimately obtained even if the property is used to shield funds from creditors).  In fact, the evidence below and in the motion for relief from judgment filed June 19, 2018, showed that Defendant acquired her homestead in 2000 utilizing her own funds, placed a lien against it in 2001 to guarantee a loan taken to assist a limited liability company in acquiring a commercial property, then refinanced the property in its entirety in 2006 to raise funds for attorneys' fees in a case that the limited liability company was litigating against the person who sold the building to the LLC in a fraudulent manner. Then, the LLC paid off the debt to Defendant who arranged for the loan by paying off the refinanced mortgage when the LLC's asset was sold in 2009.   There was no evidence adduced in the underlying case that funds

2

borrowed from the J. Raymond Stuart trust were utilized to acquire, improve, or repair

Defendant's homestead in Florida.   Rather the funds borrowed from the trust were used to pay

carrying costs of the building owned by the LLC from time to time.

Applicable Florida law requires that in order to place an equitable lien on a property there

must be evidence that the property was wrongfully acquired, improved, or repaired with ill-gotten

funds so that the owner was unjustly enriched. *Palm Beach Savings & Loan Ass'n v. Fishbein*,

619 So. 2d 267, 270-71 (Fla. 1993) (confirming that an equitable lien may be imposed on

homestead property where funds obtained through fraud were used to purchase the homestead).

To obtain an equitable lien on a Florida homestead, a plaintiff must show by a preponderance of

the evidence (1) that the defendant engaged in fraudulent or egregious conduct and (2) that the

funds from that conduct can be directly traced to the purchase of, investment in, or improvement

of the homestead. *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003).

The trial court in this case accepted an accounting of the trust by the successor trustee that

was grossly inaccurate but approved by the previous trial judge after a 36 minute non-evidentiary

hearing when the accounting in question had not been provided by plaintiff's counsel and had not

been reviewed by the judge.  Judge Kanarek refused to revisit that decision when confronted with

evidence of many errors in the accounting.  Nothing in the accounting reflected that funds from

the trust were used in any way to acquire, improve or repair Defendant's homestead (or to

acquire her interest in her father's homestead or her parents' personal property).

While the trial court and Fourth District Court of Appeals in this case, *Ryan v. Stuart*,

232 So.2d 418 (Fla. 4th DCA 2017) found that the property in question, Defendant's Florida

residence, was not Defendant's homestead, they did so on a basis not found in applicable Florida

3

law defining a homestead as a permanent residence that a homeowner has declared as such.  The

trial and appellate courts said that this residence that Defendant had owned and resided in since

January 2000 was not her homestead because the trial court found that Defendant spent less time

in Florida than she did elsewhere.  In fact, the evidence submitted was submitted for purposes of

showing Defendant's eligibility for trustee fees and consisted of calendars showing the days she

spent on trust administration duties in Florida – not her total time in residence.  Even if it is true

that Defendant spent less time at her Florida homestead performing trust administration duties

than she spent in her alternate residence in the District of Columbia where she also had a

residence, durational residency requirements for homestead status have been unconstitutional in

Florida since 1952 as a denial of equal protection of the laws.  *Ostendorf v. Turner,* 426 So.2d

539, 544 (Fla. 1982), citing *Sparkman*  v. *State,* 58 So.2d 431 (Fla. 1952)(*en banc*).   Continuous

residency in the State of Florida is not required for homestead status.  Temporary absence of the

head of the household for reasons of health, pleasure, or business will not deprive the homestead

of its protected status, unless there was the aim on his part to forsake it permanently.

*Hillsborough Inv. Co. v. Wilcox*, 152 Fla. 889, 13 So.2d 448 (1943); *L'Engle v. Forbes*, 81 So.2d

214 (Fla.1955) ; and Olesky v. *Nicholas*, 82 So.2d 510 (Fla. 1955), cited in *Marsh v. Hartley*,

109 So.2d 34 (Fla. 2d DCA  1959).   The determination that Defendant's home in Florida was

not her homestead was an issue that was never presented in the complaint and was an error of

Constitutional significance that rendered the judgment void.[1]  Ironically, the District of Columbia

---

[1]  The trial court that had this case previously retired as of January 1, 2019.  The Fourth District Court of Appeals has so far engaged in a cover up of the erroneous actions of the trial court in this case.  In its ruling upholding the trial judge's denial of a motion for relief from judgment on the grounds that the court lacked subject matter jurisdiction over these properties on which it imposed liens since they were not mentioned in the complaint or the subject of proof of

government recently ruled that Defendant was ineligible for assistance from the DC Homesavers program because her DC residence was found not to be her primary residence (see notice, attached).

The courts also cited the fact that Defendant had a federally guaranteed reverse mortgage on her D.C. home as a basis for excluding her from homestead protection in Florida but no such exception exists in Article 10, § 4 of the Florida Constitution for a mortgage on an unrelated property.  The Court of Appeals conceded that the applicable law required that it apply only the exceptions stated in the Florida Constitution in order to deny Defendant homestead protection but said that did not matter because her Florida home was not her homestead.  In making that finding, the courts had to ignore the evidence in Defendant's Declaration of Domicile filed under oath with this court and her Notice of Homestead also filed under oath with the court and the evidence that Defendant had voted in Florida since 2004, volunteered as a voter protection attorney in every federal election since that time, belonged to the Community Church of Vero Beach, was an active supporter of Riverside Theater, the Vero Beach Museum of Art, the John's Island Community Service League and other local groups, had a law office in Vero Beach from 2006 to 2017, had been a member of the John's Island Club since 2000, and showed no evidence of intent to abandon her home in Florida.  In fact, she had purchased a burial plot next to that of her deceased father in the Town of Indian River Shores Cemetery that requires one to be a resident of the town in order to be buried there.

Incidentally, the finding of the trial court that Defendant engaged in "reprehensible"

---

the application of ill-gotten funds, the Court of Appeals did so in a per curiam affirmance and refused a motion to issue an opinion and for rehearing en banc. *Stuart v. Ryan,* 4D18-2388.

conduct sufficient to justify an equitable lien be imposed was contrary to applicable US Supreme

Court precedent, *see State Farm Mutual Auto Ins. v. Campbell,* 538 U.S. 408, 419 (2003)(We

have instructed courts to determine the reprehensibility of a defendant by considering whether:

the harm caused was physical as opposed to economic; the tortious conduct evinced an

indifference to or a reckless disregard of the health or safety of others; the target of the conduct

had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and

the harm was the result of intentional malice, trickery, or deceit, or mere accident).  It also is in

violation of applicable Florida Supreme Court precedent.  *Schoeff v. R. J. Reynolds Tobacco Co.,*

232 So.3d 294, 306-307 (Fla. 2017)(This Court has held that "[w]hen compensatory damages are

substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the

outermost limit of the due process guarantee."), citing *Engle v. LiggettGroup, Inc.,* 945 So.2d

1246, 1265 (Fla. 2006) and *State Farm v. Campbell,* 538 U.S. at 425.   State courts are required

to follow US Supreme Court pronouncements on matters of federal law such as its interpretation

of what constitutes reprehensible conduct sufficient to withstand a finding that a damages award

was too excessive to withstand due process scrutiny.  *See James v. City of Boise,* ___US ___, 136

S.Ct. 685, 193 L.Ed.2d 694 (2016)(As Justice Story explained 200 years ago, if state courts were

permitted to disregard this Court's rulings on federal law, 'the laws, the treaties, and the

constitution of the United States would be different in different states, and might, perhaps, never

have precisely the same construction, obligation, or efficacy...), citing *Martin v. Hunter's Lessee,*

1 Wheat. 304, 348, 4 L.Ed. 97 (1816).

      (3)     The judgment failed to award Defendant credit for the illegal lien imposed by the

court upon Defendant's interest in her father's homestead at 101 South Catalina Court, Vero

Beach, and her parents' personal property located at that residence. The trial court in 31-2013CA-001523 awarded a lien to Catherine Ryan and Deborah Stuart on Pamela Stuart's one-third ownership interest in her father's residence that she acquired by operation of law on January 18, 1998 when her father died pursuant to § 732.401(1), Florida Statutes. The case at issue, 31-2013CA-001523 concerned the assets of the J. Raymond Stuart trust. The trust's assets did not include J. Raymond Stuart's homestead property at 101 South Catalina Court, Vero Beach, Florida 32963 which passed by operation of law at his death to his three daughters as joint tenants pursuant to § 732.401(1), Florida Statutes. *Aronson v. Aronson,* 81 So.3d 515, 519 (Fla. 3d DCA 2012). Its homestead character was established at death. *Engelke v. Estate of Engelke,* 921 So.2d 693, 697 (Fla. 4th DCA 2006). The fact that the property was titled in the name of the trust did not affect its homestead protection under the Florida Constitution and its descent by operation of law to his surviving descendants *per stirpes. Aronson v. Aronson,* 930 So.2d at 767. The trust also did not include the assets held by Mr. Stuart's surviving spouse, Marion Stuart, to whom the personal property owned by J. Raymond Stuart not in his trust had passed at his death pursuant to his will. Mr. Stuart's personal property consisted mostly of Mr. Stuart's interest in the furniture and personal items in their homes in Garden City, New York (which were sent to the home in Vero Beach or distributed among the three daughters after the sale of the Garden City home) and Vero Beach, Florida (which presumably are still located in Mr. Stuart's homestead residence).

The successor trustee granted a trustee's deed to Catherine Ryan and Deborah Stuart in February 2017 that she lacked legal authority to issue. The deed conspicuously omitted Pamela Stuart's interest in the property which the trial court acknowledged was supported by applicable

law and stated words to the effect that no title search had been conducted prior to issuance of the

deed.   The evidence adduced in the underlying case did not provide any basis for showing that

Pamela Stuart acquired her interest in her father's homestead by anything other than her father's

unfortunate death and her relationship to him as his descendant.   Florida law requires some sort

of wrongdoing or unjust enrichment associated with the acquisition, improvement or repair of a

property in order to permit the imposition of an equitable lien.   *Palm Beach Savings & Loan

Ass'n v. Fishbein*, 619 So. 2d 267, 270-71 (Fla. 1993); *Flinn v. Doty*, 214 So.3d 683 (Fla. App.,

2017).   That evidence was completely absent but the trial court imposed a lien anyway because

the trial judge thought it was "appropriate."   The trial judge's personal opinion should not have

been the basis for the application of an equitable lien.   Catherine Ryan recently engineered her

own acquisition of 100% title to that property by exchanging $275,000 in return for a quitclaim

deed from Deborah Stuart.   The trial court provided no credit to Pamela Stuart for its wrongful

and unconstitutional taking of her one-third interest in her father's homestead. *See Stop the

Beach Renourishment v. Florida Department of Environmental Protection,* 560 U.S. 702, 713-

715 (2010)(Scalia, J., for a plurality, defining judicial taking in violation of the Takings Clause of

the 5th Amendment to the US Constitution, as applied to the states by the 14th Amendment).

(4)   The trial court provided no credit to Pamela Stuart for its unconstitutional taking of

her rights to a one-third interest in her parents' personal property which she acquired pursuant to

their wills which were not before the court in 31-2013CA-001523.

In fact, Defendant's homestead, her one-third interest in her father's homestead, and her

one-third interest in her parents' personal property were not part of the subject matter of the 31-

2013CA-001523 case before the court since they were not listed as special damages as required

8

by Florida Rule of Civil Procedure 1.120(g).  *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768

(Fla.1927)(If a court enters an order prior to the filing of proper pleadings, the court is said to

lack jurisdiction).  If a court grants relief beyond the scope of the pleadings, it acts in excess of

its jurisdiction.  *U.S. Bank Nat'l Ass'n v. Anthony-Irish, 204 So.3d 57, 60* (Fla. 5th DCA 2016).

citing *Campbell v. Nourse*, 429 So.2d 1375 (Fla. 4th DCA 1983).  An order entered without

subject-matter jurisdiction can be attacked under rule 1.540(b)(4) at any time because a lack of

subject-matter jurisdiction goes to the foundation of the court's power to adjudicate the case

presented.  *U.S. Bank Nat'l Ass'n v. Anthony-Irish*, 204 So.3d 57 (Fla. 5th DCA 2016).  In the case

presented, the trial court refused to permit Defendant to add the trust as a party after the court

said it would not act with respect to the J. Raymond Stuart homestead that was nominally titled

in the name of the trust.  The trial court then proceeded to order its disposition despite its lack of

subject matter jurisdiction.  This was particularly egregious.  *See Trerice v. Trerice*, no. 4D17-

2726 (Fla. 4th DCA 2018)(It is particularly inconsistent for a trial court to say it is not going to

exercise judicial power because it does not have personal jurisdiction over one of the parties and

to then exercise judicial power by making factual determinations to justify denying injunctive

relief over that same party).

      (5)     The judgment of deficiency does not properly subtract the $325,507.99 in trustee

expenses that Defendant incurred over 14 years of service as trustee.  They were presented to the

trial court in summary form as permitted by Florida Rule of Evidence § 90.956.  All of the

original receipts that were the basis for the summaries were provided to then counsel for Dr.

Ryan and Deborah Stuart and electronic copies were provided to the successor trustee who was

chosen at the behest of Ryan and Stuart's counsel.  The successor trustee testified she never

reviewed them and credited none of the expenses claimed.  Thus, the trial court refused to credit

them either.  This was contrary to § 736.0709, Florida Statutes, which provides:

Reimbursement of expenses.——

(1) A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for reasonable expenses that were properly incurred in the administration of the trust.

(2) An advance by the trustee of money for the protection of the trust gives rise to a lien against trust property to secure reimbursement with reasonable interest.

A judgment is void if entered without subject matter jurisdiction.  No items of special

damages were alleged in the complaint as required by Florida Rule of Civil Procedure 1.120(g)

which says: "**Special Damage.**  When items of special damage are claimed, they shall be

specifically stated."  The Florida Supreme Court has said that "Special damages are considered to

be the natural but not the necessary result of an alleged wrong or breach . . . .they are such

damages as do not follow by implication of law merely upon proof of the breach." *Augustine v.*

*Southern Bell Telephone & Telegraph Co.,* 91 So.2d 320, 323 (Fla. 1956);  *Precision Care Auto*

*Tune, Inc. v. Radcliffe,* 804 So.2d 1287, 1292 (Fla. 4th DCA 2002).   General damages are those

which the law presumes actually and necessarily result from the alleged breach or wrong.

*Augustine v. Southern Bell,* 91 So.2d at 323.   The failure to list Pamela Stuart's one-third interest

in her father's homestead or her residence at 111 John's Island Drive #7, Vero Beach, Florida or

the personal property belonging to J. Raymond Stuart at his death as items of special damages in

the complaint under Florida property law meant that they could not be transferred to Catherine

Ryan and Deborah Stuart pursuant to the lawsuit to satisfy any debt that Pamela Stuart may owe

to them.   Even if the Court of Appeals did not agree, the current status is that these properties

have been transferred to Catherine Ryan and Deborah Stuart and their value should be reflected

in the Final Judgment of Deficiency and were not.

WHEREFORE, because counsel for Catherine Ryan and Deborah Stuart and for the

Tennis Townhouses Condominium Association, Inc. engaged in misconduct in procuring the

above judgment and because the judgment was rendered without subject matter jurisdiction, it is

void and subject to relief pursuant to Florida Rule of Civil Procedure 1.540(b)(3) and (b)(4).

Defendant submits that this motion should be granted and the final judgment of deficiency

voided or corrected as set forth herein.


Dated: Januaary 17, 2019                    Respectfully submitted,

                                            /s/  Pamela B. Stuart

                                            _____
                                            P.M.B. #8202
                                            6001 Highway A1A
                                            Indian River Shores, FL 32963-1014
                                            pamstuart@aol.com
                                            202-244-0723
                                            202-999-2374
                                            202-835-2200
                                            Alternate address:
                                                5115 Yuma St., NW
                                                Washington, DC 20016

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2019, I electronically filed the

foregoing Defendant's Motion for Relief from Deficiency Judgment pursuant to Florida Rule of

Civil Procedure 1.540 with the Clerk of the Indian River County Circuit Court by using the ECF

System, and that a true and correct copy is being served this day on counsel of record:   Charles

D. Vitunac, Esq., Collins, Brown, Barkett, Garavaglia, Lawn, 756 Beachland Blvd., Vero Beach,

FL 32963, Counsel for Plaintiffs Catherine Ryan and Deborah Stuart,

dvitunacpleadings@verolaw.com,

/s/ Pamela B. Stuart

_____

PAMELA B. STUART

12




A Hardest Hit Fund Initiative

**RESTORE ASSISTANCE
NOTICE OF APPLICANT INELIGIBILITY**

01/09/2019

Applicant Name: Pamela Stuart

Property Address: 5115 Yuma Street. NW

Washington, DC 20016

Dear Applicant:

This letter is to notify you that you are INELIGIBLE for Restore Assistance through the District of Columbia Housing Finance Agency's HomeSaver Program due to one or more of the following reasons:

☐ Delinquent property related expense amount is less than $2,500.00

☐ Delinquent property related expense amount is greater than $60,000.00

☑ Property is not your primary residence

☐ Head of household or other person(s) applying for assistance is/was not named on the Deed

☐ Unable to determine qualifying hardship

☐ Income is greater than $140,640.00

☐ Monthly property expense payment is unsustainable (greater than 38% of your gross income)

☐ Unsatisfactory payment history prior to Hardship

☐ Other _____

SUPERIOR COURT OF THE
DISTRICT OF COLUMBIA

Civil Division

CATHERINE S. RYAN and
DEBORAH A. STUART,

     Plaintiffs,

v.

                                      Case No. 19-0000035
                                      Request to File Foreign Judgment

PAMELA B. STUART,
as trustee, et al.

     Defendants

_____/

## MOTION FOR STAY PENDING DISPOSITION OF
## MOTION FOR RELIEF FROM JUDGMENT

     Defendant Pamela B. Stuart respectfully moves pursuant to Superior Court Rule of Civil

Procedure 62 for an indefinite stay of these proceedings pending disposition of her Motion for

Relief From Judgment pursuant to Florida Rule of Civil Procedure 1.540 that is currently

pending before the Circuit Court of Indian River County, Florida.  The Florida Rule 1.540 is

substantially the same as Rule 60 of the Superior Court Rules of Civil Procedure.  A copy of the

motion filed electronically with the Circuit Court for Indian River County is attached.

     Defendant has been rendered nearly homeless and penniless by the relentless litigation

undertaken by the plaintiffs and is unable to post a bond.

     This matter was filed on January 3, 2019.  No prejudice to the plaintiffs will obtain



EXHIBIT

C

should the Court grant this motion for good cause shown.

Defendant verifies under penalty of perjury that the facts submitted above are true and correct to the best of her knowledge and belief pursuant to 28 USC § 1746.

WHEREFORE, Defendant submits that her motion should be granted.

Respectfully submitted,

*Pamela B. Stuart*

Pamela B. Stuart
Defendant *pro se*
5115 Yuma Street, N.W.
Washington, DC 20016
202-244-0723
202-835-2200
202-999-2374 (cell)
pamstuart@aol.com


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing motion was served upon counsel for the plaintiffs, Rachel E. Mueller, 800 17th Street, NW, Suite 1100, Washington, DC 20006, by first class mail with postage pre-paid this 17th day of January, 2019.

*Pamela B. Stuart*

PAMELA B. STUART

2

EXHIBIT A

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT,
IN AND FOR INDIAN RIVER
COUNTY, FLORIDA

CATHERINE S. RYAN and
DEBORAH A. STUART,

     Plaintiffs,

v.                              Case No. 31-2013CA-001523
                                     Judge Janet Croom

PAMELA B. STUART,
as trustee, et al.

     Defendants

_____/

## MOTION FOR RELIEF FROM DEFICIENCY JUDGMENT PURSUANT TO FLORIDA RULE OF CIVIL PROCEDURE 1.540

Defendant Pamela B. Stuart respectfully petitions this Court for relief from a deficiency judgment entered on December 27, 2018 in violation of applicable Florida law.  Defendant files this motion pursuant to Florida Rule of Civil Procedure 1.540(b)(3) and (4).  In support of her motion, Defendant relies on the following points and authorities.

The final judgment of deficiency in this case was erroneous for the following reasons:

(1)  It was based on a final judgment of foreclosure in a related case rather than on the evidence adduced in the case below which involved a complaint for removal of trustee, an accounting, conversion, and injunctive relief in a family trust matter.  Conversion was never established but the court found that Defendant had engaged in various breaches of trust due to

excessive borrowing under the terms of the trust and Florida law which permitted such borrowing.

(2)   The judgment granted a credit for the improper award of title to Defendant's homestead to plaintiffs that was based upon an equitable lien that was entered without evidence in the underlying case that Defendant acquired her homestead by means of "reprehensible" or egregious conduct such that her continued ownership of her personal residence would constitute unjust enrichment. Florida law and the 5th and 14th amendments to the US Constitution forbid the taking of private property by any branch of government, executive, legislative or judicial without due process of law.  In Florida, some showing of wrongdoing associated with the acquisition, improvement or repair of a residence is required before a lien may be imposed upon that property in favor of another private party. *Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018 (Fla. 2001) (holding the equitable lien is still a viable remedy for creditors in cases where funds obtained fraudulently were used directly to purchase a homestead, but the homestead exemption will apply to property purchased using funds legitimately obtained even if the property is used to shield funds from creditors).  In fact, the evidence below and in the motion for relief from judgment filed June 19, 2018, showed that Defendant acquired her homestead in 2000 utilizing her own funds, placed a lien against it in 2001 to guarantee a loan taken to assist a limited liability company in acquiring a commercial property, then refinanced the property in its entirety in 2006 to raise funds for attorneys' fees in a case that the limited liability company was litigating against the person who sold the building to the LLC in a fraudulent manner.  Then, the LLC paid off the debt to Defendant who arranged for the loan by paying off the refinanced mortgage when the LLC's asset was sold in 2009.   There was no evidence adduced in the underlying case that funds

borrowed from the J. Raymond Stuart trust were utilized to acquire, improve, or repair

Defendant's homestead in Florida.   Rather the funds borrowed from the trust were used to pay

carrying costs of the building owned by the LLC from time to time.

Applicable Florida law requires that in order to place an equitable lien on a property there

must be evidence that the property was wrongfully acquired, improved, or repaired with ill-gotten

funds so that the owner was unjustly enriched. *Palm Beach Savings & Loan Ass'n v. Fishbein*,

619 So. 2d 267, 270-71 (Fla. 1993) (confirming that an equitable lien may be imposed on

homestead property where funds obtained through fraud were used to purchase the homestead).

To obtain an equitable lien on a Florida homestead, a plaintiff must show by a preponderance of

the evidence (1) that the defendant engaged in fraudulent or egregious conduct and (2) that the

funds from that conduct can be directly traced to the purchase of, investment in, or improvement

of the homestead. *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003).

The trial court in this case accepted an accounting of the trust by the successor trustee that

was grossly inaccurate but approved by the previous trial judge after a 36 minute non-evidentiary

hearing when the accounting in question had not been provided by plaintiff's counsel and had not

been reviewed by the judge.  Judge Kanarek refused to revisit that decision when confronted with

evidence of many errors in the accounting.  Nothing in the accounting reflected that funds from

the trust were used in any way to acquire, improve or repair Defendant's homestead (or to

acquire her interest in her father's homestead or her parents' personal property).

While the trial court and Fourth District Court of Appeals in this case, *Ryan v. Stuart*,

232 So.2d 418 (Fla. 4th DCA 2017) found that the property in question, Defendant's Florida

residence, was not Defendant's homestead, they did so on a basis not found in applicable Florida

3

law defining a homestead as a permanent residence that a homeowner has declared as such.  The

trial and appellate courts said that this residence that Defendant had owned and resided in since

January 2000 was not her homestead because the trial court found that Defendant spent less time

in Florida than she did elsewhere.  In fact, the evidence submitted was submitted for purposes of

showing Defendant's eligibility for trustee fees and consisted of calendars showing the days she

spent on trust administration duties in Florida – not her total time in residence.  Even if it is true

that Defendant spent less time at her Florida homestead performing trust administration duties

than she spent in her alternate residence in the District of Columbia where she also had a

residence, durational residency requirements for homestead status have been unconstitutional in

Florida since 1952 as a denial of equal protection of the laws.  *Ostendorf v. Turner,* 426 So.2d

539, 544 (Fla. 1982), citing *Sparkman* v. *State,* 58 So.2d 431 (Fla. 1952)(*en banc*).   Continuous

residency in the State of Florida is not required for homestead status.  Temporary absence of the

head of the household for reasons of health, pleasure, or business will not deprive the homestead

of its protected status, unless there was the aim on his part to forsake it permanently.

*Hillsborough Inv. Co. v. Wilcox,* 152 Fla. 889, 13 So.2d 448 (1943); *L'Engle v. Forbes,* 81 So.2d

214 (Fla.1955) ; and Olesky v. *Nicholas,* 82 So.2d 510 (Fla. 1955), cited in *Marsh v. Hartley,*

109 So.2d 34 (Fla. 2d DCA  1959).   The determination that Defendant's home in Florida was

not her homestead was an issue that was never presented in the complaint and was an error of

Constitutional significance that rendered the judgment void.[1]  Ironically, the District of Columbia

---

[1]  The trial court that had this case previously retired as of January 1, 2019.  The Fourth
District Court of Appeals has so far engaged in a cover up of the erroneous actions of the trial
court in this case.  In its ruling upholding the trial judge's denial of a motion for relief from
judgment on the grounds that the court lacked subject matter jurisdiction over these properties on
which it imposed liens since they were not mentioned in the complaint or the subject of proof of

government recently ruled that Defendant was ineligible for assistance from the DC Homesavers program because her DC residence was found not to be her primary residence (see notice, attached).

The courts also cited the fact that Defendant had a federally guaranteed reverse mortgage on her D.C. home as a basis for excluding her from homestead protection in Florida but no such exception exists in Article 10, § 4 of the Florida Constitution for a mortgage on an unrelated property.  The Court of Appeals conceded that the applicable law required that it apply only the exceptions stated in the Florida Constitution in order to deny Defendant homestead protection but said that did not matter because her Florida home was not her homestead.  In making that finding, the courts had to ignore the evidence in Defendant's Declaration of Domicile filed under oath with this court and her Notice of Homestead also filed under oath with the court and the evidence that Defendant had voted in Florida since 2004, volunteered as a voter protection attorney in every federal election since that time, belonged to the Community Church of Vero Beach, was an active supporter of Riverside Theater, the Vero Beach Museum of Art, the John's Island Community Service League and other local groups, had a law office in Vero Beach from 2006 to 2017, had been a member of the John's Island Club since 2000, and showed no evidence of intent to abandon her home in Florida.  In fact, she had purchased a burial plot next to that of her deceased father in the Town of Indian River Shores Cemetery that requires one to be a resident of the town in order to be buried there.

Incidentally, the finding of the trial court that Defendant engaged in "reprehensible"

---

the application of ill-gotten funds, the Court of Appeals did so in a per curiam affirmance and refused a motion to issue an opinion and for rehearing en banc. *Stuart v. Ryan*, 4D18-2388.

conduct sufficient to justify an equitable lien be imposed was contrary to applicable US Supreme

Court precedent, *see State Farm Mutual Auto Ins. v. Campbell,* 538 U.S. 408, 419 (2003)(We

have instructed courts to determine the reprehensibility of a defendant by considering whether:

the harm caused was physical as opposed to economic; the tortious conduct evinced an

indifference to or a reckless disregard of the health or safety of others; the target of the conduct

had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and

the harm was the result of intentional malice, trickery, or deceit, or mere accident). It also is in

violation of applicable Florida Supreme Court precedent. *Schoeff v. R. J. Reynolds Tobacco Co.,*

232 So.3d 294, 306-307 (Fla. 2017)(This Court has held that "[w]hen compensatory damages are

substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the

outermost limit of the due process guarantee."), citing *Engle v. LiggettGroup, Inc.,* 945 So.2d

1246, 1265 (Fla. 2006) and *State Farm v. Campbell,* 538 U.S. at 425.   State courts are required

to follow US Supreme Court pronouncements on matters of federal law such as its interpretation

of what constitutes reprehensible conduct sufficient to withstand a finding that a damages award

was too excessive to withstand due process scrutiny. *See James v. City of Boise,* ___US ___, 136

S.Ct. 685, 193 L.Ed.2d 694 (2016)(As Justice Story explained 200 years ago, if state courts were

permitted to disregard this Court's rulings on federal law, 'the laws, the treaties, and the

constitution of the United States would be different in different states, and might, perhaps, never

have precisely the same construction, obligation, or efficacy...), citing *Martin v. Hunter's Lessee*,

1 Wheat. 304, 348, 4 L.Ed. 97 (1816).

      (3)    The judgment failed to award Defendant credit for the illegal lien imposed by the

court upon Defendant's interest in her father's homestead at 101 South Catalina Court, Vero

Beach, and her parents' personal property located at that residence. The trial court in 31-2013CA-001523 awarded a lien to Catherine Ryan and Deborah Stuart on Pamela Stuart's one-third ownership interest in her father's residence that she acquired by operation of law on January 18, 1998 when her father died pursuant to § 732.401(1), Florida Statutes. The case at issue, 31-2013CA-001523 concerned the assets of the J. Raymond Stuart trust. The trust's assets did not include J. Raymond Stuart's homestead property at 101 South Catalina Court, Vero Beach, Florida 32963 which passed by operation of law at his death to his three daughters as joint tenants pursuant to § 732.401(1), Florida Statutes. *Aronson v. Aronson,* 81 So.3d 515, 519 (Fla. 3d DCA 2012). Its homestead character was established at death. *Engelke v. Estate of Engelke,* 921 So.2d 693, 697 (Fla. 4th DCA 2006). The fact that the property was titled in the name of the trust did not affect its homestead protection under the Florida Constitution and its descent by operation of law to his surviving descendants *per stirpes. Aronson v. Aronson,* 930 So.2d at 767. The trust also did not include the assets held by Mr. Stuart's surviving spouse, Marion Stuart, to whom the personal property owned by J. Raymond Stuart not in his trust had passed at his death pursuant to his will. Mr. Stuart's personal property consisted mostly of Mr. Stuart's interest in the furniture and personal items in their homes in Garden City, New York (which were sent to the home in Vero Beach or distributed among the three daughters after the sale of the Garden City home) and Vero Beach, Florida (which presumably are still located in Mr. Stuart's homestead residence).

The successor trustee granted a trustee's deed to Catherine Ryan and Deborah Stuart in February 2017 that she lacked legal authority to issue. The deed conspicuously omitted Pamela Stuart's interest in the property which the trial court acknowledged was supported by applicable

law and stated words to the effect that no title search had been conducted prior to issuance of the

deed.  The evidence adduced in the underlying case did not provide any basis for showing that

Pamela Stuart acquired her interest in her father's homestead by anything other than her father's

unfortunate death and her relationship to him as his descendant.  Florida law requires some sort

of wrongdoing or unjust enrichment associated with the acquisition, improvement or repair of a

property in order to permit the imposition of an equitable lien.  *Palm Beach Savings & Loan*

*Ass'n v. Fishbein*, 619 So. 2d 267, 270-71 (Fla. 1993); *Flinn v. Doty*, 214 So.3d 683 (Fla. App.,

2017).  That evidence was completely absent but the trial court imposed a lien anyway because

the trial judge thought it was "appropriate."  The trial judge's personal opinion should not have

been the basis for the application of an equitable lien.  Catherine Ryan recently engineered her

own acquisition of 100% title to that property by exchanging $275,000 in return for a quitclaim

deed from Deborah Stuart.  The trial court provided no credit to Pamela Stuart for its wrongful

and unconstitutional taking of her one-third interest in her father's homestead. *See Stop the*

*Beach Renourishment v. Florida Department of Environmental Protection,* 560 U.S. 702, 713-

715 (2010)(Scalia, J., for a plurality, defining judicial taking in violation of the Takings Clause of

the 5th Amendment to the US Constitution, as applied to the states by the 14th Amendment).

(4)  The trial court provided no credit to Pamela Stuart for its unconstitutional taking of

her rights to a one-third interest in her parents' personal property which she acquired pursuant to

their wills which were not before the court in 31-2013CA-001523.

In fact, Defendant's homestead, her one-third interest in her father's homestead, and her

one-third interest in her parents' personal property were not part of the subject matter of the 31-

2013CA-001523 case before the court since they were not listed as special damages as required

8

by Florida Rule of Civil Procedure 1.120(g).  *Lovett v. Lovett,* 93 Fla. 611, 112 So. 768

(Fla.1927)(If a court enters an order prior to the filing of proper pleadings, the court is said to

lack jurisdiction).  If a court grants relief beyond the scope of the pleadings, it acts in excess of

its jurisdiction.  *U.S. Bank Nat'l Ass'n v. Anthony-Irish, 204 So.3d 57, 60* (Fla. 5th DCA 2016).

citing *Campbell v. Nourse*, 429 So.2d 1375 (Fla. 4th DCA 1983).  An order entered without

subject-matter jurisdiction can be attacked under rule 1.540(b)(4) at any time because a lack of

subject-matter jurisdiction goes to the foundation of the court's power to adjudicate the case

presented.  *U.S. Bank Nat'l Ass'n v. Anthony-Irish*, 204 So.3d 57 (Fla. 5th DCA 2016).  In the case

presented, the trial court refused to permit Defendant to add the trust as a party after the court

said it would not act with respect to the J. Raymond Stuart homestead that was nominally titled

in the name of the trust.  The trial court then proceeded to order its disposition despite its lack of

subject matter jurisdiction.  This was particularly egregious.  *See Trerice v. Trerice,* no. 4D17-

2726 (Fla. 4th DCA 2018)(It is particularly inconsistent for a trial court to say it is not going to

exercise judicial power because it does not have personal jurisdiction over one of the parties and

to then exercise judicial power by making factual determinations to justify denying injunctive

relief over that same party).

(5)    The judgment of deficiency does not properly subtract the $325,507.99 in trustee

expenses that Defendant incurred over 14 years of service as trustee.  They were presented to the

trial court in summary form as permitted by Florida Rule of Evidence § 90.956.  All of the

original receipts that were the basis for the summaries were provided to then counsel for Dr.

Ryan and Deborah Stuart and electronic copies were provided to the successor trustee who was

chosen at the behest of Ryan and Stuart's counsel.  The successor trustee testified she never

9

reviewed them and credited none of the expenses claimed.  Thus, the trial court refused to credit

them either.  This was contrary to § 736.0709, Florida Statutes, which provides:

> Reimbursement of expenses.—
>
> (1) A trustee is entitled to be reimbursed out of the trust property, with interest as
> appropriate, for reasonable expenses that were properly incurred in the administration of the
> trust.
>
> (2) An advance by the trustee of money for the protection of the trust gives rise to
> a lien against trust property to secure reimbursement with reasonable interest.

A judgment is void if entered without subject matter jurisdiction.  No items of special

damages were alleged in the complaint as required by Florida Rule of Civil Procedure 1.120(g)

which says: **"Special Damage.** When items of special damage are claimed, they shall be

specifically stated."  The Florida Supreme Court has said that "Special damages are considered to

be the natural but not the necessary result of an alleged wrong or breach . . . .they are such

damages as do not follow by implication of law merely upon proof of the breach." *Augustine v.*

*Southern Bell Telephone & Telegraph Co.,* 91 So.2d 320, 323 (Fla. 1956); *Precision Care Auto*

*Tune, Inc. v. Radcliffe,* 804 So.2d 1287, 1292 (Fla. 4th DCA 2002).   General damages are those

which the law presumes actually and necessarily result from the alleged breach or wrong.

*Augustine v. Southern Bell,* 91 So.2d at 323.   The failure to list Pamela Stuart's one-third interest

in her father's homestead or her residence at 111 John's Island Drive #7, Vero Beach, Florida or

the personal property belonging to J. Raymond Stuart at his death as items of special damages in

the complaint under Florida property law meant that they could not be transferred to Catherine

Ryan and Deborah Stuart pursuant to the lawsuit to satisfy any debt that Pamela Stuart may owe

to them.   Even if the Court of Appeals did not agree, the current status is that these properties

have been transferred to Catherine Ryan and Deborah Stuart and their value should be reflected

in the Final Judgment of Deficiency and were not.

WHEREFORE, because counsel for Catherine Ryan and Deborah Stuart and for the

Tennis Townhouses Condominium Association, Inc. engaged in misconduct in procuring the

above judgment and because the judgment was rendered without subject matter jurisdiction, it is

void and subject to relief pursuant to Florida Rule of Civil Procedure 1.540(b)(3) and (b)(4).

Defendant submits that this motion should be granted and the final judgment of deficiency

voided or corrected as set forth herein.

Dated: Januaary 17, 2019                      Respectfully submitted,

                                              /s/  Pamela B. Stuart

                                              _____
                                              P.M.B. #8202
                                              6001 Highway A1A
                                              Indian River Shores, FL 32963-1014
                                              pamstuart@aol.com
                                              202-244-0723
                                              202-999-2374
                                              202-835-2200
                                              Alternate address:
                                                   5115 Yuma St., NW
                                                   Washington, DC 20016


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2019, I electronically filed the

foregoing Defendant's Motion for Relief from Deficiency Judgment pursuant to Florida Rule of

11

Civil Procedure 1.540 with the Clerk of the Indian River County Circuit Court by using the ECF

System, and that a true and correct copy is being served this day on counsel of record:   Charles

D. Vitunac, Esq., Collins, Brown, Barkett, Garavaglia, Lawn, 756 Beachland Blvd., Vero Beach,

FL 32963, Counsel for Plaintiffs Catherine Ryan and Deborah Stuart,

dvitunacpleadings@verolaw.com,

/s/ Pamela B. Stuart

_____

PAMELA B. STUART

12



**Home**Saver

A Hardest Hit Fund Initiative
National Hardest Hit Housing Finance Agency

## RESTORE ASSISTANCE
## NOTICE OF APPLICANT INELIGIBILITY

01/09/2019

Applicant Name:     Pamela Stuart

Property Address:    5115 Yuma Street, NW

Washington, DC  20016

Dear Applicant:

This letter is to notify you that you are INELIGIBLE for Restore Assistance through the
District of Columbia Housing Finance Agency's HomeSaver Program due to one or more of
the following reasons:

☐  Delinquent property related expense amount is less than $2,500.00

☐  Delinquent property related expense amount is greater than $60,000.00

☑  Property is not your primary residence

☐  Head of household or other person(s) applying for assistance is/was not named on the Deed

☐  Unable to determine qualifying hardship

☐  Income is greater than $140,640.00

☐  Monthly property expense payment is unsustainable (greater than 38% of your gross income)

☐  Unsatisfactory payment history prior to Hardship

☐  Other _____

OFFICE OF DISCIPLINARY COUNSEL

JAN 1 5 2019 *HP*

## DISTRICT OF COLUMBIA COURT OF APPEALS
## BOARD ON PROFESSIONAL RESPONSIBILITY

RECEIVED

IN THE MATTER OF

      PAMELA BRUCE STUART,              Bar Docket:

      bar no. 220-236                     Prior Proceedings:
                                        17-BG-539 (November 2, 2017,
                                        Thompson, Beckwith
                                        and Easterly, JJ.)
                                        DDN 050-17

PETITIONER.

_____/

## PETITION FOR REINSTATEMENT TO
## MEMBERSHIP IN THE DISTRICT OF COLUMBIA BAR

      Petitioner, Pamela Bruce Stuart, hereby respectfully petitions the District of Columbia Court of Appeals, by and through its Board on Professional Responsibility, for reinstatement to active membership in the District of Columbia Bar following the expiration of a one year period of reciprocal suspension and upon her demonstration of fitness to resume the practice of law.

      Petitioner is a former Assistant United States Attorney for the District of Columbia. Prior to her suspension in 2017 she had a distinguished career in the practice of law for over forty years. She was elected in January 1998 to membership in the Cosmos Club as distinguished in the law. She served on the board of directors of the Bar Association of the District of Columbia for about fifteen years, has been a member of the Board of Directors of the Anacostia Economic Development Corporation for about twenty-five years, and regularly has taught trial advocacy for the National Institute of Trial Advocacy (most recently in June 2018 at Georgetown Law Center). Petitioner's



curriculum vitae that was current prior to her suspension is attached as Exhibit 1.

Petitioner was suspended reciprocally by the DC Court of Appeals following her suspension by the Supreme Court of Florida by order dated November 2, 2017. The DC Court of Appeals found that a one year period of suspension *nunc pro tunc* to July 7, 2017 with a requirement of a showing of fitness should be imposed. Petitioner notes that she notified the Office of Disciplinary Counsel of her suspension by the Florida Supreme Court in a timely manner by letter dated February 3, 2017, but the DC Court of Appeals did not issue its interim order of suspension until June 9, 2017. Petitioner timely filed her affidavit as required by Rule XI(14g) of the Rules Governing the District of Columbia Bar on July 7, 2017. A copy of that affidavit with exhibits and copies of all orders of suspension and disbarment are attached as Exhibit 2.

Petitioner's suspension by the Florida Supreme Court resulted from a family dispute that is still ongoing. Petitioner's brother in law, Edward Ryan, filed a complaint with the Florida Bar in 2014 stemming from petitioner's administration of her father's trust from 1998 to 2014. Mr. Ryan also financially backed Petitioner's sisters who instituted a civil action against her in the Circuit Court for Indian River County, Florida in November 2013. After receiving his complaint against Petitioner in 2014, the Florida Bar told Mr. Ryan "that's what civil litigation is for" and dismissed his complaint. It was subsequently resurrected.

The complaint filed in the Circuit Court for Indian River County, Florida by Petitioner's sisters, Catherine S. Ryan, M.D. and Deborah Stuart, alleged that Petitioner failed to file annual accountings as required by her father's trust and Florida law, had failed to appoint an independent trustee after the resignation of the initial independent trustee, that she had borrowed excessively from the trust and breached various fiduciary duties. In fact, Mr. Ryan had been appointed by Petitioner

2

as co-trustee in 2000 upon the advice of outside counsel to the trust that, under the circumstances, "no one would complain" that Mr. Ryan was ineligible under the terms of the trust to serve as co-trustee because he was married to a remainder beneficiary.  Petitioner appointed Mr. Ryan as co-trustee after she sought advice from counsel when several friends of her father refused her request to serve as co-trustee due to age and other commitments.

In 2001, Petitioner was induced by fraud and misrepresentation to purchase an office townhouse at 1750 N Street by David Lamb, Esq., on the misrepresentation that the building had rear access to a public street and would be eligible for building permits for necessary rehabilitation. When the building was denied a permit due to lack of rear access, Petitioner attempted for several years to negotiate rear access to her building across an alley that appeared as a "public alley" on the relevant DC Surveyor documents but neighboring property owners claimed it was a private alley. Years of litigation against Mr. Lamb and his LLC and the neighbors ensued (from 2004 to 2014) and Petitioner was forced to pay the carrying costs of the building without the rental income she had anticipated.   She informed her family of this situation and proposed borrowing against her inheritance and her right to trustee fees and costs to pay for this unexpected financial disaster and began to do so in 2001 and early 2002.  All withdrawals from the trust in her name appeared on monthly brokerage account statements that went to Mr. Ryan and Catherine Ryan beginning in July 2000.  Deborah Stuart received monthly brokerage account statements for the trust account beginning in March 2007. In addition to paying much of the carrying costs of the commercial office building, Petitioner used some of the funds she withdrew to pay expenses she incurred as trustee (mostly travel to oversee her mother's care and to supervise her mother's nurses) and to maintain the properties her father owned for which she was responsible as trustee. For accounting purposes, she

3

kept original receipts of all transactions.

Petitioner stopped preparing the annual accountings for the trust beginning in 2003 reasoning that all family members were informed of what she was doing and had access to the brokerage account statements for the trust which were kept in her mother's house in Florida and mailed to the Ryan's house that detailed all of its income and expenses (other than the trustee's expenses) as well as her withdrawals. She consulted with an accountant before concluding that the overwhelming responsibilities she had assumed (to take care of her increasingly frail mother and her mother's two residences, the client matters of her solo law practice, the administration of the trust and ongoing litigation) made it impossible for her to comply with the annual accounting requirement. Her reliance upon her sisters' access to trust account information was reasonable. A federal court in Florida ruled in a similar case that if trust beneficiaries have access to regular brokerage statement information, it bars their claims against the trustee for failure to account. *Figel v. Wells Fargo Bank, N.A.*, case no. 10-CV-60737-COHN/SELTZER (S.D. Fl. March 9, 2011)(order granting summary judgment in favor of defendant).

The office townhouse at 1750 N Street could not be sold on the open market due to the lack of guaranteed rear access to a public street. It finally was sold in December 2009 to an association that owned the building next door and wanted to expand. With the proceeds from the sale, Petitioner repaid $705,000 of the money borrowed from her father's trust during the intervening period. The LLC that owned the building also repaid loans taken out on its behalf including a loan from Petitioner for legal fees which she paid by refinancing her home in Florida. She purchased that home located two miles from her mother's residence in January 2000 in order to facilitate her work as trustee and as a permanent residence for herself.

4

Beginning in 2010, as her mother's health declined, Petitioner's health also needed attention (mostly due to severe arthritis). Petitioner had neglected her health while in litigation from 2004 to 2010. Beginning in October 2010, Petitioner underwent a series of ten surgeries including replacements of both her hips and her right shoulder joint, a cervical decompression and discectomy, two carpal tunnel releases, and transoral robotic surgery for sleep apnea. As a result of the surgeries and lengthy rehabilitation periods and periods of travel to Florida to take care of her mother and trust business, Petitioner unexpectedly had to borrow again from the trust in order to support herself and trust expenses.

Loans to trustees, beneficiaries and executors were permitted by the terms of her father's trust and Florida law. § 736.0816(6), Florida Statutes, provides that trustee may borrow money from trust with or without security; § 736.0816(19), Florida Statutes, provides that a trustee may make loans out of trust property, including, but not limited to, loans to a beneficiary on terms and conditions that are fair and reasonable under the circumstances, and the trustee has a lien on future distributions for repayment of those loans. Her father's trust provided that the trustee could make loans with adequate security. In 2009, Petitioner prepared a promissory note from petitioner to the trust for the withdrawals made beginning in 2001 that promised repayment at an interest rate pegged to federal rates.

Following the death of her mother on April 29, 2012, Petitioner provided her two sisters with her plan for winding up the affairs of the trust. Despite the Florida law that requires fees be paid to trustees and that reasonable trustee expenses be reimbursed and the terms of the trust which also anticipated payment of trustee fees and expenses, Petitioner's sisters and her brother in law objected to family members being paid for services to the trust – even though those services lasted for over

5

fourteen years and Florida law provides that trustees are to be compensated for their services.   A demand letter was received and Petitioner retained counsel who suggested mediation but counsel representing petitioner's sisters refused the mediation request.

After her sisters' suit was filed in November 2013, Petitioner retained counsel who assisted her in assembling the trust records and in negotiating an initial postponement of a hearing and her resignation as trustee. Years of hard fought litigation ensued. Her sisters' lawyer in the case insisted on the retention of a successor trustee, Gina Rall, who only served the interest of Petitioner's sisters rather than acting as a trustee for all beneficiaries as the law required. After Ms. Rall was retained and Mr. Ryan was terminated as co-trustee by the court in March 2014, Petitioner terminated the services of her counsel and proceeded *pro se.*

The sisters' lawyer moved to approve the successor trustee's accounting in September 2015. The accounting was grossly inaccurate and failed to include any of Petitioner's expenses as trustee or to make plans for payment of trustee fees to Petitioner so Petitioner objected.  The trial judge held a 36 minute non-evidentiary hearing on October 23, 2015 and sharply criticized Petitioner who had not yet completed assembling and recording the expenses she incurred over sixteen years of service as trustee and wanted credited against the loans she took from the trust.  Petitioner explained that in addition to carrying on her solo law practice that she had been caring for a friend who resided with her while he was dying of cancer.  The judge deemed these explanations to be "preposterous" and said she would approve the accounting (which had not been filed and which the judge had not read) and report Petitioner to the Florida Bar.  The judge forwarded a copy of her order to Bar Counsel. That had the effect of resurrecting Edward Ryan's complaint filed in 2014.

Petitioner cooperated with Bar Counsel's investigation in Florida and readily admitted to

6

failing to do the required annual accountings because she was overwhelmed. Petitioner agreed to a consent judgment admitting the failure to do the annual accountings and excessive borrowing and imposing a one year suspension of her Florida Bar membership. At the insistence of Bar Counsel, Petitioner agreed to include a statement that the trial court had found various breaches of her fiduciary duties -- even though petitioner disagreed with some of the trial judge's conclusions in that regard. The Supreme Court of Florida accepted the consent agreement and by order dated January 5, 2017, imposed a one year suspension beginning in 30 days with readmission conditioned on a showing of fitness. Petitioner, as required, notified all bars of which she was a member of this discipline. All but the New York appellate division imposed reciprocal discipline. The New York court imposed reciprocal discipline in the form of a public reprimand noting that the "misconduct" involved did not include anything to do with Petitioner's law practice but stemmed from a bitter family dispute. The US Supreme Court, where she had been admitted on the motion of the late Justice Arthur J. Goldberg, disbarred her (its rules do not provide for reciprocal suspension).

Petitioner has served her year of suspension and now applies for reinstatement to the District of Columbia Bar. During her time of suspension, Petitioner examined the complaints about her conduct and engaged in a concentrated study on professionalism. At the suggestion of the Virginia State Bar's disciplinary board, Petitioner studied for and sat for the Multistate Professional Responsibility Examination that is administered to aspiring bar members. She received a score of 103 (75 is the passing score in the District of Columbia). Attached as Exhibit 3 is a copy of the report of her passage of the examination. She also took a six hour course on Practicing with Professionalism that is required of new lawyers in Florida. A verbatim transcript of that course is available upon request. She completed two ethics courses given by the District of Columbia Bar as

7

part of its annual Bar 360 program in the spring of 2018.   In addition, she attended live CLE courses

on estate planning in Virginia and government contracting and completed online CLE courses for

the Virginia Bar in estate planning that included highlights of the annual Heckerling Institute, asset

protection, fiduciary service, pre-and post-nup clauses for trust and estate planners, and international

tax planning for estate planners.   In addition, she took a CLE course examining the ethics of

deception and duty of candor to the tribunal (under Rule 3.3 ( c) of the Rules of Professional

Responsibility).   She completed a total of 30 hours of CLE including 2 ethics hours for Virginia.

Records of the Virginia State Bar and Florida Bar for Petitioner's CLE credits are in Exhibit 4.

The D.C. Court of Appeals has established  five factors to be considered in each

reinstatement case: (1) the nature and circumstances of the misconduct for which the attorney was

[previously] disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3)

the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs

and prevent future ones; (4) the attorney's present character; and (5) the attorney's present

qualification and competence to practice law." *In re Mance,* 171 A.3d 1133, 1137 (D.C. 2017); *In

re Roundtree*, 503 A.2d 1215, 1217 (DC 1985). The Court stressed that in a reinstatement

proceeding, "primary emphasis must be placed on the factors most relevant to the grounds upon

which the attorney was disbarred [or suspended]." *Id.*

Petitioner recognizes that it was a mistake to fail to complete the annual accountings of her

father's trust in a timely manner.   At the time, she was in an impossible situation that required her

to be responsible for the care of her elderly mother, her mother's two residences in New York (this

was sold in 2002) and Florida, the administration of her father's trust, and the care of the clients of

petitioner's solo law practice which had offices in DC and Vero Beach, Florida.   Petitioner decided

8

to prioritize the care of her elderly mother which was very time consuming (petitioner's mother was confined to a wheel chair and had round the clock nurses from 2006 to 2012). She was frequently in touch with her family members and knew that they were supplied with information concerning the trust and its administration. Her sister Catherine had monthly brokerage statements sent to her home beginning in July 2000 and her sister Deborah began receiving monthly statements in March 2007. A federal court in Florida has said that the type of information that Petitioner's sisters had about the trust was sufficient to bar their claims. *Figel v. Wells Fargo, N.A.,* 2011 WL 860470 (S.D.Fla. Mar 09, 2011). A copy of the opinion in that case is attached as Exhibit 5. They knew when she traveled to be with her mother and to perform trust business. It was only after Petitioner's mother died that family members asserted that information was concealed.

Petitioner thought that the borrowing she did from the trust was authorized by the trust and Florida law. Petitioner conceded that it was excessive. In 2018 she met with a long time friend and advisor, former Special Agent Kevin Hogan of the FBI, a forensic accountant, to discuss her actions and those of the accountant retained as her successor trustee and he provided her with valuable counsel and perspective. He has written a letter recommending her reinstatement which is attached as Exhibit 6. She regrets the error and does not anticipate ever being presented with similar circumstances. In retrospect, she believes that it would have been helpful to seek the guidance of a court with respect to the accountings issue.

Unfortunately, Petitioner's actions, while well-intentioned, coupled with the animosity of her sisters and brother in law, resulted in a substantial cloud being placed on her otherwise distinguished professional career. She does not anticipate rebuilding her practice to its former level because she is 69 years old and her efforts to obtain a position with a corporation or an association have proved

9

futile thus far.  Due to her much reduced financial circumstances, she has not been able to make any restitution to date.  However, her sisters have managed to perfect a lien on her permanent home in Florida worth $560,000 after Petitioner was unable to pay the condominium association fees for the home for the years she was in litigation with her sisters.  The home and its furniture was purchased in 2000 and refinanced in 2006 to raise funds for the litigation against David Lamb.  It was essentially acquired entirely with Petitioner's funds.  Nevertheless, the Florida court decided it was "appropriate" to award petitioner's home to her sisters despite the fact that it was never listed as special damages in her sisters' complaint and the court lacked subject matter jurisdiction over it. It was seized by a writ of possession on July 28, 2018.

Since discipline was imposed, Petitioner has been unemployed with the exception of a brief stint as a consultant on an international finance research project, the litigation of a complaint for unpaid wages on behalf of a Virginia corporation (Tysons Realty) and some work assisting a Virginia lawyer on an age discrimination case.  She has occupied her time with trying to survive financially and improving her professionalism.  She has been occupied with "downsizing" and selling her possessions at auction at Weschler's for income.  She has kept current in legal matters by monitoring developments in the jurisdictions where she was and is licensed online.  She gets daily notices of new opinions put out by justia.com.  She has attended monthly meetings of the Edward Bennett Williams Inn of Court which puts on programs relevant to white collar criminal prosecutions and defense.  She also has been involved in ongoing litigation with her sisters and with a case brought to foreclose on a lien on her home in Florida by the condominium association for unpaid fees and assessments.  She also continued her service on the Board of Directors of the Anacostia Economic Development Corporation, a post she has held since 1993.

10

Petitioner's character remains strong.  Prior to the incidents in question, she had a lengthy and unblemished career in the practice of law.  She has had strong support from her friends.

A letter from a friend and former client, Jonathan Groner, recommending her reinstatement is attached as Exhibit 7.  Much of her career was in the District of Columbia where she served as an Assistant United States Attorney.  None of the misconduct alleged that resulted in her suspension stemmed from her practice of law.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar or the administration of justice.

Petitioner certifies that the foregoing statements are made pursuant to penalties of perjury pursuant to 28 U.S.C. § 1746 and are true and correct to the best of her knowledge and belief.

WHEREFORE, for the foregoing reasons, Petitioner submits that her petition for reinstatement in the District of Columbia Bar should be granted.

PAMELA B. STUART
*Petitioner pro se*
5115 Yuma Street, NW
Washington, D.C.  20016
202-244-0723
202-999-2374 (cell)
pamstuart@aol.com

11

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Petition for Reinstatement has been served upon

the Office of Disciplinary Counsel, William Ross, Esq., 515 5th Street, NW, Building A, Suite 117,

Washington, D.C.  20001, this 15th day of January, 2019.

PAMELA B. STUART