UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

| | | |
|---|---|---|
| PAMELA B. STUART | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  18-14244- CIV- |
| | ) | MARTINEZ/MAYNARD |
| | ) | |
| CATHERINE S. RYAN, | ) | |
| | ) | |
| DEBORAH A. STUART, | ) | |
| | ) | |
| TENNIS TOWNHOUSES CONDOMINIUM | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| JEFFREY R. SMITH, | ) | |
| | ) | |
| STATE OF FLORIDA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

FILED BY___**CGA**___D.C.

**Feb 4, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Fort Pierce

**ADDITIONS, CORRECTIONS AND NOTICE OF SUPPLEMENTAL AUTHORITY TO
RULE 72 OBJECTIONS TO THE REPORT AND RECOMMENDATIONS
OF THE MAGISTRATE JUDGE**

Plaintiff Pamela B. Stuart, *pro se,* respectfully files the following additions, corrections, and

status update to her previously-submitted Rule 72 Objections which the Court has not yet granted

leave to be filed in accordance with Plaintiff's pending motion.

As the Court will recall, Plaintiff submitted Rule 72 objections with exhibits on January 24,

2019 one day late.  Plaintiff had been undergoing extremely stressful events including a distressing

diagnosis requiring upcoming surgery,  the filing by defendants Ryan/Stuart on January 3, 2019 of

a foreign judgment in the District of Columbia that made clear that they not only wanted to

unconstitutionally take Plaintiff's permanent home in Florida and her inherited rights to a share of her father's homestead and her parents' personal property, but they wished to take Plaintiff's remaining residence in the District of Columbia.   Plaintiff's efforts to deal with these events and other matters so as to clear her head to write the Rule 72 objections fell short of her ability to meet the Court's deadline by 40 minutes.

Due to the financial distress visited upon Plaintiff due to the suspension of her law licenses at the behest of Edward Ryan, former co-trustee of the J. Raymond Stuart Trust and husband of Catherine Ryan, Plaintiff has had to seek assistance to avoid foreclosure of the reverse mortgage she has on her sole remaining residence in D.C.  Her application for assistance under a special program maintained by the DC Government for elderly homeowners was denied for the reason that in the opinion of the DC Homesavers Program Plaintiff's D.C. home was not her principal residence. Plaintiff has long-maintained that her domicile was in Florida but adhered to the residency requirements imposed by federal regulations to keep the mortgage which is now in foreclosure proceedings.   In order to advise the D.C. Homesavers program that she would have the financial ability to comply with her property tax obligations going forward, Plaintiff filed a request for reinstatement of her membership in the District of Columbia Bar.

Meanwhile, Plaintiff had a chance to re-read her Rule 72 objections and noticed a number of typographical and other errors.  She wishes the Court to note the following corrections:

page 4, middle of the page:  She repaid $705,000, not $750,000 from the proceeds of the sale of the building.

page 7.  Exhibit A, the complaint, was omitted from the exhibits by mistake and is attached.

page 20.  The citation of the *Johns v. Bowden* case should reflect that it was decided by the

Florida Supreme Court in 1914, not 2014.

page 42.   Plaintiff established her law office in Vero Beach in 2006, not 2004.

page 60.   Plaintiff took care of her dying friend, William Ace,  from June 2014 to January 2015.

page 61.   The first word at the top of the page should be "emphasis," not evidence.

page 68.   The curriculum vitae should be Exhibit B and it was mistakenly omitted from the exhibits sent with the originally filed Rule 72 objections and is attached.

page 90.   Fourth line from the bottom should read "personally purchased residence" not "resident."

page 100.   Last line in first paragraph should begin with "rare" not "rate."

page 115.   The citation to the *Zikofsky* case should read: *Zikofsky v. Mktg. 10, Inc.,* 904 So.2d 520, 523 (Fla. 4th DCA 2005).

page 119.   Seventh line from the bottom:   "borrowed" not "borrowers."

### Status Update

Since the time she submitted her Rule 72 Objections to the Magistrate's Report and Recommendations, the State of Florida's Fourth District Court of Appeals has issued its second per curiam affirmance – this time to affirm the case decided in favor of the Tennis Townhouses that litigated it in the absence of the required authorization from its Board of Directors.  To affirm that decision, the Fourth DCA had to ignore the authority of the Florida Supreme Court that a decision issued in the absence of subject matter jurisdiction is void. *Dober v. Worrell,* 401 So. 2d 1322 (Fla. 1981).  The Fourth DCA also ignored its own settled case law that a condominium association has authority to act only if it acts in conformity with its governing documents. *Berg v. BRIDLE PATH*

*HOMEOWNERS ASS'N, INC.*, 809 So.2d 32 (Fla. 4th DCA 2002). It also failed to apply the applicable Florida Statutes which said the same thing. § § 718.104(7) , 718.105(1), 718.303(1), Florida Statutes. It also ignored other applicable precedents: *Fountains of Palm Beach Condominium, Inc. No. 5 v. Farkas*, 355 So.2d 163, 164 (Fla. 4th DCA 1978)(governing documents to be strictly construed). *Eastpointe Property Owners' Ass'n, Inc. v. Cohen*, 505So.2d 518, 519 (Fla. 4th DCA 1987)(noting each owner purchases knowing of and accepting the restrictions found within the Declaration). By issuing a per curiam affirmance, as it did in the appeal of the motion for relief from judgment in the Trust case, the Fourth District Court of Appeals essentially engaged in an unreviewable coverup of the failure of the state courts to adhere to the applicable law and their failure to provide Plaintiff with due process of law. For all intents and purposes, there is no appeal from a per curiam affirmance by a District Court of Appeal in the State of Florida. *See,* Steven Brannock and Sarah Weinzierl, *Confronting a PCA: Finding a Path Around a Brick Wall,* 32 STETSON L. REV. 367 (2003). Indeed, Plaintiff filed a motion for rehearing *en banc* and for issuance of an opinion in the case that affirmed the trial court's failure to correct the void judgment pursuant to Rule 1.540(b)(4) of the Florida Rules of Civil Procedure (due to lack of subject matter jurisdiction) but the 4th DCA denied the motion without comment.

Thus, for all intents and purposes, the state court appellate review of the actions of Judges Cox and Kanarek has concluded without any remedy being afforded to Plaintiff for the complete breakdown in due process in those courts and the unconstitutional taking of her property interests in violation of the 4th and 5th Amendments to the U.S. Constitution without subject matter jurisdiction. Fortunately, a federal remedy is available. 42 U.S.C. § 1988 provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the

4

provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

In appropriate circumstances, federal courts of general jurisdiction entertain claims that a state government unit is engaged in action that would constitute a taking, and if so, to issue a declaration that compensation is required under the circumstances. As the Eleventh Circuit said recently in *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 917 (11th Cir., 2018), "[T]o state a Takings claim under [federal] law, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected. Only if the plaintiff actually possesses such an interest will a reviewing court then determine whether the deprivation or reduction of that interest constitutes a 'taking.' " *Givens v. Ala. Dep't of Corr.* , 381 F.3d 1064, 1066 (11th Cir. 2004) (citations omitted). "[W]e are mindful of the basic axiom that property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Ruckelshaus v. Monsanto Co.* , 467 U.S. 986 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). That independent source must establish that the plaintiff has a "legitimate claim of entitlement" on which he may reasonably rely. *Bd. of Regents of State Colls. v. Roth* , 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If the asserted property interest is created entirely by state statutory law, then it follows that the scope of the right would be gleaned from the statute itself. *See, e.g. , id. ; Cleveland Bd. of Educ. v. Loudermill* , 470

U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

There is no question that Plaintiff's property has been taken and taken at the behest of the State of Florida acting through its agents, its state courts.  As the Eleventh Circuit recently stated in *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 950 (11th Cir., 2018), Article X, § 6(a) of the Florida Constitution provides, "No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner...." This clause prohibits the government from taking private property for a public use without paying for it. *Storer Cable T.V. of Fla., Inc. v. Summerwinds Apartments Assocs., Ltd.*, 493 So.2d 417, 419-20 (Fla. 1986).  Florida follows federal takings law, so this Court may look to cases brought under the Fifth Amendment to inform its analysis. *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So.3d 1220, 1226 (Fla. 2011) (holding that the takings clause of the Fifth Amendment and the takings clause of the Florida Constitution are interpreted coextensively), *rev'd oñ other grounds*, 570 U.S. 595, 133 S.Ct. 2586, 186 L.Ed.2d 697 (2013).  A physical invasion constitutes a per se taking, in part because the "power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). A plaintiff need not demonstrate direct government appropriation of private property to prove a taking. A taking also occurs when the government gives third parties "a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed." *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 832, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).  Moreover, even a temporary or intermittent invasion of private property can trigger physical takings liability. *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 32, 133 S.Ct. 511, 184 L.Ed.2d 417 (2012)(holding government-induced recurrent floodings, even if temporary in duration,

are not categorically exempt from Takings Clause liability).

As set forth extensively in her Rule 72 Objections to the Magistrate's Report and Recommendations and as noted above, the state courts of Florida have taken Plaintiff's property interests and transferred title to her sisters without subject matter jurisdiction having been properly invoked and against the dictates and requirements of established Florida property law. The appellate courts of Florida have turned a blind eye to this action by issuing per curiam affirmances and, in the case of the Florida Supreme Court, denying certiorari jurisdiction, for reasons known only to them because they refuse to explain themselves. So any pretense that the state courts of Florida would provide an adequate remedy for unconstitutional actions by its own judges is unfounded. As the US Supreme Court observed, "Extortionate demands for property [by the State] run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation. As in other unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable injury." *Koontz v. St. Johns River Water Mgmt. Dist.*, ___U.S.___, 133 S. Ct. 2586, 2596, 186 L. Ed. 2d 697 (2013). This would be true in a case such as this one where the State of Florida, acting through its judges, denied protection from forced transfer as provided by Art. 10, § 4 of the Florida Constitution to Plaintiff and her right to retain her property interests.

As the U.S. Supreme Court said in *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 314–15 (1987), "[The Takings Clause] does not prohibit the taking of private property [by the State], but instead places a condition on the exercise of that power. This basic understanding of the Amendment makes clear that it is designed not to limit the

7

governmental interference with property rights *per se*, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." Thus, this Court has the power and duty to declare a taking and to enjoin enforcement of the taking absent just compensation. Given the nature of the substantive right created by the Takings Clause, it is fair to say that the presumptive remedy for an otherwise permissible taking is an award of compensation, that is, money damages. Because in this case title to a residence was taken unconstitutionally and real estate is unique, damages in addition to the market value of the property would be appropriate. In the case of the taking of Plaintiff's one-third interest in her father's homestead, a current appraisal and order to the State to pay damages in accordance with a current appraisal would be an appropriate remedy. With respect to the Plaintiff's one-third interest in her parents' personal property, an order to the defendants Ryan and Stuart to disgorge one-third of that property which is unique would be the appropriate remedy. Since the State of Florida has denied its liability for compensation in this case, and the State itself acting through its courts effected the unconstitutional transfers of title to Plaintiff's property interests, the State has necessarily consented to the judicial determination of the scope of its obligations under the U.S. Constitution.

The jurisdiction to direct the compensation required by the Constitution is inherent in the Constitution itself. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The U.S. Supreme Court said in that case, "We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of " 'the self-executing character of the constitutional provision with respect to compensation. . . .' " *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127 1130, 63 L.Ed.2d 373 (1980), quoting 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed. 1972). As noted in Justice

BRENNAN's dissent in *San Diego Gas & Electric Co.* v. San Diego, 450 U.S. 621, 654-655, 101

S.Ct. 1287, 1305, 67 L.Ed.2d 551 (1981), it has been established at least since *Jacobs v. United*

*States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933), that claims for just compensation are

grounded in the Constitution itself.  "The suits were based on the right to recover just compensation

for property taken by the United States for public use in the exercise of its power of eminent domain.

That right was guaranteed by the Constitution. The fact that condemnation proceedings were not

instituted and that the right was asserted in suits by the owners did not change the essential nature

of the claim. The form of the remedy did not qualify the right.  It rested upon the Fifth Amendment.

Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was

implied because of the duty to pay imposed by the Amendment. The suits were thus founded upon

the Constitution of the United States." Id., at 16, 54 S.Ct., at 27. (Emphasis added.)

   *Jacobs*, moreover, does not stand alone, for the Court has frequently repeated the view that,

in the event of a taking, the compensation remedy is required by the Constitution. *See, e.g., Kirby*

*Forest Industries, Inc. v. United States*, 467 U.S. 1, 5, 104 S.Ct. 2187 2191, 81 L.Ed.2d 1 (1984);

*United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062 1068, 90 L.Ed. 1206 (1946); *Seaboard*

*Air Line R. Co. v. United States*, 261 U.S. 299, 304-306, 43 S.Ct. 354, 355-356, 67 L.Ed. 664 (1923).

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482

U.S. 304, 315-316, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

   Accordingly, in light of the state courts of Florida having completely abdicated their

responsibility to provide Plaintiff with the due process of law that would have prevented the

unconstitutional taking of her property, this Court has a Constitutionally-based duty and jurisdiction

to declare her rights and to invoke its powers to provide a declaratory judgment and injunctive relief

to secure Plaintiff a remedy for the unconstitutional actions of the Florida courts acting as agents of the State of Florida.

Dated: January 31, 2019                        Respectfully submitted,


Plaintiff *pro se*
P.M.B. #8202
6001 Highway A1A
Indian River Shores, FL 32963-1014
(202) 999-2374 (cell)
(202) 244-0723 (landline)
pamstuart@aol.com
Alternate: 5115 Yuma St., NW
                   Washington, DC 20016

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have sent the original of the foregoing Plaintiff Pamela Stuart's

Additions, Corrections, and Notice of Supplemental Authority to Rule 72 Objections to the Report

and Recommendations of the Magistrate with exhibits to the Clerk of the Court for filing via first

class mail with postage prepaid and that I am serving a copy on counsel via first class mail with

postage prepaid at their addresses provided of record  this 1st day of February 2019.

PAMELA B. STUART

copies to:

Jason L. Odom, Esq.
Gould, Cooksey Fennell, PA
979 Beachland Blvd.
Vero Beach, FL 32963
jodom@gouldcooksey.com

 Counsel for Defendant Jeffrey R. Smith, Clerk of the Circuit Court for Indian River County,
Florida

Sean A. Mickley, Esq.
Kirwin Norris
15 W. Church Street, Suite 301
Orlando, FL 32801
sam@kirwinnorris.com

 Counsel for defendant, The Tennis Townhouses Condominium Association, Inc.

C. Douglas Vitunac, Esq.
Collins, Brown, Barkett, Garavaglia and Lawn, Chrtd.
756 Beachland Blvd.
Vero Beach, FL 32963
dvitunacpleadings@verolaw.com

 Counsel for Defendants Catherine Ryan and Deborah Stuart

11

Maria Guitian Barker, Esq.
Assistant Attorney General
State of Florida
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, FL 33301
maria.guitianbarker@MyFloridalegal.com

     Counsel for the State of Florida

EXHIBIT A

EXHIBIT A

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT,
IN AND FOR INDIAN RIVER
COUNTY, FLORIDA

CATHERINE S. RYAN and DEBORAH
A. STUART, as Beneficiaries of The J.
Raymond Stuart Revocable Trust dated
January 2, 1990, as amended, and the
Marital Deduction Trust and the Non-
Marital Deduction Trust created thereunder,

       Plaintiffs,

v.                                CASE NO. _____

PAMELA B. STUART, individually and
as Trustee of The J. Raymond Stuart Revocable
Trust dated January 2, 1990, as amended, and
the Marital Deduction Trust and the Non-
Marital Deduction Trust created thereunder,

       Defendant.
_____/

### COMPLAINT FOR REMOVAL OF TRUSTEE, CONVERSION, BREACH OF TRUST AND INJUNCTIVE RELIEF

Plaintiffs, CATHERINE S. RYAN and DEBORAH A. STUART, as Beneficiaries of

The J. Raymond Stuart Revocable Trust dated January 2, 1990, as amended, and the Marital

Deduction Trust and the Non-Marital Deduction Trust created thereunder, by and through

their undersigned counsel, hereby bring this action for removal of trustee, conversion, breach

of trust and injunctive relief against Defendant, PAMELA B. STUART, individually and as

Trustee of The J. Raymond Stuart Revocable Trust dated January 2, 1990, as amended, and

the Marital Deduction Trust and the Non-Marital Deduction Trust created thereunder, and in

support hereof, allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.     J. Raymond Stuart (the "Decedent") died on January 18, 1998, a resident of

Vero Beach, Indian River County, Florida.

1

2.      Approximately eight years prior to his death, Decedent established The J. Raymond Stuart Revocable Trust (the "Trust"), a trust governed by Florida law and having its principal place of administration in Indian River County, Florida.

3.      The initial Trustees of the Trust were Decedent and Defendant, PAMELA B. STUART, who continues to serve as Trustee.

4.      The qualified beneficiaries of the Trust and the trusts created thereunder, within the meaning of section 736.0103(14) of the Florida Statutes, are Plaintiffs and Defendant, each of whom is now living, an adult domiciled in another state, and each will be affected by the outcome of this action.   Defendant, a seasonal resident of Indian River County, Florida and an owner of a residence located in Indian River County, Florida, is licensed to practice law in Florida and has an office in Vero Beach, Florida.

5.      This Court has jurisdiction over Plaintiffs and Defendant pursuant to section 736.0202 of the Florida Statutes, and subject matter jurisdiction pursuant to section 736.0203 of the Florida Statutes.

6.      Venue is appropriate in Indian River County, Florida pursuant to section 736.0204 of the Florida Statutes because, among other things, it is the county where the Trust and the trusts thereunder have their principal place of administration.

**GENERAL ALLEGATIONS**

7.      On January 2, 1990, Decedent established the Trust.   Decedent subsequently amended the Trust by a First Amendment thereto dated July 28, 1992, and by a Second Amendment thereto dated January 17, 1998.   True and correct copies of the Trust and Amendments are attached hereto as **"Composite Exhibit A."**

8.      Decedent died on January 18, 1998 and the Trust, along with the Marital Deduction Trust and the Non-Marital Deduction Trust created thereunder (collectively the "Trusts"), became irrevocable on such date.

2

9.    Lewis L. Smith, Jr. became an independent Trustee of the Trusts shortly after Decedent's death and served as Co-Trustee with PAMELA B. STUART until his resignation on April 1, 2000.

10.    After Lewis L. Smith, Jr.'s resignation, PAMELA B. STUART attempted to appoint Edward Ryan, who is the husband of Plaintiff CATHERINE S. RYAN, as the independent Co-Trustee, which was in violation of the terms of the Trusts.

11.    Article Twenty-First governs the appointment of Trustees of the Trusts and provides that normally there shall be no more than two trustees in office and further requires appointment of an "independent trustee" defined as a "person who is not eligible to receive any income or principal, either presently or in the future, (other than the compensation of a trustee) under the trust and whose spouse, issue, dependents and ancestors are not eligible to receive such benefits."

12.    Since April 1, 2000, when Lewis L. Smith, Jr. resigned, there has never been an independent Trustee appointed, and Defendant, as serving Trustee, had the exclusive authority and obligation to appoint an independent Trustee to serve with her but Defendant failed to appoint the required independent Trustee.

13.    The terms of the Trust direct distribution of its assets as follows:

a.    Article Fifth provides that upon Decedent's death on January 18, 1998, the Trust assets were to be divided by the Trustee between and distributed to a "Non-marital deduction trust" (the "Credit Shelter Trust") and a "Marital deduction trust" (the "Marital Trust") based upon Decedent's available applicable exclusion amount for federal estate tax purposes. On April 16, 1999, Defendant signed and filed with the Internal Revenue Service a United States Estate (and Generation-Skipping Transfer) Tax Return (Form 706), a document signed under penalties of perjury, declaring that based upon values of Decedent's assets as of his date of death, the initial funding value of the Credit Shelter Trust was

3

$625,000 and the initial funding value of the Marital Trust was $1,981,352.

       b.     Article Fifth includes the dispositive terms for both the Credit Shelter Trust and the Marital Trust, which are identical.   Under Article Fifth, Decedent's surviving spouse, Marion C. Stuart (the "Decedent's Spouse"), was to receive all of the income of both the Credit Shelter Trust and the Marital Trust.   In addition, Decedent's Spouse was to receive such amounts of the principal of the Credit Shelter Trust and the Marital Trust as the Trustee determines necessary for Decedent's Spouse's health, care, support and maintenance and to maintain Decedent's Spouse's accustomed mode of living.   During Decedent's Spouse's lifetime, distributions from the Credit Shelter Trust and the Marital Trust were not permitted to be made to any beneficiary other than Decedent's Spouse.

       c.     Upon the death of Decedent's Spouse which occurred on April 29, 2012, Article Sixth of the Trust provides for certain bequests to paid to named charitable organizations and nieces and nephews of Decedent, said bequests presumably having all been paid prior to the filing of this Complaint, and the balance of the assets of the Credit Shelter Trust and the Marital Trust should have been divided equally among and distributed to Plaintiffs and Defendant, one-third (1/3) each.

       d.     Pursuant to section 736.0103(14) of the Florida Statutes, since Decedent's date of death, Plaintiffs have each been, and remain to date, "qualified beneficiaries" of the Trusts, and Defendant is also a qualified beneficiary of the Trusts.   In addition, while Decedent's Spouse was living, she also was a qualified beneficiary of the Trusts and was the only permissible distributee of income or principal from the Trusts.

      14.     Beginning in 1998 and continuing into 2013, Defendant took unauthorized distributions of assets from the Trusts in excess of $2,000,000 (the "Converted Assets").   In addition, Defendant, as Trustee, borrowed against the assets of the Trusts and used the borrowed funds to make additional unauthorized distributions to herself thus increasing the

4

amount of Converted Assets Defendant took from the Trusts.   Defendant made improper use of the Converted Assets to pay Defendant's personal expenses, including expenses for a commercial building located in Washington, DC, which was sold in December of 2009 for $2,500,000.   Defendant promised to return as much of the Converted Assets as she could upon the sale of the Washington, DC commercial building, but Defendant instead used the proceeds from such sale to pay off her personal debts, including the mortgage of approximately $490,000 on her personal Vero Beach, Florida residence.

15.     Defendant acknowledges to Plaintiffs that she took the Converted Assets and promises to "repay" what Defendant now considers to have been unsecured low interest "loans" made by her as Trustee to herself individually.   To date, Defendant has not provided adequate information concerning the Converted Assets or the "loans" despite numerous demands for such information made by Plaintiffs, nor has Defendant returned the Converted Assets to the Trusts or Plaintiffs, nor has she repaid the "loans."   Neither Plaintiffs nor Decedent's Spouse ever approved of, consented to or ratified Defendant's taking of the Converted Assets or making of "loans" to Defendant.

16.     As Trustee of the Trusts, Defendant was required by section 736.0813 of the Florida Statutes to keep Plaintiffs informed of the Trusts and their administration, including the continuing duty to provide to the qualified beneficiaries annual accountings and relevant information about the assets and liabilities of the Trusts and the particulars relating to administration.   In over fifteen years of trust administration to date, Defendant has not kept Plaintiffs informed of the Trusts and their administration, and, in fact, has ignored or sidestepped Plaintiffs' repeated reasonable requests for relevant information about the assets and liabilities of the Trusts, accountings and other particulars relating to administrative decisions made by Defendant.

17.     Commencing with the date the Trusts became irrevocable, January 18, 1998,

5

Defendant was required to provide annual trust accountings, as set forth in section 736.08135 of the Florida Statutes and section 737.303 of the prior Florida Statutes applicable to trust administration.

18.     Defendant has never provided Plaintiffs with a trust accounting nor has she provided Plaintiffs with any adequate information related to the administration of the Trusts as required by Florida law.

19.     At no time did Plaintiffs waive Defendant's duty, as Trustee of the Trusts, to inform and account to Plaintiffs as beneficiaries of the Trusts.

20.     Defendant failed to properly invest the assets of the Trusts in the manner required by the prudent investor rule set forth in sections 736.0901 and 518.11 of the Florida Statutes.  Defendant's misappropriation of Trust assets severely impaired the ability to obtain a return on investments.

21.     Defendant is a Florida lawyer having special legal skills and expertise which she used to take advantage of Plaintiffs.   While professing to practice in the field of trust and estate law, Defendant had a mandatory duty to use those lawyer skills and knowledge of Florida and federal law including, but not limited to, knowledge of the prohibited transaction rules of section 736.0802 and the federal estate tax marital deduction and fiduciary income tax rules.  Defendant's distributions of Converted Assets and "loans" of trust assets from the Marital Trust to herself during Decedent's Spouse's lifetime not only constitute a breach of her fiduciary duties as Trustee, it also violates the federal estate tax marital deduction rules applicable to the Marital Trust and may have caused Decedent's Spouse to owe significant federal gift taxes, penalties and interest.  Defendant has also failed to file required annual federal fiduciary income tax returns (Form 1041) for the Trusts for tax years subsequent to 2000, a direct violation of federal law.

22.     In addition, Defendant breached her duty to protect the assets of the Trusts by

6

failing to pay expenses relating to the Vero Beach, Florida residence owned by the Trust, said expenses having been kept current by Plaintiff, CATHERINE S. RYAN, using her personal funds to prevent wasting of this asset of the Trust.   Defendant has evidenced bad faith by indicating, for example, that if Plaintiffs installed a new air conditioner to maintain the residence free from mold and mildew, Defendant would "rip out" the air conditioner because she is the sole Trustee who can make decisions concerning the residence.

23.     Defendant further made excessive, inappropriate, unreasonable, unnecessary and unauthorized distributions of the assets of the Trusts to herself for, among other things, Trustee compensation, legal services, and premature beneficial distributions.   Defendant also wasted the assets of the Trusts by making an estimated tax payment of $60,000 to the Internal Revenue Service for income taxes that were never determined to be owed by the Trusts.

24.     Defendant has not made proper funding of the Credit Shelter Trust and the Marital Trust as required by the Trust and applicable law.   In addition, upon Decedent's Spouse's death on April 29, 2012, the Credit Shelter Trust and the Marital Trust by their terms terminated and the assets should have been immediately thereafter distributed to Plaintiffs as beneficiaries thereunder.   Defendant still has not distributed any trust assets to Plaintiffs, and has been unwilling to properly address the concerns of the Plaintiffs.

25.     Having taking the foregoing actions and inactions, as well as a number of others, Defendant breached each and every one of the following mandatory fiduciary duties under the Trusts and Florida law:

        a.     the duty to administer the Trusts in good faith;

        b.     the duty of impartiality;

        c.     the duty of loyalty;

        d.     the duty to inform and account;

7

e.  the duty to keep clear, distinct and accurate records of the administration;

f.  the duty to keep trust property separate from the trustee's own property;

g.  the duty to administer the Trusts prudently and to use the trustee's special skills and expertise;

h.  the duty to invest trust assets prudently;

i.  the duty to protect trust assets;

j.  the duty to incur only reasonable expenses; and

k.  the duty to expeditiously distribute trust property to the beneficiaries.

26.  Plaintiffs have attempted to mitigate damages, such as by freezing an account at Morgan Stanley Smith Barney, so that Defendant cannot continue to misappropriate Trust assets for her own personal benefit.

27.  Plaintiffs have performed all conditions precedent to filing this action, or such conditions have occurred or been waived.

28.  Plaintiffs have retained the law firm of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., agreeing to pay it a reasonable fee for legal services rendered. Plaintiffs are entitled to recover their reasonable attorneys' fees and costs from Defendant.

**COUNT I**
**REMOVAL OF TRUSTEE**

29.  This is an action brought by Plaintiffs to immediately remove Defendant as a Trustee pursuant to sections 736.0706 and 736.1001(2)(g) of the Florida Statutes.

30.  Plaintiffs re-allege the allegations contained in paragraphs 1 through 28 above as if they were fully alleged herein.

31.  As set forth in the General Allegations above and in Counts II and III,

8

Defendant has committed numerous serious breaches of trust.

32.     Defendant has demonstrated unfitness, unwillingness, or persistent failure to administer the Trusts effectively, and the removal of Defendant as a Trustee will best serve the interests of the beneficiaries.

33.     There has been a substantial change of circumstances and removal of Defendant as a Trustee is not inconsistent with the material purposes of the Trusts, and a suitable co-trustee or successor trustee is available.

34.     In addition to removing Defendant as a Trustee, under the express authority of section 736.0706(3), the Court should order such appropriate relief under section 736.1001(2) of the Florida Statutes as may be necessary to protect the trust property or the interests of the beneficiaries.

**WHEREFORE**, Plaintiffs, CATHERINE S. RYAN and DEBORAH A. STUART, respectfully request this Court:

(a)     Immediately and permanently remove Defendant as a Trustee of the Trusts and appoint a successor Trustee(s) selected by Plaintiffs;

(b)     Enjoin Defendant from committing any further breach of trust prior to a full substitution of trustees;

(c)     Compel the Defendant to turn over all documentation relating to the Trusts in order for an independent party to prepare an accounting and determine the amount of damages that Defendant will be compelled to pay to restore the Trusts or to otherwise provide full relief for Plaintiffs;

(d)     Deny any and all compensation to the Defendant as Trustee;

(e)     Require Defendant to pay from the Trusts to the Plaintiffs an amount the Court determines will help restore them to their appropriate position, with the Defendant to later supplement such payments with personal funds and assets to the extent necessary for

the Plaintiffs to recover all losses, including not only those losses specified above, but also losses for earnings and appreciation which would have benefited the Trusts and Plaintiffs had the assets of the Trusts not been unlawfully removed by Defendant, and any other losses which may be determined through the process of discovery in this action; and

      (f)      Grant such other relief as is equitable, just and proper.

## COUNT II
## CONVERSION

35.      This is an action brought by Plaintiffs against Defendant, individually and as Trustee of the Trusts, for conversion and for the recovery of damages in excess of $15,000 exclusive of interest, attorneys' fees and costs.

36.      Plaintiffs re-allege the allegations contained in paragraphs 1 through 28 above as if they were fully alleged herein.

37.      Defendant, as Trustee, distributed the Converted Assets to herself and then either held title to such assets in her individual name or expended such assets thereby preventing the assets from being distributed from the Trusts to Plaintiffs as rightful owners. These were unauthorized acts that deprived Plaintiffs of their property permanently or for an indefinite time.

38.      The deprivation is inconsistent with Plaintiffs' ownership interest in the Converted Assets.

39.      As a direct and proximate result of the conversion, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs, CATHERINE S. RYAN and DEBORAH A. STUART, respectfully request this Court:

      (a)      Grant a Judgment for money damages against Defendant for all losses to the assets of the Trusts resulting from the unlawful conversion of the Converted Assets for

10

Defendant's own personal use, including not only those losses specified above, but also losses for earnings and appreciation which would have benefited the Trusts and Plaintiffs had the assets of the Trusts not been unlawfully removed by Defendant, and any other losses which may be determined through the process of discovery in this action;

(b)     Impose a constructive trust on those persons, properties and/or entities, including without limitation, Defendant's personal assets, that were purchased or otherwise acquired with funds rightfully belonging to the Trusts or to Plaintiffs as trust beneficiaries;

(c)     Order the removal of Defendant as Trustee of the Trusts by reason of her unlawful conversion of the Converted Assets for Defendant's own personal use and her persistent failure to administer the Trusts properly, and appoint a successor Trustee(s) selected by Plaintiffs;

(d)     Order Defendant to disgorge any Trustee compensation taken by her and any fees taken by her for legal or other services supposedly rendered by her during the term of administration of the Trusts;

(e)     Grant attorney's fees and costs to Plaintiffs pursuant to sections 736.1004, 736.1005 and 736.1006 of the Florida Statutes; and

(f)     Grant such other relief as is equitable, just and proper.

## COUNT III
## BREACH OF TRUST

40.     This is an action brought by Plaintiffs against Defendant, individually and as Trustee of the Trusts, for Defendant's breaches of her fiduciary duties under the Florida Trust Code (the "Code"), including breaches of each and every one of the following mandatory fiduciary duties, and for the recovery of damages in excess of $15,000 exclusive of interest, attorneys' fees and costs.

41.     Plaintiffs re-allege the allegations contained in paragraphs 1 through 28 above

11

as if they were fully alleged herein.

42.     Section 736.0801 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to administer the Trusts in good faith, in accordance with the Trust terms and purposes and the interests of the beneficiaries, and in accordance with the Code. Defendant breached this mandatory duty on numerous occasions by taking the Converted Assets and by making "loans" to herself, actions which were prohibited both by the Trust terms and the Code, and were in direct contravention to the purposes of the Trust and the interests of the beneficiaries.

43.     Section 736.0803 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to administer the Trusts impartially, giving due regard to the beneficiaries' respective interests.  Defendant breached this mandatory duty on numerous occasions by taking the Converted Assets and by making "loans" to herself, prohibited actions which favored only her own personal interests over those of Plaintiffs.   Defendant, as Trustee, used the assets of the Trusts as though such assets were her own, exercising no regard for Plaintiffs' interests or the interests of any other beneficiary.

44.     Section 736.0802 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty of loyalty requiring Defendant to administer the Trusts solely in the interests of Plaintiffs and other beneficiaries of the Trusts, without giving any regard to the personal interests of Defendant, as Trustee.   Further, said section expressly prohibits Defendant, as Trustee, from entering into transactions with herself involving the assets of the Trusts since such transactions are presumed to be affected by a conflict of interest and are thus voidable by Plaintiffs.   Defendant breached this mandatory duty on numerous occasions by taking the Converted Assets and by making "loans" to herself, both prohibited transactions using assets of the Trusts for Defendant's exclusive benefit notwithstanding the obvious and substantial conflict of interest.   Defendant, as Trustee, used the assets of the

12

Trusts as though such assets were her own, exercising no regard for Plaintiffs' interests or the interests of any other beneficiary, and therefore the distribution of Converted Assets and "loans" to Defendant are voidable by Plaintiffs as prohibited transactions since Defendant abused her position and discretion as Trustee of the Trusts in order to achieve pecuniary gain to the detriment of Plaintiffs.

45.    Section 736.0813 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to keep Plaintiffs, as qualified beneficiaries of the Trusts, reasonably informed of the trust administration, including the mandatory duty to account to Plaintiffs at least as often as annually.   Commencing on January 18, 1998, Decedent's date of death, Plaintiffs became entitled to receive, without demand, and Defendant, as Trustee, was obligated to provide, annual accountings of the Trusts informing Plaintiffs of her administration of the Trusts.   Defendant failed to furnish Plaintiffs any accountings for any of the Trusts, and further Defendant has not provided Plaintiffs with any other information regarding the investments of the Trusts, distributions from the Trusts, or any other matter concerning her administration of the Trusts.   Plaintiffs did not at any time waive their rights to accountings, or to be kept reasonably informed, of the trust administration, and, although not required by Florida law, Plaintiffs from time to time have requested accountings and other particulars regarding the administration of the Trusts before filing suit.   Defendant breached her duty under Florida law to inform and account to Plaintiffs.

46.    Section 736.0810 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to maintain clear, distinct, and accurate records of the trust administration, and a mandatory duty to keep trust property separate from her own.   Defendant breached these mandatory duties by failing to keep clear, distinct, and accurate records of the trust administration, particularly the records pertaining to the unauthorized taking of the Converted Assets and the unauthorized "loans" she made to herself, the records for which Defendant

13

refuses to provide, and by commingling the assets of the Trusts with her own.  Defendant's failure to maintain accurate records of her administration of the Trusts prevents her from properly accounting to Plaintiffs, and her commingling of the assets of the Trusts coupled with her refusal to replace the assets of the Trusts and lost income and appreciation thereon, violates the Trust and Florida law, and is detrimental to Plaintiffs.

47.    Section 736.0804 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to administer the Trusts as a prudent person would, considering the purposes, terms, distribution requirements, and other circumstances of the Trusts, and, in so doing, Defendant is required to exercise reasonable care, skill and caution.  In addition, section 736.0806 of the Florida Statutes imposes upon Defendant, who is a Florida lawyer having special legal skills and expertise, a mandatory duty to use those lawyer skills and knowledge of Florida and federal law including, but not limited to, knowledge of the prohibited transaction rules of section 736.0802 and the federal estate tax marital deduction and fiduciary income tax rules.  Defendant's distributions of Converted Assets and "loans" of trust assets from the Marital Trust to herself during Decedent's Spouse's lifetime not only constitute a breach of her fiduciary duties as Trustee, it also violates the federal estate tax marital deduction rules applicable to the Marital Trust and may have caused Decedent's Spouse to owe significant federal gift taxes, penalties and interest.  Defendant has also failed to file required annual federal fiduciary income tax returns (Form 1041) for the Trusts for tax years subsequent to 2000, a direct violation of federal law.  As a lawyer, Defendant is expected to understand Florida and federal laws and to use her skills as a lawyer when acting as a Trustee.  Defendant breached her duties, not only by failing to use any of her special skills and expertise as a lawyer, but also by failing to exercise the reasonable care, skill and caution expected of even an ordinary prudent Trustee.

48.    Sections 736.0901 and 518.11 of the Florida Statutes impose upon Defendant,

as Trustee, a mandatory duty to invest and manage the assets of the Trusts as a prudent investor would, considering the purposes, terms, distribution requirements and other circumstances of the Trusts. Defendant was required to diversify the assets of the Trusts, and invest the assets in a manner which is fair and reasonable considering the Trust terms and the interests of the beneficiaries. Defendant, as Trustee, made unauthorized distributions of the Converted Assets to herself and made unauthorized "loans" to herself, and these unlawful actions depleted substantially all of the financial assets of the Trusts to the detriment of Plaintiffs and other beneficiaries. Further, even if "loans" to Defendant were permitted, such "loans" are believed to be unsecured, bearing little or no interest, and not documented by a promissory note or other written debt instrument executed by Defendant individually, and such note payables would not be prudent investments under Florida law. Plaintiffs requested, on numerous occasions, information concerning the Converted Assets taken by Defendant and the "loans" Defendant made to herself and all requests for detailed information, particularly the requests for details regarding the amount of such "loans" and copies of any promissory notes, have been ignored by Defendant. Thus Defendant breached her fiduciary duty to invest and manage the assets of the Trusts as a prudent investor would.

49.     Section 736.0809 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to protect the assets of the Trusts. Defendant breached her duty to protect the assets of the Trusts by taking wrongful distributions from the Trusts and by making investments which were not prudent but were for her sole personal benefit in express contravention to the terms of the Trust and Florida law, all to the detriment of Plaintiffs. In addition, Defendant breached her duty to protect the assets of the Trusts by failing to pay those expenses relating to the Vero Beach, Florida residence owned by the Trust, said expenses having been kept current by Plaintiff, CATHERINE S. RYAN, using her personal funds to prevent wasting of this asset of the Trust.

15

50. Section 736.0805 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to incur only reasonable expenses in administering the Trusts, and Defendant breached this duty on numerous occasions by making excessive, inappropriate, unreasonable, unnecessary and unauthorized distributions of the assets of the Trusts to herself for, among other things, Trustee compensation, legal services, and premature beneficial distributions, and Defendant also wasted the assets of the Trusts by making estimated tax payments to the Internal Revenue Service for income taxes that were never determined to be owed by the Trusts, and these payments were made in express contravention to the terms of the Trust and applicable law, all to the detriment of Plaintiffs.

51. Section 736.0817 of the Florida Statutes imposes upon Defendant, as Trustee, a mandatory duty to expeditiously distribute trust property to the beneficiaries upon the occurrence of an event terminating a trust. Decedent's death was the event which should have terminated the Trust and resulted in the creation and prompt funding of the Credit Shelter Trust and the Marital Trust. Decedent's Spouse's death was the event terminating the Credit Shelter Trust and the Marital Trust, and the first opportunity for distributions to be made to Plaintiffs and Defendant whose interests were contingent upon surviving Decedent's Spouse. Defendant never properly closed the Trust after Decedent's death and made proper funding of the Credit Shelter Trust and the Marital Trust as required by the Trust and applicable law, and thus Defendant breached its duty under 736.0817. In addition, upon Decedent's Spouse's death on April 29, 2012, the Credit Shelter Trust and the Marital Trust by their terms terminated and the assets should have been immediately thereafter distributed to Plaintiffs as beneficiaries thereunder. Defendant again breached her duty to expeditiously distribute trust property to Plaintiffs and Defendant still has not distributed any trust assets to Plaintiffs, all in express contravention to the terms of the Trust and applicable law, and to the detriment of Plaintiffs.

52.     Section 736.1001 of the Florida Statutes provides that a trustee's violation of a duty the trustee owes to a trust beneficiary is a breach of trust.  Under Florida law, a trustee's violation of either the subject trust's terms or the trustee's general fiduciary obligations constitutes a breach of trust.  Sections 736.1001 and 736.1002 of the Florida Statutes set forth the remedies and damages available for redressing a breach of trust, and said statutes and Florida common law impose on a trustee individual personal liability for damages for breach of trust, so that the trustee may be directed to make payment of damages to the beneficiary out of the trustee's own funds.  Defendant committed the foregoing breaches of trust by (a) violating the terms of the Trust, and (b) violating her mandatory fiduciary obligations under Florida law.  Therefore, Defendant is liable to Plaintiffs for any loss or damage incurred by reason of Defendant's breaches of her fiduciary duties and her failure to administer the Trusts properly.

**WHEREFORE**, Plaintiffs, CATHERINE S. RYAN and DEBORAH A. STUART, respectfully request this Court:

(a)     Grant a Judgment for money damages against Defendant for all losses to the assets of the Trusts resulting from Defendant's breaches of her fiduciary duties as described above, including not only those losses specified above, but also losses for earnings and appreciation which would have benefited the Trusts and Plaintiffs had the assets of the Trusts not been unlawfully removed by Defendant or otherwise improperly administered, and any other losses which may be determined through the process of discovery in this action;

(b)     Impose a constructive trust on those persons and/or entities, including without limitation, Defendant, that hold assets rightfully belonging to the Trusts, or to Plaintiffs as trust beneficiaries;

(c)     Reimburse Plaintiff, CATHERINE S. RYAN, for all expenses incurred by her to prevent wasting of the assets of the Trust, including the Vero Beach, Florida

17

residence;

(d)      Compel the Defendant to turn over all documentation relating to the Trusts in order for an independent party to prepare an accounting and determine the amount of damages that Defendant will be compelled to pay to restore the Trusts or to otherwise provide full relief for Plaintiffs;

(e)      Direct that Defendant's accounts regarding the Trusts be judicially settled;

(f)      Order the removal of Defendant as Trustee of the Trusts by reason of her breaches of fiduciary duties and her persistent failure to administer the Trusts properly, and appoint a successor Trustee(s) selected by Plaintiffs;

(g)      Order Defendant to disgorge any Trustee compensation taken by her and any fees taken by her for legal or other services supposedly rendered by her during the term of administration of the Trusts;

(h)      Grant attorney's fees and costs to Plaintiffs pursuant to sections 736.1004, 736.1005 and 736.1006 of the Florida Statutes; and

(i)      Grant such other relief as is equitable, just and proper.

## COUNT IV
## TEMPORARY AND PERMANENT INJUNCTION

53.      This is a claim for temporary and permanent injunctive relief against Defendant.

54.      Plaintiffs re-allege the allegations contained in paragraphs 1 through 28 above as if they were fully alleged herein.

55.      As described above, Defendant, as Trustee, breached her fiduciary duties to Plaintiffs, and Defendant committed conversion.

56.      Defendant benefited from these actions and may attempt to dissipate further

18

the assets that Plaintiffs should have received under the Trusts.

57.     Plaintiffs demand an immediate injunction to prevent the further dissipation by Defendant of the assets of the Trusts that should be received by Plaintiffs.

58.     Plaintiffs will suffer irreparable harm if the assets of the Trusts are further dissipated because there may be no possibility of recovery.

59.     Plaintiffs have no adequate remedy at law and are entitled to injunctive relief by statute.   Pursuant to section 736.1018 of the Florida Statutes, Defendant is personally liable for any improper distributions from the Trusts and is required to return the assets or funds received and the income and earnings from those assets from the date of distribution or payment.

60.     Plaintiffs have a substantial likelihood of success on the merits, due to the clear language of the Trust, Defendant's obvious and persistent violations of Florida law, and admissions and other statements against interest made by Defendant.

61.     An injunction should be issued because the threatened injury to Plaintiffs outweighs any possible harm to Defendant, who has no legal entitlement to the assets she received nor the remaining assets of the Trusts which she currently controls.

62.     An injunction will serve the public interest by preserving the Trust assets for the benefit of all rightful beneficiaries.

**WHEREFORE**, Plaintiffs, CATHERINE S. RYAN and DEBORAH A. STUART, respectfully request this Court:

(a)     Demand injunctive relief against Defendant, preventing her from further distributing or dissipating Trust assets that should have been received by Plaintiffs;

(b)     Grant a Judgment for money damages against Defendant for all losses to the assets of the Trusts until and through the date of the injunction, resulting from Defendant's breaches of trust and the unlawful conversion of the Converted Assets for

19

Defendant's own personal use, including not only those losses specified above, but also losses for earnings and appreciation which would have benefited the Trusts and Plaintiffs had the assets of the Trusts not been unlawfully removed by Defendant, and any other losses which may be determined through the process of discovery in this action;

(c)  Impose a constructive trust on those persons and/or entities, including without limitation, Defendant, that hold assets rightfully belonging to the Trusts, or to Plaintiffs as trust beneficiaries;

(d)  Order the removal of Defendant as Trustee of the Trusts by reason of her unlawful conversion of the Converted Assets for Defendant's own personal use and her persistent failure to administer the Trusts properly, and appoint a successor Trustee(s) selected by Plaintiffs;

(e)  Order Defendant to disgorge any Trustee compensation taken by her and any fees taken by her for legal or other services supposedly rendered by her during the term of administration of the Trusts;

(f)  Grant attorney's fees and costs to Plaintiffs pursuant to sections 736.1004, 736.1005 and 736.1006 of the Florida Statutes; and

(g)  Grant such other relief as is equitable, just and proper.

### Notice of Intent to Seek Punitive Damages

Plaintiffs hereby give notice of their intent to seek punitive damages for the applicable counts pursuant to section 768.72 of the Florida Statutes.

### Demand for Jury Trial

Plaintiffs hereby demand a trial by jury of all actions so triable.

Dated this ___8th___ day of November, 2013.

DAVID E. HATHAWAY
Florida Bar No. 491411
ROBERT J. NABERHAUS III
Florida Bar No. 476684
DEAN, MEAD, EGERTON,
BLOODWORTH, CAPOUANO &
BOZARTH, P.A.
800 N. Magnolia Ave., Suite 1500
Orlando, FL   32803
Telephone:      (407) 841-1200
Fax:            (407) 423-7107
E-Mail:   dhathaway@deanmead.com
E-Mail:   RNaberhaus@deanmead.com

O0937006 1

21

EXHIBIT B

# Pamela B . Stuart

Attorney & Counsellor at Law

<table>
<tr>
<td>
Suite 700<br>
1750 K Street, N.W.<br>
Washington, D.C. 20006
</td>
<td>
Office: 202-835-2200<br>
Fax: 202-835-2202<br>
Cell: 202-255-1680<br>
Email: pamstuart@aol.com<br>
Www.pamstuartlaw.com
</td>
</tr>
<tr>
<td>
4731 North Highway A1A<br>
Second Floor<br>
Vero Beach, Florida 32963
</td>
<td>
Office: 772-492-1223<br>
Fax: 772-492-1224
</td>
</tr>
<tr>
<td>
Counsel,   Simon & Partners, L.L.P.<br>
551 Fifth Avenue, 31st floor<br>
New York, New York 10176
</td>
<td>
Office: 212-332-8900<br>
Fax:   212-332-8909<br>
www.simonlawyers.com
</td>
</tr>
</table>

Member, District of Columbia, Florida, Maryland, New York, and Virginia Bars

## PROFESSIONAL HISTORY

## Pamela B. Stuart, Attorney and Counsellor at Law        1992 to present

Boutique practice emphasizing complex civil, commercial, corporate and white collar criminal litigation (including international criminal issues), wealth transfer and estate planning, employment and security clearance matters. In recent years, cases included defense of a security clearance for a professional at Cape Canaveral, appellate litigation challenging a mandatory arbitration program, advising a cross-border professional concerning federal laws and regulations on food importation, prosecution of an age discrimination claim against a federal contractor, forming a public relations firm's limited liability company, defense of a financial services professional and corporate president in federal criminal investigations, advising the compensation committee of a board of directors of a non-profit corporation with a for-profit subsidiary, counseling an individual facing extradition for criminal charges in a foreign nation, representation of an international consultant in a security clearance matter, and estate planning for investors and families with special needs. Other matters include trial and appellate representation of an LLC in a fraud and declaratory judgment matter involving commercial real estate, serving as general counsel to a candidate for the Maryland House of Delegates, representation of two Congressional candidates before the Federal Election Commission, and counseling potential plaintiffs in federal False Claims Act/qui tam litigation.

In past years, matters included representation of a public relations CEO in a Congressional investigation involving possible federal agency official's misconduct, testimony before a Congressional Committee, representation of an executive of a defense contractor in a disability insurance claim, representation of a member of the intelligence community in the Abu Ghirab investigation, a whistle blower in a Federal False Claims Act defense procurement fraud case against Lockheed Martin Corporation, a victim of sexual harassment in an employment discrimination case against the CIA, a former employee of a pharmaceutical trade association who was denied full pension benefits, a victim of sexual harassment case in a case against the American Red Cross and assisting in the representation of Senator Bob Packwood before Senate Ethics Committee in 1994-95. Represented association and corporate clients opposed to satellite and cable signal theft and "ghost

**Pamela B. Stuart**

Attorney & Counsellor at Law

PAGE 2

wrote" an international extradition case for a corporate client.

Served as legal commentator on CNN, MSNBC, NBC News, Fox News, CBS News, Sky Radio, and Canadian television networks in the past.  Commented on developments in the prosecution of "honest services fraud" following the Supreme Court's decisions in Black v. United States, 130 S.Ct. 2963 (2010) and Skilling v. United States, 130 S. Ct. 2896 (2010) on Canadian TV network.  Listed in Who's Who in American Law, Who's Who of American Women, Who's Who in America, Who's Who in Business and Industry, and Who's Who in the World.  Named one of Washington's Best Lawyers by Washingtonian Magazine in December 2004 and selected as a Superlawyer for 2009 - 2016.

## Lobel, Novins, Lamont & Flug                              1989 to 1992

Primary litigator for commercial, white collar criminal, and professional malpractice cases.  Co-counsel representing several state governments in Delaware v. New York, a securities and escheat case, before the U.S. Supreme Court.  Directed internal investigation and response to grand jury subpoena on behalf of a generic drug company.  Counseled clients targeted in Congressional investigations of the generic drug and savings & loan industries.  Assisted in estate planning and medical malpractice cases.

## Ross, Dixon & Masback                                     1987 to 1989

Represented insurance carriers on coverage issues in professional malpractice and directors' and officers' liability cases.  Retained by counsel for Adnan Khashoggi, a well-known Saudi arms dealer, to advise on international extradition issues arising out of United States v. Imelda Marcos, the prosecution of the former wife of the president of the Phillippines in the Southern District of New York.

## Office of International Affairs                            1985 to 1987
U.S. Department of Justice

Supervised international extradition and mutual legal assistance cases handled by prosecutors throughout the nation.  Personally handled complex, high profile extradition cases for foreign governments in federal courts.   Traveled to Italy to supervise prosecutors' handling of sensitive Mafia cases and discussions with Magistrate Giovanni Falcone (later murdered) and other prominent Italian law enforcement officials.  Testified as an expert witness on Panamanian bank secrecy laws in a tax case in the Southern District of Florida.  Assisted in negotiating a mutual legal assistance treaty with Venezuela.  Handled international prisoner transfer matters.
                    Notable Cases

**Pamela B. Stuart**
Attorney & Counsellor at Law

PAGE 3

C     Represented Argentina in the extradition of Jose Lopez Rega, Minister of Social Welfare and Private Secretary to Presidents Juan and Isobel Peron of Argentina, who was charged with six counts of murder for ordering the assassination of political opponents, theft from the treasury and malversation from a charitable foundation.

C     Represented Canada in the extradition of William Player, one of the principals in an $860 million mortgage loan fraud that was the largest white collar fraud case in Canadian history at that time.

C     Represented Brazil in the extradition of the perpetrator of an international fraud scheme using forged documents to obtain Brazilian Government approval to obtain scarce foreign currency.

Honors:   Letters of Commendation from the Attorney General of Ontario, Canada, the Government of Brazil, and the United States Attorney for the Southern District of Florida.

United States Attorney's Office                              1979 to 1985
for the District of Columbia

As Assistant United States Attorney, tried approximately 50 jury trials to verdict in the local and federal courts.   Investigated and obtained indictments in hundreds of felony cases including international fraud, conspiracy and RICO cases.  Briefed and argued appeals in the DC Court of Appeals and the US Court of Appeals for the District of Columbia Circuit. Tried several high profile cases including a precedent-setting vehicular murder case and a celebrated kidnaping case.   Tried mental health civil commitment cases on behalf of St. Elizabeths Hospital.  Represented the government in petitions for release of individuals acquitted of criminal charges on grounds of insanity and in collateral attacks on convictions.

Notable trials and appeals:

C     United States v. Wright and Moss:  Convicted the kidnappers of the wife of the founder of Syntex Corporation.  She was abducted from a bridge tournament and ransomed for $1 million in a case that received world wide publicity.

C     United States v. William Powell:  Convicted a driver who killed a young girl in a widely-publicized case that resulted in the first conviction in the District of Columbia for second degree murder while armed in a vehicular homicide.

C     United States v. Mendelsohn:  Established the legal precedent that a trial court has no

# Pamela B. Stuart
### Attorney & Counsellor at Law

PAGE 4

discretion to release one found not guilty by reason of insanity prior to commitment to mental hospital for evaluation.

Honors:   Department of Justice Special Achievement Award (1983); Letter of Commendation from FBI Director William Webster (1984); Letter of Commendation and Special Award from the Commander, Headquarters Air Force Office of Special Investigations in a case that was profiled by Mike Wallace on CBS's Sixty Minutes. (1984).

## U.S. Federal Trade Commission                          1973 to 1979

Trial Attorney and Deputy Assistant Director, Bureau of Consumer Protection.   As lead counsel, managed an FTC rule making proceeding aimed at establishing industry wide warranty standards for the manufactured housing industry.   Initiated the industry-wide investigation of time sharing vacation plans and counseled founders of Resort Condominiums International (RCI) about time sharing exchange network business practices.   Litigated real estate development cases against fraudulent land sales companies.   Served as lead counsel at over 50 depositions.   Participated in the National Institute for Trial Advocacy's in-house training programs as both student and faculty member.

Honors:     FTC's Meritorious Service Award for Outstanding Service (1978).

## TEACHING EXPERIENCE

The National Institute for Trial Advocacy, the Attorney General's Advocacy Institute; The Legal Education Institute; and the Federal Practice Institute.  Moderator of or faculty member for continuing legal education programs for the Edward Bennett Williams Inn of Court, The Virginia State Bar, The Florida Bar, and the American Bar Association.  Co-coordinator of March 2011 program for the Edward Bennett Williams American Inn of Court on the topic of "parallel proceedings" in criminal and civil cases.

## PUBLICATIONS

The Federal Trade Commission  (New York:  Chelsea House 1991)  (author).

The Department of Justice (New York:  Chelsea House 1990) (reviewing editor and contributor).

"Security Clearances: Who Gets to be a Secret Agent?", National Law Review, www.natlawreview.com, April 2010.

Pamela B. Stuart
Attorney & Counsellor at Law

PAGE 5

"Still Trapped by Torture," article discussing implications of the UN Convention Against Torture for prosecution of those implicated by the report of the International Committee of the Red Cross on torture of 14 high value detainees, Legal Times, April 20, 2009.

"Getting Wired," article about presenting cases using the electronic courtroom and various electronic and software programs prepared for continuing legal education program for the Association of Trial Lawyers of America, October 1999.

"Back-Alley Assault on Abortion Rights: Proposal Impairs Prosecution of Attacks on Pregnant Women," Legal Times, vol. XXII, no. 22, page 93, October 18, 1999.

"Law is Catching Up With IP Pirates: The Digital Millennium Copyright Act Imposes Stiff Penalties for Technological Thievery," Legal Times, vol. XXII, no. 18, page S36, September 20, 1999.

"The Basics of Direct and Cross-examination of a Fact Witness: How to tell the story that wins the case," TRIAL (Journal of the Association of Trial Lawyers of America), January 1999, 74-77.

"The Criminalization of Trade Secret Theft: The Economic Espionage Act of 1996," ILSA Journal of International and Comparative Law, vol. 4, no. 2, Spring 1998, 373-384.

"The Criminalization of Trade Secret Theft: The U.S. Economic Espionage Act of 1996," International Enforcement Law Reporter, vol. 14, no.1, January 1998, 27-33.

"Want a Beach View or a Garden View? How About a Change of Venue?," Commercial Litigation, vol. II, no. 1, Fall 1997.

"Treaty Traps: How to Guide Your Client through the Maze of Extradition," Criminal Justice, Winter 1992.

"Prosecution, not Warfare," The National Law Journal, December 10, 1990.

"Keeping Your Workplace Drug Free," Business & Health, August 1989.

"The UN Convention on the International Sale of Goods," WITA Trade Trends, May/June 1988.

PROFESSIONAL LEADERSHIP AND COMMUNITY SERVICE

Pamela B. Stuart
Attorney & Counsellor at Law

PAGE 6

Master of the Bench, Edward Bennett Williams Inn of Court (focuses on white collar criminal prosecution and defense issues) (1992 – present)

Board of Directors, Bar Association of the District of Columbia (1994 – 99; 2000 – 2008, 2010 - 12); Committee Chair of the Year (1995);    Secretary (1996-97, 2003-04); candidate for President (1997, 2001); Director for Media and Public Affairs (1997-99, 2000-01); (Treasurer (2005 - 2006).

Member, Advisory Board, Mount Holyoke College Art Museum (2005 – present),
Vice Chair, Long Range Planning committee.

Board of Directors, Anacostia Economic Development Corporation (1993 --)
Anacostia Holding Co., Inc., Anacostia Marketplace, Inc.  (Executive Compensation Committee (2005 – 2009).

Member, Executive Council, Real Property, Probate and Trust Law Section, The Florida Bar (1999 - 2009)

Chief election law and voting rights liaison lawyer, Indian River County, Florida Democratic Party (2004, 2006, 2010).  Volunteer voting rights attorney (2008)

General Counsel, campaign of Wanda Shelton-Martin for the Maryland General Assembly from the 47th District (2009 -2010).

The Cosmos Club, admitted in 1998 as distinguished in law;  member, Legal Affairs Committee (1998 -- 2004, 2006 - 2009) House Committee (2004 – 06), Nominating Committee (2010 — present)

President, Federal City Club (2005-06); member, Board of Governors (1992 – 06).

Vice Chair, Committee on Grievances, United States District Court for the District of Columbia (1998 - 2002) (appointed by the Chief Judge) (member, 1994 -- 2002)

Member, American Bar Association Coordinating Committee on Immigration Law (appointed by the President of the ABA) (2001 - 2002)

Assistant United States Attorneys Association of the District of Columbia (President 1998-1999)

Co-chair, Subcommittee on Federal Criminal Rules, White Collar Crime Committee,

American Bar Association Section of Criminal Justice (1996 - 2001)

Chair, International Criminal Law Committee, American Bar Association Criminal Justice Section (1993-96)

Member, Task Force on War Crimes in Former Yugoslavia of the Section of International Law of the American Bar Association (1993 -1995). Helped draft proposed rules of procedure for the court.

Member, American Bar Association Working Group on the Inter-American Convention on Human Rights (1994 -1995)

Member, Judicial Conference of the District of Columbia (1985-88; 1991-2006)

Member, Judicial Conference of the U.S. Court of Appeals for the District of Columbia Circuit (1994, 1996, 1998, 2000, 2002)

Executive Committee (1995-98) and Associate Member, Consular Corps of Washington, D.C. (1986 – present)

Board of Directors, Alumnae Association of Mount Holyoke College (1986-89, 1992-95)

Board of Directors, Greater Washington Boys and Girls Clubs (1992-94), Women's Leadership Group (2010 – present)

Research associate, (late) Honorable Arthur J. Goldberg, Center for Law and Social Policy (1972)

## OTHER PROFESSIONAL ACTIVITIES

Panelist, "The American Criminal Justice System: Trials," Consular Corps College, Australian Embassy, Washington, D.C. (November 2014).

Speaker, "Reverse Mortgages," The Cosmos Club Investments Discussion Group (June 2014).

Speaker, "Taxation of Investments,"  The Cosmos Club, Investments Discussion Group (June 2011).

Speaker, "The Security Clearance Conundrum," The Kojo Nnamdi Show, WAMU radio,

## Pamela B. Stuart
### Attorney & Counsellor at Law

PAGE 8

Washington, D.C. and National Public Radio (October 2010).

Speaker, "You Can"t Take It with You: Estate Planning 101," Back to Class program, Mount Holyoke College, South Hadley, MA (May 2010).

Speaker, "How to Start and Building a Law Practice in the District of Columbia," Bar Association of the District of Columbia, Washington, D.C. (April 2009)

Speaker, "Estate Planning – the Basics," women's committee, Church of Jesus Christ of the Latter Day Saints, Hyattsville, MD (March 2009)

Speaker, "How to Help Your Lawyer Help You Stay Out of Trouble," Joint Spring Conference on Emerging Issues for State and Federal Public Lands Managers, Eastern Lands and Resources Council and Western States Land Commissioners Association, Washington, D.C. (April 2008)

Featured Speaker, "Civility, Ethics, and Lessons Learned over 35 years of Law Practice," Federal American Inn of Court, Washington, D.C. (September 2007)

Speaker, "Pretexting and Other Legal Matters Impacting Security Professionals," Trucking Security and Law Enforcement Conference, American Trucking Associations, Orlando, Florida. (May 2007)

Panelist, "The Nuts and Bolts of U.S. Security Clearances," American Bar Association, Section of International Law Spring Meeting, Washington, D.C. (May 2007)

Faculty member, Employment Laws and How They Impact Human Resource Management, Seminar on Human Resource Management, Certificate Program of the George Washington University, Washington, DC (July 2006)

Panelist, "Secrets of Settling an Estate: the I Love You Notebook," The Cosmos Club, (June 2006)

Book Reviewer, Denial and Deception, by Melissa Mahle (former CIA agent), American Association of University Women of Vero Beach, Florida. (December 2005)

Guest panelist, Washington Month in Review, The Cosmos Club, remarks on the Terri Schiavo case: Implications for Estate Planning and Living Wills. (April 2005).

Commentary on the need for new types of corporate directors given the changing standards being

Pamela B. Stuart
Attorney & Counsellor at Law

PAGE 9

applied to them, Sky Radio, American Airlines.  (January 2005).

Panelist, "Networking 101," Mount Holyoke College, South Hadley, Massachusetts, (September 2004).

Co-organizer and Moderator, panel of law professors,  "The USA Patriot Act and other Civil Liberties Issues arising from the War on Terrorism," the University of Michigan Law School, Ann Arbor, Michigan.  (September 2003)

Organizer and Panelist, "Planning for Disability," Cosmos Club, Washington, DC  (April 2003).

Speaker, "Qui Tam/False Claims Act Developments," American Bar Association's Health Care Fraud National Institute, San Francisco, California.  (May 2002)

Organizer and speaker, "New Federal Tax Planning Opportunities After the Enactment of the Economic Growth and Tax Relief Reconciliation Act of 2001," The Cosmos Club, (November 2001).

Speaker, "The National Response to Terrorism:  Individual Rights in the Balance,"  American Bar Association Section of  Individual Rights and Responsibilities Council Meeting.  (October 2001).

Speaker, "Planning for Your Retirement:  How to Take Distributions from Retirement Plans," Calhoon MEBA Engineering School, St. Michael's, Maryland.  (September 2001)

Speaker, "The New Amendments to the Federal Rules of Civil Procedure:  Old Wine in New Bottles?"  Symposium on Alcohol Beverage Law, National Alcohol Beverage Control Association,  (March 2001)

Panelist, Atlantic Cable Conference, National Cable Television Association's Office of Cable Signal Theft presentation on cable signal theft, Baltimore, MD.  (October 1999)

Direct Examination of an Expert Witness in cable signal theft case in the High-Tech Courtroom, demonstration during program on Technology for the Trial Lawyer:  Cutting Costs and the Cutting Edge, Association of Trial Lawyers of America, Washington, D.C.  (October 1999)

Minority Witness, Subcommittee on the Constitution, Committee on the Judiciary, U.S. House of Representatives, H.R. 2436, the Unborn Victims of Violence Act of 1999 (July 1999)

Book Reviewer, A Certain Justice, by P.D. James, Johns Island Club, Vero Beach, Florida (April

**Pamela B. Stuart**
Attorney & Counsellor at Law

PAGE 10

1999).

Speaker, Women's Professional Development Workshop, University of Michigan Law School, Ann Arbor, Michigan.  (March 1999)

Member, program committee, International Law Weekend '98, moderator and panelist, "Corporate compliance issues for the US Corporation with Foreign Operations:  Should we go along to get along?"  Association of the Bar of the City of New York  (November 1998).

Member, organizing committee and participant in a mock trial of a franchising case at the annual convention of the Association of Trial Lawyers of America, Washington, DC (July 1998).

Member, organizing committee and panelist, "The Foreign Corrupt Practices Act:  What You Need to Know To Counsel on Criminal and Civil Matters," co-sponsored by the Litigation Committee of the Bar Association of the District of Columbia and the International Legal Affairs Committee of the American Corporate Counsel Association (February 1998).

Member, organizing committee and panelist, Joint Representation in Estate Planning Matters under    District of Columbia, Maryland and Virginia Law, Real Property, Probate and Trust Law Section, The  Florida Bar, Washington, D.C. (December 1997).
Member, program committee, International Law Weekend '97, organizer and moderator of panel on Trade Secret Theft -- the Economic Espionage Act of 1996, Association of the Bar of the City of New York (November 1997).

Panelist for program on Federal Sentencing Guidelines for Organizations, Conference on Corporate Crime in America sponsored by The Corporate Crime Reporter, Washington, DC (October 1997).

Member of the organizing committee and moderator, Florida Bar continuing legal education program,    Florida Law Update for out-of-state practitioners, Washington, DC (March 1997).

Panelist, Corporate Legal Times Roundtable, "The State of Compliance in Corporate America," Corporate Legal Times, vol. 7, no. 63 (February 1997).

Member, program committee, International Law Weekend '96 (sponsored by the International Law Association, American Branch, the Association of the Bar of the City of New York, the American Society of International Law, and other organizations), and organizer and moderator of panels on the Foreign Corrupt Practices Act and Recent Developments in Extradition (Nov. 1996).

## Pamela B. Stuart
Attorney & Counsellor at Law

PAGE 11

Key note speaker and panelist, Conference on International Human Rights and Humanitarian Law, for Belarussian Government officials, sponsored by the UN High Commissioner for Refugees and the American Bar Association's Central and East European Law Initiative, Minsk, Belarus (September 1996).

Organizer and moderator, program on the UN War Crimes Tribunal for the Former Yugoslavia, Annual Convention, American Bar Association, Orlando, Florida (August 1996).

Speaker, "The Compliance Officer as Target: Limiting Legal Risks," Annual Conference on Compliance Programs, Council of Ethical Organizations, Alexandria, Virginia (July 1996).

Organizer and speaker, Estate Planning Seminar, Consular Corps of Washington, D.C. May 1996).

Member, organizing committee, and speaker, "International Extradition of Transnational Criminals: Tactics of the Body Snatchers," International Bar Association, Conference on Borderless Crimes and Criminal Organizations, Dublin, Ireland (May 1996).

Speaker, "Crime and Punishment after the O.J. Simpson trial: A Brief Overview of the Criminal Justice System in the United States," the Consular Corps of Washington, D.C. (November 1995).

Speaker, "Challenges in Internal Investigations," Annual Conference on Compliance Programs, Council of Ethical Organizations, Washington, DC (June 1995).

Speaker, "Sex, Lies and Videotapes: Sexual Harrassment from Both Sides Now," Mount Holyoke College, South Hadley, MA (May 1995).

Member, organizing committee and speaker, "Primer on International Criminal Law," Southeast White Collar Crime Subcommittee of the White Collar Crime Committee, Section of Criminal Justice, American Bar Association (July 1994).

Organizer and moderator, Recent Developments in International Law Enforcement Cooperation: Hong Kong and China, ABA International Criminal Law Committee (January 1994).

Organizer and moderator, program on International Criminal Investigations, ABA International Criminal Law Committee (Fall 1993).

Co-organizer, "Primer on International Criminal Law," American Bar Association Section of Criminal Justice meeting, Miami, Florida (Fall 1993).

# Pamela B. Stuart
### Attorney & Counsellor at Law

PAGE 12

Member, working group organizing a workshop on the Role and Stature of the Judiciary, Bratislava, the Czech and Slovak Federal Republic, sponsored by the Central and Eastern European Law Initiative of the American Bar Association (March 1992).

Organizer, moderator and speaker, program on International Aspects of Criminal Fraud Litigation,  Edward Bennett Williams Inn of Court (January 1992).

Speaker, "Coordinating Security Efforts with Law Enforcement Agencies," and "Investigative, Evidentiary, and Procedural Issues in Developing Compliance Programs, Handling Corporate Internal Investigations and the Application of Foreign Criminal Laws to US Businesses Abroad," American  Society of Industrial Security (December 1991).

## BAR ADMISSIONS

New York Court of Appeals (1974)
District of Columbia Court of Appeals (1975)
Court of Appeals of Maryland (1992)
Supreme Court of Virginia (1993)
Supreme Court of Florida (1994)
United States District Court for the District of Columbia (1979)
United States District Court for the District of Maryland (1989)
United States District Court for the Eastern District of Virginia (1994)
United States District Court for the Northern District of New York (1996)
United States District Court for the Southern District of Florida (1998)
United States District Court for the Southern District of New York (1999)
United States District Court for the Eastern District of New York (1999)
United States District Court for the Middle District of Florida (2001) (lapsed)
United States Court of Appeals for the District of Columbia Circuit (1980)
United States Court of Appeals for the Fourth Circuit (1993)
Supreme Court of the United States (1980)

## OTHER PROFESSIONAL MEMBERSHIPS

Women's Bar Association of the District of Columbia
The Counsellors
The Barristers

# Pamela B. Stuart
### Attorney & Counsellor at Law

PAGE 1 3

## EDUCATION

The University of Michigan Law School, JD, cum laude, 1973
Mount Holyoke College, AB with Distinction, 1970 (major: political science)
 Medal of Honor, Alumnae Association of Mount Holyoke College (1990)

Licensed private pilot (inactive)

*Pamela B. Friant*
ATTORNEY AND COUNSELOR AT LAW

New Beach Florida 32088-5401

pro se filing

715 4th ave st NW

Clerk's Office
US District Court for the
Southern District of Flo
101 South US Hwy 1
Room 1016
Fort Pierce, FL 349



U.S. POSTAGE PAID
FCM LG ENV
WASHINGTON, DC
2016
FEB 01 '19
AMOUNT
$2.20
R2304M111025-04

