UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT PIERCE DIVISION

| | |
|---|---|
| PAMELA B. STUART ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-14244- CIV- |
| ) | MARTINEZ/MAYNARD |
| ) | |
| CATHERINE S. RYAN, ) | |
| ) | |
| DEBORAH A. STUART, ) | |
| ) | |
| TENNIS TOWNHOUSES CONDOMINIUM ) | |
| ASSOCIATION, INC., ) | |
| ) | |
| JEFFREY R. SMITH, ) | |
| ) | |
| STATE OF FLORIDA, ) | |
| ) | |
| Defendants. ) | |

FILED BY ___ D.C.

JAN 15 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

## MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff respectfully moves pursuant to Rule 59(e) and Rule 60(b)(6) of the Federal Rules of Civil Procedure for relief from the Court's order entered on December 18, 2020.

**Standard**

A motion filed under Rule 59(e) primarily serves to correct analytical errors in a prior decision of the court. *See United States v. Fiorelli* 337 F.3d 282, 288 (3d Cir. 2003). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the

need to correct a clear error of law or fact or to prevent manifest injustice."... "Such circumstances include, in the appropriate case, 'the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process.' *Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 778 (2017) (citation and internal quotation marks omitted)." Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Rule 60(b) provides a basis for relief for a variety of reason and "any other basis that justifies relief." As the Supreme Court noted in earlier cases, "We must continuously bear in mind that 'to perform its high function in the best way 'justice must satisfy the appearance of justice.'' *Liljeberg v. Health Services Acquisition Corp*, 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1987), quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). In support of her motion, Plaintiff relies on the following points and authorities.

**Background Facts**

This case arises from a state court proceeding in which the state courts failed to follow the applicable precedents under the US and Florida Constitutions and state law and *sua sponte* altered title to Plaintiff's home and properties inherited from her parents upon their deaths which were not part of the subject matter of the case in order to effect a result desired by the state trial court but not supported by applicable law or evidence. Contrary to the Court's opinion, Plaintiff did not receive credit against the money judgment imposed by the state trial court for the value of her inherited property interests (about $300,000) and her home was not sold for its fair market value ($560,000) .but rather went to her sisters at a steep discount ($71,000) which was less than a third of the price at which she purchased the property eighteen years earlier as a result of an irregularity in the

proceedings – the state court gave her sisters a "bid credit" equal to the amount of the inflated money judgment the court had granted them.

## ARGUMENT

This Court understandably does not want to be in the business of overruling state court judgments absent Congressional authorization due to 28 U.S.C. § 1257. *Rooker Feldman* is not supposed to divest a federal court of jurisdiction over federal causes of action except in very narrow circumstances.[1] The preclusion doctrines relied upon by the Court are based upon comity and assume that the causes to be precluded were actually litigated and decided in the original court proceedings. *Lozman v. City of Riviera Beach,* 713 F.3d 1066, 1080 (11th Cir. 2013). In the underlying trust case the state court *sua sponte* and against the applicable Florida law and rules of procedure took jurisdiction over properties Plaintiff acquired through purchase and inheritance that were unconnected to the borrowing against her father's trust. . The state court ordered equitable liens on Plaintiffs' unrelated property interests without satisfying the legal requirements that the property interests had been acquired or improved with ill-gotten gains. *Palm Beach Savings & Loan Assn. v. Fishbein,* 619 So.2d 267 (Fla. 1993). The state court's findings of fact notably do not include any findings with respect to Plaintiff's ownership of those properties indicating that they were acquired due to wrong doing or that they were subject to being used as restitution. The sisters' "entitlement" to those properties was never raised by them in their complaint and was never litigated in the state courts

The determination of the truth of these statements does not require this Court to review and

---

1 The doctrine is derived from the decisions in *Rooker v. Fidelity Trust Company,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 162 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

3

overrule a state court judgment but merely to engage in normal fact-finding. The truth is apparent on the records filed in this case which have been cited in previous filings. The plain language of the Constitution and the Eleventh Circuit precedents should permit viable claims that were not fully litigated in state court to proceed. *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286-87 (11th Cir. 2018), citing *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983). However, this Court and the Eleventh Circuit have not applied those precedents.

Plaintiff has carefully reviewed the Court's order dismissing this case. The Court recounted that the Eleventh Circuit determined that the narrow *Rooker Feldman* doctrine applies to preclude federal jurisdiction over the case involving Plaintiff's rights to properties inherited from her parents, but that dismissal of those claims must be without prejudice. The Court then addressed reasons why the claims regarding Plaintiff's home in Florida should be but were not subject to the *Rooker Feldman* doctrine, but was nevertheless barred by preclusion law because, the Court concluded, Plaintiff's claim to the condominium were adjudicated on the merits against Ryan and Stuart[2] as was the claim that its confiscation from Plaintiff amounted to a judicial taking. (Opinion at 11). The Court reached that conclusion despite the fact that none of the courts that considered the judicial taking argument discussed the merits of such a claim (which was raised as a defense and not stated as a claim) with the exception of Judge Middlebrooks' opinion on an application for a temporary restraining order on the foreclosure sale of Plaintiff's home in which he opined on the issue of entitlement to the Florida homestead protection as to Plaintiff's home and the magistrate judge's

---

[2] The Court did not address the fact that Plaintiff's homestead property was not named in the complaint as special damages, was never the subject of a notice and hearing, and was not proven to have been acquired with ill-gotten gains as Florida law requires for the imposition of an equitable lien and the state court issued no findings of fact to that effect.

4

report and recommendations that this Court adopted for purposes of its decision.[3]

Plaintiff's entitlement to her share of her father's homestead that she acquired by operation of law on January 18, 1998 when her father died and her right to a share of her parents' personal property devised by will was not the subject of much comment in the Eleventh Circuit's rulings or this Court's opinion. The Supreme Court has ruled that when a law disposes of the rights of property owners to devise their properties through their estates and the right of descent by intestacy that such a government regulation of the rights of inheritance goes too far and amounts to an unconstitutional taking. *Hodel v. Irving*, 481 U.S. 704, 716, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987). The rights of inheritance have been respected as fundamental values in Anglo American law since feudal times. *Id.* The state court in this case effectively obliterated Mr. Stuart's right under Article X, section 4(b) of the Florida Constitution to pass his protected homestead to his heirs and ignored his wishes in his trust and will. The court took jurisdiction over Mrs. Stuart's personal property which included that of her husband even though it was never property of Mr. Stuart's trust which was the subject matter of the case.

---

[3] Indeed, the only state court opinion that addressed issues in this case is demonstrably in error because it relied on matters not in the appellate record and misconstrued the law applicable to inherited homestead property. *Stuart v. Ryan*, 232 So.3d 418 (Fla. 4th DCA 2017). It relied on the trial court's recitation (invented) that Plaintiff said she intended to live in Florida in the future when the record on appeal contained no such assertion by Plaintiff but rather only evidence that she had resided in her Florida home part time for 18 years. The Florida appellate court further erred when it included as part of its reasoning why the homestead exemption could not apply to Plaintiff was the fact that Plaintiff claimed the benefit of the Florida homestead exemption in Article X, section 4 (a) of the Florida Constitution for her home and Article X, section 4 (b) for her inherited interest in her father's homestead. While the law in Florida is that one can only claim a homestead exemption for one personal residence at a time, the Florida Constitution makes clear that the homestead exemption for inherited property in the hands of heirs does not affect or disqualify a claimant from simultaneously having a homestead in which he or she resides.

Indeed, the state trial court refused Plaintiff's attempt to add the division of her father's homestead as an issue in the litigation when Plaintiff raised that as a possible issue. Plaintiff's father had titled the home in the name of his trust which confused the trial court initially as to its ownership. Under Florida law, because it was homestead property, its ownership passed automatically at his death outside of probate by operation of law to his three daughters jointly with a life estate in his surviving spouse. §732.401(1), Florida Statutes, *Aronson v. Aronson*, 81 So.3d 515 (Fla. 3d DCA 2012). The trustee of his trust had no authority over the disposition of that property once Plaintiff's father died and so the property was not part of the subject matter of the litigation before the state court.[4] Nevertheless, the state court *sua sponte* ordered Plaintiff's share of it to be given to her sisters but did not credit its value (approximately $250,000 to $300,000) to Plaintiff's loan balance or deficiency judgment. When given an opportunity to correct that error, the court declined.

The state court did the same thing with respect to Mr. and Mrs. Stuart's personal property that was never property of the trust and was governed by their wills. Thus, in contrast to the issues involving Plaintiff's Florida home and contrary to the Court's statement, the inherited property interests were never litigated before the state court and were not credited against the exaggerated deficiency judgment lodged against Plaintiff. The property essentially was confiscated from her by the state court based upon the state court's personal judgment of who should own it. DE 24-1 at 22.

---

[4] Ironically, the successor trustee to the J. Raymond Stuart trust provided a "trustee's deed" to the property to Catherine Ryan and Deborah Stuart which pointedly recited that no title search had been conducted. The successor trustee thus perpetrated a fraud on the recording system because one third of the ownership of that property vested in Plaintiff in 1998.

As noted above, what the state court did with respect to Plaintiff's inherited properties was what the U.S. Supreme Court has deemed a taking in a different context – on tribal lands. The Supreme Court said that for government to abolish the right of descent and devise with respect to tribal lands amounted to a taking. *Hodel v. Irving,* 481 U.S. 704, 716, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987) In 1983, Congress passed a law that provided that no undivided fractional interest in a tribal land property shall pass by descent or devise but shall escheat to the tribe if the interest amounted to 2% or less of the total acreage in the tract. No provision was made to compensate the heirs who otherwise would have inherited the lands. Writing for the Court, Justice O'Connor found the impact of the statute "extraordinary."

> [T]he regulation here amounts to virtually the abrogation of the right to pass on a certain type of property—the small undivided interest—to one's heirs. In one form or another, the right to pass on property—to one's family in particular—has been part of the Anglo-American legal system since feudal times. See *United States v. Perkins,* 163 U.S. 625, 627-628, 16 S.Ct. 1073, 1074, 41 L.Ed. 287 (1896). The fact that it may be possible for the owners of these interests to effectively control disposition upon death through complex *inter vivos* transactions such as revocable trusts is simply not an adequate substitute for the rights taken, given the nature of the property. Even the United States concedes that total abrogation of the right to pass property is unprecedented and likely unconstitutional. Tr. of Oral Arg. 12-14. Moreover, this statute effectively abolishes both descent and devise of these property interests . . . .

*Hodel v. Irving,* 481 U.S. 704, 716, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987). The Court held that the complete abrogation of the right of descent and devise of property which hurts not only the heirs but the decedents who owned the property prior to death may be a taking and went "too far." *Id.* at 718.

In this case, the abolition of Mr. Stuart's right to pass his property via intestacy by state law or devise by his will or as he intended as set forth in his trust (equal division between his daughters) as well as the complete usurpation of Mrs. Stuart's devise by the state court was a taking and the governmental purpose ostensibly sought to be achieved, an equitable lien in favor of Ryan and Stuart, was not litigated in the case or established in evidence-based findings, and amounted to a

taking for which no compensation was provided. The applicable Florida law in the state Constitution is that Mr. Stuart's homestead was protected from forced sale in the hands of his heirs. Article X, section 4(b), Florida Constitution. The effect of the court's order was extraordinary in that it essentially abolished the descent and devise of the Plaintiff's property interests as intended by their deceased owners, a right recognized by the Anglo American legal system since feudal times. As noted above, the abolition of the right to descent and devise by the government is an unconstitutional taking. *Hodel v, Irving,* 481 US 704, 716-718, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987).

Nevertheless, the state court, after acknowledging that Plaintiff was correct in her assertion that the title to the father's homestead property resided in the three sisters as joint tenants following their father's death, imposed an equitable lien on Plaintiff's interest in the property ostensibly so the value of the interest could be used to reduce what she owed her sisters. The state court then failed to credit the value of that interest against the debt in its judgment of deficiency, *See,* DE 108.

Plaintiff is cognizant of the Court's opinion that the Fifth Amendment's prohibition on a taking by the state through its courts has not been violated here because the taking by the governmental authority and the alteration of title at the behest of a public official was for the benefit of private parties who had not followed the applicable state law to ask for such relief. On the contrary, the implementation of the judicial decision at issue amounts to a public use for a public purpose because the state court is "the government entity charged with implementing the [applicable law] has reached a final decision regarding the application of the [law] to the property at issue.' *"Williamson Cty. Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186 (1985), rev'd on other grounds, *Knick v. Township of Scott,* 139 S.Ct. 2162, 204 L.Ed.2d 558 (2019). The court decides the property interest determined by state law but when it decides the property interest

purported to be based upon an interpretation of state law that is different from the applicable state law, that amounts to a taking. *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection,* 560 U.S. 702, 719 (2010)(plurality).

With respect to Plaintiff's homestead, the state courts did not as this Court said "merely determine who between two private parties had the right to the condominium." The state court did not develop or rely upon evidence as to whether the condominium was subject to an equitable lien under applicable Florida law which required a showing that it was acquired due to misconduct or unjust enrichment. There was no hearing or trial on that issue and no notice that the home was at issue. To obtain an equitable lien on a Florida homestead, a plaintiff must show by a preponderance of the evidence (1) that the defendant engaged in fraudulent or egregious conduct and (2) that the funds from that conduct can be directly traced to the purchase of, investment in, or improvement of the homestead. *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003), cited in *Fed. Trade Comm'n v. Am. Precious Metals, LLC,* no. 17-12042 (11th Cir. 2018). To acquire an equitable lien on non-homestead property, unjust enrichment related to the property must be shown. *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein,* 619 So.2d 267 (Fla. 1993). No such evidence was presented in the case or found by the judge. *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein,* 619 So.2d 267 (Fla. 1993) The only hearings held by the state court addressed solely the issue of Plaintiff's entitlement to trustee fees and expense reimbursements. The court made no findings that the condominium was acquired due to misconduct or unjust enrichment.

If these seizures of property not named in a civil complaint as subject matter of the litigation were not judicial takings, then they certainly run afoul of the Fourth Amendment's prohibition against unreasonable seizures and the Eighth Amendment's guarantee against excessively harsh

punishment. The Court's opinion mentioned that Plaintiff's home was credited against the deficiency judgment levied against her, but restitution is a remedy for criminal violations and some statutory misdeeds in Florida that is directed at restoring a particular property or fund that was taken improperly. *Sua sponte* transfer of title by the state court of any of a debtor's properties is not a proper method of debt collection. *Great-West Life v Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) As the Supreme Court has stated:

> [A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession..[citations omitted] A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].

*Great-West Life v Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). Absent some connection to the crime or misconduct, property must be seized for debt collection in the manner decreed by law – not just because the judge decides it is "appropriate." *See, e.g.,* DE 24-1 at 22.

Plaintiff acknowledges that this case arose because of mistakes she made in the administration of her father's trust and is remorseful that she was defrauded and then over-borrowed against her inheritance with the knowledge and agreement of her family to pay the carrying costs of a commercial real estate investment and then for support during illness. She did not commit conversion or any crime because she relied in good faith upon the terms of her father's trust and the Florida statutes which permitted investment in real estate and borrowing by his executor and the Florida statutes which gave her the right to trustee fees and reimbursement of trustee expenses. §§

736.0708, 736.0709. The state trial court made no findings of conversion, While the state court expressed its view that Plaintiff engaged in "reprehensible" activity, that aspect of the court's opinion failed to meet the standards set by the U.S. Supreme Court and the Florida Supreme Court for a determination of "reprehensibility" which requires evidence that the conduct complained of caused physical as well as economic harm. *State Farm Mutual Auto Insurance Association v. Campbell*, 538 U.S. 408, 419 (2003), *Schoeff v. R. J. Reynolds Tobacco Co.*, 232 So.3d 294, 306-307 (Fla. 2017)(a finding of "reprehensibility" requires proof of economic and physical harm).

No criminal activity was involved in this case or other activity for which restitution is authorized in the Florida statutes.[5] The plaintiffs in the state case asked for a money judgment and

---

[5] Plaintiff notes that the Court cited a case from the Federal Court of Claims rather than any Florida precedents for the proposition that Plaintiff's home sold for "the fair market value" and that value was credited against the judgment she owed in the trust case. In fact, her home was valued at $560,000 as of the day of its sale when her sisters bought it for $71,000 which was less than one third of the price Plaintiff paid to purchase the property in January 2000 ($225,000) eighteen years earlier. The appraised value of the home was credited against the inflated judgment awarded by the state court, in contrast to the value of Plaintiff's inherited properties (about $300,000) which were not credited against the judgment – a fact the Court omitted. This Court cited a Federal Court of Claims opinion for the proposition that Plaintiff's home had been taken as restitution but the analogy was inapt. (opinion at 15, citing *Milgroom v. United States*, 122 Fed. Cl. 779, 801 n 27 (2015)) in which the court observed in *dicta* that an award of a property as restitution did not constitute a taking of private property for public use). On the contrary, when a court orders a title of property transferred, the actual transfer of the title is effectuating a public purpose. The Court did not address the fact that the home owned by Plaintiff had nothing to do with the conduct complained of as required by state law for the application of an equitable lien and that the home was not mentioned in the sisters' complaint which deprived the state court of jurisdiction over it and also the right to award the home as restitution. *See Great-West Life v Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), Scalia, J.("for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant [for a sum of money], but to restore to the plaintiff particular funds or property in the defendant's possession.") An "equitable lien" is "[a] right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, without having possession of the fund or property." Black's Law Dictionary 942 (8th ed. 2004); *see Jones v. Carpenter*, 90 Fla. 407, 106 So. 127, 128-29 (1925); *Jennings v. Beeman Inv. Co.*, 177 So.2d 66, 68 (Fla. 2d DCA 1965). "Equitable liens become necessary on account of the absence of

they got one that was vastly inflated by the trial court's failure to award any trustee fees for sixteen years of service or any reimbursement for the $330,000 of trustee expenses incurred by Plaintiff. They did not name her home or inherited properties as "special damages" as required to give the court jurisdiction over the properties or the legal basis upon which to impose an equitable lien – let alone transfer of title. *United States v. Sineneng-Smith*, no. 19-67, ___US___(May 7, 2020); *Greenlaw v. United States*, 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008); *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768 (1927)(en banc) (no subject matter jurisdiction over properties not named in complaint).

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, states "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," This concept dates to the Magna Carta's successful effort to thwart the imposition of excessive fines and punishments by the English King. It is manifest from the facts in this case and the failure of the state courts to follow the basics of due process of law (notice and opportunity to be heard) that the seizure of Plaintiff's properties by the state court was arbitrary, capricious, unsupported by the law and an injustice. As Justice O'Connor opined in *Hodel v. Irving,* what went on here was truly "extraordinary." *Hodel v. Irving,* 481 U.S. at 718. To fail to afford a remedy for this injustice in federal court in support of the US Constitution is a manifest injustice.

42 U.S.C. § 1983 provides a remedy for such a Constitutional tort: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

---

similar remedies at law." *Jones*, 106 So. at 128-29.

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." The Supreme Court has said, with respect to local governments, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Certainly a judicial decision which is supposed to apply governing law to a set of facts found may be said to be an act representing official policy (regardless of whether it is erroneous).

In *Timbs v. Indiana*, 139 S.Ct. 682, 203 L.Ed.2d 11 (2019), the Court held that "the Eighth Amendment's Excessive Fines Clause is an 'incorporated' protection applicable to the States under the Fourteenth Amendment's Due Process Clause." The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.." The *Timbs* case also stands for the proposition that the Constitution provides "Protection against excessive punitive economic sanctions..." which the Court regarded as "fundamental to our scheme of ordered liberty." *Timbs v. Indiana*, 139 S. Ct. at 689. In *Timbs,* the Court reversed the state's seizure of Mr. Timbs $42,000 car he purchased with money from an insurance payment upon his father's death. It was seized in an *in rem* forfeiture based upon a criminal drug conviction which provided for a maximum fine of $10,000. The *Timbs* case may be analogous to the facts in this case where the state court *sua sponte* took property belonging to Plaintiff to add to a monetary sanction that the court was imposing. In the case of the inherited properties, there was no effort on the part of the trial court to provide a set off against what the court deemed to be the money judgment owed.

13

Manifest injustice means something which is 'obviously unfair' or 'shocking to the conscience.' It refers to an unfairness that is direct, obvious, and observable. Plaintiff is sympathetic to the Court's order to avoid exercising subject matter jurisdiction where none exists and wishes that the state courts had exercised the same concern. Eleventh Circuit caselaw equates "manifest injustice" with the plain error standard of review. *United States v. Campbell,* no. 16-10128 (11th Cir. 2020), citing *U.S. v. Quintana*, 300 F.3d 1227, 1232 (11th Cir. 2002), abrogated on other grounds by *United States v. Doyle*, 857 F.3d 115 (11th Cir. 2017). To demonstrate manifest injustice, a petitioner must demonstrate (1) that there was error; (2) that was plain; (3) that affected his substantial rights; and (4) that affected the fundamental fairness of the proceedings. *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). That the Court declined for *Rooker Feldman* and preclusion reasons to permit a federal forum to adjudicate the loss of fundamental rights by plaintiff whose property rights and those of her parents to descent and devise (not to mention her right to her own home and her domicile) were usurped by the government without notice, jurisdiction or hearing and contrary to prevailing state law was, to quote Justice O'Connor, "extraordinary" and should shock the conscience and cause a loss of trust and confidence in the courts. Plaintiff has never seen anything like what she has suffered in the Florida courts in nearly 50 years of experience as a lawyer. The case against the State of Florida does not require this Court to review and undo the erroneous judgments of the state courts but rather to provide a remedy for the Constitutional violations by the state acting through its courts.

Plaintiff proposes that she be granted leave to file an amended complaint that more fully sets forth the claims outlined here. Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R.

14

Civ. P. 15(a)(2). Filing an amended complaint would serve the interests of justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility. Through the Amended Complaint, Plaintiffs seek to perfect her claim under 42 U.S.C. § 1983 and the Fourth, Fifth and Eighth Amendments against the State of Florida. Florida has waived its immunity for Constitutional torts in its constitution, Article X, section 6 and by statute, § 768.28, Florida Statutes.

## VERIFICATION

Plaintiff avers that all factual statements made in this pleading are true and correct to the best of her knowledge under penalties of perjury pursuant to 28 U.S.C. § 1746.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff submits that her motion should be granted and that the Court's order dated December 18, 2020 should be amended and revised to permit a federal forum for Plaintiff's claims against the State of Florida for the unconstitutional seizure of her inherited properties which the Eleventh Circuit ruled should be dismissed without prejudice. These claims arise under 42 U.S.C. § 1983, the Fourth, Fifth, Fourteenth and Eighth Amendments to the U.S. Constitution and pursuant to applicable Florida law. Respectfully, in light of the precedents cited above, Plaintiff asserts that her claims regarding the seizure of her home also are properly before the Court, *United States v. Sineneng-Smith*, no. 19-67, ___US___(May 7, 2020); *Greenlaw v. United States,* 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008).

Respectfully submitted,

*Pamela B. Stuart* (signature)

Pamela B. Stuart
Plaintiff *pro se*
P. M. B. #8202
6001 North Highway A1A
Indian River Shores, FL 32963-4116
Alternate:
    5115 Yuma Street, N.W.
    Washington, DC 20016
202-244-0723 (home)
202-999-2374 (cell)
202-835-2200 (business)
pamstuart@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of January, 2021, I caused this Motion to Alter or Amend Judgment to be filed with the Clerk of the Court via Federal Express or US Postal Service first class or priority mail with fees and/or postage pre-paid and with counsel of record as shown below by first class or priority mail with postage pre-paid.

C. Douglas Vitunac, Esq.
Collins, Brown, Barkett, Chtd.
756 Beachland Boulevard
Vero Beach, FL 32963
dvitunacpleadings@verolaw.com

Christine E. Ryan, Esq.
809 Brynwyck Road, N.E.
Brookhaven, GA 30319
cryan.esq@gmail.com

counsel for Catherine Ryan and Deborah Stuart

Sean A Mickley, Esq.
Kirwin Norris P.A.
15 West Church Street, Suite 101
Orlando, Florida 32801
sam@kirwinnorris.com

counsel for the Tennis Townhouses Condominium Association, Inc.

Jason L. Odom, Esq.
Gould, Cooksey, Fennell, PA
979 Beachland Boulevard
Vero Beach, FL 32963
jodom@gouldcooksey.com

counsel for Jeffrey R. Smith, Clerk of the Circuit Court for Indian River County, FL

Christopher M. Sutter, Esq.
Assistant Attorney General
State of Florida
110 S.E. 6th Street, 10th Floor
Ft. Lauderdale, FL 33301
christopher.sutter@myfloridalegal.com

counsel for the State of Florida

                                                    PAMELA B. STUART


